# EXHIBIT A

ELECTRONICALLY FILED
2019 Feb 19 5:19 PM
CLERK OF COURT

## IN THE CHANCERY COURT FOR SHELBY COUNTY
## 30TH JUDICIAL DISTRICT
## AT MEMPHIS, TENNESSEE

| | | |
|---|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| ABBY FARM SUPPLY, INC., | ) | |
| TERRY ABBY and LINDA ABBY, | ) | |
| | ) | |
| Defendants. | ) | |

### VERIFIED COMPLAINT FOR RECOVERY OF PROPERTY, BREACH OF CONTRACT, AND REQUEST FOR RESTRAINNG ORDER AND OTHER INJUNCTIVE RELIEF, INCLUDING A REQUEST FOR A WRIT OF POSSESSION

COMES NOW CNH INDUSTRIAL CAPITAL AMERICA, LLC ("CNHi" or the "Plaintiff"), by counsel, and for its Verified Complaint against Defendants, Abby Farm Supply, Inc., Terry Abby and Linda Abby alleges as follows:

### BACKGROUND STATEMENT

CNHi has lent Abby Farm Supply, Inc. over $1,900,000, secured by (among other things) 24 pieces of agricultural and construction equipment and parts inventory. Abby Farm Supply, Inc., which keeps most of this collateral at its locations in Shelby County, Tennessee on New Getwell Road and Highway 51 South, has defaulted on its obligations to CNHi and has refused to turn over the collateral to CNHi or to pay off its debt to CNHi. Terry Abby and Linda Abby are the owners of Abby Farm Supply, Inc., guaranteed its debts to CNHi, and likewise have failed to pay CNHi on their guaranteed debt. CNHi has instituted this action to recover its collateral and to obtain judgment for the debts due by the Defendants.

## I.   **PARTIES**

1.      CNHi is a Delaware limited liability company licensed to do business in the State of Tennessee.   CNHi changed its name from CNH Capital America, LLC to CNH Industrial Capital America, LLC in 2014.

2.      Defendant Abby Farm Supply, Inc. ("Abby Farm Supply") is a Mississippi corporation licensed to do business in Tennessee and may be served with summons through its Registered Agent for Service of Process, Linda Abby, at 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053.

3.      Defendant Terry Abby ("Mr. Abby") is an individual and is believed to be a citizen and resident of and may be served with summons at 1521 Highway 45, Saltillo, MS 38868.

4.      Defendant Linda Abby ("Ms. Abby") is an individual and is believed to be a citizen and resident of Shelby County, Tennessee and may be served with summons at 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053. Alternatively, Ms. Abby is a resident of Mississippi, but maintains an office for the receipt of service of process in Tennessee at this address.

5.      This Court has jurisdiction over the subject matter which is the basis for this cause of action. Venue is proper in Shelby County pursuant to Tenn. Code Ann. §20-4-101 et. seq.

## II.   **FACTS**

6.      On March 27, 2012, Abby Farm Supply entered into that certain Retail Financing Agreement with CNHi (the "RFA").   A true and correct copy of the RFA is attached hereto as *Exhibit A*.

7.     On March 27, 2012, Abby Farm Supply entered into that certain Wholesale Financing and Security Agreement with CNHi (the "WFSA").   A true and correct copy of the WFSA is attached hereto as ***Exhibit B***.

8.     Abby Farm Supply operates two business locations in Tennessee: one located at 3849 New Getwell Road, Memphis, Shelby County, Tennessee 38118 and one located at 16135 Highway 51 S, Millington, Shelby County, Tennessee 38053.

9.     On March 27, 2012, Mr. Abby executed that certain unlimited and continuing commercial guaranty in favor of CNHi (the "Mr. Abby Guaranty"). A true and correct copy of the Mr. Abby Guaranty is attached hereto as ***Exhibit C***.

10.     Mr. Abby is the Vice President of Abby Farm Supply, and is also, upon information and belief, a principal stockholder in Abby Farm Supply. Mr. Abby, in his capacities as Vice President of and equity owner in Abby Farm Supply regularly travels to Abby Farm Supply's locations in Shelby County, Tennessee in order to conduct his business there. Upon information and belief, Mr. Abby travels to Shelby County, Tennessee on a weekly or bi-weekly basis for business purposes. Accordingly, Tennessee courts have general jurisdiction over Mr. Abby.

11.     On March 27, 2012, Ms. Abby executed that certain unlimited and continuing commercial guaranty in favor of CNHi (the "Ms. Abby Guaranty"). A true and correct copy of the Ms. Abby Guaranty is attached hereto as ***Exhibit D***.

12.     Ms. Abby is the registered agent for service of process for Abby Farm Supply in Tennessee, with a listed address of 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053. Ms. Abby, in her capacities as an officer of and equity owner in Abby Farm Supply regularly travels to Abby Farm Supply's locations in Shelby County, Tennessee in order to

conduct her business there, and is in Tennessee with such regularity and frequency that she is able to accept service of process at this address. Upon information and belief, Ms. Abby travels to Shelby County, Tennessee on a weekly if not daily basis for business purposes. Accordingly, Tennessee courts have general jurisdiction over Ms. Abby.

**A. The Collateral and Security Interest of CNHi, and the Amounts due by Defendants.**

13.     Under the terms of the RFA and WFSA, CNHi provided financing for Abby Farm Supply to acquire and sell, among other things, the inventory described in the WFSA, agricultural and construction equipment and parts, such that CNHi has a properly perfected, first priority purchase money in certain collateral.

14.     The Plaintiff holds a properly perfected security interest in that collateral, evidenced by the grant of security interests contained in Section 5(d) of the RFA and Section 3(b) of the WFSA and the UCC-1 financing statement (as continued) filed with the Mississippi Secretary of State.  True and correct copies of the UCC-1 financing statement and the UCC-3 continuation statements (the "UCCs") are attached hereto as ***Collective Exhibit E.***

15.     Presently, the Collateral includes twenty-four pieces of equipment, identified by make, model and serial number on ***Exhibit F*** hereto, along with additional parts inventory as referenced in the UCCs (the "Collateral").

16.     Although Abby Farm Supply operates in a number of different locations, most, if not all, of the Collateral is located at the Abby Farm Supply locations at 3849 New Getwell Road, Memphis, Shelby County, Tennessee 38118 and 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053.

17.     Presently, Abby Farm Supply is obligated to CNHi under the RFA and the WFSA in the amount of $1,949,204.26 as of February 13, 2019, plus interest, all attorneys fees, court costs and other costs of collection.

18.     Under Section 2(c) of the WFSA, the calculation by CNHi of the amounts due by Abby Farm Supply are "absent manifest error ... conclusively evidenced by" the books and records of CNHi.

19.     Further, unless Abby Farm Supply "objects in writing, in a notice given in accordance with Section 13(f)" of the WFSA, "such monthly statements shall be deemed an account stated, and [Abby Farm Supply] shall be deemed to have accepted as accurate all information" set forth in the monthly statements.

20.     CNHi sent Abby Farm Supply the monthly statement for December 2018 (the cover sheet of which is attached hereto as *Exhibit G*), and CNHi has received no notice from Abby Farm Supply meeting the requirements of Section 13(f) of the WFSA.

**B.  The Payment Defaults and Financial Troubles of Abby Farm Supply.**

21.     Pursuant to the terms of the RFA and the WFSA, Abby Farm Supply was to make payments to CNHi, as invoiced by CNHi, based upon the amounts outstanding under the RFA and WFSA. Through the course of the relationship, CNHi invoiced Abby Farm Supply on a monthly basis, and Abby Farm Supply accepted those billings as accurate.

22.     However, over the past two years, Abby Farm Supply has repeatedly defaulted on its monthly payment obligations under the RFA and the WFSA.

23.     On January 25, 2017, due to the payment defaults by Abby Farm Supply and the failure of Abby Farm Supply to pay CNHi $64,016.28 due under the WFSA, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply

under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as ***Exhibit H***.

24.     The next month, CNHi was required, once again, to notify Abby Farm Supply about payment default. On February 13, 2017, due to the payment defaults by Abby Farm Supply and the failure of Abby Farm Supply to pay CNHi $48,365.09 due under the WFSA, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as ***Exhibit I***.

25.     Abby Farm Supply's delinquencies continued into March 2017, such that on March 27, 2017 due to the payment defaults by Abby Farm Supply and the failure of Abby Farm Supply to pay CNHi $158,571.93 due under the WFSA, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as ***Exhibit J***.

26.     The March 27, 2017 also identified two Case 590SN backhoe loaders that Abby Farm Supply had sold "out of trust;" that is, Abby Farm Supply transferred ownership of these backhoe loaders without paying CNHi the required invoice amounts.

27.     As a dealer in these goods, Abby Farm Supply was able, under Tennessee law, to transfer title to these two Case 590SN backhoe loaders free and clear of any lien of CNHi.

28.     For a short time, Abby Farm Supply seemed to get its financial act in order, but that did not last. On August 18, 2017, CNHi was once again compelled to notify Abby Farm Supply that it was past due in its financial obligations to CNHi, and that as a consequence CNHi

was required to restrict its access to certain financing under the WFSA. A true and correct copy of this notice is attached here to as ***Exhibit K***.

29.     On September 15, 2017, CNHi notified Abby Farm Supply that its credit rating with CNHi had been downgraded, due to the failure by Abby Farm Supply to abide by its obligation under the RFA and WFSA. A true and correct copy of this notice is attached here to as ***Exhibit L***.

30.     On October 2 , 2017 and on October 4, 2017, CNHi was once again compelled to notify Abby Farm Supply that it was past due in its financial obligations to CNHi, and that as a consequence CNHi was required to restrict its access to certain financing under the WFSA. A true and correct copy of these notices are attached here to as ***Exhibit M***.

31.     Again, Abby Farm Supply appeared to get its financial act together in later 2017 and early 2018, but as before, this did not continue and once again Abby Farm Supply fell behind on its obligations to CNHi.

32.     On July 31, 2018, Abby Farm Supply admitted to CNHi that it did not have sufficient funds on hand to meet its obligations as they became due; instead, in order to pay the past due balances to CNHi, Abby Farm Supply was required to seek a cash infusion from its owner and CNHi Guarantor Terry Abby. A true and correct copy of this email is attached here to as ***Exhibit N***.

33.     On September 4, 2018, CNHi notified Abby Farm Supply that it was "extremely important" that Abby Farm Supply remain current on its obligations to CNHi, and that CNHi would work with Abby Farm Supply in its attempts to sell its business. A true and correct copy of this email is attached here to as ***Exhibit O***. No such sale of the Abby Farm Supply business has yet occurred.

34.     On September 21, 2018, CNHi notified Abby Farm Supply that it was past due on its obligations to CNHi in the amount of $66,264.14, for invoices spanning the months of July and August 2018. A true and correct copy of this email is attached here to as *Exhibit P*.

35.     On October 2, 2018, CNHi emailed Abby Farm Supply to clear up its past due balances, to avoid losing its ability to finance parts inventory with CNHi. A true and correct copy of this email is attached here to as *Exhibit Q*.

36.     On December 11, 2018, due to the payment defaults by Abby Farm Supply, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as *Exhibit R*.

37.     On December 12, 2018, CNHi notified Abby Farm Supply and the Guarantors that Abby Farm Supply had failed to make the required payments for November 2018 (in the amount of $56,781.00) and for December 2018 (in the amount of $44,034.94). A true and correct copy of this notice is attached here to as *Exhibit S*.

38.     At the time of the December 18, 2018 notice, Abby Farm Supply was indebted to CNHi in the total amount of $1,923,901.85.

39.     A copy of the December 18, 2018 notice was also sent to the Guarantors, and the December 18, 2018 notice expressly stated that the Guarantors would be obligated for all amounts due under the Guaranties.

40.     The December 18, 2018 Notice further notified Abby Farm Supply and the Guarantors that, absent payment of the November 2018 and December 2018 payment amounts by December 22, 2018, CNHi would terminate the RFA and WFSA. Under Section 13(a) of the

RFA and Section 12 of the WFSA, CNHi has the contractual right to terminate these agreements upon a payment default by Abby Farm Supply.

41.    On December 31, 2018, when Abby Farm Supply had failed for almost two weeks to pay the past due amounts to CNHi, CNHi notified Abby Farm Supply and the Guarantors that the RFA and WFSA were terminated. A true and correct copy of this notice is attached here to as *Exhibit T*.

42.    By January 16, 2019, it had become apparent to CNHi that Abby Farm Supply was unwilling or (more likely) financially unable to cure the payment and other defaults under the RFA and WDSA. As a consequence, CNHi sent to Abby Farm Supply a notice to voluntarily turnover the Collateral, to permit CNHi to audit the Collateral, and to pay all amounts due to CNHi under the terms of the RFA and WFSA. A true and correct copy of this notice is attached here to as *Exhibit U*.

43.    A copy of the January 16, 2019 notice was also sent to the Guarantors, and the January 16, 2019 notice expressly stated that the Guarantors would be obligated for all amounts due under the Guaranties.

44.    At the time of the January 16, 2019 notice, Abby Farm Supply was indebted to CNHi in the total amount of $1,943,735.62.

**C.  The Effect of Abby Farm Supply's Payment Defaults.**

45.    After a payment default and termination, the RFA and WFSA impose upon Abby Farm Supply a number of obligations to allow CNHi to recover the amounts lent by CNHi to Abby Farm Supply and to recover the Collateral securing CNHi.

46.     After termination under the RFA and WFSA, Abby Farm Supply is required to "segregate and keep the Collateral in trust" for CNHi and is prohibited from "dispos[ing] of or us[ing] any Collateral" under Section 11(b)(ii) of the WFSA.

47.     Further, after termination under the RFA and WFSA, Abby Farm Supply is required to "immediately deliver the Collateral" to CNHi at a place specified by CNHi under Section 11(b)(iii) of the WFSA.

48.     After termination under the RFA and WFSA, CNHi is allowed to "take immediate and exclusive possession of the Collateral wherever located and enter any of the premises of" Abby Farm Supply and to "take possession of and remove the Collateral…" under Section 11(b)(iv) of the WFSA.

49.     As CNHi has terminated the RFA and WFSA, Abby Farm Supply is contractually required to perform its obligations under Section 11(b)(ii) and (iii) of the WFSA, and CNHi is contractually entitled to exercise its rights Section 11(b)(iv) of the WFSA.

**D.   The Effect of Abby Farm Supply's Payment Defaults under the Guaranties.**

50.     Under the terms of the Guaranties, Mr. Abby and Ms. Abby are, jointly and severally, liable for all amounts owed by Abby Farm Supply to CNHi.

51.     Under the Section 1 of the Guaranties, Mr. Abby and Ms. Abby have "absolutely and unconditionally guarantee[d] the payment and performance… of all present and future obligations" of Abby Farm Supply to CNHi.

52.     Section 2 of the Guaranties, headed "Guaranty Absolute," reinforces that the obligations of Mr. Abby and Ms. Abby to CNHi are "absolute and unconditional."

53.     Thus, Mr. Abby and Ms. Abby are, jointly and severally, liable for all debts of Abby Farm Supply to CNHi, including any attorneys fees, court costs, and other costs of

collection incurred by CNHi in enforcing either the RFA, the WFSA, the Guaranties, or CNHI's rights against the Collateral.

### E. Possible Dissipation of Assets and Disposition of the Collateral; Rights of CNHi to Recover the Collateral.

54.    As noted above, after termination under the RFA and the WFSA, Abby Farm Supply may not sell any of the Collateral, and must keep it segregated and in trust for CNHi.

55.    Prior to termination, Abby Farm Supply had an obligation under the RFA and WFSA to promptly remit to CNHi proceeds from the sale of the Collateral, but Abby Farm Supply has breached this obligation on at least two prior occasions, in connection with the sale of the two backhoe loaders referenced above.

56.    Abby Farm Supply has no legal right to sell the Collateral, but remains in possession of the Collateral at the time of the filing of this Complaint.

57.    Abby Farm Supply, as a dealer in goods like the Collateral, may have the ability under Tennessee to convey a piece of Collateral free and clear of the lien of CNHi.

58.    Any continued possession of the Collateral by Abby Farm Supply exposes CNHi to the danger that Abby Farm Supply will (as it has done before) sell all or a part of the Collateral in contravention of its contractual obligations to hold the Collateral in trust for CNHi.

### III. REQUESTS FOR RELIEF

### COUNT 1: WRIT OF POSSESSION AND RESTRAINING ORDER

59.    The allegations contained in Paragraphs 1 to 58 are incorporated herein by reference.

60.    As a result of the defaults by Abby Farm Supply under the terms of the RFA and WFSA, CNHi is entitled to possession of the Collateral.

61.    There is no substantial controversy as to CNHi's right to possession of the Collateral.

62.    While CNHi is uncertain of the exact value of the Collateral, the Collateral likely has a value which approximates the total amount of the debt owed by Abby Farm Supply under the RFA and WFSA, assuming that the Collateral has been properly maintained and do not have excessive wear and tear.

63.    CNHI is entitled to a writ of possession granting it possession of the Collateral pursuant to T.C.A. §29-30-101 et seq. and in particular upon T.C.A. §29-30-106(1)(A), and to a restraining order and temporary and permanent injunctions in support of the writ of possession.

**COUNT 2: BREACH OF CONTRACT BY ABBY FARM SUPPLY**

64.    The allegations contained in Paragraphs 1 to 63 are incorporated herein by reference.

65.    As a result of the default under the terms of the RFA and WFSA, Abby Farm Supply,is liable to CNHi for all amounts due thereunder for which a judgment should be rendered in favor of CNHi. Further, the RFA and WFSA obligate Abby Farm Supply to pay CNHi's attorney fees, costs of collection and court costs.

**COUNT 3: BREACH OF CONTRACT BY MR. ABBY AND MS. ABBY**

66.    The allegations contained in Paragraphs 1 to 65 are incorporated herein by reference.

67.    As a result of the default under the terms of the RFA and WFSA by Abby Farm Supply, Mr. Abby and Ms. Abby are jointly and severally liable under the terms of their Guaranties to CNHi for all amounts due thereunder for which a judgment should be rendered in

favor of CNHi. Further, the RFA and WFSA obligate Mr. Abby and Ms. Abby to pay CNHi's attorney fees, costs of collection and court costs.

**WHEREFORE**, **CNH Industrial Capital America, LLC prays that this Court**:

A.      Enter an Order granting CNHi possession of the Collateral pursuant to T.C.A. §29-30-101 *et seq.*;

B.      Direct the Clerk of the Court to issue a writ of possession to the Sheriff of Shelby County (or such other officers as may be appropriate), directing the Sheriff to take possession of the Collateral from Abby Farm Supply, Inc. or any other person in possession thereof and deliver the Collateral over to CNHi or its authorized agent;

C.      Issue a restraining order and temporary and permanent injunctions pursuant to T.C.A. §29-30-101 *et seq.*, preventing the Defendants, or anyone acting at their direction, or on their behalf, from interfering the recovery of the Collateral by the Sheriff of Shelby County or CNHi;

D.      Grant CNHi a money judgment against Abby Farm Supply, Inc., for the breach of the RFA and WFSA in the amount of $1,949,204.26 as of February 13, 2019, plus interest accruing prior to the events of default at the contract rate of interest, plus interest accruing at the contractual default rate after the events of default, plus the amount of the Plaintiff's reasonable attorneys' fees and expenses, court costs, incurred as a result of Abby Farm Supply's default to CNHi;

E.      Grant CNHi a money judgment against Mr. Abby and Ms. Abby, jointly and severally, for the breach of their Guaranties in the amount $1,949,204.26 as of February 13, 2019, plus interest accruing prior to the events of default at the contract rate of interest, plus interest accruing at the contractual default rate after the events of default, plus the amount of the

Plaintiff's reasonable attorneys' fees and expenses, court costs, incurred as a result of the default by Abby Farm Supply, Mr. Abby and Ms. Abby in their contractual obligations to CNHi;

    F.      Grant CNHi a judgment against the Defendants for such other amounts as may be proven at trial; and

    G.      Grant CNHi such other and further relief that the Court deems appropriate.

          Respectfully Submitted,

**RENO & CAVANAUGH, PLLC**

Joseph R. Prochaska (#12760)
424 Church Street, Suite 2910
Nashville, TN 37219
Phone:      (629) 255-0208
Facsimile:    (629) 255-0209
Email:       jprochaska@renocavanaugh.com

Attorneys for CNH Industrial Capital America, LLC

## **VERIFICATION**

**STATE OF ARKANSAS**
**COUNTY OF CRAIGHEAD**

    I, _Dennis Albus_ , a _Field Credit Specialist_ of CNH Industrial Capital America, LLC ("CNHi") and one of the custodians of the business records of CNHi, having first been duly sworn, and being authorized to make this statement on behalf of CNHi, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of CNHi that were kept as a regular practice of CNHi's in the course of CNHi's regularly conducted business activity and that were made at or near the time of the occurrence of the matters set forth, by or from information transmitted by a person with knowledge and a business duty to accurately record or transmit that information, the facts stated in the Complaint are true, and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of CNHi.

        **CNH Industrial Capital America, LLC**

        By: _____

        Printed: _Dennis Albus_____

        Title: _Field Credit Specialist_

**STATE OF ARKANSAS**
**COUNTY OF CRAIGHEAD**

Sworn to and subscribed before me, _Dennis Albus_____, Notary Public, of the state and county mentioned, witness my hand and seal at office in ___Jonesboro_____ _Arkansas____ (City, State), this _19th_ day of February, 2019.

_____
NOTARY PUBLIC
My Commission Expires: _8-15-2024____

                       [SEAL]

OFFICIAL SEAL - #12400587
**JEAN HEIKES-NEWCOM**
NOTARY PUBLIC-ARKANSAS
CRAIGHEAD COUNTY
MY COMMISSION EXPIRES: 08-15-24



## RETAIL FINANCING AGREEMENT

This Retail Financing Agreement ("Agreement") entered into on ~~March 27~~ 2012 (the "Effective Date"), by and between CNH Capital America LLC, a Delaware limited liability company, ("CNH Capital") and Abby Farm Supply, Inc., a Mississippi corporation ("Dealer").

## RECITALS

**WHEREAS**, Dealer is a seller of construction, agricultural, and/or other equipment and related goods and services ("Products");

**WHEREAS**, Dealer wishes to participate in a commercial retail financing program with CNH Capital that will provide commercial customers of Dealer ("Customers") the ability to obtain financing for the purchase or lease of Products or other purposes by submitting an application to CNH Capital through Dealer (the "Program");

**WHEREAS**, under the Program, Dealer will enter into Contracts with Obligors and will sell and assign all of its right, title and interest in such Contracts (and related Goods) to CNH Capital; and

**WHEREAS**, Dealer has agreed to allow Dealer to participate in the Program on the terms and conditions set forth in this Agreement;

**NOW THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Dealer and CNH Capital hereby agree as follows:

1. **Definitions.** In addition to the definitions otherwise contained in this Agreement and in the recitals above, the definitions contained in Exhibit "A" will apply to this Agreement. All definitions shall be equally applicable to both the singular and plural forms.

2. **Applications, Documentation and Closing.**

   (a) **Applications and Credit Approvals.** Dealer shall obtain and process Applications for Contracts in accordance with the Program Procedures. Dealer shall assist CNH Capital, as requested, by providing, and in obtaining from applicants and other sources, such additional documentation and information as CNH Capital may deem necessary or desirable in connection with its evaluation of Applications. Dealer acknowledges and agrees that CNH Capital may also communicate directly with applicants regarding Applications and the terms and conditions of the proposed Contracts. Dealer and its Representatives shall not make any representations or warranties to applicants regarding the timing or likelihood of credit approval by CNH Capital or the terms and conditions on which such an approval may be granted or conditioned. Dealer acknowledges and agrees that CNH Capital may approve, reject or condition its approval of any Application in its sole discretion, and that CNH Capital shall be under no obligation to approve of a particular Application, or to acquire any particular Contract unless and until CNH Capital shall have granted its approval and all other requirements hereunder have been satisfied.

   (b) **Documentation and Closing of Contracts.** CNH Capital shall provide the means for Dealer to prepare Documentation necessary to close approved Retail Transactions. In connection with each Contract, Dealer shall (i) accurately prepare and complete all required Documentation in accordance with the terms of the credit approval; (ii) verify the identity of all Persons executing any Documentation; (iii) obtain the accurate and full execution of all Documentation; (iv) provide the Obligor with any required disclosure materials; and (v) deliver fully completed and executed Documentation to the Obligor and CNH Capital. In fulfilling its responsibilities as set forth in the preceding sentence, Dealer shall fully comply with the Program Procedures, the terms and conditions of any applicable promotion, any specific instructions given by CNH Capital in connection with the particular Contract and all Applicable Laws. In connection with the closing of any Contract, Dealer shall utilize only the forms of Documentation provided by CNH Capital with respect to that particular Contract and Dealer shall not, without prior written authorization from CNH Capital, alter, change or supplement any such Documentation. Dealer and its Representatives shall not make any representations or warranties to, or any agreement with, any Obligor regarding the terms and conditions of any Contracts or Documentation, except as expressly set forth in the Documentation.

   (c) **Insurance.** Before accepting delivery of signed Documentation from an Obligor, Dealer shall verify and document that all Goods are insured in an amount not less than the full fair market value of the Goods, and in no event for less than the amount required under the Program Procedures and Documentation, and

that CNH Capital is named as an additional insured/loss payee under the applicable policy of insurance in accordance with the Program Procedures and the Documentation. Dealer shall indemnify CNH Capital for, and hold it harmless from, any losses incurred by CNH Capital and its successors and assigns in the event that Dealer fails to comply with the requirements of this Section 2(c).

3. **Retail Transactions.**

   (a) **Retail Terms.** Except as disclosed to and approved by CNH Capital in advance, Dealer shall not impose any surcharge or other fee in connection with an application for a Contract, or use of a Contract in a Retail Transaction. Dealer shall not process a request for a Contract that is below the minimum amount for the Program, as provided in the Program Procedures.

   (b) **Delivery of Goods.** Dealer shall not deliver Goods to an Obligor until: (i) CNH Capital has communicated its credit approval; (ii) all Documentation has been properly and fully completed and executed; and (iii) Dealer has otherwise complied with all other applicable Program Procedures and other conditions to such delivery set forth in this Agreement or required by CNH Capital in the specific instance.

   (c) **Non-Discrimination.** Dealer shall not discriminate against any Customer in violation of Applicable Law, nor shall Dealer seek or obtain any special agreement or condition from any Customer with respect to the terms of any sale because such sale is being financed.

   (d) **Disputes; Compliance.** Dealer shall cooperate with CNH Capital to resolve any disputes by Obligors arising out of Retail Transactions or Contracts. Dealer shall maintain a fair and equitable policy for the return of Goods, and will immediately notify CNH Capital if any Goods are returned. Dealer shall conduct its business in accordance with Applicable Law. Dealer shall do nothing to impair the ability of CNH Capital or its successors and assigns to collect and enforce Obligors' obligations with respect to Contracts. Dealer shall notify CNH Capital of any written complaint from a Customer within five (5) days of the Dealer's receipt thereof. Dealer shall report to CNH Capital if it knows or has reason to know of, with respect to any Retail Transaction, Application, or Contract: (i) any actual, suspected or attempted violation of law, including without limitation the Bank Secrecy Act, or (ii) suspicious activity related to actual, suspected or attempted money laundering activity.

   (e) **Retail Transaction Performance.** Dealer shall fully and satisfactorily perform all of its duties and obligations in connection with each Retail Transaction and any agreement related to a Retail Transaction, including, without limitation, any delivery, warranty, service or repair obligations.

   (f) **Customer Payments.** Dealer authorizes and empowers CNH Capital and its successors and assigns to sign and endorse Dealer's name upon any checks, drafts, money orders, or other forms of payment that it may receive in respect of any Contract. If any payment on a Contract is made to Dealer, Dealer shall receive

52815A  Rev. 06/10 Previous editions may not be used.



EXHIBIT
A

such payment in trust and shall promptly remit the same in the form received from CNH Capital (but no later than five (5) days after receipt thereof).

(g)   **Marketing.**   Dealer may not, in any advertisement or promotion of its products or services, advertise the availability of financing through the Program without the prior written approval of CNH Capital. Dealer shall not use the name or logo of CNH Capital or its parents, subsidiaries, or Affiliates ("Mark Holders") or any trademark or trade name owned by Mark Holders, or refer to Mark Holders directly or indirectly, in any advertisement, marketing materials, news release, or release to any professional or trade publication, without the prior written consent of the applicable Mark Holder.   In the event that a Mark Holder grants such written consent, Dealer shall follow all terms and conditions set out by the Mark Holder.

(h)   **Sales, Use and Other Taxes.**   Except as otherwise provided in the Program Procedures or this Agreement, Dealer shall be responsible for the calculation, collection, reporting and remittance of any and all sales, use or other taxes which may be due and payable in connection with any Retail Transaction.

(i)   **Privacy; Information Security.**   Dealer (i) shall hold confidential any and all non-public personal information or documentation, whether in paper, electronic or other form, related to Applications, Contracts, Documentation or Retail Transactions, or to Customers, credit applicants, Obligors or any parties related to any of the foregoing (collectively, "Customer Information"); (ii) shall not disclose Customer Information to any party (except those employees and agents of Dealer who have a need to have access to Customer Information in connection with Contracts or Retail Transactions); (iii) shall develop, implement and maintain policies and procedures, including disaster recovery methods, to safeguard the security, confidentiality and integrity of Customer Information; (iv) shall not use Customer Information for any purpose other than as necessary in connection with Dealer's performance under this Agreement; and (v) shall promptly notify CNH Capital in the event of any unauthorized disclosure of, access to, use of, or any other compromise of Customer Information, which notification shall include a complete description of the nature and extent of such compromise, the affected Customer Information, and the corrective action taken to respond to the compromise and to prevent future repetitions thereof.   Dealer shall instruct its employees and agents that they are not permitted access to any Customer Information, except as may be necessary to perform their jobs for Dealer, and that they may not copy, borrow, or take any Customer Information to which they may have access. CNH Capital shall have the right to review any related policies or procedures or internal or external audits, summaries of test results, or other equivalent evaluations of Dealer, and to conduct on-site audits as may be reasonably necessary in order to ensure that Dealer is complying with the requirements of this Section 3(i).   Dealer agrees that all of the provisions of this Section 3(i) shall survive the termination of this Agreement.

4.   **CNH Capital's Role.**

(a)   **Documentation.**   CNH Capital will determine the form of Documentation for Contracts, and will provide a means for Dealer to generate such original Documentation, for delivery to and execution by the Obligors.

(b)   **Ownership of Contracts.**   Upon assignment of a Contract by Dealer to CNH Capital, CNH Capital (and/or its successor or assignee) shall be sole and exclusive owner of such Contract and the related Documentation (and, as applicable, the related Goods), and shall be entitled to receive all payments made by Obligors on any such Contract not yet due at the time of assignment.   Dealer acknowledges and agrees that, upon assignment of a Contract to CNH Capital, Dealer shall have no right, title, or interest in the Contract, the Goods or the Documentation and have no right to any payments made with respect to such Contract.   Dealer agrees that it will not use or disclose any information regarding the Contracts or the Documentation without the prior written consent of CNH Capital, except as may be required by law.

(c)   **Software.**   CNH Capital may supply software to enable Dealer to generate and/or process Applications and Documentation, including, without limitation, its "Finance Plus®" software program ("Software").   Software shall remain the property of CNH Capital.

Dealer shall comply with the terms of the Software license and all other CNH Capital policies regarding use of the Software.   CNH Capital shall provide training to Dealer's employees, at Dealer's stores, for the use of the Software and the Program.

5.   **Assignment of Contracts; Security Agreement.**

(a)   **Assignment.**   On the date of CNH Capital's purchase of any Contract, Dealer shall deliver to CNH Capital, in form and substance acceptable to CNH Capital, an assignment (the "Assignment") (i)   assigning, transferring and conveying to CNH Capital all of Dealer's right, title and interest in and to the Contract, and all proceeds thereof and (ii) as applicable, assigning to CNH Capital, or granting to CNH Capital, a valid, senior security interest in, all related Goods and all proceeds thereof.   CNH Capital shall be deemed to have accepted assignment of, and to have purchased, a Contract and related Goods, only upon CNH Capital's receipt and approval of all related Documentation, and CNH Capital's determination, in its sole discretion, that Dealer has satisfied all other terms and conditions of this Agreement and the Program Procedures and any other specific terms and conditions required by CNH Capital with respect to such Contract.

(b)   **No Assumption.**   Notwithstanding the Assignment, neither CNH Capital, nor its successor or assignee, if any, shall, by accepting the Assignment, assume Dealer's or any other person's obligations arising by contract or imposed by applicable law, rule or regulation with respect to the Contract or Goods or any other contract or agreement between the Dealer and Obligor or any other Person.

(c)   **Basis of Acceptance.**

(i)   **Nonrecourse Assignment.**   If CNH Capital accepts an assignment of a Contract on a nonrecourse basis ("Nonrecourse Contract"), CNH Capital shall have no recourse against Dealer for any credit losses incurred by CNH Capital in connection with any such Contract ("Nonrecourse Contract"), except as otherwise provided in this Agreement or the Program Procedures.

(ii)   **Repurchase Assignment.**   If CNH Capital accepts an assignment of a Contract as a repurchase assignment ("Repurchase Contract"), Dealer shall repurchase from CNH Capital the Contract and, as applicable, the related Goods, as provided in Section 7 hereof at the time CNH Capital tenders delivery of the Goods described in such Contract to the Dealer, in the same condition as received by CNH Capital.   If CNH Capital fails to tender delivery of the Goods to Dealer, CNH Capital has no recourse against the Dealer, except as otherwise provided in this Agreement or the Program Procedures.

(iii)   **Full Recourse Assignment.**   If CNH Capital accepts an assignment of a Contract on a full recourse basis ("Full Recourse Contract"), CNH Capital has full recourse against the Dealer in connection with any such Contract, as provided in this Agreement or the Program Procedures.

(d)   **Grant of Security Interest.**   The Parties hereto intend the sale, assignment and transfer of Contracts and, as applicable, related Goods, by Dealer to CNH Capital to be a true sale, and not a loan secured by the grant of a security interest therein.   If, notwithstanding the Parties' intent, the sale, assignment and transfer is construed to be a loan and not a true sale, Dealer hereby grants CNH Capital a valid first priority security interest in the Contracts, the Goods, all supporting obligations and other rights and property related thereto, and all proceeds thereof, to secure all of Dealer's present and future obligations arising under this Agreement, or otherwise. Dealer hereby irrevocably constitutes and appoints CNH Capital as Dealer's true and lawful attorney with full power of substitution, for Dealer and in Dealer's name, place and stead, to demand, collect, receive, receipt for, sue for and compromise any and all Contracts and rights assigned hereunder. Dealer warrants and the Parties intend that the security interests in this Agreement shall attach upon the execution of this Agreement. Dealer and CNH Capital confirm, for all the security interest granted under this Agreement, that value has been given and that the Dealer has rights in the Goods. Dealer further acknowledges that Dealer has received an executed copy of this Agreement and has also received a copy of all financing statements and financing change statements perfecting any security interest granted hereunder

(e)   **No Right of Repurchase.**   Except as provided in Section 7(d) hereof, Dealer shall have no right to repurchase any Contract

or related Goods once sold or assigned to CNH Capital hereunder.

**6.    Settlement Procedures.**

(a)    **Dealer's Submission.** Dealer shall submit all completed and executed Documentation to CNH Capital in accordance with the Program Procedures. CNH Capital reserves the right to conduct customer satisfaction calls prior to accepting assignment of any Contract or processing any Dealer Credit and to conduct post-acceptance customer satisfaction surveys.

(b)    **Dealer Credit.** On the date on which CNH Capital accepts assignment of a Contract (the "Credit Date"), CNH Capital will calculate a credit ("Dealer Credit") in an amount equal to the difference between the "Gross Amount" and the "Deductions". For purposes of this Agreement:

(i)    "Gross Amount" shall mean: (1) for Contracts consisting of loans, retail installment sales contracts and similar debt obligations, the amount financed; (2) for Contracts consisting of finance leases, the amount subject to lease; and (3) for Contracts consisting of operating leases, the lease sale price, all as provided in the Contract (or as otherwise agreed between CNH Capital and Dealer if not so provided), excluding, for purposes of (1), (2) and (3), any finance charges, time price differential or lease charges embedded therein; and

(ii)    "Deductions" shall mean: (1) any portion of the Gross Amount attributable to insurance premiums, commissions or fees payable to any Person other than Dealer; (2) any portion of the Gross Amount attributable to charges or fees for services or products payable to or provided by CNH Capital or any Person other than Dealer; (3) any other portion of the Gross Amount to be disbursed to any Person other than Dealer; (4) any security deposit, advance or tax payment made by the Obligor that has been received and held by Dealer; (5) any Dealer Subsidy (as defined in Section 10 hereof) owing to CNH Capital with respect to the Contract; and (6) any amount that CNH Capital elects to retain as a Contingent Credit pursuant to Section 6(d) hereof as a condition of approving the Contract.

(c)    **Application of Dealer Credit.** CNH Capital shall be entitled to withhold a Dealer Credit for any Contract that is subject to a Customer dispute or for which the supporting Documentation is, in CNH Capital's sole opinion, incomplete or unsatisfactory. Unless so withheld, the Dealer Credit shall be applied by CNH Capital on the Credit Date to the outstanding Indebtedness, if any: (i) owed by the Obligor to CNH Capital with respect to any property received by Dealer as a "trade-in" in connection with the Retail Transaction; and/or (ii) owed by Dealer to CNH Capital or its Affiliates with respect to the Goods sold as described in the Documentation. If any surplus exists, the remainder of the Dealer Credit may be applied, at CNH Capital's sole discretion, to any other Indebtedness then due and owing by Dealer to CNH Capital or its Affiliates, under this Agreement or otherwise. If any surplus still exists, the excess will be paid by CNH Capital to Dealer or credited to Dealer's account with CNH Capital. If the Dealer Credit is insufficient to satisfy Dealer's Indebtedness to CNH Capital or its Affiliates with respect to any property received by Dealer as a "trade-in" in connection with the Retail Transaction or the Goods sold as described in the Documentation, the remaining Indebtedness with respect to such Item(s) shall be immediately due and payable by Dealer to CNH Capital.

(d)    **Contingent Credit.** As part of the underwriting process, CNH Capital has established terms (which may be amended from time to time by CNH Capital without notice to Dealer) concerning, among other things, (i) the minimum percentage of down payment on the purchase price, and (ii) the maximum amount that CNH Capital will finance on Goods purchased by a Customer from Dealer. If Dealer submits to CNH Capital an Application under the Program in which the down payment or the requested amount financed does not meet the established underwriting terms, or other circumstances exist that cause CNH Capital to deem itself insecure with respect to a proposed Retail Transaction or Contract, CNH Capital may, in its sole discretion, withhold a portion or all of the Dealer Credit as a contingent credit (the "Contingent Credit"). When CNH Capital has collected, in cash on any such Contract, an amount it deems sufficient, or CNH Capital is satisfied that such other circumstances no longer exist, CNH Capital may in its sole discretion, apply the Contingent Credit in accordance with Section 6(c). All Contingent Credits will be carried as non-interest-bearing

contingent credit accounts on the books and records of CNH Capital, and, on default of an Obligor under a Contract with respect to which a Contingent Credit exists, may be withdrawn by CNH Capital and applied to the defaulted balance. Upon such application CNH Capital shall have no further obligation to Dealer with respect to amounts so applied. As security for any and all present or future obligations owing from Dealer to CNH Capital under this Agreement or otherwise, Dealer hereby grants CNH Capital a security interest in any amounts carried as a Contingent Credit

**7.    Chargebacks.**

(a)    **Chargeback Right.** CNH Capital shall have the right to require Dealer to purchase from CNH Capital any Contract (a "Chargeback"), and Dealer shall pay to CNH Capital the Chargeback Amount with respect to such Contract, if any of the following occur with respect to the Contract or the related Retail Transaction: (i) Dealer fails to comply with any term or condition of this Agreement applicable to such Contract or Retail Transaction; (ii) any representation or warranty made by Dealer with respect to such Contract or Retail Transaction is false or inaccurate; (iii) the Obligor returns the Goods to Dealer or Obligor asserts any claim or defense against CNH Capital, or refuses to pay the Contract, based on any act or omission of Dealer or its Representatives (including, without limitation, any claim or defense related to the Goods or Dealer's performance in connection with the related Retail Transaction); (iv) the Obligor disputes the amount or existence of the Contract; (v) Dealer fails to comply with the Program Procedures in connection with the Contract or Retail Transaction or CNH Capital has recourse to Dealer under the terms of the Program Procedures; (vi) Dealer fails to provide CNH Capital, no later than ten (10) days after a request by CNH Capital, the information needed to resolve questions from or a dispute with an Obligor regarding the Contract or Retail Transaction; (vii) Dealer has agreed to act as a guarantor or surety of Obligor's obligations under the Contract, the Obligor has failed to make any payment due pursuant to such Contract and Dealer fails to fulfill its obligations as guarantor or surety; or (viii) such Contract is a Full Recourse Contract or a Repurchase Contract and the Obligor is in default thereunder and, in the case of a Repurchase Contract, CNH Capital has complied with the provisions of Section 5(c)(ii) hereof. CNH Capital's right to assert a Chargeback under this Section 7(a) shall not be limited in any respect by CNH Capital's prior approval or acceptance of an assignment of a Contract.

(b)    **Investigation.** CNH Capital shall conduct a reasonable investigation of the circumstances surrounding any Chargeback, and shall provide Dealer a reasonable opportunity to resolve any relevant Obligor disputes before asserting a Chargeback. Notwithstanding the foregoing, except to the extent CNH Capital is required to tender delivery of the Goods to Dealer under Section 5(c)(ii) hereof as a prerequisite to a Chargeback under Section 7(a)(viii) hereof, CNH Capital shall have no obligation to pursue recovery from an Obligor or to attempt to obtain possession or control of the Goods subject to a Contract prior to exercising its rights under Section 7(a) hereof.

(c)    **CNH Capital's Right to Compromise.** CNH Capital may compromise and settle any claim made by an Obligor under any Contract, even though such claim may give CNH Capital a Chargeback claim or other claim against Dealer, without approval or consent from Dealer. In the event of any such compromise or settlement, CNH Capital may adjust the balance of a Contract for the amount of the compromise or settlement and the immediate Chargeback shall be limited to the actual amount of such adjustment.

(d)    **Exercise of Chargeback.** In the event that CNH Capital asserts a Chargeback to the Dealer, Dealer shall pay CNH Capital the Chargeback Amount immediately upon its receipt of oral or written notice that CNH Capital is asserting its Chargeback rights. In addition, CNH Capital shall have the right to set off the Chargeback Amount against any amounts due Dealer from CNH Capital under this Agreement or otherwise. If the Chargeback Amount exceeds any sums due Dealer, CNH Capital may demand immediate payment from Dealer for the full amount of such excess. If CNH Capital exercises its right of Chargeback, upon payment in full by Dealer to CNH Capital of the Chargeback Amount, CNH Capital shall assign, or shall cause the then current holder of the Contract to assign, to Dealer, without recourse, or representations

or warranties of any kind, the Contract, the related Goods and all rights to payment under the Contract.

**8.   General Representations.** Dealer represents and warrants to CNH Capital as of the date of first participating in the Program and on a continuous basis during the term of Dealer's participation in the Program as follows.

**(a)   Organization.** If a registered legal entity, Dealer is duly organized and validly existing under the laws of the state set forth opposite its name in the first paragraph of this Agreement.

**(b)   Authority.** Dealer has all requisite power and authority, and all required licenses, permits, and authorizations to conduct its business and to perform its obligations under this Agreement.

**(c)   Valid and Binding.** This Agreement has been duly authorized by Dealer, and constitutes the legal, valid, and binding agreement of Dealer, enforceable against Dealer in accordance with the terms hereof, except as the same may be subject to or limited by bankruptcy, insolvency or similar laws affecting the rights of creditors generally, or principles of equity.

**(d)   No Conflict.** The performance of Dealer's obligations under this Agreement, and the consummation of the transactions contemplated hereby, will not (i) violate or conflict with any provision of Dealer's organization or governing documents, if any, or (ii) violate or conflict with, constitute a breach or default under any Applicable Law or under any agreement to which Dealer is a party or by which it or any of its assets may be bound.

**9.   Presentment Representations, Warranties and Covenants.** Dealer hereby represents and warrants to, and covenants with, CNH Capital, with respect to each Contract and each related Retail Transaction, as follows:

**(a)   Accuracy.** The information provided by the Customer in requesting credit is, to the best of Dealer's knowledge, true and correct. The information included in the Documentation regarding the Retail Transaction, including, without limitation, the sale price, the descriptions of the Goods and any property received as a trade-in, and the terms of sale, is all true and correct. All signatures on the Documentation are genuine, and any Person signing the Documentation has full legal capacity to execute the Documentation in the capacity indicated. Dealer and its Representatives have no actual knowledge of any fraud with respect to the Application, Contract or Retail Transaction.

**(b)   Retail Transaction.** The Retail Transaction involves the bona fide sale or lease of Goods or services by Dealer in the ordinary course of its business, in an arms-length transaction, and does not involve any cash advance to the Obligor or the purchase of any goods or services that cannot be purchased on credit under Applicable Laws. The Contract does not represent a partial payment for Goods or a payment for gift certificates. Dealer has furnished the Goods in a workmanlike manner to Obligor's satisfaction, has delivered the Goods to Obligor, and Obligor has accepted the Goods. Dealer has furnished the Goods to the Obligor free and clear of any liens or encumbrances, other than the security interest securing the Contract. Dealer has not provided any part of the advance payment, security deposit, down payment or trade-in allowance referenced in connection with any Retail Transaction, either directly or indirectly, and Obligor has not charged such amounts to any credit cards issued by or on behalf of CNH Capital. Obligor has acquired the Goods for commercial purposes and not for personal, family or household use. Obligor is not a Related Interest of Dealer. The Contract represents the entire understanding and agreement between the Dealer and Obligor with respect to the Contract, the Retail Transaction and the Goods, and there are no additional written or verbal understandings or agreements between Dealer and Obligor relating to the Contract, the Retail Transaction or the Goods.

**(c)   Ownership of Contract, Related Goods; Security Interest.** At the time of the Assignment, Dealer has good and valid title to the Contract and related Goods, has not sold or assigned the Contract or related Goods to any other Person, and upon delivery of the Assignment, CNH Capital will acquire good and valid title to the Contract and related Goods free and clear of any security interest, lien or claim of any other Person (excluding the interests of CNH Capital or the Obligor). If the Contract includes a grant of a security interest, Dealer holds, and upon assignment CNH Capital will receive, a valid, enforceable first priority security interest in the Goods that are the subject of the Contract.

**(d)   Legal Compliance.** In connection with the Retail Transaction, the Contract and marketing of the Program, Dealer has complied with Applicable Laws. Dealer has completed and will comply with its obligations under any warranty or service agreement provided or sold to Obligor in connection with the Retail Transaction.

**(e)   Absence of Claims.** There is no fact, nor any claim or defense available to the Obligor, that would in any respect impair the validity, enforceability, collectability, value, or marketability of the Contract, including, without limitation, any discount, allowance, setoff, counterclaim, bankruptcy, right of rescission, fraud, forgery, or lack of consideration. There have been no false, misleading, or deceptive acts or practices by Dealer in connection with any Retail Transaction.

**(f)   Delivery of Documentation to Obligor.** Dealer delivered to Obligor a fully completed and accurate copy of the Documentation, together with any disclosure or other materials as required by the Program Procedures or by CNH Capital with respect to the particular Retail Transaction or Contract, prior to consummation of the Contract. No modifications or alterations have been made to the original Documentation delivered to CNH Capital.

**(g)   Sales Tax.** Except as otherwise provided in the Program Procedures, Dealer has correctly computed, charged and remitted (or will remit) all sales, use or other taxes and governmental fees applicable to the Retail Transaction, all in accordance with Applicable Law.

**(h)   Agreement and Program Compliance.** Dealer has complied with all Program Procedures, all provisions of this Agreement, the terms and conditions of any applicable promotion, and any specific instructions or requirements communicated by CNH Capital to Dealer with respect to the Contract and related Retail Transaction. Without limiting the generality of the foregoing: (i) Dealer has verified and documented the existence of the insurance coverage required under the Contract terms with respect to the Goods; (ii) the Documentation has been accurately prepared, fully completed and executed, and delivered to CNH Capital; and (iii) the Documentation accurately reflects the terms of credit approved by CNH Capital, all in accordance with the terms of this Agreement and the Program Procedures.

**10.   Dealer Finance Income; Dealer Subsidies.**

**(a)   Finance and Lease Charges.** Subject to the terms and conditions set forth in the Program Procedures and CNH Capital's prior approval, CNH Capital may allow Dealer to enter into Contracts with Obligors pursuant to which the Obligor is obligated to pay a finance or lease charge rate (the "Contract Rate") that is different from the rate required by CNH Capital as a condition of its approval and purchase of the Contract (the "Buy Rate"). Dealer agrees that the Contract Rate shall not exceed the maximum rate allowed by Applicable Law or established from time to time by CNH Capital, whichever is lower. Subject to the terms and conditions set forth in the Program Procedures and CNH Capital's prior approval, CNH Capital may also allow Dealer to enter into Contracts with Obligors pursuant to which the payment amounts or payment schedule are different from those required by CNH Capital as a condition of its approval and purchase of the Contract (a "Payment Variance").

**(b)   Dealer Finance Income.** As provided in the Program Procedures from time to time, when the Contract Rate exceeds the Buy Rate, Dealer may be entitled to receive all or some portion of that difference as that amount is paid or payable by the Obligor over the term of the Contract (such difference being referred to as "Dealer Finance Income").

**(c)   Dealer Subsidies.** As provided in the Program Procedures from time to time, Dealer may be required to pay CNH Capital a subsidy amount (a "Dealer Subsidy") when the Contract Rate is less than the Buy Rate or the Contract contains a Payment Variance.

**(d)   Calculation, Payment and Refund of Dealer Finance Income and Dealer Subsidy.** The calculation of the amount of Dealer Finance Income or Dealer Subsidy, the timing and means of payment of Dealer Finance Income or Dealer Subsidy, if any, and the circumstances under which Dealer may be required to refund to CNH Capital all or any portion of Dealer Finance Income previously paid to Dealer shall all be governed and controlled by the applicable Program Procedures as amended by CNH Capital from time to

time. CNH Capital shall have the right to deduct from or setoff against any Dealer Finance Income payable to Dealer hereunder any amounts which may be due from Dealer to CNH Capital or its Affiliates under this Agreement or otherwise. As security for any and all present or future obligations owing from Dealer to CNH Capital under this Agreement or otherwise, Dealer hereby grants CNH Capital a security interest in any amounts due from CNH Capital to Dealer in the form of Dealer Finance Income.

**11. Indemnity; Limits on Liability.**

(a) **Indemnification.** Dealer shall indemnify, protect, defend and hold harmless CNH Capital, its successors, assigns, and its Related Interests (excepting CNH America LLC), from any and all claims, liabilities, demands, penalties, actions, suits, proceedings (whether civil or criminal), orders, judgments, disbursements, losses, costs (including, without limitation, court costs and reasonable attorneys fees), expenses, or damages caused by or arising from: (i) product liability and/or personal injury arising out of the use of the Goods by Obligors or any other Person; (ii) breach by Dealer of any warranty with respect to any Goods (including, but not limited to, a claim of latent or patent defect); (iii) breach by Dealer of, any representations, warranties, covenants or other obligations or agreements contained in this Agreement or the Program Procedures; (iv) Dealer's performance of any reconditioning or remarketing services provided by Dealer; (v) failure of Dealer to perform its obligations with respect to any warranty, maintenance, service or other similar agreements with an Obligor or any other Person; (vi) any governmental fees, charges, taxes or penalties levied or imposed with respect to any Goods; (vii) any claim of patent or copyright infringement relating to the Goods; and (viii) failure of Dealer to comply with any Applicable Law.

CNH Capital shall give Dealer, and Dealer shall give CNH Capital, notice of any event or condition that may require indemnification by Dealer hereunder, or any allegation that such an event or condition exists, promptly upon obtaining knowledge thereof. Dealer shall pay all amounts due hereunder promptly on notice thereof from CNH Capital. Upon payment by Dealer and provided Dealer is otherwise in compliance with the terms of this Agreement, Dealer shall be subrogated to CNH Capital's rights with respect to such event or condition. All of the indemnities and agreements contained in this Section 11(a) shall survive and continue in full force and effect notwithstanding the termination of this Agreement.

(b) **Exclusion of Certain Damages.** Neither Party shall be liable to the other Party for any punitive, consequential, incidental, special or similar damages in connection with the Program, except to the extent that a Party is required to indemnify the other Party under this Agreement for amounts owing to third parties.

**12. Reports; Audit; Financial Statements.**

(a) **Reports; Audit.** Dealer shall provide CNH Capital with such data and reports as may be reasonably requested by CNH Capital to maintain effective controls and to monitor the results of the Program. CNH Capital and its auditors and any Regulatory Authority with jurisdiction over the Parties shall have reasonable access to the books and records maintained by the Dealer relating to this Agreement and the transactions contemplated herein. To the extent legally permissible, Dealer agrees to promptly notify CNH Capital in writing if Dealer becomes aware of any threatened or actual investigation, regulatory action, allegation, arbitration, or lawsuit pertaining to a Contract or the Program.

(b) **Financial Statements; Reports.** Dealer shall install and maintain current an accounting system satisfactory to CNH Capital. Dealer shall deliver to CNH Capital, in a manner and form prescribed by CNH Capital (including via electronic transmission if so requested by CNH Capital) each of the following:

(i) within ninety (90) days after the end of each fiscal year of the Dealer, complete and accurate balance sheets and statements of income, retained earnings and changes in cash flow of the Dealer and its subsidiaries for such year, setting forth in comparative form the corresponding figures for the preceding year, all prepared in accordance with Generally Accepted Accounting Principles (or other methodology approved in advance by CNH Capital) applied on a consistent basis. Financial statements so delivered shall be internally generated. If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements. Financial statements shall also be delivered to CNH

Capital in the manner identified below (check box if applicable):

☒ Financial statements so delivered shall be compiled by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be reviewed by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be audited by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. Audited financial statements shall be accompanied by a report and unqualified opinion of the auditor (which shall not be limited as to the scope of the audit or qualified as to the status of Dealer as a going concern). If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

(ii) within twenty (20) days after the end of each calendar month, unaudited complete and accurate consolidated balance sheets and operating statements of the Dealer and its subsidiaries that reflect operations through the preceding month; and

(iii) as and when requested by CNH Capital, copies of Dealer's filed tax returns, current reports of sales and inventory and such other reports and information as CNH Capital may request from time to time.

(c) **Examination.** CNH Capital or its authorized representatives will have the right during normal business hours to enter the Dealer's place of business, to examine Dealer's books and records, including, without limitation, all books, records and files relating to Retail Transactions and Contracts, all bank statements and deposit information, and all supporting data and documents, and to make copies of any such materials. In addition, CNH Capital may contact Dealer's customers to verify the location, amount or status of any Goods or Contracts.

**13. Termination; Event of Default.**

(a) **Termination.** CNH Capital may, in its sole discretion, upon notice to Dealer, stop offering the Program, or may terminate this Agreement or Dealer's participation in the Program, at any time. Dealer may, upon notice to CNH Capital, terminate this Agreement or its participation in the Program. Termination of Dealer's participation in the Program shall not affect obligations of Dealer hereunder with respect to Contracts originated prior to such termination or the rights and obligations of the Parties hereunder arising prior to such termination. Upon termination of this Agreement or Dealer's participation in the Program, all Contingent Credits and any other credit balances will be held by CNH Capital and will be applied to the Contracts as provided herein or offset against any and all indebtedness owed by Dealer to CNH Capital under this Agreement or otherwise. After CNH Capital has been paid in full for all Contracts and all other indebtedness owed by Dealer to CNH Capital, if any credit balance remains, that credit balance will be paid by CNH Capital to Dealer.

(b) **Event of Default.** Without in any manner limiting CNH Capital's right to terminate this Agreement or Dealer's participation in the Program as provided in Section 13(a) hereto, CNH Capital may also terminate this Agreement or Dealer's participation in the Program upon written notice to Dealer if there is an Event of Default. An "Event of Default" means, with respect to Dealer: (i) a material breach of any obligation or representation hereunder or under any other present or future agreement between Dealer and CNH Capital or any Affiliate of CNH Capital; (ii) a failure to make any payment when due hereunder or under any other present or future agreement between Dealer and CNH Capital or any Affiliate of CNH Capital; (iii) a failure to be financially solvent, failure to generally pay its debts as they become due, admission in writing of an inability to pay debts generally, or making of a general assignment for the benefit of creditors; (iv) filing, or suffering the filing of, a petition in bankruptcy; (v) the seeking or consenting to the appointment of, or the taking possession by, a custodian,

receiver, liquidator, assignee, trustee, or sequestrate (or similar official) of Dealer or of any substantial part of its properties; (vi) ceasing to do business; or (vii) default by Dealer under, or the termination of, any Sales and Service Agreement or any other agreement between Dealer and any Affiliate of CNH Capital pursuant to which Dealer purchases and sells products manufactured or distributed by such Affiliate; or (viii) a "Change of Control".

(c)   **Suspension.**   CNH Capital may suspend the Program immediately if it determines that there has been a pattern of fraudulent or suspicious activity, excessive Chargebacks, or excessive losses on Contracts. Upon such suspension, the Parties shall negotiate in good faith on further assurances to permit CNH Capital, in its sole discretion, to lift the suspension.

(d)   **Survival.**   Termination of the Program or this Agreement shall not affect the rights or obligations of the Parties that accrued before such expiration or termination. Without limitation, the provisions of this Section 13(d) and Sections 2(c), 3(i), 7, 11, 12, 14 and 15 hereof shall survive any such termination.

(e)   **Remedies.**   All rights and remedies of CNH Capital under this Agreement shall be in addition to any other rights and remedies CNH Capital might have under any other Documentation and at law. No term, covenant or provision of this Agreement shall be construed to be in substitution for any other rights and remedies held by CNH Capital.

**14.   Confidentiality.**

All material and information supplied by one Party to the other Party hereunder, including, but not limited to, information concerning a Party's marketing plans, objectives or financial results, is confidential and proprietary ("Confidential Information"). Confidential Information will be used by each Party solely in the performance of its obligations and exercise of its rights pursuant to this Agreement or any other agreement between the Parties. Each Party will receive Confidential Information from the other Party in confidence and will not disclose such Confidential Information to any third party, except (a) as contemplated hereunder, (b) as may be agreed upon in writing by the Party providing such Confidential Information, (c) in the case of CNH Capital to an Affiliate of CNH Capital, or (d) to the extent necessary, in exercising or enforcing its rights or as otherwise required by law. Each Party will use its best efforts to ensure that its officers, employees, and agents take such action as necessary or advisable to preserve and protect the confidentiality of Confidential Information. Notwithstanding the foregoing, "Confidential Information" will not include information in the public domain and information lawfully obtained from a third party.

**15.   Miscellaneous.**

(a)   **Force Majeure.**   A Party shall be excused from performance of its obligations under this Agreement, except for any obligation to make payments due hereunder, if its performance is prevented or delayed by acts or events beyond the Party's reasonable control, including, but not limited to, severe weather and storms, earthquakes or other natural occurrences, strikes or labor unrest, riots or other civil disturbances, civil or military emergencies, telephone, telecommunications or power failures, or computer equipment or software problems not caused by the Party's gross negligence.

(b)   **Notices.**   Any written notice required or permitted under this Agreement shall be deemed to have been received: (i) on the fifth (5th) calendar day after being posted if such notice is sent by first class U.S. mail, certified return receipt requested; (ii) one (1) business day after being sent, if sent by a nationally recognized overnight courier service, next day service; (iii) on the date transmitted, if sent by fax; or (iv) if sent by e-mail on a business day, at the end of the business day on the date delivered or, if the e-mail was not delivered on a business day, the end of the next following business day. Notices shall be sent to the Parties at the address or fax number set forth on the signature page of this Agreement, or such other address as may be designated in writing by the Party following the date of this Agreement in a notice complying with this Section 15(b).

(c)   **Collection Costs.**   Dealer shall pay to CNH Capital, and shall indemnify CNH Capital for, all fees and expenses, including, but not limited to, attorneys' fees and court costs, incurred by CNH Capital in attempting to collect any amount due CNH Capital from

Dealer under this Agreement or to otherwise enforce the terms and conditions of this Agreement.

(d)   **Dealer's Assistance.**   Upon request by CNH Capital, Dealer will render assistance in collecting any amount due on any Contract, and in repossessing the Goods or any collateral securing payment under any such Contract. Dealer agrees to store and care for any repossessed or returned Goods without charge to CNH Capital until such time as CNH Capital sells or otherwise disposes of such Goods. If CNH Capital elects to recondition repossessed or returned Goods to facilitate the sale of such Goods, Dealer, only upon written authorization from CNH Capital, shall recondition the Goods and CNH Capital agrees to pay Dealer's labor costs not to exceed Dealer's established customer rates for such labor and repair parts.

(e)   **Reimbursement of Filing Fees.**   Dealer agrees to reimburse CNH Capital for all fees not paid by the Obligor and incurred by CNH Capital in filing or recording financing statements or other documents relating to any Contract.

(f)   **No Agency.**   Except as provided for in Section 5(d), this Agreement does not appoint either Party as the agent or representative of the other Party for any purpose and neither Party is granted any express, implied, inherent, or apparent right to bind the other in any manner. This Agreement does not and shall not be construed to constitute a joint venture, partnership, association, or agency among the Parties.

(g)   **DISCLAIMER.   CNH CAPITAL MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, OF ANY KIND WITH RESPECT TO ANY SOFTWARE OR SERVICES PROVIDED UNDER THIS AGREEMENT, AND CNH CAPITAL EXPRESSLY DISCLAIMS, AND DEALER EXPRESSLY WAIVES, ANY AND ALL SUCH WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THOSE OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

(h)   **Amendment; Waiver.**

(i)   **Program Procedures.**   CNH Capital may, in its discretion, amend, modify or supplement the Program Procedures or any other terms and conditions of the Program at any time, upon notice to Dealer. Submission of an Application to CNH Capital shall constitute Dealer's express agreement to any such amendment, modification or supplementation of which CNH Capital has provided Dealer notice. Notification of the amendment, modification or supplementation of the Program Procedures may be accomplished by, among other methods, issuance of Dealer Bulletins or publication on CNH Capital's website.

(ii)   **Agreement.**   Any other amendment of this Agreement other than pursuant to Section 15(h)(i) hereof, shall be effective only if set forth in a writing executed by both Parties.

(iii)   **Contracts.**   CNH Capital, in its sole discretion, without notice to or consent of Dealer, may grant Obligors extensions of time, renewals or refinancings of Contracts, may amend the terms and conditions of Contracts and may compromise, adjust claims and handle collections under Contracts and repossession of Goods subject to Contracts, all in accordance with CNH Capital's business judgment without affecting Dealer's obligations hereunder.

(iv)   **Waiver.**   The failure of a Party to require the performance of any part of this Agreement, or the waiver by a Party of any default or requirement under this Agreement, shall not prevent a subsequent enforcement of such term and shall not be deemed a waiver of any subsequent default or requirement. All waivers must be in writing and signed by the Party against whom the waiver is to be enforced.

(i)   **Third Party Beneficiaries.**   The Parties intend that no Person other than a Party shall have any rights under this Agreement, including the right to enforce an obligation of a Party hereunder.

(j)   **Assignment.**   This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, successors and assigns, as applicable; provided, however, that Dealer may not assign any rights or delegate any obligations under this Agreement to another Person without the prior written consent of CNH Capital. CNH Capital may, without notice or consent, assign its rights and/or delegate its obligations

under this Agreement and may sell and assign the Contracts, Related Goods, and any related rights hereunder.

(k) <u>GOVERNING LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF WISCONSIN, WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF.

(l) <u>Entire Agreement</u>. This Agreement, as supplemented by the Program Procedures, represents the entire agreement of the Parties with respect to the subject matter hereof and thereof, and terminates, supersedes, and replaces any prior agreements among the Parties relating to such subject matter.

(m) <u>Severability</u>. The provisions of this Agreement are severable, and in the event that any portion of this Agreement shall be adjudged to be invalid or unenforceable, such adjudication shall have no effect on any remaining portions hereof, and all such provisions shall remain in full force and effect.

(n) <u>Time of the Essence</u>. Time is of the essence of this Agreement.

(o) <u>Headings</u>. The headings of the sections and subsections in this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

(p) <u>Counterparts</u>. This Agreement may be executed in multiple counterparts each of which shall be deemed an original and all of which shall constitute one and the same agreement. This Agreement or a counterpart thereof may be delivered by telecopier, facsimile or any other electronic transmission, including a scanned version in pdf format, and the telecopier, facsimile or any electronic transmission of a signature to another party or parties (or to their respective solicitors) shall be of the same force and effect as the delivery of an original signature.

(q) <u>JURY TRIAL WAIVER</u>. THE PARTIES HERETO WAIVE THEIR RIGHT TO REQUEST A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY COURT OF LAW, TRIBUNAL, OR OTHER LEGAL PROCEEDING ARISING OUT OF OR INVOLVING THIS AGREEMENT, OR ANY DOCUMENT DELIVERED IN CONNECTION HEREWITH, OR RELATING TO ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement as of the Effective Date.

**CNH Capital America LLC**

By: _____

Chester Whacker
Print Name

Title: Senior Underwriter

**Abby Farm Supply, Inc.**

By: _____

Terry Abby
(Print Name)

Title: _____

**Addresses for Notice:**

If to:

**CNH Capital America LLC**
5729 Washington Avenue
Racine, Wisconsin 53406

Attention: _____Retail Credit_____

Fax No. _____262-636-6218_____

If to:

**Abby Farm Supply, Inc.**
1521 HWY 45
Saltillo, MS 38868

Attention: _____Terry Abby_____

Fax No. _____662-869-2432_____

## EXHIBIT A

## DEFINITIONS

"**Affiliate**" means, with respect to any Person, each Person that controls, is controlled by or is under common control with such Person. For the purposes of this definition, "control" of a Person shall mean the possession, directly or indirectly, of the power to direct or cause the direction of its management or policies, whether through the ownership of voting securities, by contract or otherwise.

"**Applicable Law**" means all federal, state and local laws, statutes, regulations and orders applicable to a Party or relating to or affecting any aspect of the Program, and all requirements of any Regulatory Authority having jurisdiction over a Party, as any such laws, statutes, regulations, requirements and orders may be amended and in effect from time to time during the term of the Program.

"**Application**" means the form of credit application supplied by CNH Capital to Dealer for use in connection with the Program, as amended or supplemented from time to time.

"**Change of Control**" means, as applicable, any sale of all or substantially all of the assets of Dealer (whether in one or a series of transactions), a change in the majority ownership or control of Dealer's equity, a transaction in which Dealer is merged into or consolidated with another entity, or any other change in the Person(s) possessing the ability to direct or control the management of Dealer and its business.

"**Chargeback Amount**" means, with respect to a Contract, any and all obligations due or to become due from the Obligor under the related Contract (which, in the case of a contract which is a finance, equipment or operating lease, shall include all amounts included in the definition of Termination Value contained therein, whether or not a default has yet occurred under the Contract), together with any costs, fees and expenses incurred by CNH Capital (including reasonable attorneys' fees) with respect to the Contract.

"**Contract**" means a Retail Installment Sale Contract and Security Agreement, Finance Lease, Operating Lease or other agreement between Dealer and an Obligor evidencing the sale or lease of Goods, or provision of services, by Dealer to an Obligor, or other transaction between the Dealer and an Obligor, that is assigned by Dealer to CNH Capital.

"**Documentation**" means the Contract, together with all related instruments, documents and agreements required by CNH Capital in connection with a Contract, all as amended and supplemented by CNH Capital from time to time.

"**Generally Accepted Accounting Principles**" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination.

"**Goods**" means any and all tangible personal property and related software that is the subject of a Contract.

"**Obligor**" means a Person who is obligated in respect of a Contract.

"**Party**" means CNH Capital or Dealer and "**Parties**" shall mean CNH Capital and Dealer.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, trust or any type of business organization.

"**Program Procedures**" means the policies, procedures and other requirements established from time to time by CNH Capital and its Affiliates which relate to and govern the Program, including, without limitation, all Dealer Operating Guides, Dealer Bulletins, Dealer Handbooks, Dealer Policy Manuals and other procedures and guidelines for the Program and related insurance and other products, all as amended and supplemented by CNH Capital from time to time, at its sole discretion, all of which are incorporated herein by reference.

"**Regulatory Authority**" means any federal, state or local regulatory agency or other governmental agency or authority.

"**Related Interests**" means, with respect to a Party, the Party's Affiliates, successors, and assigns, and Representatives of that Party or its Affiliates.

"**Representatives**" means, with respect to a Person, as applicable, the Person's shareholders, equity owners, employees, officers, directors, agents, immediate family members or other representatives.

"**Retail Transaction**" means the sale, lease or other transaction between the Dealer and an Obligor which is the subject of a Contract.



## WHOLESALE FINANCING AND SECURITY AGREEMENT
## UNITED STATES

This Wholesale Financing and Security Agreement (the "Agreement") is entered into on *March 27* 2012 (the "Effective Date"), by and between CNH Capital America LLC, a Delaware limited liability company, ("CNH Capital") and Abby Farm Supply, Inc., a Mississippi corporation, ("Dealer").

### RECITALS

**WHEREAS**, Dealer is engaged in the business of, among other things, the sale, rental and lease of agricultural and/or construction machinery and equipment, and related goods and services;

**WHEREAS**, CNH Capital is engaged in the business of, among other things, providing wholesale, retail and other financing accommodations to equipment dealers and others; and

**WHEREAS**, Dealer has requested that CNH Capital provide certain financing accommodations to Dealer, and, subject to all of the terms and conditions contained herein, CNH Capital has agreed to provide such financing;

**NOW THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Dealer and CNH Capital agree as follows:

**1.   Definitions.**  In addition to the Definitions otherwise contained in this Agreement, the definitions contained in Exhibit "A" hereto will apply to this Agreement.

**2.   Financing.**

(a)  **Advances.**  Dealer has requested that CNH Capital from time to time make loans or otherwise extend credit (herein referred to as "Advances") to or for the benefit of Dealer, the proceeds of which will be used by Dealer, in whole or in part, to acquire one or more items of Inventory and/or for other legitimate purposes of Dealer in the business for which Dealer is acquiring or maintaining the Inventory. Any Advance shall be made in an amount to be determined by CNH Capital in its sole discretion; provided, however, that CNH Capital, with or without cause, may refuse to make any Advance. Dealer hereby authorizes and directs CNH Capital to pay, on Dealer's behalf, up to the full amount of any invoices, or electronic remittance advices, presented to CNH Capital from time to time that evidence a sale of an item of Inventory to Dealer by a manufacturer, distributor or other party (a "Supplier") or any other amount due to a Supplier. Payment when so made by CNH Capital shall be deemed to be an Advance to Dealer and shall become due and payable pursuant to this Agreement and the Wholesale Finance Plans. CNH Capital shall have no responsibility for the accuracy, validity or genuineness of any such invoice or remittance advice. Advances by CNH Capital, the proceeds of which are remitted to a Supplier pursuant to this Agreement, shall be unconditionally due and payable by Dealer to CNH Capital in accordance with this Agreement and the Wholesale Finance Plans, notwithstanding any claim, off-set or defense to payment Dealer may have against such Supplier with respect to the related invoice or remittance advice or any other transactions or relationships between Dealer and the Supplier. In addition to any other indemnity Dealer may provide to CNH Capital, Dealer agrees to indemnify and hold CNH Capital harmless from and against any demand, claim action, cost, liability, damage or expense of any kind, including attorneys' fees, arising from or in connection with the transactions contemplated herein.

(b)  **Payments; Set-off.**  The following general terms and conditions shall apply with respect to all of Dealer's present and future obligations and indebtedness to CNH Capital arising under this Agreement or the Wholesale Finance Plans (collectively the "Wholesale Obligations"):

(i)  Dealer shall make such installment, curtailment and other principal payments in such amounts and at such intervals and times as required by the Wholesale Finance Plans or this Agreement unless such Wholesale Obligations otherwise become immediately due and payable hereunder.

(ii)  The principal of Dealer's Wholesale Obligations shall bear interest, payable monthly, before and after maturity, at the rate(s) of interest provided in the Wholesale Finance Plans.

(iii)  Dealer agrees to pay CNH Capital such fees, and other charges, in such amounts, and at such times, as provided in the Wholesale Finance Plans.

(iv)  CNH Capital may, at any time and from time to time, without prior notice to Dealer, withhold and deduct, from amounts otherwise due to Dealer from CNH Capital under this Agreement or under any other present or future agreement between Dealer and CNH Capital, the amount of any Wholesale Obligations then due and payable and CNH Capital may apply any amounts, so withheld or deducted, against such Wholesale Obligations.  Conversely, CNH Capital may, at any time and from time to time, without prior notice to Dealer, withhold or deduct from any Advance hereunder the amount of any Obligations then due and payable by Dealer to CNH Capital pursuant to any other present or future agreement between Dealer and CNH Capital and CNH Capital may apply amounts so withheld or deducted against such obligations or indebtedness.

(c)  **Statement of Account.**  Dealer's Obligations shall, absent manifest error, be conclusively evidenced by CNH Capital's books and records, CNH Capital's Electronic Settlement System or any successor system thereto ("ESS"), any promissory note or other document specifically evidencing an Advance, and the terms and conditions of the Wholesale Finance Plans.  CNH Capital will deliver monthly statements to Dealer, which will include detail regarding Dealer's Wholesale Obligations and the Collateral. Unless Dealer objects in writing, in a notice given in accordance with Section 13(f) hereof, within thirty (30) days after CNH Capital's mailing or other transmission of such monthly statements to Dealer, such monthly statements shall be deemed an account stated, and Dealer shall be deemed to have accepted as accurate all information regarding the Wholesale Obligations and Collateral set forth in such monthly statements.

**3.   Security Interest.**

(a)  **Obligations.**  Dealer's Wholesale Obligations, together with any and all other obligations and indebtedness now or hereafter owing by Dealer to CNH Capital hereunder, or under any other instrument, document or agreement now or hereafter entered into by and between Dealer and CNH Capital, or howsoever otherwise arising, are hereinafter collectively referred to as "Obligations".

(b)  **Grant of Security Interest; Collateral.**  To secure payment and performance of the Obligations, Dealer hereby grants to CNH Capital a security interest in and to all of the following (collectively, with any accessions thereto, the "Collateral"). (Terms used herein that are not otherwise specifically defined herein shall have the meaning ascribed to them in the Uniform Commercial Code as enacted in the State of Wisconsin ("UCC")):

(i)  All of Dealer's now owned and hereafter acquired inventory, equipment, software and other goods wherever located, of whatever kind, make, model, brand or nature, that have been or hereafter are obtained from CNH Capital (or any Affiliate of CNH Capital) or that are or were financed by CNH Capital, together with all trade-ins, accessions and rights relating to, and all proceeds of, any of the foregoing (collectively the "Inventory");

(ii)  All now owned or hereafter arising or acquired accounts, general intangibles, chattel paper, leases, instruments, documents and agreements arising from Dealer's sale or lease of goods or provision of services, or otherwise, that have been or hereafter are sold or assigned to CNH Capital, together with any goods that are the subject of any of the foregoing, all support obligations relating to any of the foregoing, and all proceeds of any of the foregoing;

1



EXHIBIT
**B**

(iii) Dealer's present and future accounts with CNH Capital, all credits, rebates, sales allowances and other amounts due Dealer from CNH Capital (or any Affiliate of CNH Capital), or any other manufacturer or distributor of goods financed by CNH Capital, and all proceeds of any of the foregoing; and

(iv) Any other or additional assets of Dealer in which Dealer may have heretofore granted or may hereafter grant CNH Capital a security interest, and all proceeds of the foregoing.

Dealer hereby appoints CNH Capital as Dealer's agent and attorney in fact for the purposes of executing on behalf of Dealer, and in Dealer's name, if necessary, and filing in such places, any and all financing statements, certificates of title (or applications therefor) and other documents (and amendments thereto), all as CNH Capital deems necessary or advisable to evidence, perfect or maintain CNH Capital's security interest in the Collateral.

Dealer warrants and the Parties intend that the security interests in this Agreement shall attach upon the execution of this Agreement. Dealer and CNH Capital confirm, for all the security interest granted under this Agreement, that value has been given and that the Dealer has rights in the Collateral. Dealer further acknowledges that Dealer has received an executed copy of this Agreement.

**4.   Sale or Lease of Inventory.**  So long as no Event of Default exists hereunder, and subject to the terms and conditions of this Agreement and the Wholesale Finance Plans, Dealer may (a) sell Inventory to End Users in the ordinary course of Dealer's business; (b) lease or rent Inventory to End Users in the ordinary course of business on terms approved by CNH Capital hereunder or under the Wholesale Finance Plans; or (c) sell Inventory to other authorized dealers in such goods with whom CNH Capital has a financing relationship, provided that such sales are effected in accordance with the Wholesale Finance Plans and through ESS.

For purposes hereof, the term "sale" shall include a cash sale, conditional sale, installment sale, finance lease or other similar transaction. For purposes hereof, an "End User" shall mean any customer which is not a Related Interest of Dealer (unless such Related Interest is approved in advance by CNH Capital), who purchases Inventory in an arms length transaction for its own use and not for resale.  Sales to Affiliates engaged in the equipment rental business may be permitted subject to all of the terms and conditions provided in the Wholesale Finance Plans.   No sale or lease of Inventory shall be for an amount which, when combined with discounts payable by a manufacturer, would be less than the outstanding amount of any Advance made with respect to such Inventory.  Upon the sale or lease by Dealer of any item of Inventory with respect to which there is a specific Advance outstanding (other than demonstrations and short term rentals of items of Inventory permitted hereunder or under the Wholesale Finance Plans and Inventory consisting of replacement parts), such Advance shall be immediately due and payable.

**5.   Application of Payments.**  All payments received by CNH Capital that are attributable to the sale or lease of an item of Inventory with respect to which there is a specific Advance outstanding shall be applied first against that Advance and then, if any surplus exists, to such other Obligations, or returned to Dealer, as CNH Capital, in its sole discretion, may determine.  Following the occurrence of an Event of Default, CNH Capital shall have the right to apply and reapply any and all payments and proceeds of Collateral received by it to such portion or portions of the Obligations as CNH Capital, in its sole discretion, may determine.

**6.   Proceeds of Inventory / Collateral.**  All proceeds of Inventory with respect to which there is a specific Advance outstanding shall be remitted to CNH Capital by Dealer in accordance with the terms of the Wholesale Finance Plans.  In addition, Dealer shall, upon demand by CNH Capital following an Event of Default, and as CNH Capital may direct, hold all proceeds of Collateral in which CNH Capital holds a first priority security interest in express trust for CNH Capital and deliver to CNH Capital all such proceeds of Collateral as are in Dealer's possession and/or deposit all such proceeds of Collateral in a separate account and not commingle such proceeds of Collateral with any other funds of Dealer. If any proceeds of Inventory are evidenced by notes, leases, Rental Contracts or checks (collectively "Payment Documents"), Dealer hereby assigns and, upon demand, shall deliver and/or endorse such Payment Documents to CNH Capital.  It is understood and agreed that the foregoing assignment is for security purposes only and in accepting such assignment CNH Capital does not assume any of Dealer's obligations with respect to such Payment Documents.  If any proceeds of Collateral are evidenced by customer accounts, Dealer shall, at any time upon request, provide the necessary information to CNH Capital to enable CNH Capital to collect such accounts directly from the customer.

**7.   Rental Contracts.**

(a)   **Rental of Inventory.**  Provided Dealer complies with all of the applicable terms and conditions of the Wholesale Finance Plans, and CNH Capital makes this option available to Dealer under the Wholesale Finance Plans, Dealer may rent to Dealer's customers the Inventory with respect to which CNH Capital has made an Advance, pursuant to the terms of Dealer's rental contracts ("Rental Contracts"). Advances with respect to such Inventory will thereafter be subject to the rates and terms of CNH Capital's financing program, in effect for goods that are rented, as reflected in the Wholesale Finance Plans.

(b)   **Rental Contracts.**  All of Dealer's Rental Contracts, related agreements, and rental transactions will be in a form satisfactory to CNH Capital, permit their assignment to CNH Capital, and conform with all applicable Federal, State and local laws. Dealer will indemnify CNH Capital against any loss or damage that CNH Capital may suffer, whether direct or indirect, resulting in any way from the Rental Contracts, related agreements, or rental transactions, including any noncompliance with applicable laws and any claims by Dealer's customers regarding Dealer's obligations under the Rental Contracts.

(c)   **Assignment to CNH Capital.**  All Rental Contracts are hereby assigned to CNH Capital.  Dealer will immediately, upon CNH Capital's request, deliver to CNH Capital the executed originals of all Rental Contracts and all related Payment Documents or, at CNH Capital's direction, mark such original Rental Contracts as having been assigned to CNH Capital. This assignment is a transfer for security only, and, unless and until CNH Capital has foreclosed its security interest in the Rental Contracts, will not be deemed to delegate any of Dealer's duties under the Rental Contracts to CNH Capital or constitute an assumption by CNH Capital of such duties, nor is it intended to alter or impair performance by either party to the Rental Contracts.

(d)   CNH Capital may, from time to time, verify by contacting and visiting with customers the accuracy of the Rental Contracts and the location of any Inventory that is the subject of a Rental Contract. Dealer will immediately, upon CNH Capital's request, provide CNH Capital with copies of all Rental Contracts, together with the following information regarding Rental Contracts in effect on the date of such request: (i) name, address and telephone number of each customer who has executed a Rental Contract; (ii) the location of the Inventory; (iii) the date and all terms of each Rental Contract; (iv) the payment history with respect to each Rental Contract; (v) the date when the Inventory is to be returned under each Rental Contract; and, (vi) any other information that CNH Capital may reasonably request.  Dealer shall obtain from its customers, the consent required, if any, by state or federal law for the delivery, disclosure, retention, exchange and use of the customer information.

(e)   **Sale or Pledge of Rental Contracts.**  Other than to CNH Capital, Dealer will not assign, sell, pledge, convey or by any other means transfer any Rental Contracts or chattel paper covering Inventory financed by CNH Capital, or any rights therein, without CNH Capital's prior written consent.

(f)   **Terms of Rental Contracts.**  Dealer will not enter into any Rental Contracts with respect to Inventory financed by CNH Capital pursuant to which: (i) the original term of the Rental Contract (including renewal options) is greater than one-hundred-eighty (180) days; (ii) the original term of the Rental Contract is equal to or greater than the remaining economic life of such Inventory; (iii) the customer is bound to renew the Rental Contract for the economic life of such Inventory or is bound to become the owner of such Inventory; or, (iv) the customer has an option to renew the Rental Contract for the remaining economic life of such inventory, or to become the owner of such Inventory, for nominal consideration or for consideration less than the unpaid balance owed to CNH Capital with respect to such Inventory.

(g)   **Further Assurance.**  Dealer will take any action CNH Capital may reasonably require to perfect and/or protect CNH Capital's security interest in Rental Contracts and/or the Inventory subject thereto and Dealer hereby authorizes CNH Capital to take any such action in Dealer's name.

**8.   Dealer's Representations, Warranties and Covenants.**

(a)   **Representations, Warranties, and Affirmative Covenants.**  For so long as any Obligations remain unpaid and/or this Agreement remains in effect, Dealer represents, warrants and

2

covenants to and with CNH Capital that:

    (i)  Dealer has good title to all Collateral;

    (ii)  Except to the extent that CNH Capital in writing agrees to subordinate its security interest to another party, CNH Capital's security interest in the Collateral is now and shall at all times hereafter be senior to the security interest or claim of any other Person;

    (iii)  Dealer shall execute all documents CNH Capital requests to perfect and maintain CNH Capital's senior security interest in the Collateral, and shall cause all third parties who may hereafter hold a security interest in or possession of Collateral to provide such subordinations to and acknowledgments of CNH Capital's senior security interest as CNH Capital may require;

    (iv)  Dealer shall deliver to CNH Capital immediately upon each request, and CNH Capital may retain, each Certificate of Title or Statement of Origin issued for Collateral;

    (v)  Dealer shall at all times be duly organized, existing, in good standing, and qualified and licensed to do business in each jurisdiction in which its organizational status or the nature of its business or property requires such status or action;

    (vi)  Dealer has the right, and is duly authorized, to enter into this Agreement;

    (vii)  Dealer's execution of this Agreement does not, and shall not, violate or constitute a breach of any law or regulation applicable to Dealer, or any agreement to which Dealer is now or hereafter becomes bound;

    (viii)  there are and shall be no actions or proceedings pending or threatened against Dealer that can or might result in any material adverse change in Dealer's financial or business condition;

    (ix)  Dealer shall protect the Collateral and maintain the Inventory in good working order and condition;

    (x)  Dealer has duly filed and shall duly file all tax returns required by law, and shall pay when due all taxes, levies, assessments and governmental charges;

    (xi)  Dealer shall keep and maintain all of its books and records pertaining to the Collateral at its chief executive office, set forth below;

    (xii)  Dealer shall keep all Collateral at one of the locations listed on Exhibit "B" hereto. Dealer shall obtain CNH Capital's written approval prior to storing or moving any Collateral at or to any other location;

    (xiii)  Dealer shall give CNH Capital thirty (30) days prior written notice of any change in Dealer's identity, name, form of business organization, majority shareholder, owner or chief executive office;

    (xiv)  Dealer shall notify CNH Capital of the commencement of any material legal proceedings against Dealer or any Guarantor;

    (xv)  Dealer shall comply with all laws, rules and regulations applicable to Dealer or its business; and

    (xvi)  Dealer has provided CNH Capital with a copy of Dealer's current Articles of Incorporation, Articles of Organization, Articles of Formation, Partnership Agreement, or Certificate of Limited Partnership, as applicable, and shall provide CNH Capital any subsequent amendments thereto bearing indicia of filing from the appropriate governmental authority, or such other documents as CNH Capital may request to verify, without limitation, Dealer's true and correct legal name.

    (b)  **Negative Covenants**.  For so long as any Obligations remain unpaid and/or this Agreement remains in effect, Dealer shall not at any time without CNH Capital's prior written consent:

    (i)  other than in the ordinary course of its business, and as permitted under this Agreement or the Wholesale Finance Plans, sell, demonstrate, lease, rent or otherwise dispose of, transfer, grant a security interest in, allow any lien to attach to, or consign any of the Collateral; or

    (ii)  move any Collateral to a location other than an Approved Collateral Location.

    (c)  **Financial Covenants**.  See Exhibit C.

    (d)  **Insurance**.  Dealer shall at all times, including, without limitation, any time that Collateral is in the possession of third parties, bear all risk of loss of, damage to, or destruction of, the Collateral. Dealer shall maintain public liability insurance and shall keep all

Collateral insured against risks covered by standard "all risk" forms of fire, theft, and extended coverage insurance and such other risks as may be required by CNH Capital, in amounts and with such deductibles, and under policies issued by such insurance companies, all as are satisfactory to CNH Capital.  Dealer agrees to deliver promptly to CNH Capital certificates, or if requested, policies of insurance, satisfactory to CNH Capital, each with an endorsement naming CNH Capital or its assigns as additional insured or loss payee as their interests may appear, along with proof of payment of the premium therefor.  Each policy shall provide that CNH Capital's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than CNH Capital, and will contain the insurer's agreement to give thirty (30) days prior written notice to CNH Capital before any cancellation, lapse, expiration or other termination of, or any material change in, the policy will be effective as to CNH Capital, whether such termination or change is at the direction of Dealer or insurer.  Dealer assigns to CNH Capital all policies of insurance relating to Collateral and all proceeds of such insurance, including, without limitation, returned and unearned premiums, as additional security for the Obligations.  Dealer hereby directs all insurers to pay such proceeds directly to CNH Capital, and Dealer shall hold in trust for CNH Capital and promptly remit to CNH Capital, in the form received with all necessary endorsements, any proceeds of such insurance that Borrower may receive.  CNH Capital shall apply any proceeds of insurance it may receive toward payment of the Obligations as CNH Capital in its discretion may determine.  Excess insurance proceeds, if any, shall be returned to Dealer.  In the event any item of Collateral is damaged and a claim submitted to the insurer is in dispute, Dealer will pay to CNH Capital the unpaid balance of all Advances attributable to the damaged Collateral, plus all accrued interest thereon, within five (5) days after CNH Capital's request.  If, in the opinion of CNH Capital, Dealer fails to maintain insurance on the Collateral in an amount or manner satisfactory to CNH Capital, CNH Capital may, but shall not be obligated to, purchase such insurance, and Dealer hereby agrees to immediately reimburse CNH Capital, upon demand, for any payment made or expense incurred by CNH Capital in purchasing such insurance, plus interest thereon at the post-maturity interest rate specified in the Wholesale Finance Plans.

9.  **Authority to Perform for Dealer**.  If Dealer fails to fulfill any obligation set forth in this Agreement (including, without limitation, any covenants set forth in Section 8 hereof), CNH Capital is authorized, but not obligated, in Dealer's name or otherwise, to take any such action and pay any amount, as CNH Capital in its discretion deems necessary or appropriate, including, without limitation, executing documents on behalf of Dealer or in Dealer's name.  All costs and expenses so incurred by CNH Capital shall be part of the Obligations secured by this Agreement and Dealer shall reimburse CNH Capital on demand for all such amounts.

10.  **Financial Statements; Reports; Examinations**.

    (a)  **Financial Statements; Reports**.  Dealer shall install and maintain current an accounting system satisfactory to CNH Capital. Dealer shall deliver to CNH Capital, in a manner and form prescribed by CNH Capital (including via electronic transmission if so requested by CNH Capital) each of the following:

    (i)  within ninety (90) days after the end of each fiscal year of the Dealer, complete and accurate balance sheets and statements of income, retained earnings and changes in cash flow of the Dealer and it subsidiaries for such year, setting forth in comparative form the corresponding figures for the preceding year, all prepared in accordance with Generally Accepted Accounting Principles (or other methodology approved in advance by CNH Capital) applied on a consistent basis.  Financial statements so delivered shall be internally generated.  If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.  Financial statements shall also be delivered to CNH Capital in the manner identified below (check box if applicable):

☒ Financial statements so delivered shall be compiled by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital.  If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be reviewed by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital.  If requested by CNH Capital, Dealer shall provide consolidating balance sheets and

statements of the entities included in consolidated financial statements. ☐Financial statements so delivered shall be audited by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. Audited financial statements shall be accompanied by a report and unqualified opinion of the auditor (which shall not be limited as to the scope of the audit or qualified as to the status of Dealer as a going concern). If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

(ii)   within twenty (20) days after the end of each calendar month, unaudited complete and accurate consolidated balance sheets and operating statements of the Dealer and its subsidiaries that reflect operations through the preceding month; and

(iii)   as and when requested by CNH Capital, copies of Dealer's filed tax returns, current reports of sales and inventory and such other reports and information as CNH Capital may request from time to time.

(b)   **Compliance Certificate**.   Dealer understands and agrees that within ninety (90) days after the end of each ☐calendar month, or ☐fiscal quarter, or ☒ fiscal year, Dealer shall provide CNH Capital with a certificate of compliance in the form attached as Exhibit D.

(c)   **Examinations**.   CNH Capital or its authorized representatives will have the right during normal business hours to enter the Dealer's places of business, to examine the Collateral and Dealer's books and records, bank statements and deposit records, all supporting data and Payment Documents, and to make copies of any such items. In addition, CNH Capital may contact Dealer's customers to verify the location or amount of any item of Collateral or confirm the amount or value of any proceeds of Inventory.

(d)   **Information Sharing**.   Dealer understands and agrees that CNH Capital may from time to time share with its Affiliates and manufacturers or distributors of goods financed by CNH Capital (collectively "Related Parties") information regarding Dealer's financial condition and CNH Capital's financing relationships with Dealer. Dealer also understands and agrees that Related Parties may from time to time share with CNH Capital information regarding the Related Parties' business relationships with Dealer.

**11.   Events of Default; Remedies of CNH Capital Upon Event of Default**.

(a)   **Events of Default**.   Dealer will be in default under this Agreement (each an "Event of Default") if:

(i)   Dealer fails to perform or observe any term, covenant or agreement contained in this Agreement, or in any other agreement between CNH Capital and Dealer and, if such failure is capable of being remedied, such failure shall continue unremedied for a period of ten (10) days from the date of Dealer's receipt of notice from CNH Capital, it being understood that no such cure period will be available for a breach of Dealer's financial covenants, if any, a breach under Section 11(a)(ii) hereof or any other subsection of this Section 11 for which no express cure period is provided;

(ii)   Dealer fails to pay any Obligation to CNH Capital when due and payable hereunder, under the Wholesale Finance Plans, under any other present or future agreement between CNH Capital and Dealer or otherwise arising;

(iii)   Dealer sells, leases, otherwise disposes of or grants a security interest in any Collateral in a manner not permitted under this Agreement or the Wholesale Finance Plans or Dealer fails to deliver any proceeds of Collateral to CNH Capital as required by this Agreement or the Wholesale Finance Plans;

(iv)   Dealer, if a sole proprietorship, or any individual Guarantor of Dealer's Obligations to CNH Capital dies or becomes incapacitated, or any Guarantor notifies CNH Capital of its intent to terminate, or terminates, its guaranty, or otherwise breaches any terms contained in any guaranty or other agreement between the Guarantor and CNH Capital;

(v)   any representation, warranty, financial statement, report or certificate that Dealer or any Guarantor makes or delivers to CNH Capital is not accurate in all material respects, or is materially misleading, when made;

(vi)   Dealer abandons any Collateral;

(vii)   Dealer or any Guarantor is or becomes in default after expiration of any applicable cure period in the payment of any debt owed to any third party, or Dealer is or becomes in default after

expiration of any applicable cure period under any loan agreement with any third party;

(viii)   Dealer shall fail to remit collateral proceeds to CNH Capital or any other floorplan/inventory lender immediately upon receipt thereof, or to otherwise make payments to CNH Capital or any such other lender upon the sale of collateral, all as required under the applicable loan agreement;

(ix)   an attachment, sale or seizure issues or is executed against any assets of Dealer or of any Guarantor;

(x)   Dealer or any Guarantor ceases existence as a corporation, partnership, limited liability company or trust, as applicable;

(xi)   Dealer or any Guarantor ceases or suspends business;

(xii)   a Change in Control, as applicable, shall occur with respect to Dealer or any Guarantor;

(xiii)   Dealer or any Guarantor or any Controlling Party makes a general assignment for the benefit of creditors;

(xiv) the commencement by or against Dealer, any Guarantor or any Controlling Party of any bankruptcy, insolvency arrangement, reorganization, receivership or similar proceedings with respect to it under any state or federal law;

(xv)   Dealer or any Guarantor or any Controlling Party becomes insolvent;

(xvi)   any receiver or trustee is appointed for any assets of Dealer or any Guarantor or any Controlling Party;

(xvii) Dealer is in default of any franchise, dealership or license agreement relating to the right to deal in any Collateral which CNH Capital finances and such default is not cured within any cure period provided under the applicable agreement or any such agreement is terminated;

(xviii)   Dealer or any Guarantor or any Controlling Party misrepresents Dealer's or such Guarantor's or Controlling Party's financial condition or organizational structure; or

(xix) CNH Capital determines in good faith that it is insecure with respect to any of the Collateral or the payment in full of Dealer's Obligations to CNH Capital and Dealer fails to correct the situation within ten (10) days after Dealer's receipt of written notice from CNH Capital.

(b)   **Remedies of CNH Capital Upon an Event of Default**.   Upon the occurrence of an Event of Default:

(i)   CNH Capital may at any time, without notice or demand to Dealer, do any one or more of the following:

(1)   declare all or any part of the Obligations immediately due and payable;

(2)   exercise any rights it may have under the UCC or other applicable law;

(3)   cease extending additional credit to Dealer (which shall not be construed to limit the discretional nature of any credit facility).

(ii)   Dealer shall segregate and keep the Collateral in trust for CNH Capital, and will not dispose of or use any Collateral, nor further encumber any Collateral.

(iii)   Upon CNH Capital's demand, Dealer shall immediately deliver the Collateral to CNH Capital at a place specified by CNH Capital, together with all related Payment Documents;

(iv)   CNH Capital or its agents may, without notice or demand to Dealer, take immediate and exclusive possession of the Collateral wherever located and enter any of the premises of Dealer, with or without process of law, wherever the Collateral may be and take possession of and remove the Collateral, all without liability on the part of CNH Capital.

(v)   CNH Capital may sell, lease or otherwise dispose of any or all of the Collateral, at public or private sale (including, without limitation, through live or internet auction), for cash or credit, without notice to Dealer except as required by law (it being agreed that ten (10) days notice shall constitute reasonable notice); CNH Capital may bid on and become the purchaser of such Collateral; CNH Capital may sell any or all of the Collateral to any manufacturer of the Collateral which may be obligated to purchase the Collateral under any applicable "dealership statute", it being agreed that any such sale in accordance with the terms of such statute shall constitute a

52791A   12/09

4

commercially reasonable disposition of the Collateral.

(vi) CNH Capital may, without notice, apply a default finance charge to Dealer's outstanding principal indebtedness equal to the post-maturity rate specified in the Wholesale Finance Plans.

(vii) Dealer hereby grants CNH Capital an irrevocable power of attorney to: execute or endorse on Dealer's behalf any checks, drafts or other forms of exchange received as payment on any Collateral for deposit in CNH Capital's account; execute financing statements, instruments, Certificates of Title and Statements of Origin pertaining to the Collateral; sell, assign, transfer, negotiate, demand, collect, receive, settle, extend, or renew any amounts due on any of the Collateral; do anything Dealer is obligated to do hereunder; initiate and settle any insurance claim pertaining to the Collateral; and do anything CNH Capital deems necessary or advisable, as applicable, to preserve and protect the Collateral and CNH Capital's rights and interests therein.

(viii) Upon CNH Capital's oral or written demand, Dealer will immediately deliver the original Rental Contracts and other Payment Documents to CNH Capital, and CNH Capital may collect in CNH Capital's or Dealer's name all amounts owed to Dealer under the Rental Contracts or other Payment Documents.

All of CNH Capital's rights and remedies are cumulative and non-exclusive. CNH Capital's failure to exercise any of CNH Capital's rights or remedies hereunder will not waive any of CNH Capital's rights or remedies as to any past, current or future default.

(c) **Additional Remedies Upon Default Applicable Only to Collateral Located in Louisiana.** Dealer hereby confesses judgment in favor of CNH Capital for the full amount of the Obligations in principal, interest, attorney's fees and any other advances, charges and expenses herein provided and, on the occurrence of an event of default it shall be lawful for and Dealer specifically authorizes CNH Capital, without making a demand or putting Dealer in default, a putting in default and the three day's notice provided by the Louisiana Code of Civil Procedure being specifically waived, to cause all and singular the Collateral or any part thereof to be seized and sold under executory process or any other legal process, at the option of CNH Capital and on such terms as the CNH Capital may direct. The Dealer hereby especially waives the benefit of any and all laws or parts of laws relative to the appraisement of property seized and sold under executory or other legal process or as required by Article 2723 of the Louisiana Code of Civil Procedure, any exemptions from seizure which may otherwise apply to the Collateral and all pleas of division and discussion.

Dealer further agrees that in the event any proceedings are initiated under executory process or otherwise, in addition to such evidence deemed authentic as a matter of law, any and all declarations of the facts made by authentic act before a notary public and in the presence of two witnesses, by a person declaring that such facts lie within his knowledge, shall constitute authentic evidence of such facts.

Pursuant to the authority of Louisiana Revised Statutes 9:5136 et seq., Dealer hereby appoints CNH Capital or its designee to be keeper or receiver of the Collateral for the benefit of CNH Capital, all at the option of the CNH Capital, to take effect immediately upon any seizure which may arise as an incident to any legal action which may be brought by CNH Capital.

(d) **Expenses in Exercising Remedies; Deficiency.** Dealer shall be liable to CNH Capital for all expenses of retaking, holding, preparing for sale and selling the Inventory and other Collateral, all collection costs, court costs, legal expenses and reasonable attorneys' fees and any other expenses incurred by CNH Capital in enforcing this Agreement (including, without limitation, any such expenses and fees incurred by CNH Capital in connection with any refinancing or restructuring of the Obligations), in collecting any Obligation owed by Dealer to CNH Capital or in proceeding against the Collateral. The foregoing costs, fees and expenses shall constitute a part of the Obligations and shall bear interest at the post-maturity rate of interest provided in the Wholesale Finance Plans. CNH Capital may apply proceeds of Collateral received upon any disposition of Collateral to the foregoing expenses and to the reduction of the Obligations in such order of application as CNH Capital in its discretion may determine. Dealer shall be liable for any deficiency remaining due on the Obligations after disposition of the Collateral. CNH Capital shall pay to Dealer, or other Person as required by law, any surplus funds remaining after the Obligations are fully satisfied.

12. **Duration and Termination of This Agreement.** This Agreement

shall continue in effect until the earlier of: (a) ninety (90) days after the date on which either party receives written notice from the other party that this Agreement is terminated; (b) if an Event of Default shall occur, immediately upon Dealer's receipt of notice from CNH Capital that this Agreement is terminated; or (c) as mutually agreed upon in writing by CNH Capital and Dealer. Upon the effective date of any such termination of this Agreement, all Obligations shall become immediately due and payable. The Obligations of Dealer, all security interests and liens granted by Dealer to CNH Capital, and all rights granted to CNH Capital hereunder shall not be impaired or affected by such termination and such security interests and liens and Dealer's Obligations under this Agreement shall remain in effect until such time as the Obligations are satisfied in full. In the event Dealer and CNH Capital engage in transactions following termination of this Agreement, such transactions shall not be construed as a renewal of this Agreement nor as a waiver of such termination; provided, however, that all such transactions shall be governed by terms identical to those of this Agreement.

13. **Miscellaneous.**

(a) **Entire Agreement.** This Agreement, together with the Wholesale Finance Plans, are and shall be deemed the complete and final expression of the Agreement between CNH Capital and Dealer as to matters herein contained and relative thereto, and supersedes all previous agreements between them pertaining to such matters. It is clearly understood that no promise or representation not contained herein was an inducement to either Dealer or CNH Capital or was relied on by either of them in entering into this Agreement.

(b) **Modifications, Amendments, Terminations of this Agreement and the Wholesale Finance Plans.**

(i) Except as to matters described in Section 13(b)(ii) hereof, no letter, or other form of communication, written or oral, passing between CNH Capital and Dealer, covering any matter during the effective period of this Agreement, shall be deemed a part of this Agreement, nor shall it have the effect of amending or modifying this Agreement, unless such communication is in writing, distinctly states that it is to constitute a part of this Agreement and is signed by the parties hereto.

(ii) All of the terms and conditions of the Wholesale Finance Plans shall be established at CNH Capital's sole discretion. CNH Capital may terminate the Wholesale Finance Plans without prior notice at any time at its sole discretion. CNH Capital may, in its sole discretion, amend, modify or supplement any of the terms and conditions of the Wholesale Finance Plans at any time upon notice to Dealer. Notification of the amendment, modification or supplementation of the Wholesale Finance Plans may be accomplished by, among other methods, issuance of Dealer Bulletins or publication on CNH Capital's website. Changes in the Wholesale Finance Plans instituted by CNH Capital that would have the effect of increasing the interest rates or fees payable by Dealer under the Wholesale Finance Plans, or amending the timing, or increasing the amount, of future periodic payments to CNH Capital under the Wholesale Finance Plans, shall only be applied prospectively from the effective date of such changes as established by CNH Capital.

(c) **Indemnification; Limits on Liability.**

(i) **Indemnification.** Dealer shall indemnify, protect, defend and hold harmless CNH Capital, its successors, assigns, and its Related Interests (excepting CNH America LLC) from any and all claims, liabilities, demands, penalties, actions, suits, proceedings (whether civil or criminal), orders, judgments, disbursements, losses, costs (including, without limitation, court costs and reasonable attorneys' fees), expenses, or damages caused by or arising from: (1) product liability and/or personal injury arising out of the use of the Inventory by any Person; (2) breach by Dealer of any warranty with respect to any Inventory (including, but not limited to, a claim of latent or patent defect); (3) breach by Dealer of any representations, warranties, covenants or other obligations or agreements contained in this Agreement; (4) Dealer's performance of any reconditioning or remarketing services; (5) failure of Dealer to perform its obligations with respect to any warranty, maintenance, service or other similar agreements with any Person; (6) any governmental fees, charges, taxes or penalties levied or imposed with respect to any Inventory; and (7) failure of Dealer to comply with any applicable federal, state or local law or regulation.

CNH shall give Dealer, and Dealer shall give CNH Capital, notice of any event or condition that requires indemnification

52791A  12/09

5

by Dealer hereunder, or any allegation that such an event or condition exists, promptly upon obtaining knowledge thereof. Dealer shall pay all amounts due hereunder promptly on notice thereof from CNH Capital. Upon payment by Dealer, and provided Dealer is otherwise in compliance with the terms of this Agreement, Dealer shall be subrogated to CNH Capital's rights with respect to such event or condition. All of the indemnities and agreements contained in this Section 13(c) shall survive and continue in full force and effect notwithstanding the termination of this Agreement.

(ii)   **Exclusion of Certain Damages.**  No Party shall be liable to the other Party for any punitive, consequential, incidental, special or similar damages in connection with this Agreement or the Wholesale Finance Plans, except to the extent that a Party is required to indemnify the other Party under this Agreement for amounts owing to third parties.

(d)   **Dealer Not an Agent.**  Nothing in this Agreement shall be construed as constituting Dealer an employee, agent or legal representative of CNH Capital for any purpose whatsoever. Dealer has no right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of CNH Capital, or to bind CNH Capital in any manner whatsoever. This Agreement does not constitute a joint venture, partnership, association or agency between CNH Capital and Dealer. Dealer and CNH Capital shall bear the relationship to one another of independent contractors.

(e)   **Captions.**  Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision thereof.

(f)   **Notices.**  Any written notice required or permitted under this Agreement shall be deemed to have been received (i) on the fifth (5th) calendar day after being posted if such notice is sent by first class U.S. mail, certified return receipt requested; (ii) one (1) business day after being sent, if sent by a nationally recognized overnight courier service, next day service; (iii) on the date transmitted, if sent by fax; or (iv) if sent by e-mail on a business day, at the end of the business day on the date delivered or, if the e-mail was not delivered on a business day, the end of the next following business day. Notices shall be sent to the Parties at the respective address or fax number set forth on the signature page of this Agreement beneath their names, or any other address designated in writing by a Party following the date of this Agreement in a notice complying with this Section 13(f).

(g)   **Severability.**  Any part of this Agreement which is held to be invalid or unenforceable under the laws of any place where this

Agreement is to be performed or is sought to be enforced shall be enforceable to the maximum extent permitted by law, without invalidating its effect elsewhere or the remainder of this Agreement.

(h)   **Assignment of Agreement; Successors and Assigns.** Dealer may not sell, assign, delegate, convey or otherwise transfer in any way whatsoever this Agreement or Dealer's rights or obligations under this Agreement to any Person without the prior written consent of CNH Capital. CNH Capital, without notice or consent, may assign its rights and delegate obligations under this Agreement, and may sell, assign, syndicate, securitize or grant participations in any of the Obligations and any related rights hereunder. The provisions of this Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the parties hereto.

(i)   **Waiver.**  The failure of a Party to require the performance of any part of this Agreement or the waiver by a Party of any default or requirement under this Agreement shall not prevent a subsequent enforcement of such term and shall not be deemed a waiver of any subsequent default or requirement. Every waiver of any provision hereof must be in writing and signed by the Party against whom the waiver is to be enforced.

(j)   **APPLICABLE LAW.**  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO ITS CONFLICT OF LAW RULES.

(k)   **Counterparts.**  This Agreement may be executed in multiple counterparts each of which shall be deemed an original and all of which shall constitute one and the same agreement. This Agreement or a counterpart thereof may be delivered by telecopier, facsimile or any other electronic transmission, including a scanned version in pdf format, and the telecopier, facsimile or any electronic transmission of a signature to another party or parties (or to their respective attorneys) shall be of the same force and effect as the delivery of an original signature.

(l)   **JURY TRIAL WAIVER.**  THE PARTIES HERETO WAIVE THEIR RIGHTS TO REQUEST A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY COURT OF LAW, TRIBUNAL, OR OTHER LEGAL PROCEEDING ARISING OUT OF OR INVOLVING THIS AGREEMENT, OR ANY DOCUMENT DELIVERED IN CONNECTION HEREWITH, OR RELATING TO ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

**IN WITNESS WHEREOF,** the Parties have caused their duly authorized representatives to execute this Agreement as of the Effective Date.

**CNH Capital America LLC**

By:

Title:        Senior Underwriter

Abby Farm Supply, Inc.

By:

        Terry Abby

        (Print Name)

Title:   VP

**Addresses for Notices; Dealer's Chief Executive Office:**

CNH Capital America LLC
5729 Washington Ave.
Racine, WI 53406

Abby Farm Supply, Inc.
1521 HWY 45
Saltillo, MS  38866

Attention:   Wholesale Credit

Fax Number:   262-636-5771

Attention:   Terry Abby

Fax Number:   662-869-2432

52791A  12/09

6

## EXHIBIT A
## WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES

"**Advance(s)**" shall have the meaning provided in Section 2(a).

"**Affiliate**" means, with respect to a Person, another Person who directly or indirectly controls, is controlled by, or is under common control with the Person.

"**Approved Collateral Location**" means (i) Dealer's chief executive office; (ii) the other location(s) listed on Exhibit "B" hereto and (iii) additional locations approved in advance by CNH Capital in accordance with Section 8(a)(xii).

"**Change of Control**" means, as applicable, any sale of all or substantially all of the assets of a Person (whether in one or a series of transactions), a change in the majority ownership or control of a Person's equity, a transaction in which a Person is merged into or consolidated with another entity, or any other change in the Person(s) possessing the ability to direct or control the management of a Person and its business.

"**Control**" (including with correlative meanings, the terms controlling, controlled by and under common control with) means the power to direct the management or policies of a Person, directly or indirectly, through the ownership of voting securities, by contract or otherwise.

"**Controlling Party**" means any Person that "controls" Dealer or a Guarantor.

"**End User**" shall have the meaning provided in Section 4.

"**ESS**" shall have the meaning provided in Section 2(c).

"**Generally Accepted Accounting Principles**" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination.

"**Guarantor**" means any individual or entity that executes in favor of CNH Capital a guarantee with respect to all or any portion of the Obligations.

"**Inventory**" shall have the meaning provided in Section 3(b)(i).

"**Obligations**" shall have the meaning provided in Section 3(a).

"**Party**" means CNH Capital or Dealer and "Parties" shall mean CNH Capital and Dealer.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, trust or any type of business organization.

"**Related Interests**" means, with respect to a Party, the Party's Affiliates, successors, and assigns, and Representatives of that Party or its Affiliates.

"**Representatives**" means, with respect to a Person, as applicable, the Person's shareholders, equity owners, employees, officers, directors, agents, immediate family members or other representatives.

"**UCC**" shall have the meaning provided in Section 3(b).

"**Wholesale Finance Plans**" shall mean collectively one or more of the "Wholesale Finance Plans", "Schedules of Terms", "Schedules of Discounts and Terms", "Dealer Handbooks", "Dealer Policy Manuals" and "ESS Manual" which set forth the terms and conditions under which CNH Capital is willing to provide financing for the Dealer to obtain and maintain new and used inventory, equipment or other goods held for sale, lease or rental to its customers, and other financing accommodations, which terms and conditions will describe the goods eligible for financing, and will also establish, among other things, maximum loan amounts for each item, repayment and curtailment terms, interest rates, default interest rates, late payment and other service charges and fees, maximum annual hour usage limits, excess hourly usage rates and other terms, conditions and limitations of the financing, together with any policy or operating manuals or guides and "dealer bulletins" and other publications from time to time delivered by CNH Capital to Dealer which relate to the foregoing, and any supplemental publications or agreements specifically applicable to Dealer, all as in effect, amended and supplemented by CNH Capital, at its sole discretion, from time to time.  The Wholesale Finance Plans are incorporated herein by reference.

"**Wholesale Obligations**" shall have the meaning provided in Section 2(b).

**EXHIBIT B**
**WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES**

**COLLATERAL LOCATIONS**
**(INCLUDING CHIEF EXECUTIVE OFFICE)**

1521 HWY 45
Saltillo, MS 38868

2501 HWY 72
Walnut, MS 38683

16135 HWY 51
Millington, TN 38053

8263 Frontage RD
Mount Olive, MS  38654

**EXHIBIT C**
**WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES**

**FINANCIAL COVENANTS**

8(c)  **Financial Covenants**.

Dealer hereby covenants and agrees that as of the end of each ☐ calendar month or ☐ fiscal quarter or ☒ fiscal year ending December 31st , and as of the end of each ☐calendar month, or ☐fiscal quarter, or ☒fiscal year thereafter, Dealer must maintain:

(i)   A Fixed Charge Coverage Ratio of not less than 1.2 : 1.0 for each ☐ calendar month, or ☐ fiscal quarter, or ☒ fiscal year ending December 31st; and

(ii)  An Adjusted Debt to Tangible Net Worth Ratio of not more than 4.0 : 1.0 for each ☐ calendar month or ☐ fiscal quarter or ☒ fiscal year ending  December 31st.

For purposes of this Section 8(c):

(i)   **Net Worth** shall mean the aggregate amount of the Dealer's items properly shown as assets on its balance sheet minus the aggregate amount of the Dealer's items properly shown as liabilities on its balance sheet, determined in accordance with Generally Accepted Accounting Principles ("GAAP");

(ii)  **Tangible Net Worth** shall mean Net Worth minus the aggregate amount of the Dealer's items properly shown as the following types of assets on its balance sheet determined in accordance with GAAP;

(1) goodwill, patents, non-competes, copyrights, mailing lists, trade names, trademarks, servicing rights, organizational and franchise costs, and other like assets properly classified as intangibles; and

(2) receivables, loans and other amount due from any shareholder, director or officer of the Dealer, and receivables, loans and other amounts due from any other related or affiliated party of the Dealer, plus an amount equal to 70% of the amount reflected on Dealer's balance sheet as a LIFO reserve;

(iii) **Debt** shall mean the aggregate amount of the Dealer's items properly shown as liabilities on its balance sheet, determined in accordance with GAAP;

(iv)  **Subordinated Debt** shall mean Debt that is expressly subordinated to CNH Capital in writing acceptable to CNH Capital;

(v)   **Adjusted Debt to Tangible Net Worth Ratio** means the ratio of Debt minus Subordinated Debt to Tangible Net Worth plus Subordinated Debt :and

(vi)  **Fixed Charge Coverage Ratio** shall be defined as the ratio computed when the sum of (a) pretax income; plus (b) depreciation and amortization expense; plus (c) interest expense; plus (d) rent and lease expense is divided by the sum of (x) interest expense; plus (y) rent and lease expense; plus (z) previous fiscal year end current maturities of long-term Debt.

**EXHIBIT D**
**WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES**

**COMPLIANCE CERTIFICATE**

This Compliance Certificate ("Certificate") is delivered to CNH Capital America LLC on behalf of name of dealer, a ("Dealer"), pursuant to the Wholesale Financing and Security Agreement, dated as of     , 20    (as amended, supplemented, restated or modified from time to time, "WFSA"), by and between CNH Capital America LLC ("CNH Capital") and Dealer. I have reviewed the terms of the WFSA and hereby certify as follows:

1.   I am the Chief Financial Officer or such other duly authorized Person with the requisite power and authority to execute and deliver this Certificate on behalf of the Dealer.

2.   I have reviewed and am familiar with the contents of this Certificate and the matters set forth herein are true.

3.   As of the date hereof, Dealer's representations and warranties set forth in the WFSA are true and correct.

4.   As of the date hereof, Dealer has performed and complied with all covenants, agreements, obligations and conditions contained in the WFSA that are required to be performed or complied with by it.

5.   I have made or caused to be made under my supervision, a review in detail of the transactions and financial condition of the Dealer. ANNEX 1 attached hereto and incorporated herein sets forth the financial data and computations evidencing Dealer's compliance with the financial covenants set forth in the WFSA, all of which data and computations are true, complete and correct in all material respects and in accordance with Generally Accepted Accounting Principles ("GAAP"). The information described therein is as of the last day of the ☐ calendar month ending     , or ☐ fiscal quarter ending     , or ☐ fiscal year ending     .

    A.   Fixed Charge Coverage Ratio                 _____ :
    B.   Adjusted Debt to Tangible Net Worth Ratio    _____ :

6.   As of the date hereof, no Event of Default has occurred or is continuing, under the terms of the WFSA.

7.   As of the date hereof, there has not been any material adverse change in the business, operations, results of operations, assets, liabilities, or condition (financial or otherwise) of the Dealer.

8.   As of the date hereof, Dealer has not changed any of its certificate of incorporation or bylaws or organization, as the case may be, without the prior written consent of CNH Capital and Dealer remains in good standing in the jurisdiction in which it is located.

IN WITNESS WHEREOF, I have executed this Certificate on behalf of Dealer this     day of     , 20    .

**Dealer's name**

By: _____

Name: _____

Title: *VP*

**ANNEX 1**

The information describe herein is as of the last day of the ☐ calendar month ending      , or ☐ fiscal quarter ending      , or ☐ fiscal year ending

**A. Fixed Charge Coverage Ratio**

Calculation

|   | Pretax Income | _____ |
|---|---|---|
| + | Depreciation/Amortization | _____ |
| + | Interest expense | _____ |
| + | Rent /Lease Expense | _____ |

|   | Current Maturities LTD | _____ |
|---|---|---|
| + | Interest expense | _____ |
| + | Rent /Lease Expense | _____ |

**Ratio**          _____

**B. Adjusted Debt to Tangible Net Worth Ratio**

Calculation

|   | Total Liabilities | _____ |
|---|---|---|
| - | Subordinated Debt | _____ |
|   | **Debt** | _____ |

|   | Net Worth | _____ |
|---|---|---|
| + | Subordinated Debt | _____ |
| - | Intangible Assets | _____ |
| - | Rec/Loans Related Parties | _____ |
| + | 70% LIFO Reserves | _____ |
|   | **Tangible Net Worth** | _____ |

**Ratio**          _____

52791A  12/09                                                                                          11



## GUARANTY

THIS GUARANTY (this "Guaranty") is made as of _March 27_, 2012 by the undersigned guarantor or joint and several guarantors (singly and collectively, "Guarantor") in favor of CNH CAPITAL AMERICA LLC ("CNH Capital").

### RECITALS

**WHEREAS,** Abby Farm Supply, Inc. ("Borrower") and CNH Capital are or may become parties to various and sundry agreements of various dates pursuant to which CNH Capital has and may hereafter extend credit and other financial accommodations and services to or for the benefit of Borrower, which agreements may include, without limitation, a Wholesale Financing and Security Agreement, a Retail Financing Agreement and/or a Merchant Agreement (all of which, as amended and supplemented from time to time, are hereinafter referred to collectively as the "Financing Agreements").

**WHEREAS,** Guarantor has benefited from CNH Capital's prior loans and other extensions of credit to Borrower, and will benefit directly and indirectly from any future loans and other extensions of credit to Borrower.

**WHEREAS,** as a condition to making such loans or other extensions of credit, CNH Capital has required that Guarantor execute and deliver this Guaranty.

**NOW, THEREFORE,** in order to induce CNH Capital to enter into the Financing Agreements and to make loans or other extensions of credit to Borrower, and in consideration thereof, Guarantor hereby agrees as follows:

1. **Guaranty.** Guarantor (or, if Guarantor is more than one person, Guarantor, jointly and severally) hereby absolutely and unconditionally guarantees the payment and performance when due, whether at stated maturity, by acceleration or otherwise, of all present and future obligations and indebtedness of Borrower to the CNH Capital arising under the Financing Agreements or otherwise (the "Obligations").

2. **Guaranty Absolute.**

   (a) Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms of the Financing Agreements, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of CNH Capital with respect thereto. The liability of Guarantor under this Guaranty shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of any of the Financing Agreements (or any other agreement or instrument relating thereto); (ii) any change in the time, manner or place of payment of, or in any other term, all or any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Financing Agreements, including, without limitation, changes in the terms of disbursement of loan proceeds or repayment thereof, modifications, extensions (including, without limitation, extensions beyond and after the original term) or renewals of payment dates, changes in interest rate or the advancement of additional funds by CNH Capital in its discretion; (iii) any exchange, release or nonperfection of any collateral, or any release, amendment, waiver of or consent to departure from any other guaranty, for all or any of the Obligations; or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower in respect of the Obligations or Guarantor in respect of this Guaranty.

   (b) Notwithstanding any termination of this Guaranty or the cancellation of the Financing Agreements or any other document, instrument or agreement evidencing the Obligations, if at any time any payment of any of the Obligations (from any source) is rescinded, repaid or must otherwise be returned by CNH Capital (i) due to or upon the insolvency, bankruptcy or reorganization of Borrower or Guarantor, or (ii) for any other circumstance, this Guaranty shall continue to be effective or be reinstated, as the case may be, all as though such payment had not been made.

3. **Waiver of Subrogation and Contribution.** As a material inducement to CNH Capital's making loans or other extensions of credit to Borrower, Guarantor hereby absolutely and irrevocably waives any claim or other rights which Guarantor may now have or hereafter acquire against Borrower or any other party liable for the Obligations that arise from the existence or performance of Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, contribution, exoneration, claim or remedy of CNH Capital against Borrower or any collateral which CNH Capital now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, by any payment made hereunder or otherwise, including without limitation, the right to take or receive from Borrower or any other party, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim or other rights. Any agreement between Guarantor and Borrower or any other party which is in any respect contrary to the foregoing shall be null and void and of no force or effect. If any amount shall be paid to Guarantor in violation of the preceding sentences, such amount shall be deemed to have been paid to Guarantor for the benefit of, and held in trust for the benefit of CNH Capital, and shall forthwith be paid to CNH Capital to be credited and applied to any Obligation, whether matured or unmatured, at CNH Capital's sole discretion.

4. **Guaranty Independent Waivers.**

   (a) Guarantor agrees that (i) the obligations hereunder are independent of and in addition to the undertakings of Borrower pursuant to the Financing Agreements, any evidence of indebtedness issued in connection therewith, any mortgage or security agreement given to secure the same, and any other guaranties given in connection with the obligations of Guarantor to CNH Capital, (ii) a separate action may be brought to enforce the provisions hereof whether Borrower is a party in any such action or not, (iii) CNH Capital may at any time, or from time to time, in its sole discretion, (1) exchange, release and/or surrender all or any of the collateral security, or any part thereof, by whomsoever deposited, which is now or may hereafter be held by CNH Capital in connection with all or any of the Obligations; (2) sell and/or purchase all or any such collateral at public or private sale in the manner permitted by law and after giving any notice which may be required, and after deducting all costs and expenses of every kind for collection, sale or delivery, the net proceeds of any such sale may be applied by CNH Capital to all or any of the Obligations; and (3) settle or compromise with Borrower, and/or any other person liable thereon, any and all of the Obligations and/or subordinate the payment of same, or any part thereof, to the payment of any other debts or claims, which may at any time be due or owing to CNH Capital and/or any other person or corporation, and (iv) CNH Capital shall be under no obligation to marshal any assets in favor of Guarantor or in payment of any or all of the Obligations.

   (b) Except as otherwise expressly provided herein or prohibited by applicable law: Guarantor hereby waives (i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance and any other notice with respect to any of the Obligations and this Guaranty, and promptness in commencing suit against any party thereto or liable thereon, and/or in giving any notice to or

EXHIBIT

C

Blumberg No. 5119

1

making any claim or demand hereunder upon Guarantor (ii) any right to require CNH Capital to (1) proceed against Borrower, any other guarantor or other party liable for the Obligations, (2) proceed against or exhaust any security held from Borrower, or (3) pursue any remedy in CNH Capital's power whatsoever; (iii) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than full payment of the Obligations; (iv) any defense arising out of an election of remedies by CNH Capital, even though that election of remedies, such as non-judicial foreclosure with respect to security for the Obligations, has impaired or destroyed Guarantor's rights of subrogation and reimbursement against Borrower; (v) to the fullest extent permitted by law, all rights and benefits under any statute or other provisions of law purporting to reduce a guarantor's obligations in proportion to the principal obligation; (vi) to the fullest extent permitted by law:  (1) any defense arising as a result of CNH Capital's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, and (2) any defense based on any borrowing or grant or a security interest under Section 364 of the Bankruptcy Code; (vii) without limiting the generality of the foregoing or any other provision hereof, and to the fullest extent permitted by law, all rights and benefits which might otherwise be available to the undersigned: (1) allowing a surety or guarantor defense(s) that are available to the principal, (2) exonerating a surety or guarantor if the original obligation is altered without the surety or guarantor's consent, or if the creditor's remedies against the principal are impaired or suspended, (3) exonerating a surety or guarantor upon the principal's performance or tender of performance, (4) exonerating a surety or guarantor to the extent the creditor declines the surety or guarantor's request to proceed against the principal, (5) entitling a surety or guarantor to the benefit of securities held by the creditor; (6) entitling a surety or guarantor to have the principal's property, or the proceeds thereof, applied first toward the obligation, (7) requiring a secured creditor to enforce liens in any particular order, (8) requiring a creditor to resort first to liens against property not secured by other creditors, and (9) arising under Wisconsin Statutes Chapter 403 (negotiable instruments), including but not limited to Wis. Stats. §§ 403.505 (evidence of dishonor), 403.601 (discharge and effect of discharge), 403.602 (payment), 403.603 (tender of payment), 403.604 (discharge by cancellation or renunciation), 403.605 (discharge of endorsers and accommodation parties); and (viii) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof.

5.  **Does Not Supersede Other Guaranties.**  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the Obligations and/or any obligations of Borrower or any other persons or entities heretofore or hereafter given to CNH Capital, and this Guaranty shall not affect or invalidate any such other guaranties. The liability of Guarantor to CNH Capital shall at all times be deemed to be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties heretofore or hereafter given by Guarantor to CNH Capital.

6.  **Amendments, Etc.**  No amendment or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by CNH Capital, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No notice to or demand on Guarantor shall in any case entitle Guarantor to any other or further notice or demand in similar or other circumstances.

7.  **No Waiver; Remedies.**  No failure on the part of CNH Capital to exercise and no delay in exercising any right or remedy hereunder shall operate as a waiver thereof; nor shall CNH Capital be estopped to exercise any such right because of any such failure or delay; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

8.  **Right to Setoff.**  If Borrower is in default under the Financing Agreements, CNH Capital is hereby authorized at any time and from time to time to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by CNH Capital to or for the credit or the account of Guarantor against any and all of the obligations of Guarantor now or hereafter existing under this Guaranty.  CNH Capital agrees promptly to notify Guarantor after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of CNH Capital under this Section are in addition to other rights and remedies (including, without limitation, other rights of setoff) which CNH Capital may have.

9.  **Continuing Guaranty; Transfer of Financing Agreements.**  This Guaranty is a continuing guaranty and shall be (i) subject to the provisions of Section 2(b) hereof, remain in full force and effect until payment in full of the Obligations and all other amounts payable under this Guaranty, (ii) be binding upon Guarantor, and Guarantor's heirs, executors, successors and assigns, and (iii) inure to the benefit of and be enforceable by CNH Capital and its successors, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), CNH Capital may assign or otherwise transfer all or any part of the Obligations and/or the Financing Agreements to any other person, and such other person shall thereupon become vested with all the rights in respect thereof granted to CNH Capital herein or otherwise.

10.  **No Duty.**  Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the Obligations, and agrees that CNH Capital shall have no duty to advise Guarantor of any information known to CNH Capital regarding any such financial condition or circumstances of Borrower.

11.  **Waiver of Right to Trial by Jury.**  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING:  (a) BROUGHT BY GUARANTOR, BORROWER, CNH CAPITAL OR ANY OTHER PERSON RELATING TO (i) THE OBLIGATIONS AND/OR ANY UNDERSTANDINGS OR PRIOR DEALING BETWEEN THE PARTIES HERETO, (ii) THIS GUARANTY, OR (iii) THE FINANCING AGREEMENTS; OR (b) TO WHICH CNH CAPITAL IS A PARTY. GUARANTOR HEREBY AGREES THAT THIS GUARANTY CONSTITUTES A WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY PURSUANT TO THE PROVISIONS OF ANY APPLICABLE LAW, AND GUARANTOR DOES HEREBY CONSTITUTE AND APPOINT CNH CAPITAL HIS, HER OR ITS TRUE AND LAWFUL ATTORNEY-IN-FACT, WHICH APPOINTMENT IS COUPLED WITH AN INTEREST, AND GUARANTOR DOES HEREBY AUTHORIZE AND EMPOWER CNH CAPITAL, IN THE NAME, PLACE AND STEAD OF GUARANTOR, TO FILE THIS GUARANTY WITH THE CLERK OR JUDGE OF ANY COURT OF COMPETENT JURISDICTION AS A STATUTORY WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY.

12.  **Bankruptcy of Borrower.**  Notwithstanding any modification, discharge or extension of the Obligations or any amendment, modification, stay or cure of CNH Capital's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Borrower whether permanent or temporary, and whether assented to by CNH Capital, Guarantor hereby agrees that Guarantor shall be obligated hereunder to pay and perform the Obligations and discharge other obligations in accordance with the terms of the Obligations and the terms of this Guaranty in effect on the date hereof.  Guarantor understands and acknowledges that by virtue of this Guaranty, Guarantor has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Borrower.  As an example and not in any way of limitation, a subsequent modification of the Obligations in any reorganization case concerning Borrower shall not affect the obligation of Guarantor to pay and perform the Obligations in accordance with their original terms.

13. **Entire Agreement.** EXCEPT AS PROVIDED IN SECTION 5, ABOVE, THIS GUARANTY, AND THE FINANCING AGREEMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF.

14. **Governing Law; Construction.** This Guaranty shall be governed by, and construed in accordance with, the laws of the State of Wisconsin, without regard to its conflict of law principles. For all purposes hereunder, the parties intend that all references in applicable statutes or law to "surety" or "guarantor" shall include the Guarantor, except in instances where CNH Capital's rights, protections, or remedies would be diminished or otherwise impaired. In all events, this Guaranty shall be construed in the broadest sense in favor of CNH Capital.

15. **Joint and Several Liability.** If this Guaranty is executed by more than one party, each such party shall individually constitute a Guarantor hereunder and the liability of each such Guarantor shall be joint and several. CNH Capital may seek to collect from each Guarantor under this Guaranty individually without also seeking to collect from any other Guarantor.

16. **Miscellaneous.**

    (a) Time is of the essence hereof.

    (b) Any married person who signs this instrument hereby expressly agrees that recourse may be had against both his or her separate and community property for all of his or her obligations under this Guaranty.

    (c) If any term, provision, covenant or condition hereof or any application thereof should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions hereof, and all applications thereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

    (d) This Guaranty may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of such counterparts taken together shall constitute but one and the same instrument.

    (e) Section headings in this Guaranty are included for convenience of reference only and do not constitute a part of this Guaranty for any other purpose.

    (f) If: (i) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (ii) an attorney is retained to represent CNH Capital in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (iii) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (iv) an attorney is retained to represent CNH Capital in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to CNH Capital upon demand all reasonable attorneys' fees, costs and expenses, including, without limitation, court costs, filing fees, recording costs, expenses of foreclosure, title insurance premiums, survey costs, minutes of foreclosure, and all other costs and expenses incurred in connection therewith (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Financing Agreements.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Guaranty as of the date first above written.

GUARANTOR:

Terry Abby

_____
Signature



## GUARANTY

THIS GUARANTY (this "Guaranty") is made as of _March 27_, 2012 by the undersigned guarantor or joint and several guarantors (singly and collectively, "Guarantor") in favor of CNH CAPITAL AMERICA LLC ("CNH Capital").

### RECITALS

WHEREAS, Abby Farm Supply, Inc. ("Borrower") and CNH Capital are or may become parties to various and sundry agreements of various dates pursuant to which CNH Capital has and may hereafter extend credit and other financial accommodations and services to or for the benefit of Borrower, which agreements may include, without limitation, a Wholesale Financing and Security Agreement, a Retail Financing Agreement and/or a Merchant Agreement (all of which, as amended and supplemented from time to time, are hereinafter referred to collectively as the "Financing Agreements").

WHEREAS, Guarantor has benefited from CNH Capital's prior loans and other extensions of credit to Borrower, and will benefit directly and indirectly from any future loans and other extensions of credit to Borrower.

WHEREAS, as a condition to making such loans or other extensions of credit, CNH Capital has required that Guarantor execute and deliver this Guaranty.

NOW, THEREFORE, in order to induce CNH Capital to enter into the Financing Agreements and to make loans or other extensions of credit to Borrower, and in consideration thereof, Guarantor hereby agrees as follows:

1. **Guaranty.** Guarantor (or, if Guarantor is more than one person, Guarantor, jointly and severally) hereby absolutely and unconditionally guarantees the payment and performance when due, whether at stated maturity, by acceleration or otherwise, of all present and future obligations and indebtedness of Borrower to the CNH Capital arising under the Financing Agreements or otherwise (the "Obligations").

2. **Guaranty Absolute.**

   (a) Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms of the Financing Agreements, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of CNH Capital with respect thereto. The liability of Guarantor under this Guaranty shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of any of the Financing Agreements (or any other agreement or instrument relating thereto); (ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Financing Agreements, including, without limitation, changes in the terms of disbursement of loan proceeds or repayment thereof, modifications, extensions (including, without limitations, extensions beyond and after the original term) or renewals of payment dates, changes in interest rate or the advancement of additional funds by CNH Capital in its discretion; (iii) any exchange, release or nonperfection of any collateral, or any release, amendment, waiver of or consent to departure from any other guaranty, for all or any of the Obligations; or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower in respect of the Obligations or Guarantor in respect of this Guaranty.

   (b) Notwithstanding any termination of this Guaranty or the cancellation of the Financing Agreements or any other document, instrument or agreement evidencing the Obligations, if at any time any payment of any of the Obligations (from any source) is rescinded, repaid or must otherwise be returned by CNH Capital (i) due to or upon the insolvency, bankruptcy or reorganization of Borrower or Guarantor, or (ii) for any other circumstance, this Guaranty shall continue to be effective or be reinstated, as the case may be, all as though such payment had not been made.

3. **Waiver of Subrogation and Contribution.** As a material inducement to CNH Capital's making loans or other extensions of credit to Borrower, Guarantor hereby absolutely and irrevocably waives any claim or other rights which Guarantor may now have or hereafter acquire against Borrower or any other party liable for the Obligations that arise from the existence or performance of Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, contribution, exoneration, claim or remedy of CNH Capital against Borrower or any collateral which CNH Capital now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, by any payment made hereunder or otherwise, including without limitation, the right to take or receive from Borrower or any other party, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim or other rights. Any agreement between Guarantor and Borrower or any other party which is in any respect contrary to the foregoing shall be null and void and of no force or effect. If any amount shall be paid to Guarantor in violation of the preceding sentences, such amount shall be deemed to have been paid to Guarantor for the benefit of, and held in trust for the benefit of CNH Capital, and shall forthwith be paid to CNH Capital to be credited and applied to any Obligation, whether matured or unmatured, at CNH Capital's sole discretion.

4. **Guaranty Independent Waivers.**

   (a) Guarantor agrees that (i) the obligations hereunder are independent of and in addition to the undertakings of Borrower pursuant to the Financing Agreements, any evidence of indebtedness issued in connection therewith, any mortgage or security agreement given to secure the same, and any other guaranties given in connection with the obligations of Guarantor to CNH Capital, (ii) a separate action may be brought to enforce the provisions hereof whether Borrower is a party in any such action or not, (iii) CNH Capital may at any time, or from time to time, in its sole discretion, (1) exchange, release and/or surrender all or any of the collateral security, or any part thereof, by whomsoever deposited, which is now or may hereafter be held by CNH Capital in connection with all or any of the Obligations; (2) sell and/or purchase all or any such collateral at public or private sale in the manner permitted by law and after giving any notice which may be required, and after deducting all costs and expenses of every kind for collection, sale or delivery, the net proceeds of any such sale may be applied by CNH Capital to all or any of the Obligations; and (3) settle or compromise with Borrower, and/or any other person liable thereon, any and all of the Obligations and/or subordinate the payment of same, or any part thereof, to the payment of any other debts or claims, which may at any time be due or owing to CNH Capital and/or any other person or corporation, and (iv) CNH Capital shall be under no obligation to marshal any assets in favor of Guarantor or in payment of any or all of the Obligations.

   (b) Except as otherwise expressly provided herein or prohibited by applicable law: Guarantor hereby waives (i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance and any other notice with respect to any of the Obligations and this Guaranty, and promptness in commencing suit against any party thereto or liable thereon, and/or in giving any notice to or

1

EXHIBIT D

making any claim or demand hereunder upon Guarantor (ii) any right to require CNH Capital to (1) proceed against Borrower, any other guarantor or other party liable for the Obligations, (2) proceed against or exhaust any security held from Borrower, or (3) pursue any remedy in CNH Capital's power whatsoever; (iii) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than full payment of the Obligations; (iv) any defense arising out of an election of remedies by CNH Capital, even though that election of remedies, such as non-judicial foreclosure with respect to security for the Obligations, has impaired or destroyed Guarantor's rights of subrogation and reimbursement against Borrower; (v) to the fullest extent permitted by law, all rights and benefits under any statute or other provisions of law purporting to reduce a guarantor's obligations in proportion to the principal obligation; (vi) to the fullest extent permitted by law:  (1) any defense arising as a result of CNH Capital's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, and (2) any defense based on any borrowing or grant or a security interest under Section 364 of the Bankruptcy Code; (vii) without limiting the generality of the foregoing or any other provision hereof, and to the fullest extent permitted by law, all rights and benefits which might otherwise be available to the undersigned: (1) allowing a surety or guarantor defense(s) that are available to the principal, (2) exonerating a surety or guarantor if the original obligation is altered without the surety or guarantor's consent, or if the creditor's remedies against the principal are impaired or suspended, (3) exonerating a surety or guarantor upon the principal's performance or tender of performance, (4) exonerating a surety or guarantor to the extent the creditor declines the surety or guarantor's request to proceed against the principal, (5) entitling a surety or guarantor to the benefit of securities held by the creditor, (6) entitling a surety or guarantor to have the principal's property, or the proceeds thereof, applied first toward the obligation, (7) requiring a secured creditor to enforce liens in any particular order, (8) requiring a creditor to resort first to liens against property not secured by other creditors, and (9) arising under Wisconsin Statutes Chapter 403 (negotiable instruments), including but not limited to Wis. Stats. §§ 403.505 (evidence of dishonor), 403.601 (discharge and effect of discharge), 403.602 (payment), 403.603 (tender of payment), 403.604 (discharge by cancellation or renunciation), 403.605 (discharge of endorsers and accommodation parties); and (viii) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof.

5. **Does Not Supersede Other Guaranties.**  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the Obligations and/or any obligations of Borrower or any other persons or entities heretofore or hereafter given to CNH Capital, and this Guaranty shall not affect or invalidate any such other guaranties.  The liability of Guarantor to CNH Capital shall at all times be deemed to be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties heretofore or hereafter given by Guarantor to CNH Capital.

6. **Amendments, Etc.**  No amendment or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by CNH Capital, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  No notice to or demand on Guarantor shall in any case entitle Guarantor to any other or further notice or demand in similar or other circumstances.

7. **No Waiver; Remedies.**  No failure on the part of CNH Capital to exercise and no delay in exercising any right or remedy hereunder shall operate as a waiver thereof; nor shall CNH Capital be estopped to exercise any such right because of any such failure or delay; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

8. **Right to Setoff.**  If Borrower is in default under the Financing Agreements, CNH Capital is hereby authorized at any time and from time to time to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by CNH Capital to or for the credit or the account of Guarantor against any and all of the obligations of Guarantor now or hereafter existing under this Guaranty.  CNH Capital agrees promptly to notify Guarantor after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of CNH Capital under this Section are in addition to other rights and remedies (including, without limitation, other rights of setoff) which CNH Capital may have.

9. **Continuing Guaranty; Transfer of Financing Agreements.**  This Guaranty is a continuing guaranty and shall be (i) subject to the provisions of Section 2(b) hereof, remain in full force and effect until payment in full of the Obligations and all other amounts payable under this Guaranty, (ii) be binding upon Guarantor, and Guarantor's heirs, executors, successors and assigns, and (iii) inure to the benefit of and be enforceable by CNH Capital and its successors, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), CNH Capital may assign or otherwise transfer all or any part of the Obligations and/or the Financing Agreements to any other person, and such other person shall thereupon become vested with all the rights in respect thereof granted to CNH Capital herein or otherwise.

10. **No Duty.**  Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the Obligations, and agrees that CNH Capital shall have no duty to advise Guarantor of any information known to CNH Capital regarding any such financial condition or circumstances of Borrower.

11. **Waiver of Right to Trial by Jury.**  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING: (a) BROUGHT BY GUARANTOR, BORROWER, CNH CAPITAL OR ANY OTHER PERSON RELATING TO (i) THE OBLIGATIONS AND/OR ANY UNDERSTANDINGS OR PRIOR DEALING BETWEEN THE PARTIES HERETO, (ii) THIS GUARANTY, OR (iii) THE FINANCING AGREEMENTS; OR (b) TO WHICH CNH CAPITAL IS A PARTY. GUARANTOR HEREBY AGREES THAT THIS GUARANTY CONSTITUTES A WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY PURSUANT TO THE PROVISIONS OF ANY APPLICABLE LAW, AND GUARANTOR DOES HEREBY CONSTITUTE AND APPOINT CNH CAPITAL HIS, HER OR ITS TRUE AND LAWFUL ATTORNEY-IN-FACT, WHICH APPOINTMENT IS COUPLED WITH AN INTEREST, AND GUARANTOR DOES HEREBY AUTHORIZE AND EMPOWER CNH CAPITAL, IN THE NAME, PLACE AND STEAD OF GUARANTOR, TO FILE THIS GUARANTY WITH THE CLERK OR JUDGE OF ANY COURT OF COMPETENT JURISDICTION AS A STATUTORY WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY.

12. **Bankruptcy of Borrower.**  Notwithstanding any modification, discharge or extension of the Obligations or any amendment, modification, stay or cure of CNH Capital's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Borrower whether permanent or temporary, and whether assented to by CNH Capital, Guarantor hereby agrees that Guarantor shall be obligated hereunder to pay and perform the Obligations and discharge other obligations in accordance with the terms of the Obligations and the terms of this Guaranty in effect on the date hereof.  Guarantor understands and acknowledges that by virtue of this Guaranty, Guarantor has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Borrower.  As an example and not in any way of limitation, a subsequent modification of the Obligations in any reorganization case concerning Borrower shall not affect the obligation of Guarantor to pay and perform the Obligations in accordance with their original terms.

52804A  12/09

13. **Entire Agreement**.   EXCEPT AS PROVIDED IN SECTION 5, ABOVE, THIS GUARANTY, AND THE FINANCING AGREEMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO.  THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF.

14. **Governing Law; Construction**.   This Guaranty shall be governed by, and construed in accordance with, the laws of the State of Wisconsin, without regard to its conflict of law principles  For all purposes hereunder, the parties intend that all references in applicable statutes or law to "surety" or "guarantor" shall include the Guarantor, except in instances where CNH Capital's rights, protections, or remedies would be diminished or otherwise impaired.  In all events, this Guaranty shall be construed in the broadest sense in favor of CNH Capital.

15. **Joint and Several Liability**.   If this Guaranty is executed by more than one party, each such party shall individually constitute a Guarantor hereunder and the liability of each such Guarantor shall be joint and several.  CNH Capital may seek to collect from each Guarantor under this Guaranty individually without also seeking to collect from any other Guarantor.

16. **Miscellaneous**.

   (a)   Time is of the essence hereof.

   (b)   Any married person who signs this instrument hereby expressly agrees that recourse may be had against both his or her separate and community property for all of his or her obligations under this Guaranty.

   (c)   If any term, provision, covenant or condition hereof or any application thereof should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions hereof, and all applications thereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

   (d)   This Guaranty may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of such counterparts taken together shall constitute but one and the same instrument.

   (e)   Section headings in this Guaranty are included for convenience of reference only and do not constitute a part of this Guaranty for any other purpose.

   (f)   If:  (i) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (ii) an attorney is retained to represent CNH Capital in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (iii) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (iv) an attorney is retained to represent CNH Capital in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to CNH Capital upon demand all reasonable attorneys' fees, costs and expenses, including, without limitation, court costs, filing fees, recording costs, expenses of foreclosure, title insurance premiums, survey costs, minutes of foreclosure, and all other costs and expenses incurred in connection therewith (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Financing Agreements.

**IN WITNESS WHEREOF**, the undersigned has duly executed and delivered this Guaranty as of the date first above written.

GUARANTOR:

Linda Abby

Signature

■■■■■■
■■■■■■
■■■■■■
■■■■■■

This ACKNOWLEDGEMENT reflects the information received from the Mississippi State Department of Licensing.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** [optional]
Corporation Service Company    800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703-4261

Filing Number :   20120666330A

Filing Date    :   4/4/2012

A Continuation Statement may be filed within six months of the Lapse Date of 4/4/2017 10:36:25 AM

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | ABBY FARM SUPPLY, INC. | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS  2501 HWY 72 | CITY  WALNUT | STATE  MS | POSTAL CODE  38683 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  Corporation | 1f. JURISDICTION OF ORGANIZATION  MS | 1g. ORGANIZATIONAL ID #, if any  741384 | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CNH CAPITAL AMERICA LLC | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS  700 STATE ST | CITY  RACINE | STATE  WI | POSTAL CODE  53404 | COUNTRY  USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

i.  All of Debtor's now owned and hereafter acquired inventory, equipment, software and other goods wherever located, of whatever kind, make, model, brand or nature, that have been or hereafter are acquired from Secured Party (or any person or entity affiliated with Secured Party) or that are or were financed by Secured Party, together with all trade-ins, accessions and rights relating to, and all proceeds of, any of the foregoing;

ii.  All now owned or hereafter arising or acquired accounts, general intangibles, chattel paper, leases, instruments, documents and agreements arising from Debtor's sale or lease of goods or provision of services, or otherwise, that have been or hereafter are sold or assigned to Secured Party, together with any goods that are the subject of any of the foregoing, all support obligations relating to any of the foregoing, and all proceeds of, any of the foregoing;

iii.  Debtor's present and future accounts with Secured Party and all credits and other amounts due Debtor from Secured Party (or any person or entity affiliated with Secured Party), and all proceeds of any of the foregoing; and

All terms used herein shall have the meaning ascribed to them in the Uniform Commercial Code as in effect as of the date hereof in the State in Wisconsin.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**  [65822872]

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)
This document was auto-generated from data received from the Mississippi State Department of Licensing.

EXHIBIT
E

Blumberg No. 5119

160548595

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS

File Number: 20162151253B
Date Filed: 12/8/2016 11:02:25 AM
C. Delbert Hosemann, Jr.
Secretary of State

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Corporation Service Company**        (800)858-5294

B. EMAIL CONTACT AT FILER (optional)
FilingDept@CSCinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

> **Corporation Service Company**
> **801 Adlai Stevenson Drive**
> **Springfield, IL  62703**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER:
**20120666330A**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item13

2. ☐ **TERMINATION** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8.

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to
☐ CHANGE name and/or address. Complete item 6a or 6b and item 7a or 7b and item 7c
☐ ADD name Complete item 7a or 7b and item 7c
☐ DELETE name Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
ABBY FARM SUPPLY, INC.

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. **CHANGED OR ADDED INFORMATION:** Complete to Assignment or Party Information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

7a. ORGANIZATION'S NAME

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

9a. ORGANIZATION NAME
CNH CAPITAL AMERICA LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
[124505988]

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

ABBY FARMS SUPPLY, INC. DETAIL OF CNHI CAPITAL COLLATERAL

| | YEAR | MAKE | MODEL | DESCRIPTION | SERIAL# | NEW/RYD |
|---|------|------|-------|-------------|---------|---------|
| 1 | 2013 | CASE | CX160 | EXCAVATOR | NDS6F1298 | NEW |
| 2 | 2015 | CASE | 580SN | LOADER BACKHOE | NFC720198 | NEW |
| 3 | 2015 | CASE | CX130 | EXCAVATOR | NFS6D1431 | NEW |
| 4 | 2015 | CASE | 750M | DOZER | NFDC70080 | NEW |
| 5 | 2015 | CASE | 850M | DOZER | NFDC80154 | NEW |
| 6 | 2015 | CASE | TR270 | SKID LOADER | NFM413390 | NEW |
| 7 | 2015 | CASE | 580T | LOADER BACKHOE | NFC720199 | RYD |
| 8 | 2015 | CASE | 580N | LOADER BACKHOE | NFC717036 | RYD |
| 9 | 2015 | CASE | ME55 | EXCAVATOR | NFTN55400 | RYD |
| 10 | 2015 | CASE | 750M | DOZER | NFDC70067 | RYD |
| 11 | 2015 | CASE | 580T | LOADER BACKHOE | NFC720590 | RYD |
| 12 | 2017 | CASE | 1150M | DOZER | NHC105167 | NEW |
| 13 | 2017 | CASE | SR270 | SKID LOADER | NHM439639 | NEW |
| 14 | 2017 | CASE | SV208 | COMPACTOR | NHWTA2003 | NEW |
| 15 | 2018 | CASE | ATTACHMENT | TOOL BOX | Non Serialized | NEW |
| 16 | 2018 | CASE | ATTACHMENT | BUCKET | Non Serialized | NEW |
| 17 | 2018 | CASE | ATTACHMENT | 2 BUCKETS | Non Serialized | NEW |
| 18 | 2018 | CASE | 650M | DOZER | NJC100512 | NEW |
| 19 | 2018 | CASE | 650M | DOZER | NJC100587 | NEW |
| 20 | 2018 | CASE | 621G | WHEEL LOADER | NJF244291 | NEW |
| 21 | 2018 | CASE | 321F | WHEEL LOADER | NJHP00161 | NEW |
| 22 | 2018 | CASE | TV380 | SKID LOADER | NJM445055 | NEW |
| 23 | 2018 | CASE | TV380 | SKID LOADER | NJM445050 | NEW |
| 24 | 2018 | CASE | SV340 | SKID LOADER | NJM449551 | NEW |

Additional Parts Inventory financed by CNHi Capital



EXHIBIT

F

CNH INDUSTRIAL CAPITAL AMERICA
DEALER STATEMENT - MANAGEMENT SUMMARY

ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALITILLO            MS    38866

DEALER-
MAIN DEALER-

PAGE:    1

ACTIVITY PROCESSED DURING
THE PERIOD 11/01/18 - 11/30/18
CURRENCY: U.S. $

| CREDIT LINE | PAST DUE | CURRENT DUE | FUTURE DUE 31 - 60 | FUTURE DUE 61 -90 | FUTURE DUE 91 - 120 | FUTURE DUE OVER 120 | UNPAID BALANCE | CREDIT LIMIT IN MILLIONS |
|---|---|---|---|---|---|---|---|---|
| 01 NEW MACHINERY | 0.00 | 0.00 | 0.00 | 327.00 | 337857.75 | 680850.53 | 1019035.28 | 1.45 |
| 02 TRADE IN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06 MATURED TRADE-IN | 0.00 | 0.00 | 15753.50 | 0.00 | 0.00 | 0.00 | 15753.50 | 0.00 |
| 07 MATURED NEW | 2520.00 | 2875.59 | 2520.00 | 2508.04 | 565132.30 | 2006.16 | 577562.09 | 1.05 |
| 11 PREMIER RENTAL | 4154.18 | 4154.18 | 4154.18 | 4154.18 | 106833.53 | 118059.17 | 241509.42 | 0.00 |
| 15 OPEN ACCT NON-MAC | 44710.76 | 30458.96 | 0.00 | 0.00 | 0.00 | 0.00 | 75169.72 | 0.00 |
| GRAND TOTAL | 51384.94 | 37488.73 | 22427.68 | 6989.22 | 1009823.58 | 800915.86 | 1929030.01 | |

((( INTEREST RECAP SECTION )))

| CREDIT LINE | PRIOR MONTH(S) INV | CURRENT MONTH INV |
|---|---|---|
| 01 NEW MACHINERY | 2.98 | 2362.67 |
| 02 TRADE IN | 225.21 | 0.00 |
| 06 MATURED TRADE-IN | 82.88 | 106.39 |
| 07 MATURED NEW | 4706.08 | 4045.68 |
| 11 PREMIER RENTAL | 2154.79 | 2049.85 |
| 15 OPEN ACCT NON-MAC | 744.12 | 501.62 |
| GRAND TOTAL | 7916.06 | 9066.21 |

TIER RATE  - NOT APPLICABLE
CONTACT YOUR PORTFOLIO MANAGER TO FIND OUT HOW TO REDUCE YOUR INTEREST RATE!


EXHIBIT
G
Blumberg No. 5119



**Dealer Notification Letter**

January 25, 2017

Terry Abby
Abby Farm Supply, Inc.
1521 Hwy 45
Saltillo, MS  38866

Subject: Stop Ship Notification

Dear Terry Abby,

We regret to inform you that it has been necessary to place your account on (Stop Ship) status which in turn limits your wholesale lines of credit because you have not complied with the terms of the Dealer Wholesale Financing and Security Agreement.

Past Due balance of $64,016.28 is due immediately.

Please arrange for the immediate handling of these items so we may give full consideration to re-establishing your lines of credit at the earliest possible date.

(Stop Ship)  CNH Capital will not be providing financing of any new Equipment or accept any trade-note requests during this stop ship.

Sincerely,

Charles Roche
Portfolio Manager
CNH Industrial Capital
262-636-7376

CNH Industrial Capital
5729 Washington Ave
Racine, WI 53406

52831A  Rev. 02/14  Previous editions may not be used.





**Dealer Notification Letter**

February 13, 2017

Terry Abby
Abby Farm Supply, Inc.
1521 Hwy 45
Saltillo, MS  38866

Subject: Stop Ship Notification

Dear Terry Abby,

We regret to inform you that it has been necessary to place your account on (Stop Ship) status which in turn limits your wholesale lines of credit because you have not complied with the terms of the Dealer Wholesale Financing and Security Agreement.

Past Due balance of $48,365.09 is due immediately.

Please arrange for the immediate handling of these items so we may give full consideration to re-establishing your lines of credit at the earliest possible date.

(Stop Ship)  CNH Capital will not be providing financing of any new Equipment or accept any trade-note requests during this stop ship.

Sincerely,

Charles Roche
Portfolio Manager
CNH Industrial Capital
262-636-7376

CNH Industrial Capital
5729 Washington Ave
Racine, WI 53406

52831A  Rev. 02/14  Previous editions may not be used.

EXHIBIT



March 27, 2017

<u>VIA ELECTRONIC TRANSMISSION AND OVERNIGHT DELIVERY</u>

Abby Farm Supply, Inc.
1521 Hwy 45
Saltillo, MS
Attn: Terry Abby

*Re: Notice of Default & Demand for Payment*

Dear Terry Abby:

CNH Industrial Capital America LLC ("CNH Industrial Capital") and Abby Farm Supply Inc., a company incorporated in the State of Mississippi ("Dealer") are parties to various and sundry agreements, including but not limited to that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA") and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA, collectively "Financing Agreements"). CNH Industrial Capital hereby provides Dealer this notice of default under the Financing Agreements (the "Notice").

The defaults, include without limitation, (a) the failure to make timely payments of amounts due and owing to CNH Industrial Capital under the Financing Agreements, and (b) the sale of 2 590SN (serial numbers NGC736261 & NGC736262 (the "Units") out of trust that were sold and delivered to Memphis, Light, Gas & Water on or about December 22, 2016 (the "Defaults"). As of March 28, 2017, the amounts past due total not less than $158,571.93 (the "Default Amount"), which consist of past due payments in the amounts of not less than (x) $9,088.17 for wholegood curtailments, (y) $26,377.89 for the parts open account, and (z) $123,105.87 the total outstanding balance of the Units sold out of trust. As a result of the foregoing Defaults, Dealer has been placed on Stop Ship.

CNH Industrial Capital demands that Dealer immediately pay the Default Amount by making payment in full no later than 5 p.m. (CST), March 31, 2017. In the event payment in full of the Default Amount is not received by 5 p.m. (CST), March 31, 2017, CNH Industrial Capital may, and without further notice, declare all outstanding amounts and Obligations (as defined under the WFSA) immediately due and payable. As of March 27, 2017, the total amount of the Obligations plus all lawfully accrued interest thereon is not less than $2,249,222.14. CNH Industrial Capital continues to reserve the right, in its sole discretion, to not make any or all requested advances either before or after that date.

Acceptance of any late payment by CNH Industrial Capital will not be a waiver of any default, whether now existing or hereafter arising. Nothing contained herein shall be construed as an election of





remedies or a waiver of any right or remedy with respect to any default or otherwise. CNH Industrial Capital requires that Dealer timely perform its future obligations under the parties' agreements and adhere to the terms and conditions therein. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

In the event that the Obligations are guaranteed, this Notice is being sent to the guarantors listed below, if any. The guarantors are advised that they are also obligated for all costs of collection including attorney fees should the situation make it necessary.

If you have any questions, you may contact me at 262-636-7376.

Sincerely,

Charles Roche
Portfolio Manager
CNH Industrial Capital America LLC

cc: Terry Abby
    Linda Abby
    Jeff Schmidt
    Darren Albus



### <u>Dealer Notification Letter</u>

08/18/2017

TERRY ABBY
ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO MS 38866

Subject:    Stop Ship Parts and Manual Approval

Dear Terry Abby,

We regret to inform you that it has been necessary to place your account on **Stop Ship Parts and Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Past due June interest

Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

CNH Industrial Capital will not be providing financing of any parts requests during stop ship.

Sincerely,

*Josh Jordan*

Josh Jordan
Portfolio Manager
262-636-5821
CNH Industrial Capital



EXHIBIT

K



**Notice of Credit Rating / Credit Limit for:** ▓▓▓▓ - **ABBY FARM SUPPLY, INC.**

09/15/2017

**Dealer # :** ▓▓▓▓**/ Dealer Name :** ABBY FARM SUPPLY, INC.

A review of the above listed dealer's credit file has been conducted and approved by the relevant approval authority within CNH Industrial Capital.  The dealership's financial condition as of Fiscal Year 2015 as well as other relevant factors have been taken into consideration.

**Summary of credit ratings and aggregate limits:**

**Prior:**    **Credit Rating:** Good Standing   **Credit Limit:** $4,000,000

**Current:**   **Credit Rating:** Needs Improvement   **Credit Limit:** $4,000,000

**PD Financials:** Your credit rating has been temporarily downgraded to "Needs Improvement" due to late financial statement submission.

**Submitting on BMS:** BMS is a software tool that enables a participating dealership to submit their monthly financial information electronically and receive monthly benchmarking reports, comparing their performance with their peer groups' performance.  Participating dealers, therefore, are in a better position to identify operational opportunities and analyze, plan or adjust to changing market conditions.  For further information, please contact your Dealer Development Manager, CNH Industrial Capital Wholesale Portfolio Manager, or myself.

*Notwithstanding the foregoing, the wholesale credit line is expressly subject to the written terms of the wholesale financing agreements under which it was extended. It is a discretionary line of credit and may be modified, suspended or terminated at our election or sole discretion.*

Please let me know if you have any further questions.

Regards,
Matt Burmeister
CNH Industrial Capital
Phone #: 262-636-4906
Fax #: 866-596-5338



Page 1 of 1



## Dealer Notification Letter

10/02/2017

TERRY ABBY
ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO MS  38866

Subject:   Stop Ship Parts and Manual Approval

Dear  Terry Abby,

We regret to inform you that it has been necessary to place your account on **Stop Ship Parts and Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Past due parts account.


Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

CNH Industrial Capital will not be providing financing of any parts requests during stop ship.


Sincerely,

*Josh Jordan*


Josh Jordan
Portfolio Manager
262-636-5821
CNH Industrial Capital





## <u>Dealer Notification Letter</u>

10/04/2017

TERRY ABBY
ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO MS  38866

Subject:   Manual Approval

Dear  Terry Abby,

We regret to inform you that it has been necessary to place your account on **Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Parts account has been paid and account is being upgraded to Manual Approval.  Account must be kept current.

Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

Sincerely,

*Josh Jordan*

Josh Jordan
Portfolio Manager
262-636-5821
CNH Industrial Capital

**From:**      Jeri Hamilton
**To:**        ALBUS Dennis (CNH Industrial)
**Subject:**   Abby Equipment Past Due Parts Bill
**Date:**      Tuesday, July 31, 2018 4:53:02 PM

We will be able to settle our account in full tomorrow.  Terry is transferring some money to the business account and was unable to get it done today.

Thanks,


*Jeri Hamilton*
Controller
Abby Equipment
Saltillo, MS
(662)869-3439



| | |
|---|---|
| **From:** | ALBUS Dennis (CNH Industrial) |
| **To:** | tabby@abby-usa.com |
| **Cc:** | ALBUS Dennis (CNH Industrial); LAWSON Matt (CNH Industrial); MOORE Scott (CNH Industrial); RICHARDSON Michael (CNH Industrial) |
| **Subject:** | Abby Equipment - Contact Person, Past Dues and Aged |
| **Date:** | Tuesday, September 4, 2018 11:31:10 AM |

Mr. Abby,

Thank you for your time earlier today in discussing your account.

I will be reaching out to Scott Moore to see what assistance we can provide with moving the aged inventory.
With that being said it is extremely important that we remain current on the monthly statement.
Understand you are moving funds around in order for the Past Dues to be paid later today and I have up lined that data to my bosses.

Wish you the best of luck with your possible sale and think that Mike Richardson would be the best contact with any questions on that.

I will be your contact for any questions regarding your account on the Capital side.

My contact information is as follows:
Dennis Albus
Field Credit Specialist
CNH Capital Industrial
(512)423-3897   Cell
(512)244-3882  Office
dennis.albus@cnhind.com


Thanks again,
Dennis



From: ALBUS Dennis (CNH Industrial)
To: Hamilton, Jeri (Abby) (jeri_hamilton@yahoo.com)
Cc: labby@abby-usa.com; MOORE Scott (CNH Industrial); ALBUS Dennis (CNH Industrial)
Subject: Abby Equipment ▓▓▓▓ Past Dues September 2018
Date: Friday, September 21, 2018 4:27:59 PM

Jeri,

Spoke with Mr. Abby about this month's statement earlier today.

Explained with month end ending on a Sunday (next week) we are trying to get all paid by Thursday the 27th.

Think he will be reaching out to you as well about this.

Scott was able to transfer out the compacter so it no longer shows on statement for freight due.

Also saw a few credits that can help with the settlement:

INVOICE# —DESCRIPTION— TYP LINE   UNPAID BAL
41447324A8 WARRANTY CREDIT   WAR 015   315.86-
41447875A8 WARRANTY CREDIT   WAR 015   450.42-
6850679870 ADJ PSO 6850632230 PTS 015   912.13-

Here is what still shows to be paid:

| Inv # | CrL | Rec'v Desc | S/N | Inv Dt | Mat Dt | Orig Amt | O/S Balance | PD | |
|---|---|---|---|---|---|---|---|---|---|
| 04502238X1 | 001 | CE ATCH 772962031 | | 7/23/18 | 8/1/19 | $5,877.20 | $5,877.20 | $461.00 | |
| 04502595X1 | 001 | CM SV208DSM T4 FINAL | NHWTA2003 | 7/23/18 | 8/1/19 | $92,428.78 | $92,428.78 | $1,191.00 | $1,652.00 |
| C0180801P7 | 001 | NEW MACHINERY | | 8/31/18 | 9/1/18 | $114.48 | $114.48 | $114.48 | $114.48 |
| C8050262X2 | 002 | 580SN 4WD T4 FINA | NFC720621 | 2/15/18 | 11/7/18 | $43,527.00 | $34,821.60 | $4,352.70 | $4,352.70 |
| C0180802P7 | 002 | TRADE IN | | 8/31/18 | 9/1/18 | $293.53 | $293.53 | $293.53 | $293.53 |
| C0180806P7 | 006 | MATURED TRADE-IN | | 8/31/18 | 9/1/18 | $110.38 | $110.38 | $110.38 | $110.38 |
| 03993816X1 | 007 | MX CX36B ROPS T4 FIN | NFTN66527 | 11/12/15 | 2/1/19 | $37,233.04 | $15,108.04 | $2,520.00 | $2,520.00 |
| C0180807P7 | 007 | MATURED NEW | | 8/31/18 | 9/1/18 | $4,386.44 | $4,386.44 | $4,386.44 | $4,386.44 |
| C5051350T3 | 011 | SL-V27T-NDM461974 | NDM461974 | 7/18/16 | 7/18/18 | $15,705.14 | $9,275.30 | $267.91 | |
| 03880038T3 | 011 | UT-580T-NFC720199 | NFC720199 | 7/18/16 | 7/18/18 | $72,216.42 | $53,646.42 | $742.80 | |
| 03888782T3 | 011 | UT-580N-NFC717036 | NFC717036 | 7/18/16 | 7/18/18 | $59,139.26 | $43,932.01 | $608.29 | |
| 03904964T3 | 011 | MX-ME55-NFTN55400 | NFTN55400 | 7/18/16 | 7/18/19 | $47,834.13 | $28,250.37 | $815.99 | |
| 03909468T3 | 011 | CE-750M-NFDC70067 | NFDC70067 | 12/31/15 | 12/28/18 | $93,034.68 | $63,263.48 | $930.35 | |
| 03920569T3 | 011 | UT-580T-NFC720590 | NFC720590 | 12/31/15 | 12/28/18 | $76,693.08 | $51,450.20 | $788.84 | $4,154.18 |
| C0180811P7 | 011 | PREMIER RENTAL | | 8/31/18 | 9/1/18 | $2,175.00 | $2,175.00 | $2,175.00 | $2,175.00 |
| 08540708M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $1,020.54 | $1,020.54 | $1,020.54 | |
| 08540709M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $808.45 | $808.45 | $808.45 | |
| 5850076283 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $394.99 | $394.99 | $394.99 | |
| 6850523303 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $972.37 | $972.37 | $972.37 | |
| 6850523304 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $162.44 | $162.44 | $162.44 | |
| 6850523578 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $1,057.91 | $1,057.91 | $1,057.91 | |
| 6850523579 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $323.95 | $323.95 | $323.95 | |
| 6850523580 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $60.44 | $60.44 | $60.44 | |
| 6850527878 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $129.31 | $129.31 | $129.31 | |
| 6850528131 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $812.61 | $812.61 | $812.61 | |
| 6850528132 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $762.35 | $762.35 | $762.35 | |
| 6850528133 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $39.93 | $39.93 | $39.93 | |
| 6850528134 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $455.77 | $455.77 | $455.77 | |
| 6850528135 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $85.90 | $85.90 | $85.90 | |
| 6850531656 | 015 | PARTS AND CHARGES | | 8/3/18 | 9/1/18 | $820.55 | $820.55 | $820.55 | |
| 6850531657 | 015 | PARTS AND CHARGES | | 8/3/18 | 9/1/18 | $1,011.26 | $1,011.26 | $1,011.26 | |
| 6850536064 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $1,291.43 | $1,291.43 | $1,291.43 | |
| 6850536065 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $158.72 | $158.72 | $158.72 | |
| 6850536286 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $1,194.68 | $1,194.68 | $1,194.68 | |
| 6850536287 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $67.91 | $67.91 | $67.91 | |
| 6850540201 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $364.56 | $364.56 | $364.56 | |
| 6850540453 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $1,558.97 | $1,558.97 | $1,558.97 | |
| 6850540454 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $128.57 | $128.57 | $128.57 | |
| 6850544545 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $2,116.92 | $2,116.92 | $2,116.92 | |
| 6850544780 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $1,999.36 | $1,999.36 | $1,999.36 | |
| 6850544781 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $62.86 | $62.86 | $62.86 | |
| 6850544782 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $57.50 | $57.50 | $57.50 | |
| 6850544783 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $26.09 | $26.09 | $26.09 | |
| 6850544784 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $113.83 | $113.83 | $113.83 | |
| 6850548854 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $71.60 | $71.60 | $71.60 | |
| 6850549104 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $545.64 | $545.64 | $545.64 | |
| 6850549105 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $198.10 | $198.10 | $198.10 | |
| 6850552839 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $38.45 | $38.45 | $38.45 | |
| 6850553060 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $559.63 | $559.63 | $559.63 | |
| 6850553061 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $31.90 | $31.90 | $31.90 | |
| 6850553062 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $81.08 | $81.08 | $81.08 | |
| 6850554529 | 015 | PARTS AND CHARGES | | 8/12/18 | 9/1/18 | $5.86 | $5.86 | $5.86 | |
| 6850557894 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $81.60 | $81.60 | $81.60 | |
| 6850557895 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $51.65 | $51.65 | $51.65 | |


EXHIBIT P

Blumberg No. 5119

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6850557896 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $88.50 | $88.50 | $88.50 |
| 6850558119 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $811.38 | $811.38 | $811.38 |
| 6850558120 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $58.80 | $58.80 | $58.80 |
| 6850558121 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $59.45 | $59.45 | $59.45 |
| 6850558122 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $154.91 | $154.91 | $154.91 |
| 6850558123 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $368.72 | $368.72 | $368.72 |
| 6850558124 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $883.44 | $883.44 | $883.44 |
| 6850562363 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $968.83 | $968.83 | $968.83 |
| 6850562641 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $3,487.66 | $3,487.66 | $3,487.66 |
| 6850562642 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $16.57 | $16.57 | $16.57 |
| 6850562643 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $85.56 | $85.56 | $85.56 |
| 6850566956 | 015 | PARTS AND CHARGES | | 8/15/18 | 9/1/18 | $347.68 | $347.68 | $347.68 |
| 6850567224 | 015 | PARTS AND CHARGES | | 8/15/18 | 9/1/18 | $20.67 | $20.67 | $20.67 |
| 6850571310 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $59.44 | $59.44 | $59.44 |
| 6850571589 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $988.49 | $988.49 | $988.49 |
| 6850571590 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $70.98 | $70.98 | $70.98 |
| 6850571591 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $75.70 | $75.70 | $75.70 |
| 6850575937 | 015 | PARTS AND CHARGES | | 8/17/18 | 9/1/18 | $890.69 | $890.69 | $890.69 |
| 6850580951 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $890.89 | $890.89 | $890.89 |
| 6850580952 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $157.25 | $157.25 | $157.25 |
| 6850580953 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $202.22 | $202.22 | $202.22 |
| 6850580954 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $61.97 | $61.97 | $61.97 |
| 6850580955 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $308.22 | $308.22 | $308.22 |
| 6850580956 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $994.57 | $994.57 | $994.57 |
| 6850585424 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $586.85 | $586.85 | $586.85 |
| 6850585726 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $8.80 | $8.80 | $8.80 |
| 6850585727 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $78.87 | $78.87 | $78.87 |
| 6850585728 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $66.55 | $66.55 | $66.55 |
| 6850590417 | 015 | PARTS AND CHARGES | | 8/22/18 | 9/1/18 | $972.89 | $972.89 | $972.89 |
| 6850594495 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $763.75 | $763.75 | $763.75 |
| 6850594749 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $180.32 | $180.32 | $180.32 |
| 6850594750 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $302.51 | $302.51 | $302.51 |
| 6850594751 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $198.43 | $198.43 | $198.43 |
| 6850598757 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $965.59 | $965.59 | $965.59 |
| 6850599022 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $101.72 | $101.72 | $101.72 |
| 6850599023 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $349.34 | $349.34 | $349.34 |
| 6850599024 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $537.39 | $537.39 | $537.39 |
| 6850599025 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $270.91 | $270.91 | $270.91 |
| 6850600779 | 015 | PARTS AND CHARGES | | 8/26/18 | 9/1/18 | $22.22 | $22.22 | $22.22 |
| 6850604500 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $331.38 | $331.38 | $331.38 |
| 6850604739 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $866.29 | $866.29 | $866.29 |
| 6850604740 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $47.56 | $47.56 | $47.56 |
| 6850608832 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $120.79 | $120.79 | $120.79 |
| 6850609102 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $820.24 | $820.24 | $820.24 |
| 6850609103 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $340.53 | $340.53 | $340.53 |
| 6850613573 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $37.87 | $37.87 | $37.87 |
| 6850613574 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $101.23 | $101.23 | $101.23 |
| 6850613575 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $249.91 | $249.91 | $249.91 |
| 6850613576 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $456.25 | $456.25 | $456.25 |
| 6850613577 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $76.03 | $76.03 | $76.03 |
| 6850613578 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $235.78 | $235.78 | $235.78 |
| 6850617586 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $1,275.21 | $1,275.21 | $1,275.21 |
| 6850617855 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $619.88 | $619.88 | $619.88 |
| 6850617856 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $171.67 | $171.67 | $171.67 |
| 6850617857 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $433.58 | $433.58 | $433.58 |
| 6850617858 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $481.12 | $481.12 | $481.12 |
| 6850617859 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $149.87 | $149.87 | $149.87 |
| 6850617860 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $97.60 | $97.60 | $97.60 |
| 6850621793 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $7.78 | $7.78 | $7.78 |
| 6850622065 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $654.54 | $654.54 | $654.54 |
| 6850622066 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $1,019.15 | $1,019.15 | $1,019.15 |
| 6850622067 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $28.30 | $28.30 | $28.30 |
| 6850622068 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $24.92 | $24.92 | $24.92 |
| C8152809M6 | 015 | BMS MONTHLY FEE | | 8/25/18 | 9/1/18 | $108.25 | $108.25 | $108.25 | $45,940.14 |
| C0180815P7 | 015 | OPEN ACCT NON-MACH/P | | 8/31/18 | 9/1/18 | $565.29 | $565.29 | $565.29 | $565.29 |
| | | | | | | | | $66,264.14 |

From: ALBUS Dennis (CNH Industrial)
To: tabby@abby-usa.com
Cc: MOORE Scott (CNH Industrial); Hamilton, Jeri (Abby) (jeri_hamilton@yahoo.com); ALBUS Dennis (CNH Industrial)
Subject: RE: Abby Equipment ██████ Past Dues September 2018
Date: Tuesday, October 2, 2018 2:08:53 PM

Mr. Abby,

Must clear the Past Due balances today to avoid possible parts ordering disruption.

Thanx,
Dennis

**From:** ALBUS Dennis (CNH Industrial)
**Sent:** Tuesday, September 25, 2018 4:37 PM
**To:** Hamilton, Jeri (Abby) {jeri_hamilton@yahoo.com} <jeri_hamilton@yahoo.com>
**Cc:** tabby@abby-usa.com; MOORE Scott (CNH Industrial) <scott.moore@casece.com>; ALBUS Dennis (CNH Industrial) <dennis.albus@cnhind.com>
**Subject:** RE: Abby Equipment ██████ Past Dues September 2018

Jeri,

Good visiting with you.
I forgot to let you know another credit has processed:

**41452995A8 WARRANTY CREDIT    WAR 015    3,492.29-**

Thanx,
Dennis

**From:** ALBUS Dennis (CNH Industrial)
**Sent:** Friday, September 21, 2018 4:28 PM
**To:** Hamilton, Jeri (Abby) {jeri_hamilton@yahoo.com} <jeri_hamilton@yahoo.com>
**Cc:** tabby@abby-usa.com; MOORE Scott (CNH Industrial) <scott.moore@casece.com>; ALBUS Dennis (CNH Industrial) <dennis.albus@cnhind.com>
**Subject:** Abby Equipment ██████ Past Dues September 2018

Jeri,

Spoke with Mr. Abby about this month's statement earlier today.
Explained with month end ending on a Sunday (next week) we are trying to get all paid by Thursday the 27th.
Think he will be reaching out to you as well about this.
Scott was able to transfer out the compacter so it no longer shows on statement for freight due.
Also saw a few credits that can help with the settlement:

INVOICE# ----DESCRIPTION---- TYP LINE   UNPAID BAL
41447324A8 WARRANTY CREDIT   WAR 015   315.86-
41447875A8 WARRANTY CREDIT   WAR 015   450.42-
6850679870 ADJ PSO 6850623230 PTS 015   912.13-

Here is what still shows to be paid:

| Inv # | CrL | Rec'v Desc | S/N | Inv Dt | Mat Dt | Orig Amt | O/S Balance | PD | |
|---|---|---|---|---|---|---|---|---|---|
| 04502238X1 | 001 | CE ATCH 772962031 | | 7/23/18 | 8/1/19 | $5,877.20 | $5,877.20 | $461.00 | |
| 04502595X1 | 001 | CM SV208DSM T4 FINAL | NHWTA2003 | 7/23/18 | 8/1/19 | $92,428.78 | $92,428.78 | $1,191.00 | $1,652.00 |
| C0180801P7 | 001 | NEW MACHINERY | | 8/31/18 | 9/1/18 | $114.48 | $114.48 | $114.48 | $114.48 |
| C8050262X2 | 002 | 580SN 4WD T4 FINA | NFC720621 | 2/15/18 | 11/1/18 | $43,527.00 | $34,821.60 | $4,352.70 | $4,352.70 |
| C0180802P7 | 002 | TRADE IN | | 8/31/18 | 9/1/18 | $293.53 | $293.53 | $293.53 | $293.53 |
| C0180806P7 | 006 | MATURED TRADE-IN | | 8/31/18 | 9/1/18 | $110.38 | $110.38 | $110.38 | $110.38 |
| 03993816X1 | 007 | MX CX36B ROPS T4 FIN | NFTN66527 | 11/12/15 | 2/1/19 | $37,233.04 | $15,108.04 | $2,520.00 | $2,620.00 |
| C0180807P7 | 007 | MATURED NEW | | 8/31/18 | 9/1/18 | $4,386.44 | $4,386.44 | $4,386.44 | $4,386.44 |
| C5051350T3 | 011 | SL-V27T-NDM461974 | NDM461974 | 7/18/18 | 7/18/19 | $15,705.14 | $9,275.30 | $267.91 | |
| 03880038T3 | 011 | UT-580T-NFC720199 | NFC720199 | 7/18/16 | 7/18/19 | $72,216.42 | $53,646.42 | $742.80 | |
| 03888782T3 | 011 | UT-580N-NFC717036 | NFC717036 | 7/18/16 | 7/18/19 | $59,139.26 | $43,932.01 | $608.29 | |
| 03904964T3 | 011 | MX-ME55-NFTN55400 | NFTN55400 | 7/18/16 | 7/18/19 | $47,834.13 | $28,250.37 | $815.99 | |
| 03909468T3 | 011 | CE-750M-NFDC70067 | NFDC70067 | 12/31/15 | 12/28/18 | $93,034.68 | $63,263.48 | $930.35 | |
| 03920569T3 | 011 | UT-580T-NFC720590 | NFC720590 | 12/31/15 | 12/28/18 | $76,693.08 | $51,450.20 | $788.84 | $4,154.18 |
| C0180811P7 | 011 | PREMIER RENTAL | | 8/31/18 | 9/1/18 | $2,175.00 | $2,175.00 | $2,175.00 | $2,175.00 |
| 08540708M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $1,020.54 | $1,020.54 | $1,020.54 | |
| 08540709M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $808.45 | $808.45 | $808.45 | |
| 5850076283 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $394.99 | $394.99 | $394.99 | |
| 6850523303 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $972.37 | $972.37 | $972.37 | |
| 6850523304 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $162.44 | $162.44 | $162.44 | |
| 6850523578 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $1,057.91 | $1,057.91 | $1,057.91 | |
| 6850523579 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $323.95 | $323.95 | $323.95 | |
| 6850523580 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $60.44 | $60.44 | $60.44 | |
| 6850527878 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $129.31 | $129.31 | $129.31 | |
| 6850528131 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $812.61 | $812.61 | $812.61 | |
| 6850528132 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $762.35 | $762.35 | $762.35 | |



EXHIBIT
Q

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6850528133 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $39.93 | $39.93 | $39.93 |
| 6850528134 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $455.77 | $455.77 | $455.77 |
| 6850528135 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $85.90 | $85.90 | $85.90 |
| 6850531656 | 015 | PARTS AND CHARGES | | 8/3/18 | 9/1/18 | $820.55 | $820.55 | $820.55 |
| 6850531657 | 015 | PARTS AND CHARGES | | 8/3/18 | 9/1/18 | $1,011.26 | $1,011.26 | $1,011.26 |
| 6850536064 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $1,291.43 | $1,291.43 | $1,291.43 |
| 6850536065 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $158.72 | $158.72 | $158.72 |
| 6850536286 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $1,194.68 | $1,194.68 | $1,194.68 |
| 6850536287 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $67.91 | $67.91 | $67.91 |
| 6850540201 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $364.56 | $364.56 | $364.56 |
| 6850540453 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $1,558.97 | $1,558.97 | $1,558.97 |
| 6850540454 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $128.57 | $128.57 | $128.57 |
| 6850544545 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $2,116.92 | $2,116.92 | $2,116.92 |
| 6850544780 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $1,999.36 | $1,999.36 | $1,999.36 |
| 6850544781 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $62.86 | $62.86 | $62.86 |
| 6850544782 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $57.50 | $57.50 | $57.50 |
| 6850544783 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $26.09 | $26.09 | $26.09 |
| 6850544784 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $113.83 | $113.83 | $113.83 |
| 6850548854 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $71.60 | $71.60 | $71.60 |
| 6850549104 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $545.64 | $545.64 | $545.64 |
| 6850549105 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $198.10 | $198.10 | $198.10 |
| 6850552839 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $38.45 | $38.45 | $38.45 |
| 6850553060 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $559.63 | $559.63 | $559.63 |
| 6850553061 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $31.90 | $31.90 | $31.90 |
| 6850553062 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $81.08 | $81.08 | $81.08 |
| 6850554529 | 015 | PARTS AND CHARGES | | 8/12/18 | 9/1/18 | $5.86 | $5.86 | $5.86 |
| 6850557894 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $81.60 | $81.60 | $81.60 |
| 6850557895 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $51.65 | $51.65 | $51.65 |
| 6850557896 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $88.50 | $88.50 | $88.50 |
| 6850558119 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $811.38 | $811.38 | $811.38 |
| 6850558120 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $58.80 | $58.80 | $58.80 |
| 6850558121 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $59.45 | $59.45 | $59.45 |
| 6850558122 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $154.91 | $154.91 | $154.91 |
| 6850558123 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $368.72 | $368.72 | $368.72 |
| 6850558124 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $883.44 | $883.44 | $883.44 |
| 6850562363 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $968.83 | $968.83 | $968.83 |
| 6850562641 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $3,487.66 | $3,487.66 | $3,487.66 |
| 6850562642 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $16.57 | $16.57 | $16.57 |
| 6850562643 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $85.56 | $85.56 | $85.56 |
| 6850566956 | 015 | PARTS AND CHARGES | | 8/15/18 | 9/1/18 | $347.68 | $347.68 | $347.68 |
| 6850567224 | 015 | PARTS AND CHARGES | | 8/15/18 | 9/1/18 | $20.67 | $20.67 | $20.67 |
| 6850571310 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $59.44 | $59.44 | $59.44 |
| 6850571589 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $988.49 | $988.49 | $988.49 |
| 6850571590 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $70.98 | $70.98 | $70.98 |
| 6850571591 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $75.70 | $75.70 | $75.70 |
| 6850575937 | 015 | PARTS AND CHARGES | | 8/17/18 | 9/1/18 | $890.69 | $890.69 | $890.69 |
| 6850580951 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $890.89 | $890.89 | $890.89 |
| 6850580952 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $157.25 | $157.25 | $157.25 |
| 6850580953 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $202.22 | $202.22 | $202.22 |
| 6850580954 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $61.97 | $61.97 | $61.97 |
| 6850580955 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $308.22 | $308.22 | $308.22 |
| 6850580956 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $994.57 | $994.57 | $994.57 |
| 6850585424 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $586.85 | $586.85 | $586.85 |
| 6850585726 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $8.80 | $8.80 | $8.80 |
| 6850585727 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $78.87 | $78.87 | $78.87 |
| 6850585728 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $66.55 | $66.55 | $66.55 |
| 6850590417 | 015 | PARTS AND CHARGES | | 8/22/18 | 9/1/18 | $972.89 | $972.89 | $972.89 |
| 6850594495 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $763.75 | $763.75 | $763.75 |
| 6850594749 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $180.32 | $180.32 | $180.32 |
| 6850594750 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $302.51 | $302.51 | $302.51 |
| 6850594751 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $198.43 | $198.43 | $198.43 |
| 6850598757 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $965.59 | $965.59 | $965.59 |
| 6850599022 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $101.72 | $101.72 | $101.72 |
| 6850599023 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $349.34 | $349.34 | $349.34 |
| 6850599024 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $537.39 | $537.39 | $537.39 |
| 6850599025 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $270.91 | $270.91 | $270.91 |
| 6850600779 | 015 | PARTS AND CHARGES | | 8/26/18 | 9/1/18 | $22.22 | $22.22 | $22.22 |
| 6850604500 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $331.38 | $331.38 | $331.38 |
| 6850604739 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $866.29 | $866.29 | $866.29 |
| 6850604740 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $47.56 | $47.56 | $47.56 |
| 6850608832 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $120.79 | $120.79 | $120.79 |
| 6850609102 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $820.24 | $820.24 | $820.24 |
| 6850609103 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $340.53 | $340.53 | $340.53 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6850613573 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $37.87 | $37.87 | $37.87 |
| 6850613574 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $101.23 | $101.23 | $101.23 |
| 6850613575 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $249.91 | $249.91 | $249.91 |
| 6850613576 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $456.25 | $456.25 | $456.25 |
| 6850613577 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $76.03 | $76.03 | $76.03 |
| 6850613578 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $235.78 | $235.78 | $235.78 |
| 6850617586 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $1,275.21 | $1,275.21 | $1,275.21 |
| 6850617855 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $619.88 | $619.88 | $619.88 |
| 6850617856 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $171.67 | $171.67 | $171.67 |
| 6850617857 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $433.58 | $433.58 | $433.58 |
| 6850617858 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $481.12 | $481.12 | $481.12 |
| 6850617859 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $149.87 | $149.87 | $149.87 |
| 6850617860 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $97.60 | $97.60 | $97.60 |
| 6850621793 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $7.78 | $7.78 | $7.78 |
| 6850622065 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $654.54 | $654.54 | $654.54 |
| 6850622066 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $1,019.15 | $1,019.15 | $1,019.15 |
| 6850622067 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $28.30 | $28.30 | $28.30 |
| 6850622068 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $24.92 | $24.92 | $24.92 |
| C8152809M6 | 015 | BMS MONTHLY FEE | | 8/25/18 | 9/1/18 | $108.25 | $108.25 | $108.25 | $45,940.14 |
| C0180815P7 | 015 | OPEN ACCT NON-MACH/P | | 8/31/18 | 9/1/18 | $565.29 | $565.29 | $565.29 | $565.29 |

$66,264.14



### <u>Dealer Notification Letter</u>

TERRY ABBY                                                                      12/11/2018
ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO MS  38866


Subject:    Stop Ship Parts and Manual Approval


Dear  TERRY ABBY,


We regret to inform you that it has been necessary to place your account on **Stop Ship Parts and Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Dealer is Past Due on November statement


Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

CNH Industrial Capital will not be providing financing of any parts requests during stop ship.


Sincerely,

*Dennis Albus*


Dennis Albus
Field Credit Specialist
512-423-3897
CNH Industrial Capital





December 12, 2018

**VIA ELECTRONIC AND OVERNIGHT DELIVERY**

Abby Farm Supply. Inc.
DBA Abby Equipment
POB 1486
Saltillo, MS 38866

Attn: Terry Abby

      *Re: Notice of Default and Demand for Payment*

Dear Mr. Abby:

CNH Industrial Capital America LLC ("CNH Industrial Capital") and Abby Equipment ("Dealer") are parties to, among other agreements, that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA"), and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA collectively, the "Financing Agreements"). CNH Industrial Capital hereby provides Dealer this notice of default under the Financing Agreements (the "Notice of Default").

The defaults include, among others, the failure to make payments in accordance with the terms and conditions of the Financing Agreements for a second month (the "Defaults"). Specifically, Dealer has failed to pay US$56,781.00 for the month of November 2018 and US$44,034.94 for the month of December (the "Default Payment Amount").

As a result of the foregoing Defaults, CNH Industrial Capital demands Dealer make immediate payment of US$100,815.94 to CNH Industrial in indefeasible funds by than 12:00 p.m. (Central), on December 22, 2018. CNH Industrial Capital is entitled to exercise all of its rights and remedies under the Financing Agreements without further notice of any kind to any party, including acceleration of all the Obligations (as defined in the WFSA) which are not less than US$1,923,901.85.

In the event that CNH Industrial Capital does not receive the Default Payment Amount by 12:00 p.m. (Central), on December 22, 2018, the Financing Agreements shall terminate automatically and without further notice in accordance with the terms therein and the Obligations accelerated. In such an event, Dealer shall be required to (1) make immediate payment of US$1,923,901.85 representing the total outstanding Obligations for the remaining Collateral.

Acceptance of any late payment by CNH Industrial Capital will not be a waiver of any Default, whether now existing or hereafter arising. CNH Industrial Capital requires that Dealer continue to timely perform its future obligations under the parties' agreements and adhere to the terms and conditions therein.





Nothing contained herein shall be construed as an election of remedies or a waiver of any right or remedy with respect to the Defaults or otherwise. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

Finally, this Notice of Default is also being provided to the Dealer guarantors, if any.  As guarantors, they are advised that they are also obligated for all costs of collection including attorney fees.

If you have any questions, you may contact me at (512) 423-3897.

Sincerely,

Dennis Albus
CNH Industrial Capital America LLC

cc:  Terry Abby
     Linda Abby
     Abby Manufacturing Co., Inc.
     Jeff Schmidt
     Matt Lawson

**CNH INDUSTRIAL** | CAPITAL

December 31, 2018

**VIA ELECTRONIC AND OVERNIGHT DELIVERY**

Abby Farm Supply. Inc. dba Abby Equipment
POB 1486
Saltillo, MS 38866
Attn: Terry Abby

   *Re: Notice of Termination*

Dear Mr. Abby:

CNH Industrial Capital America LLC ("CNH Industrial Capital") and Abby Farm Supply. Inc. dba Abby Equipment ("Dealer") are parties to, among other agreements, that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA"), and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA collectively, the "Financing Agreements"). CNH Industrial Capital hereby provides Dealer this notice of termination pursuant to the Financing Agreements (the "Notice of Termination").

On or about December 12, 2017, CNH Industrial Capital provided Dealer a notice of default and demand for payment pursuant to the Financing Agreements. To date, payment has not been received and Dealer's account remains in default (the "Defaults"). Notwithstanding any arrangement you may have reached with CNH Industrial America LLC ("CASE") with respect to certain matured units, as of the date of this Notice of Termination, Dealer has failed to and refuses to pay US$56,781.00 for the month of November 2018 and US$44,034.94 for the month of December (the "Default Amount").

As a result of the foregoing, based upon Dealer's failure and refusal to pay the Default Amount, CNH Industrial Capital hereby terminates the Financing Agreement effective immediately and all Obligations (as defined in the WFSA) owing under the Financing Agreements are declared immediately due and payable. Specifically, CNH Industrial Capital demands that the Dealer immediately pay all Obligations in the amount of US$1,928,154.70. If payment in indefeasible funds is not received immediately, Dealer must arrange for the voluntary turnover of all Collateral (as defined in the WFSA), including all cash and noncash proceeds of the Collateral, to CNH Industrial Capital. At this time, Dealer must cease the sale, transfer or other disposition of all Collateral securing Obligations to CNH Industrial Capital.

Acceptance of any late payment by CNH Industrial Capital will not be a waiver of any default, whether now existing or hereafter arising. Nothing contained herein, including the voluntary turnover of Collateral, shall be construed as an election of remedies or a waiver of any right or remedy with respect to the Defaults or otherwise. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

Finally, this Notice of Termination is also being provided to the Dealer guarantors, if any. As guarantors, they are advised that they are also obligated for all costs of collection including attorney fees.



EXHIBIT

T



If you have any questions, you may contact me at (512) 423-3897.

Sincerely,


Dennis Albus
CNH Industrial Capital America LLC

cc: Terry Abby
    Linda Abby
    Abby Manufacturing Co., Inc.
    Jeff Schmidt
    Matt Lawson



January 16, 2019

<u>**VIA ELECTRONIC AND OVERNIGHT DELIVERY**</u>

Abby Farm Supply. Inc. dba Abby Equipment
POB 1486
Saltillo, MS 38866
Attn: Terry Abby

      *Re: Turnover and Repossession of Collateral*

Dear Mr. Abby:

On or about December 31, 2018, CNH Industrial Capital America LLC ("CNH Industrial Capital") provided Abby Farm Supply. Inc. dba Abby Equipment ("Dealer") a Notice of Default and Termination pursuant to that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA"), and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA collectively, the "Financing Agreements"). Notwithstanding the foregoing, Dealer refuses to turn over the Collateral (as defined in the WFSA) or allow a joint audit by CNH Industrial Capital and CNH Industrial America LLC ("CASE").

Dealer has until 12:00 p.m. Central, January 22, 2019, to agree to (i) voluntarily turnover the Collateral and permit CNH Industrial Capital and CASE to conduct a joint audit, or (ii) pay CNH Industrial Capital $1,943,735.62 in full satisfaction of the Obligations (as defined in the WFSA). If Dealer fails to respond in accordance with this letter, then CNH Industrial Capital will have no choice but to seek repossession of its Collateral along with payment for all costs of collection, including attorney fees. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

Finally, this Notice of Termination is also being provided to the Dealer guarantors, if any. As guarantors, they are advised that they are also obligated for all costs of collection including attorney fees.

If you have any questions, you may contact me at (512) 423-3897.

Sincerely,

Dennis Albus
CNH Industrial Capital America LLC

**ACKNOLWEDGED AND AGREED:**
The undersigned acknowledges receipt of this letter and agreement to its terms.

    By: _____
    Title: _____





cc:  Terry Abby
     Linda Abby
     Abby Manufacturing Co., Inc.
     Jeff Schmidt
     Matt Lawson

| STATE OF TENNESSEE<br>30TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>ELECTRONICALLY FILED<br>2019 Feb 19 5:19 PM<br>CLERK OF COURT |
|---|---|---|

| PLAINTIFF<br><br>CNH INDUSTRIAL CAPITAL AMERICA, LLC | DEFENDANTS<br><br>ABBY FARM SUPPLY, INC., TERRY ABBY AND LINDA ABBY |
|---|---|

**TO: (NAME AND ADDRESS OF DEFENDANT)**

Method of Service:

Terry Abby
1521 Highway 45
Saltillo, Mississippi 38868

- ☒ Certified Mail
- ☐ Shelby Co. Sheriff
- ☐ *Comm. Of Insurance
- ☐ *Secretary of State
- ☐ *Out of County Sheriff
- ☐ Private Process Server
- ☐ Other

List each defendant on a separate summons.          *Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, SHELBY COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br><br>Joseph R. Prochaska, Esquire<br>RENO & CAVANAUGH, PLLC<br>424 Church St., Suite 2910<br>Nashville, TN 37219<br>(629) 255-0208 | FILED, ISSUED & ATTESTED<br><br><br>DONNA RUSSELL, Clerk and Master<br>By:                    140 Adams Avenue, Room 308<br>                    Memphis, Tennessee 38103<br><br><br>                    Clerk & Master |
|---|---|

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and the Local Rules.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons.  Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED<br><br><br><br>Sheriff |
|---|---|

{D0813521.DOC / 1}          TN917-101}

**\*\*\*Submit one original plus one copy for each defendant to be served.**

**♿ ADA Coordinator, (931) 684-1672**

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☐ Served _____    ☐ Not Found _____
☐ Not Served _____    ☐ Other _____

| DATE OF RETURN: | By: |
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____.  On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of _____ _____, 20___.** | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of _____ Notary Public or _____ Deputy Clerk | |
| | |
| My Commission Expires: | |
| ### NOTICE OF PERSONAL PROPERTY EXEMPTION | |
| TO THE DEFENDANT(S): | |

TO THE DEFENDANT(S):
    Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to:  Clerk & Master
                   140 Adams Avenue, Room 308
                   Memphis, TN 38103

Please state file number on list.

**ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)**

## CERTIFICATION (IF APPLICABLE)

{D0813521.DOC / 1                    TN917-101}

| I, Donna Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | DONNA RUSSELL, Clerk & Master<br><br>By:<br><br>                                  D.C. & M. |



**The Shelby County, Tennessee Chancery Court**

**Case Style:**      CNH INDUSTRIAL CAPITAL V ABBY FARM SUPPLY, ET AL

**Case Number:**    CH-19-0243

**Type:**           Process issued other (T)

Alex Graham, DC

Electronically signed on 02/20/2019 08:42:11 AM

ELECTRONICALLY FILED
2019 Feb 19 5:19 PM
CLERK OF COURT

| STATE OF TENNESSEE<br>30TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER |
|---|---|---|

| PLAINTIFF | DEFENDANTS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA, LLC | ABBY FARM SUPPLY, INC., TERRY ABBY AND LINDA ABBY |

**TO:  (NAME AND ADDRESS OF DEFENDANT)**

Linda Abby
16125 Highway 51 S
Millington, Tennessee 38053

**Method of Service:**

☐   Certified Mail
☒   Shelby Co. Sheriff
☐   *Comm. Of Insurance
☐   *Secretary of State
☐   *Out of County Sheriff
☐   Private Process Server
☐   Other

List each defendant on a separate summons.          *Attach Required Fees

---

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, SHELBY COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

---

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br><br>Joseph R. Prochaska, Esquire<br>RENO & CAVANAUGH, PLLC<br>424 Church St., Suite 2910<br>Nashville, TN 37219<br>(629) 255-0208 | FILED, ISSUED & ATTESTED<br><br>DONNA RUSSELL, Clerk and Master<br>By:                    140 Adams Avenue, Room 308<br>                            Memphis, Tennessee 38103<br><br><br>Clerk & Master |
|---|---|

**NOTICE OF DISPOSITION DATE**

    The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and the Local Rules.

    If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons.  Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | Sheriff |

**\*\*\*Submit one original plus one copy for each defendant to be served.**

**♿ ADA Coordinator, (931) 684-1672**

---

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☐ Served _____   ☐ Not Found _____

☐ Not Served _____   ☐ Other _____

| DATE OF RETURN: | By: |
|---|---|
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____.  On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of _____ _____, 20___.** Signature of _____ Notary Public or _____ Deputy Clerk <br><br> My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

  Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books.  Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

  Mail list to:  Clerk & Master
         140 Adams Avenue, Room 308
         Memphis, TN 38103

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

{D0813516.DOC / 1          TN917-101}

| I, Donna Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | DONNA RUSSELL, Clerk & Master<br><br>By:<br><br>                              D.C. & M. |
| --- | --- |



**The Shelby County, Tennessee Chancery Court**

**Case Style:**      CNH INDUSTRIAL CAPITAL V ABBY FARM SUPPLY, ET AL

**Case Number:**    CH-19-0243

**Type:**            Sum issued shelby sheriff

Alex Graham, DC

Electronically signed on 02/20/2019 08:42:11 AM

ELECTRONICALLY FILED
2019 Feb 19 5:19 PM
CLERK OF COURT

| STATE OF TENNESSEE 30TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER |
|---|---|---|

| PLAINTIFF | DEFENDANTS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA, LLC | ABBY FARM SUPPLY, INC., TERRY ABBY AND LINDA ABBY |

**TO:  (NAME AND ADDRESS OF DEFENDANT)**

**Method of Service:**

Abby Farm Supply, Inc.
c/o Linda Abby,
Registered Agent for Service of Process
16125 Highway 51 S
Millington, Tennessee 38053

☐ Certified Mail
☒ Shelby Co. Sheriff
☐ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out of County Sheriff
☐ Private Process Server
☐ Other

List each defendant on a separate summons.          *Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, SHELBY COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Joseph R. Prochaska, Esquire RENO & CAVANAUGH, PLLC 424 Church St., Suite 2910 Nashville, TN 37219 (629) 255-0208 | DONNA RUSSELL, Clerk and Master By:                    140 Adams Avenue, Room 308                              Memphis, Tennessee 38103

Clerk & Master |

**NOTICE OF DISPOSITION DATE**

   The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and the Local Rules.

   If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons.  Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

{D0813511.DOC / 1}          TN917-101}

**\*\*\*Submit one original plus one copy for each defendant to be served.**

**♿ADA Coordinator, (931) 684-1672**

---

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☐ Served _____       ☐ Not Found _____

☐ Not Served _____       ☐ Other _____

| DATE OF RETURN: | By: |
|---|---|
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____.  On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of _____ _____, 20___.** Signature of _____ Notary Public or _____ Deputy Clerk | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|
| My Commission Expires: | |

<table>
<tr><td colspan="1"><div align="center"><strong>NOTICE OF PERSONAL<br>PROPERTY EXEMPTION</strong></div></td><td rowspan="2"></td></tr>
<tr><td>

TO THE DEFENDANT(S):

    Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to:  Clerk & Master
                  140 Adams Avenue, Room 308
                  Memphis, TN 38103

Please state file number on list.

</td><td>

<div align="center">ATTACH<br>RETURN<br>RECEIPT<br>HERE<br>(IF APPLICABLE)</div>

</td></tr>
</table>

## CERTIFICATION (IF APPLICABLE)

| I, Donna Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | DONNA RUSSELL, Clerk & Master <br><br> By: <br><br> D.C. & M. |
|---|---|



**The Shelby County, Tennessee Chancery Court**

**Case Style:**      CNH INDUSTRIAL CAPITAL V ABBY FARM SUPPLY, ET AL

**Case Number:**     CH-19-0243

**Type:**            Sum issued shelby sheriff

Alex Graham, DC

Electronically signed on 02/20/2019 08:42:11 AM

ELECTRONICALLY FILED
2019 Feb 20 5:25 PM
CLERK OF COURT

## IN THE CHANCERY COURT FOR SHELBY COUNTY
### 30TH JUDICIAL DISTRICT
### AT MEMPHIS, TENNESSEE

| | |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA, LLC, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. CH-19-0243-2** |
| | ) |
| ABBY FARM SUPPLY, INC., | ) |
| TERRY ABBY and LINDA ABBY, | ) |
| | ) |
| **Defendants.** | ) |

---

### VERIFIED EMERGENCY MOTION AND APPLICATION OF CNH INDUSTRIAL CAPITAL AMERICA, LLC FOR WRIT OF POSSESSION AND RESTRAINING ORDER COMBINED WITH MEMORANDUM OF LAW IN SUPPORT THEREOF

**CNH INDUSTRIAL CAPITAL AMERICA, LLC** ("CNHi" or the "Plaintiff") and applies to the Court pursuant to T.C.A. §29-30-101 et seq., and in particular under T.C.A. §29-30-106(1)(A) for a writ of possession and a restraining order in aid thereof, and would show to the Court as follows:

1.     As set forth in the Verified Complaint and the Affidavit of Dennis Albus attached thereto, CNHi has commenced an action to recover certain property from Abby Farm Supply, Inc. ("Abby Farm Supply"), which property secures the debts of Abby Farm Supply to CNHi. All capitalized terms in this Motion and Application have the meanings ascribed to them in the Verified Complaint.

2.     Abby Farm Supply entered into a Retail Financing Agreement (the "RFA") and Wholesale Financing and Security Agreement (the "WFSA") with CNHi. *See*, Verified Complaint at ¶¶6-7. Pursuant to those documents, CNHi has lent Abby Farm Supply, Inc. over $1,900,000, secured by (among other things) 24 pieces of agricultural and construction

equipment and parts inventory, more fully described on Exhibit F to the Verified Complaint (the "Collateral"). *See,* Verified Complaint at ¶¶15, 17.

3.    Abby Farm Supply, Inc. has defaulted on its obligations to CNHi and is required to turn over the collateral to CNHi. *See,* Verified Complaint at ¶¶42-47. Abby Farm Supply has had a history of financial troubles over the past two years or so, and has frequently been unable to pay its bills as they have come due. *See, e.g.,* Exhibits H to U to the Verified Complaint. Accordingly, on January 16, 2019 CNHi, after months of correspondence and demands, terminated Abby Farm Supply's rights under the RFA and the WFSA and required that Abby Farm Supply turn over the Collateral to CNHi. *See,* Verified Complaint at ¶42.

4.    Abby Farm Supply has refused to turn over the Collateral to CNHi, and this lawsuit has ensued.

5.    Abby Farm Supply keeps most of the Collateral at its locations in Shelby County, Tennessee on 3849 New Getwell Road, Memphis, Shelby County, Tennessee 38118 and 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053. *See,* Verified Complaint at ¶16.

6.    There is no substantial controversy as to the amount of the debt owed by Abby Farm Supply to CNHi. Under the RFA and the WFSA, the monthly statements sent by CNHi are deemed to be conclusive evidence of these debts unless Abby Farm Supply notifies CNHi or an error. *See,* Verified Complaint at ¶18. No such notification was sent by Abby Farm Supply. *See,* Verified Complaint at ¶20.

7.    There is no substantial controversy as to the right of CNHi to recover the Collateral from Abby Farm Supply. Under the RFA and the WFSA, CNHi has the contractual right to possession of the Collateral, and Abby Farm Supply has the contractual obligation to turn over the Collateral. *See, e.g.,* Verified Complaint at ¶¶46-48. Further, CNHi has a properly

perfected security interest in the Collateral. *See*, Verified Complaint at ¶14 and Exhibit E thereto. Thus, under Article 9 of the Uniform Commercial Code, CNHi may seek possession of the Collateral. T.C.A. §47-9-609.

8.     CNHi is entitled to a writ of possession upon an expedited basis pursuant to T.C.A. §29-30-106(a)(1)(A). As further detailed in the Affidavit of Joseph R. Prochaska, attached hereto as **Exhibit A**, CNHi sent to all Defendants, via certified U.S. mail, postage prepaid, the following documents on February 20, 2019:

> a. The Verified Complaint, containing the documents upon which CNHi's claim to possession is founded;
> b. A copy of this Motion; and
> c. A copy of the Notice of Hearing filed by CNHi.

In compliance with T.C.A. §29-30-106(a)(1)(A), this notice was mailed to the Defendants more than five days prior to the requested hearing date of March 1, 2019, and was directed to the Defendants at the addresses stated in the RFA and the WFSA.

9.     CNHi is entitled to a restraining order pursuant to the terms of T.C.A. §29-30-105, restraining the Defendants from damaging, concealing or removing the Collateral from the jurisdiction of the Court. CNHi asserts that the value of the Collateral is no greater than the amount of the debts owed by the Defendants to CNHi, or less than $2,000,000. *See*, Verified Complaint at ¶62. Under T.C.A. §29-30-105(a), CNHi requests that any bond established by the Court be in that amount.

**WHEREFORE**, CNH Industrial Capital America, LLC prays that this Honorable Court:

A.     Consider this Motion and Application on an expedited basis and enter an Order granting CNHi immediate possession of the Collateral pending a final hearing on the relief requested herein and restraining the Defendants from damaging, concealing or removing the Collateral from the jurisdiction of the Court;

B.    Direct the Clerk of the Court to issue a writ of immediate possession to the Sheriff of Shelby County, or such other officers as may be appropriate, directing them to take possession of the Collateral from the Defendant and deliver the Collateral over to CNHi; and

C.    Grant CNHi such other and further relief that this Honorable Court deems appropriate.

Respectfully Submitted,

**RENO & CAVANAUGH, PLLC**

Joseph R. Prochaska (#12760)
424 Church Street, Suite 2910
Nashville, TN 37219
Phone:        (629) 255-0208
Facsimile:    (629) 255-0209
Email:        jprochaska@renocavanaugh.com

Attorneys for CNH Industrial Capital America, LLC

## NOTICE OF HEARING UPON APPLICATION

**NOTICE IS HEREBY GIVEN THAT CNHI, LLC WILL PRESENT THIS MOTION AND APPLICATION TO THE CHANCERY COURT OF SHELBY COUNTY, PART 2, ON MARCH 1, 2019 AT 10:00 A.M.**

**THIS IS THE FIRST APPLICATION FOR INJUNCTIVE, EQUITABLE OR EXTRAORDINARY RELIEF REQUESTED IN THIS ACTION. NO COURT HAS REFUSED TO ENTER THE RELIEF REQUESTED HEREIN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by certified U.S. mail, postage prepaid, and by first class U.S. Mail, postage prepaid, to the following persons this the 27th day of February, 2019:

Abby Farm Supply, Inc.
Linda Abby, Registered Agent
16125 Highway 51 S
Millington, Tennessee  38053

Abby Farm Supply, Inc.
Attn: President
3849 New Getwell Road
Memphis, Tennessee 38118

Abby Farm Supply, Inc.
Attn: President
2501 Highway 72
Walnut, MS 38683

Linda Abby
16125 Highway 51 S
Millington, Tennessee  38053

Terry Abby
1521 Highway 45
Saltillo, MS 38868

Abby Farm Supply, Inc.
Attn: President
16135 Highway 51 S
Millington, Tennessee  38053

Abby Farm Supply, Inc.
Attn: President
1521 Highway 45
Saltillo, MS 38868

With a courtesy copy to:

Bill T. May
Barry, Thaggard, May & Bailey, LLP
P.O. Box 2009
505 Constitution Avenue
Meridian, MS 39302-2009

Joseph R. Prochaska

IN THE CHANCERY COURT FOR SHELBY COUNTY
30TH JUDICIAL DISTRICT
AT MEMPHIS, TENNESSEE

CNH INDUSTRIAL CAPITAL AMERICA, LLC, )
)
Plaintiff, )
)
vs. )       Case No. CH-19-0243-2
)
ABBY FARM SUPPLY, INC., )
TERRY ABBY and LINDA ABBY, )
)
Defendants. )

## AFFIDAVIT OF JOSEPH R. PROCHASKA
## IN SUPPORT OF VERIFIED EMERGENCY MOTION AND APPLICATION FOR
## WRIT OF POSSESSION AND RESTRAINING ORDER

I, Joseph R. Prochaska, do hereby declare, before a notary public and under penalty of perjury, that the following information is true:

1.      I am the attorney for the Plaintiff CNH Industrial Capital America, LLC.

2.      On February 20, 2019 I caused to be mailed via certified U.S. Mail, postage prepaid, to the following parties at the following addresses copies of these documents: (a) the Verified Complaint filed by CNHi; (b) the Emergency Motion and Application for Writ of Possession and Restraining Order; and (c) the Notice of Hearing filed by CNHi:

Abby Farm Supply, Inc.
Linda Abby, Registered Agent
16125 Highway 51 S
Millington, Tennessee  38053

Abby Farm Supply, Inc.
Attn: President
16135 Highway 51 S
Millington, Tennessee  38053

Abby Farm Supply, Inc.
Attn: President



3849 New Getwell Road
Memphis, Tennessee 38118

Abby Farm Supply, Inc.
Attn: President
1521 Highway 45
Saltillo, MS 38868

Abby Farm Supply, Inc.
Attn: President
2501 Highway 72
Walnut, MS 38683

Linda Abby
16125 Highway 51 S
Millington, Tennessee  38053

Terry Abby
1521 Highway 45
Saltillo, MS 38868

3.      Additionally, I provided a courtesy copy of the foregoing documents via email to

Bill T. May, Esq., Barry, Thaggard, May & Bailey, LLP, 505 Constitution Avenue, Meridian,

MS 39302-2009, who had previously corresponded with counsel for CNHi on behalf of the

Defendants.

Further Affiant sayeth naught.

_____
Joseph R. Prochaska

Sworn to and subscribed before me,
this 20th day of February, 2019.

_____
Notary Public

My Commission Expires: _January 6, 2020_

THOMAS J. CARTY
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY
My Commission Expires JAN. 6, 2020

ELECTRONICALLY FILED
2019 Feb 19 5:19 PM
CLERK OF COURT

## IN THE CHANCERY COURT FOR SHELBY COUNTY
### 30TH JUDICIAL DISTRICT
### AT MEMPHIS, TENNESSEE

| | |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. _CH-19-0243_ |
| | ) |
| ABBY FARM SUPPLY, INC., | ) |
| TERRY ABBY and LINDA ABBY, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT FOR RECOVERY OF PROPERTY, BREACH OF CONTRACT, AND REQUEST FOR RESTRAINNG ORDER AND OTHER INJUNCTIVE RELIEF, INCLUDING A REQUEST FOR A WRIT OF POSSESSION

COMES NOW CNH INDUSTRIAL CAPITAL AMERICA, LLC ("CNHi" or the "Plaintiff"), by counsel, and for its Verified Complaint against Defendants, Abby Farm Supply, Inc., Terry Abby and Linda Abby alleges as follows:

### BACKGROUND STATEMENT

CNHi has lent Abby Farm Supply, Inc. over $1,900,000, secured by (among other things) 24 pieces of agricultural and construction equipment and parts inventory. Abby Farm Supply, Inc., which keeps most of this collateral at its locations in Shelby County, Tennessee on New Getwell Road and Highway 51 South, has defaulted on its obligations to CNHi and has refused to turn over the collateral to CNHi or to pay off its debt to CNHi. Terry Abby and Linda Abby are the owners of Abby Farm Supply, Inc., guaranteed its debts to CNHi, and likewise have failed to pay CNHi on their guaranteed debt. CNHi has instituted this action to recover its collateral and to obtain judgment for the debts due by the Defendants.

## I.    PARTIES

1.      CNHi is a Delaware limited liability company licensed to do business in the State of Tennessee.  CNHi changed its name from CNH Capital America, LLC to CNH Industrial Capital America, LLC in 2014.

2.      Defendant Abby Farm Supply, Inc. ("Abby Farm Supply") is a Mississippi corporation licensed to do business in Tennessee and may be served with summons through its Registered Agent for Service of Process, Linda Abby, at 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053.

3.      Defendant Terry Abby ("Mr. Abby") is an individual and is believed to be a citizen and resident of and may be served with summons at 1521 Highway 45, Saltillo, MS 38868.

4.      Defendant Linda Abby ("Ms. Abby") is an individual and is believed to be a citizen and resident of Shelby County, Tennessee and may be served with summons at 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053. Alternatively, Ms. Abby is a resident of Mississippi, but maintains an office for the receipt of service of process in Tennessee at this address.

5.      This Court has jurisdiction over the subject matter which is the basis for this cause of action. Venue is proper in Shelby County pursuant to Tenn. Code Ann. §20-4-101 et. seq.

## II.    FACTS

6.      On March 27, 2012, Abby Farm Supply entered into that certain Retail Financing Agreement with CNHi (the "RFA").   A true and correct copy of the RFA is attached hereto as *Exhibit A*.

7.      On March 27, 2012, Abby Farm Supply entered into that certain Wholesale Financing and Security Agreement with CNHi (the "WFSA").   A true and correct copy of the WFSA is attached hereto as ***Exhibit B***.

8.      Abby Farm Supply operates two business locations in Tennessee: one located at 3849 New Getwell Road, Memphis, Shelby County, Tennessee 38118 and one located at 16135 Highway 51 S, Millington, Shelby County, Tennessee 38053.

9.      On March 27, 2012, Mr. Abby executed that certain unlimited and continuing commercial guaranty in favor of CNHi (the "Mr. Abby Guaranty"). A true and correct copy of the Mr. Abby Guaranty is attached hereto as ***Exhibit C***.

10.      Mr. Abby is the Vice President of Abby Farm Supply, and is also, upon information and belief, a principal stockholder in Abby Farm Supply. Mr. Abby, in his capacities as Vice President of and equity owner in Abby Farm Supply regularly travels to Abby Farm Supply's locations in Shelby County, Tennessee in order to conduct his business there. Upon information and belief, Mr. Abby travels to Shelby County, Tennessee on a weekly or bi-weekly basis for business purposes. Accordingly, Tennessee courts have general jurisdiction over Mr. Abby.

11.      On March 27, 2012, Ms. Abby executed that certain unlimited and continuing commercial guaranty in favor of CNHi (the "Ms. Abby Guaranty"). A true and correct copy of the Ms. Abby Guaranty is attached hereto as ***Exhibit D***.

12.      Ms. Abby is the registered agent for service of process for Abby Farm Supply in Tennessee, with a listed address of 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053. Ms. Abby, in her capacities as an officer of and equity owner in Abby Farm Supply regularly travels to Abby Farm Supply's locations in Shelby County, Tennessee in order to

conduct her business there, and is in Tennessee with such regularity and frequency that she is able to accept service of process at this address. Upon information and belief, Ms. Abby travels to Shelby County, Tennessee on a weekly if not daily basis for business purposes. Accordingly, Tennessee courts have general jurisdiction over Ms. Abby.

### A. The Collateral and Security Interest of CNHi, and the Amounts due by Defendants.

13.     Under the terms of the RFA and WFSA, CNHi provided financing for Abby Farm Supply to acquire and sell, among other things, the inventory described in the WFSA, agricultural and construction equipment and parts, such that CNHi has a properly perfected, first priority purchase money in certain collateral.

14.     The Plaintiff holds a properly perfected security interest in that collateral, evidenced by the grant of security interests contained in Section 5(d) of the RFA and Section 3(b) of the WFSA and the UCC-1 financing statement (as continued) filed with the Mississippi Secretary of State.  True and correct copies of the UCC-1 financing statement and the UCC-3 continuation statements (the "UCCs") are attached hereto as *Collective Exhibit E.*

15.     Presently, the Collateral includes twenty-four pieces of equipment, identified by make, model and serial number on *Exhibit F* hereto, along with additional parts inventory as referenced in the UCCs (the "Collateral").

16.     Although Abby Farm Supply operates in a number of different locations, most, if not all, of the Collateral is located at the Abby Farm Supply locations at 3849 New Getwell Road, Memphis, Shelby County, Tennessee 38118 and 16125 Highway 51 S, Millington, Shelby County, Tennessee 38053.

17.     Presently, Abby Farm Supply is obligated to CNHi under the RFA and the WFSA in the amount of $1,949,204.26 as of February 13, 2019, plus interest, all attorneys fees, court costs and other costs of collection.

18.     Under Section 2(c) of the WFSA, the calculation by CNHi of the amounts due by Abby Farm Supply are "absent manifest error ... conclusively evidenced by" the books and records of CNHi.

19.     Further, unless Abby Farm Supply "objects in writing, in a notice given in accordance with Section 13(f)" of the WFSA, "such monthly statements shall be deemed an account stated, and [Abby Farm Supply] shall be deemed to have accepted as accurate all information" set forth in the monthly statements.

20.     CNHi sent Abby Farm Supply the monthly statement for December 2018 (the cover sheet of which is attached hereto as **Exhibit G**), and CNHi has received no notice from Abby Farm Supply meeting the requirements of Section 13(f) of the WFSA.

**B.  The Payment Defaults and Financial Troubles of Abby Farm Supply.**

21.     Pursuant to the terms of the RFA and the WFSA, Abby Farm Supply was to make payments to CNHi, as invoiced by CNHi, based upon the amounts outstanding under the RFA and WFSA. Through the course of the relationship, CNHi invoiced Abby Farm Supply on a monthly basis, and Abby Farm Supply accepted those billings as accurate.

22.     However, over the past two years, Abby Farm Supply has repeatedly defaulted on its monthly payment obligations under the RFA and the WFSA.

23.     On January 25, 2017, due to the payment defaults by Abby Farm Supply and the failure of Abby Farm Supply to pay CNHi $64,016.28 due under the WFSA, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply

under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as *Exhibit H*.

24. The next month, CNHi was required, once again, to notify Abby Farm Supply about payment default. On February 13, 2017, due to the payment defaults by Abby Farm Supply and the failure of Abby Farm Supply to pay CNHi $48,365.09 due under the WFSA, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as *Exhibit I*.

25. Abby Farm Supply's delinquencies continued into March 2017, such that on March 27, 2017 due to the payment defaults by Abby Farm Supply and the failure of Abby Farm Supply to pay CNHi $158,571.93 due under the WFSA, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as *Exhibit J*.

26. The March 27, 2017 also identified two Case 590SN backhoe loaders that Abby Farm Supply had sold "out of trust;" that is, Abby Farm Supply transferred ownership of these backhoe loaders without paying CNHi the required invoice amounts.

27. As a dealer in these goods, Abby Farm Supply was able, under Tennessee law, to transfer title to these two Case 590SN backhoe loaders free and clear of any lien of CNHi.

28. For a short time, Abby Farm Supply seemed to get its financial act in order, but that did not last. On August 18, 2017, CNHi was once again compelled to notify Abby Farm Supply that it was past due in its financial obligations to CNHi, and that as a consequence CNHi

was required to restrict its access to certain financing under the WFSA. A true and correct copy of this notice is attached here to as ***Exhibit K***.

29.     On September 15, 2017, CNHi notified Abby Farm Supply that its credit rating with CNHi had been downgraded, due to the failure by Abby Farm Supply to abide by its obligation under the RFA and WFSA. A true and correct copy of this notice is attached here to as ***Exhibit L***.

30.     On October 2 , 2017 and on October 4, 2017, CNHi was once again compelled to notify Abby Farm Supply that it was past due in its financial obligations to CNHi, and that as a consequence CNHi was required to restrict its access to certain financing under the WFSA. A true and correct copy of these notices are attached here to as ***Exhibit M***.

31.     Again, Abby Farm Supply appeared to get its financial act together in later 2017 and early 2018, but as before, this did not continue and once again Abby Farm Supply fell behind on its obligations to CNHi.

32.     On July 31, 2018, Abby Farm Supply admitted to CNHi that it did not have sufficient funds on hand to meet its obligations as they became due; instead, in order to pay the past due balances to CNHi, Abby Farm Supply was required to seek a cash infusion from its owner and CNHi Guarantor Terry Abby. A true and correct copy of this email is attached here to as ***Exhibit N***.

33.     On September 4, 2018, CNHi notified Abby Farm Supply that it was "extremely important" that Abby Farm Supply remain current on its obligations to CNHi, and that CNHi would work with Abby Farm Supply in its attempts to sell its business. A true and correct copy of this email is attached here to as ***Exhibit O***. No such sale of the Abby Farm Supply business has yet occurred.

34.     On September 21, 2018, CNHi notified Abby Farm Supply that it was past due on its obligations to CNHi in the amount of $66,264.14, for invoices spanning the months of July and August 2018. A true and correct copy of this email is attached here to as ***Exhibit P***.

35.     On October 2, 2018, CNHi emailed Abby Farm Supply to clear up its past due balances, to avoid losing its ability to finance parts inventory with CNHi. A true and correct copy of this email is attached here to as ***Exhibit Q***.

36.     On December 11, 2018, due to the payment defaults by Abby Farm Supply, CNHi notified Abby Farm Supply that CNHi would no longer provide certain financing to Abby Farm Supply under the WFSA until Abby Farm Supply paid CNHi the past due amounts. A true and correct copy of this notice is attached here to as ***Exhibit R***.

37.     On December 12, 2018, CNHi notified Abby Farm Supply and the Guarantors that Abby Farm Supply had failed to make the required payments for November 2018 (in the amount of $56,781.00) and for December 2018 (in the amount of $44,034.94). A true and correct copy of this notice is attached here to as ***Exhibit S***.

38.     At the time of the December 18, 2018 notice, Abby Farm Supply was indebted to CNHi in the total amount of $1,923,901.85.

39.     A copy of the December 18, 2018 notice was also sent to the Guarantors, and the December 18, 2018 notice expressly stated that the Guarantors would be obligated for all amounts due under the Guaranties.

40.     The December 18, 2018 Notice further notified Abby Farm Supply and the Guarantors that, absent payment of the November 2018 and December 2018 payment amounts by December 22, 2018, CNHi would terminate the RFA and WFSA. Under Section 13(a) of the

RFA and Section 12 of the WFSA, CNHi has the contractual right to terminate these agreements upon a payment default by Abby Farm Supply.

41.     On December 31, 2018, when Abby Farm Supply had failed for almost two weeks to pay the past due amounts to CNHi, CNHi notified Abby Farm Supply and the Guarantors that the RFA and WFSA were terminated. A true and correct copy of this notice is attached here to as *Exhibit T*.

42.     By January 16, 2019, it had become apparent to CNHi that Abby Farm Supply was unwilling or (more likely) financially unable to cure the payment and other defaults under the RFA and WDSA. As a consequence, CNHi sent to Abby Farm Supply a notice to voluntarily turnover the Collateral, to permit CNHi to audit the Collateral, and to pay all amounts due to CNHi under the terms of the RFA and WFSA. A true and correct copy of this notice is attached here to as *Exhibit U*.

43.     A copy of the January 16, 2019 notice was also sent to the Guarantors, and the January 16, 2019 notice expressly stated that the Guarantors would be obligated for all amounts due under the Guaranties.

44.     At the time of the January 16, 2019 notice, Abby Farm Supply was indebted to CNHi in the total amount of $1,943,735.62.

**C.  The Effect of Abby Farm Supply's Payment Defaults.**

45.     After a payment default and termination, the RFA and WFSA impose upon Abby Farm Supply a number of obligations to allow CNHi to recover the amounts lent by CNHi to Abby Farm Supply and to recover the Collateral securing CNHi.

46.     After termination under the RFA and WFSA, Abby Farm Supply is required to "segregate and keep the Collateral in trust" for CNHi and is prohibited from "dispos[ing] of or us[ing] any Collateral" under Section 11(b)(ii) of the WFSA.

47.     Further, after termination under the RFA and WFSA, Abby Farm Supply is required to "immediately deliver the Collateral" to CNHi at a place specified by CNHi under Section 11(b)(iii) of the WFSA.

48.     After termination under the RFA and WFSA, CNHi is allowed to "take immediate and exclusive possession of the Collateral wherever located and enter any of the premises of" Abby Farm Supply and to "take possession of and remove the Collateral…" under Section 11(b)(iv) of the WFSA.

49.     As CNHi has terminated the RFA and WFSA, Abby Farm Supply is contractually required to perform its obligations under Section 11(b)(ii) and (iii) of the WFSA, and CNHi is contractually entitled to exercise its rights Section 11(b)(iv) of the WFSA.

**D.     The Effect of Abby Farm Supply's Payment Defaults under the Guaranties.**

50.     Under the terms of the Guaranties, Mr. Abby and Ms. Abby are, jointly and severally, liable for all amounts owed by Abby Farm Supply to CNHi.

51.     Under the Section 1 of the Guaranties, Mr. Abby and Ms. Abby have "absolutely and unconditionally guarantee[d] the payment and performance… of all present and future obligations" of Abby Farm Supply to CNHi.

52.     Section 2 of the Guaranties, headed "Guaranty Absolute," reinforces that the obligations of Mr. Abby and Ms. Abby to CNHi are "absolute and unconditional."

53.     Thus, Mr. Abby and Ms. Abby are, jointly and severally, liable for all debts of Abby Farm Supply to CNHi, including any attorneys fees, court costs, and other costs of

collection incurred by CNHi in enforcing either the RFA, the WFSA, the Guaranties, or CNHi's rights against the Collateral.

**E. Possible Dissipation of Assets and Disposition of the Collateral; Rights of CNHi to Recover the Collateral.**

54.     As noted above, after termination under the RFA and the WFSA, Abby Farm Supply may not sell any of the Collateral, and must keep it segregated and in trust for CNHi.

55.     Prior to termination, Abby Farm Supply had an obligation under the RFA and WFSA to promptly remit to CNHi proceeds from the sale of the Collateral, but Abby Farm Supply has breached this obligation on at least two prior occasions, in connection with the sale of the two backhoe loaders referenced above.

56.     Abby Farm Supply has no legal right to sell the Collateral, but remains in possession of the Collateral at the time of the filing of this Complaint.

57.     Abby Farm Supply, as a dealer in goods like the Collateral, may have the ability under Tennessee to convey a piece of Collateral free and clear of the lien of CNHi.

58.     Any continued possession of the Collateral by Abby Farm Supply exposes CNHi to the danger that Abby Farm Supply will (as it has done before) sell all or a part of the Collateral in contravention of its contractual obligations to hold the Collateral in trust for CNHi.

### III. REQUESTS FOR RELIEF

### COUNT 1: WRIT OF POSSESSION AND RESTRAINING ORDER

59.     The allegations contained in Paragraphs 1 to 58 are incorporated herein by reference.

60.     As a result of the defaults by Abby Farm Supply under the terms of the RFA and WFSA, CNHi is entitled to possession of the Collateral.

61.    There is no substantial controversy as to CNHi's right to possession of the Collateral.

62.    While CNHi is uncertain of the exact value of the Collateral, the Collateral likely has a value which approximates the total amount of the debt owed by Abby Farm Supply under the RFA and WFSA, assuming that the Collateral has been properly maintained and do not have excessive wear and tear.

63.    CNHI is entitled to a writ of possession granting it possession of the Collateral pursuant to T.C.A. §29-30-101 et seq. and in particular upon T.C.A. §29-30-106(1)(A), and to a restraining order and temporary and permanent injunctions in support of the writ of possession.

## COUNT 2: BREACH OF CONTRACT BY ABBY FARM SUPPLY

64.    The allegations contained in Paragraphs 1 to 63 are incorporated herein by reference.

65.    As a result of the default under the terms of the RFA and WFSA, Abby Farm Supply,is liable to CNHi for all amounts due thereunder for which a judgment should be rendered in favor of CNHi. Further, the RFA and WFSA obligate Abby Farm Supply to pay CNHi's attorney fees, costs of collection and court costs.

## COUNT 3: BREACH OF CONTRACT BY MR. ABBY AND MS. ABBY

66.    The allegations contained in Paragraphs 1 to 65 are incorporated herein by reference.

67.    As a result of the default under the terms of the RFA and WFSA by Abby Farm Supply, Mr. Abby and Ms. Abby are jointly and severally liable under the terms of their Guaranties to CNHi for all amounts due thereunder for which a judgment should be rendered in

favor of CNHi. Further, the RFA and WFSA obligate Mr. Abby and Ms. Abby to pay CNHi's attorney fees, costs of collection and court costs.

**WHEREFORE, CNH Industrial Capital America, LLC prays that this Court:**

A.   Enter an Order granting CNHi possession of the Collateral pursuant to T.C.A. §29-30-101 *et seq.*;

B.   Direct the Clerk of the Court to issue a writ of possession to the Sheriff of Shelby County (or such other officers as may be appropriate), directing the Sheriff to take possession of the Collateral from Abby Farm Supply, Inc. or any other person in possession thereof and deliver the Collateral over to CNHi or its authorized agent;

C.   Issue a restraining order and temporary and permanent injunctions pursuant to T.C.A. §29-30-101 *et seq.*, preventing the Defendants, or anyone acting at their direction, or on their behalf, from interfering the recovery of the Collateral by the Sheriff of Shelby County or CNHi;

D.   Grant CNHi a money judgment against Abby Farm Supply, Inc., for the breach of the RFA and WFSA in the amount of $1,949,204.26 as of February 13, 2019, plus interest accruing prior to the events of default at the contract rate of interest, plus interest accruing at the contractual default rate after the events of default, plus the amount of the Plaintiff's reasonable attorneys' fees and expenses, court costs, incurred as a result of Abby Farm Supply's default to CNHi;

E.   Grant CNHi a money judgment against Mr. Abby and Ms. Abby, jointly and severally, for the breach of their Guaranties in the amount $1,949,204.26 as of February 13, 2019, plus interest accruing prior to the events of default at the contract rate of interest, plus interest accruing at the contractual default rate after the events of default, plus the amount of the

Plaintiff's reasonable attorneys' fees and expenses, court costs, incurred as a result of the default by Abby Farm Supply, Mr. Abby and Ms. Abby in their contractual obligations to CNHi;

      F.      Grant CNHi a judgment against the Defendants for such other amounts as may be proven at trial; and

      G.      Grant CNHi such other and further relief that the Court deems appropriate.

            Respectfully Submitted,

            **RENO & CAVANAUGH, PLLC**

            Joseph R. Prochaska (#12760)
            424 Church Street, Suite 2910
            Nashville, TN 37219
            Phone:       (629) 255-0208
            Facsimile:   (629) 255-0209
            Email:       jprochaska@renocavanaugh.com

            Attorneys for CNH Industrial Capital America, LLC

## **VERIFICATION**

**STATE OF ARKANSAS**
**COUNTY OF CRAIGHEAD**

I, _Dennis Albus_ , a _Field Credit Specialist_ of CNH Industrial Capital America, LLC ("CNHi") and one of the custodians of the business records of CNHi, having first been duly sworn, and being authorized to make this statement on behalf of CNHi, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of CNHi that were kept as a regular practice of CNHi's in the course of CNHi's regularly conducted business activity and that were made at or near the time of the occurrence of the matters set forth, by or from information transmitted by a person with knowledge and a business duty to accurately record or transmit that information, the facts stated in the Complaint are true, and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of CNHi.

**CNH Industrial America, LLC**

By: _____

Printed: _Dennis Albus_

Title: _Field Credit Specialist_

**STATE OF ARKANSAS**
**COUNTY OF CRAIGHEAD**

Sworn to and subscribed before me, _Dennis Albus_ , Notary Public, of the state and county mentioned, witness my hand and seal at office in _Jonesboro_ _Arkansas_ (City, State), this _19th_ day of February, 2019.

_____
NOTARY PUBLIC
My Commission Expires: _8-15-2024_                    [SEAL]

OFFICIAL SEAL - #12400587
JEAN HEIKES-NEWCOM
NOTARY PUBLIC-ARKANSAS
CRAIGHEAD COUNTY
MY COMMISSION EXPIRES: 08-15-24



# RETAIL FINANCING AGREEMENT

This Retail Financing Agreement ("Agreement") entered into on _Mark 27_, 2012 (the "Effective Date"), by and between CNH Capital America LLC, a Delaware limited liability company, ("CNH Capital") and Abby Farm Supply, Inc., a Mississippi corporation ("Dealer").

## RECITALS

WHEREAS, Dealer is a seller of construction, agricultural, and/or other equipment and related goods and services ("Products");

WHEREAS, Dealer wishes to participate in a commercial retail financing program with CNH Capital that will provide commercial customers of Dealer ("Customers") the ability to obtain financing for the purchase or lease of Products or other purposes by submitting an application to CNH Capital through Dealer (the "Program");

WHEREAS, under the Program, Dealer will enter into Contracts with Obligors and will sell and assign all of its right, title and interest in such Contracts (and related Goods) to CNH Capital; and

WHEREAS, CNH Capital has agreed to allow Dealer to participate in the Program on the terms and conditions set forth in this Agreement;

NOW THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Dealer and CNH Capital hereby agree as follows:

**1. Definitions.** In addition to the definitions otherwise contained in this Agreement and in the recitals above, the definitions contained in Exhibit "A" will apply to this Agreement. All definitions shall be equally applicable to both the singular and plural forms.

**2. Applications, Documentation and Closing.**

(a) **Applications and Credit Approvals.** Dealer shall obtain and process Applications for Contracts in accordance with the Program Procedures. Dealer shall assist CNH Capital, as requested, by providing, and in obtaining from applicants and other sources, such additional documentation and information as CNH Capital may deem necessary or desirable in connection with its evaluation of Applications. Dealer acknowledges and agrees that CNH Capital may also communicate directly with applicants regarding Applications and the terms and conditions of the proposed Contracts. Dealer and its Representatives shall not make any representations or warranties to applicants regarding the timing or likelihood of credit approval by CNH Capital or the terms and conditions on which such an approval may be granted or conditioned. Dealer acknowledges and agrees that CNH Capital may approve, reject or condition its approval of any Application in its sole discretion, and that CNH Capital shall be under no obligation to approve of a particular Application, or to acquire any particular Contract unless and until CNH Capital shall have granted its approval and all other requirements hereunder have been satisfied.

(b) **Documentation and Closing of Contracts.** CNH Capital shall provide the means for Dealer to prepare Documentation necessary to close approved Retail Transactions. In connection with each Contract, Dealer shall (i) accurately prepare and complete all required Documentation in accordance with the terms of the credit approval; (ii) verify the identity of all Persons executing any Documentation; (iii) obtain the accurate and full execution of all Documentation; (iv) provide the Obligor with any required disclosure materials; and (v) deliver fully completed and executed Documentation to the Obligor and CNH Capital. In fulfilling its responsibilities as set forth in the preceding sentence, Dealer shall fully comply with the Program Procedures, the terms and conditions of any applicable promotion, any specific instructions given by CNH Capital in connection with the particular Contract and all Applicable Laws. In connection with the closing of any Contract, Dealer shall utilize only the forms of Documentation provided by CNH Capital with respect to that particular Contract and Dealer shall not, without prior written authorization from CNH Capital, alter, change or supplement any such Documentation. Dealer and its Representatives shall not make any representations or warranties to, or any agreement with, any Obligor regarding the terms and conditions of any Contracts or Documentation, except as expressly set forth in the Documentation.

(c) **Insurance.** Before accepting delivery of signed Documentation from an Obligor, Dealer shall verify and document that all Goods are insured in an amount not less than the full fair market value of the Goods, and in no event for less than the amount required under the Program Procedures and Documentation, and

that CNH Capital is named as an additional insured/loss payee under the applicable policy of insurance in accordance with the Program Procedures and the Documentation. Dealer shall indemnify CNH Capital for, and hold it harmless from, any losses incurred by CNH Capital and its successors and assigns in the event that Dealer fails to comply with the requirements of this Section 2(c).

**3. Retail Transactions.**

(a) **Retail Terms.** Except as disclosed to and approved by CNH Capital in advance, Dealer shall not impose any surcharge or other fee in connection with an application for a Contract, or use of a Contract in a Retail Transaction. Dealer shall not process a request for a Contract that is below the minimum amount for the Program, as provided in the Program Procedures.

(b) **Delivery of Goods.** Dealer shall not deliver Goods to an Obligor until: (i) CNH Capital has communicated its credit approval; (ii) all Documentation has been properly and fully completed and executed; and (iii) Dealer has otherwise complied with all other applicable Program Procedures and other conditions to such delivery set forth in this Agreement or required by CNH Capital in the specific instance.

(c) **Non-Discrimination.** Dealer shall not discriminate against any Customer in violation of Applicable Law, nor shall Dealer seek or obtain any special agreement or condition from any Customer with respect to the terms of any sale because such sale is being financed.

(d) **Disputes; Compliance.** Dealer shall cooperate with CNH Capital to resolve any disputes by Obligors arising out of Retail Transactions or Contracts. Dealer shall maintain a fair and equitable policy for the return of Goods, and will immediately notify CNH Capital if any Goods are returned. Dealer shall conduct its business in accordance with Applicable Law. Dealer shall do nothing to impair the ability of CNH Capital or its successors and assigns to collect and enforce Obligors' obligations with respect to Contracts. Dealer shall notify CNH Capital of any written complaint from a Customer within five (5) days of the Dealer's receipt thereof. Dealer shall report to CNH Capital if it knows or has reason to know of, with respect to any Retail Transaction, Application, or Contract: (i) any actual, suspected or attempted violation of law, including without limitation the Bank Secrecy Act, or (ii) suspicious activity related to actual, suspected or attempted money laundering activity.

(e) **Retail Transaction Performance.** Dealer shall fully and satisfactorily perform all of its duties and obligations in connection with each Retail Transaction and any agreement related to a Retail Transaction, including, without limitation, any delivery, warranty, service or repair obligations.

(f) **Customer Payments.** Dealer authorizes and empowers CNH Capital and its successors and assigns to sign and endorse Dealer's name upon any checks, drafts, money orders, or other forms of payment that it may receive in respect of any Contract. If any payment on a Contract is made to Dealer, Dealer shall receive



such payment in trust and shall promptly remit the same in the form received to CNH Capital (but no later than five (5) days after receipt thereof).

(g) **Marketing.** Dealer may not, in any advertisement or promotion of its products or services, advertise the availability of financing through the Program without the prior written approval of CNH Capital. Dealer shall not use the name or logo of CNH Capital or its parents, subsidiaries, or Affiliates ("Mark Holders") or any trademark or trade name owned by Mark Holders, or refer to Mark Holders directly or indirectly, in any advertisement, marketing materials, news release, or release to any professional or trade publication, without the prior written consent of the applicable Mark Holder. In the event that a Mark Holder grants such written consent, Dealer shall follow all terms and conditions set out by the Mark Holder.

(h) **Sales, Use and Other Taxes.** Except as otherwise provided in the Program Procedures or this Agreement, Dealer shall be responsible for the calculation, collection, reporting and remittance of any and all sales, use or other taxes which may be due and payable in connection with any Retail Transaction.

(i) **Privacy; Information Security.** Dealer (i) shall hold confidential any and all non-public personal information or documentation, whether in paper, electronic or other form, related to Applications, Contracts, Documentation or Retail Transactions, or to Customers, credit applicants, Obligors or any parties related to any of the foregoing (collectively, "Customer Information"); (ii) shall not disclose Customer Information to any party (except those employees and agents of Dealer who have a need to have access to Customer Information in connection with Contracts or Retail Transactions); (iii) shall develop, implement and maintain policies and procedures, including disaster recovery methods, to safeguard the security, confidentiality and integrity of Customer Information; (iv) shall not use Customer Information for any purpose other than as necessary in connection with Dealer's performance under this Agreement; and (v) shall promptly notify CNH Capital in the event of any unauthorized disclosure of, access to, use of, or any other compromise of Customer Information, which notification shall include a complete description of the nature and extent of such compromise, the affected Customer Information, and the corrective action taken to respond to the compromise and to prevent future repetitions thereof. Dealer shall instruct its employees and agents that they are not permitted access to any Customer Information, except as may be necessary to perform their jobs for Dealer, and that they may not copy, borrow, or take any Customer Information to which they may have access. CNH Capital shall have the right to review any related policies or procedures or internal or external audits, summaries of test results, or other equivalent evaluations of Dealer, and to conduct on-site audits as may be reasonably necessary in order to ensure that Dealer is complying with the requirements of this Section 3(i). Dealer agrees that all of the provisions of this Section 3(i) shall survive the termination of this Agreement.

4. **CNH Capital's Role.**

(a) **Documentation.** CNH Capital will determine the form of Documentation for Contracts, and will provide a means for Dealer to generate such original Documentation, for delivery to and execution by the Obligors.

(b) **Ownership of Contracts.** Upon assignment of a Contract by Dealer to CNH Capital, CNH Capital (and/or its successor or assignee) shall be sole and exclusive owner of such Contract and the related Documentation (and, as applicable, the related Goods), and shall be entitled to receive all payments made by Obligors on any such Contract not yet due at the time of assignment. Dealer acknowledges and agrees that, upon assignment of a Contract to CNH Capital, Dealer shall have no right, title, or interest in the Contract, the Goods or the Documentation and have no right to any payments made with respect to such Contract. Dealer agrees that it will not use or disclose any information regarding the Contracts or the Documentation without the prior written consent of CNH Capital, except as may be required by law.

(c) **Software.** CNH Capital may supply software to enable Dealer to generate and/or process Applications and Documentation, including, without limitation, its "Finance Plus®" software program ("Software"). Software shall remain the property of CNH Capital.

Dealer shall comply with the terms of the Software license and all other CNH Capital policies regarding use of the Software. CNH Capital shall provide training to Dealer's employees, at Dealer's stores, for the use of Software and the Program.

5. **Assignment of Contracts; Security Agreement.**

(a) **Assignment.** On the date of CNH Capital's purchase of any Contract, Dealer shall deliver to CNH Capital, in form and substance acceptable to CNH Capital, an assignment (the "Assignment") (i) assigning, transferring and conveying to CNH Capital all of Dealer's right, title and interest in and to the Contract, and all proceeds thereof and (ii) as applicable, assigning to CNH Capital, or granting to CNH Capital, a valid, senior security interest in, all related Goods and all proceeds thereof. CNH Capital shall be deemed to have accepted assignment of, and to have purchased, a Contract and related Goods, only upon CNH Capital's receipt and approval of all related Documentation, and CNH Capital's determination, in its sole discretion, that Dealer has satisfied all other terms and conditions of this Agreement and the Program Procedures and any other specific terms and conditions required by CNH Capital with respect to such Contract.

(b) **No Assumption.** Notwithstanding the Assignment, neither CNH Capital, nor its successor or assignee, if any, shall, by accepting the Assignment, assume Dealer's or any other person's obligations arising by contract or imposed by applicable law, rule or regulation with respect to the Contract or Goods or any other contract or agreement between the Dealer and Obligor or any other Person.

(c) **Basis of Acceptance.**

(i) **Nonrecourse Assignment.** If CNH Capital accepts an assignment of a Contract on a nonrecourse basis ("Nonrecourse Contract"), CNH Capital shall have no recourse against Dealer for any credit losses incurred by CNH Capital in connection with any such Contract ("Nonrecourse Contract"), except as otherwise provided in this Agreement or the Program Procedures.

(ii) **Repurchase Assignment.** If CNH Capital accepts an assignment of a Contract as a repurchase assignment ("Repurchase Contract"), Dealer shall repurchase from CNH Capital the Contract and, as applicable, the related Goods, as provided in Section 7 hereof at the time CNH Capital tenders delivery of the Goods described in such Contract to the Dealer, in the same condition as received by CNH Capital. If CNH Capital fails to tender delivery of the Goods to Dealer, CNH Capital has no recourse against the Dealer, except as otherwise provided in this Agreement or the Program Procedures.

(iii) **Full Recourse Assignment.** If CNH Capital accepts an assignment of a Contract on a full recourse basis ("Full Recourse Contract"), CNH Capital has full recourse against the Dealer in connection with any such Contract, as provided in this Agreement or the Program Procedures.

(d) **Grant of Security Interest.** The Parties hereto intend the sale, assignment and transfer of Contracts and, as applicable, related Goods, by Dealer to CNH Capital to be a true sale, and not a loan secured by the grant of a security interest therein. If, notwithstanding the Parties' intent, the sale, assignment and transfer is construed to be a loan and not a true sale, Dealer hereby grants CNH Capital a valid first priority security interest in the Contracts, the Goods, all supporting obligations and other rights and property related thereto, and all proceeds thereof, to secure all of Dealer's present and future obligations arising under this Agreement, or otherwise. Dealer hereby irrevocably constitutes and appoints CNH Capital as Dealer's true and lawful attorney with full power of substitution, for Dealer and in Dealer's name, place and stead, to demand, collect, receive, receipt for, sue for and compromise any and all Contracts and rights assigned hereunder. Dealer warrants and the Parties intend that the security interests in this Agreement shall attach upon the execution of this Agreement. Dealer and CNH Capital confirm, for all the security interest granted under this Agreement, that value has been given and that the Dealer has rights in the Goods. Dealer further acknowledges that Dealer has received an executed copy of this Agreement and has also received a copy of all financing statements and financing change statements perfecting any security interest granted hereunder

(e) **No Right of Repurchase.** Except as provided in Section 7(d) hereof, Dealer shall have no right to repurchase any Contract

or related Goods once sold or assigned to CNH Capital hereunder.

**6.   Settlement Procedures.**

(a)   **Dealer's Submission.**  Dealer shall submit all completed and executed Documentation to CNH Capital in accordance with the Program Procedures.   CNH Capital reserves the right to conduct customer satisfaction calls prior to accepting assignment of any Contract or processing any Dealer Credit and to conduct post-acceptance customer satisfaction surveys.

(b)   **Dealer Credit.**   On the date on which CNH Capital accepts assignment of a Contract (the "Credit Date"), CNH Capital will calculate a credit ("Dealer Credit") in an amount equal to the difference between the "Gross Amount" and the "Deductions".   For purposes of this Agreement:

(i)   "Gross Amount" shall mean: (1) for Contracts consisting of loans, retail installment sales contracts and similar debt obligations, the amount financed; (2) for Contracts consisting of finance leases, the amount subject to lease; and (3) for Contracts consisting of operating leases, the lease sale price, all as provided in the Contract (or as otherwise agreed between CNH Capital and Dealer if not so provided), excluding, for purposes of (1), (2) and (3), any finance charges, time price differential or lease charges embedded therein; and

(ii)   "Deductions" shall mean: (1) any portion of the Gross Amount attributable to insurance premiums, commissions or fees payable to any Person other than Dealer; (2) any portion of the Gross Amount attributable to charges or fees for services or products payable to or provided by CNH Capital or any Person other than Dealer; (3) any other portion of the Gross Amount to be disbursed to any Person other than Dealer; (4) any security deposit, advance or tax payment made by the Obligor that has been received and held by Dealer; (5) any Dealer Subsidy (as defined in Section 10 hereof) owing to CNH Capital with respect to the Contract; and (6) any amount that CNH Capital elects to retain as a Contingent Credit pursuant to Section 6(d) hereof as a condition of approving the Contract.

(c)   **Application of Dealer Credit.**   CNH Capital shall be entitled to withhold a Dealer Credit for any Contract that is subject to a Customer dispute or for which the supporting Documentation is, in CNH Capital's sole opinion, incomplete or unsatisfactory.   Unless so withheld, the Dealer Credit shall be applied by CNH Capital on the Credit Date to the outstanding indebtedness, if any: (i) owed by the Obligor to CNH Capital with respect to any property received by Dealer as a "trade-in" in connection with the Retail Transaction; and/or (ii) owed by Dealer to CNH Capital or its Affiliates with respect to the Goods sold as described in the Documentation.   If any surplus exists, the remainder of the Dealer Credit may be applied, at CNH Capital's sole discretion, to any other indebtedness then due and owing by Dealer to CNH Capital or its Affiliates, under this Agreement or otherwise.   If any surplus still exists, the excess will be paid by CNH Capital to Dealer or credited to Dealer's account with CNH Capital.   If the Dealer Credit is insufficient to satisfy Dealer's indebtedness to CNH Capital or its Affiliates with respect to any property received by Dealer as a "trade-in" in connection with the Retail Transaction or the Goods sold as described in the Documentation, the remaining indebtedness with respect to such item(s) shall be immediately due and payable by Dealer to CNH Capital.

(d)   **Contingent Credit.**   As part of the underwriting process, CNH Capital has established terms (which may be amended from time to time by CNH Capital without notice to Dealer) concerning, among other things, (i) the minimum percentage of down payment on the purchase price, and (ii) the maximum amount that CNH Capital will finance on Goods purchased by a Customer from Dealer.   If Dealer submits to CNH Capital an Application under the Program in which the down payment or the requested amount financed does not meet the established underwriting terms, or other circumstances exist that cause CNH Capital to deem itself insecure with respect to a proposed Retail Transaction or Contract, CNH Capital may, in its sole discretion, withhold a portion or all of the Dealer Credit as a contingent credit (the "Contingent Credit").   When CNH Capital has collected, in cash on any such Contract, an amount it deems sufficient, or CNH Capital is satisfied that such other circumstances no longer exist, CNH Capital may in its sole discretion, apply the Contingent Credit in accordance with Section 6(c).   All Contingent Credits will be carried as non-interest-bearing

contingent credit accounts on the books and records of CNH Capital, and, on default of an Obligor under a Contract with respect to which a Contingent Credit exists, may be withdrawn by CNH Capital and applied to the defaulted balance.   Upon such application CNH Capital shall have no further obligation to Dealer with respect to amounts so applied.   As security for any and all present or future obligations owing from Dealer to CNH Capital under this Agreement or otherwise, Dealer hereby grants CNH Capital a security interest in any amounts carried as a Contingent Credit.

**7.   Chargebacks.**

(a)   **Chargeback Right.**   CNH Capital shall have the right to require Dealer to purchase from CNH Capital any Contract (a "Chargeback"), and Dealer shall pay to CNH Capital the Chargeback Amount with respect to such Contract, if any of the following occur with respect to the Contract or the related Retail Transaction: (i) Dealer fails to comply with any term or condition of this Agreement applicable to such Contract or Retail Transaction; (ii) any representation or warranty made by Dealer with respect to such Contract or Retail Transaction is false or inaccurate; (iii) the Obligor returns the Goods to Dealer or Obligor asserts any claim or defense against CNH Capital, or refuses to pay the Contract, based on any act or omission of Dealer or its Representatives (including, without limitation, any claim or defense related to the Goods or Dealer's performance in connection with the related Retail Transaction); (iv) the Obligor disputes the amount or existence of the Contract; (v) Dealer fails to comply with the Program Procedures in connection with the Contract or Retail Transaction or CNH Capital has recourse to Dealer under the terms of the Program Procedures; (vi) Dealer fails to provide CNH Capital, no later than ten (10) days after a request by CNH Capital, the information needed to resolve questions from or a dispute with an Obligor regarding the Contract or Retail Transaction; (vii) Dealer has agreed to act as a guarantor or surety of Obligor's obligations under the Contract, the Obligor has failed to make any payment due pursuant to such Contract and Dealer fails to fulfill its obligations as guarantor or surety; or (viii) such Contract is a Full Recourse Contract or a Repurchase Contract and the Obligor is in default thereunder and, in the case of a Repurchase Contract, CNH Capital has complied with the provisions of Section 5(c)(ii) hereof.   CNH Capital's right to assert a Chargeback under this Section 7(a) shall not be limited in any respect by CNH Capital's prior approval or acceptance of an assignment of a Contract.

(b)   **Investigation.**   CNH Capital shall conduct a reasonable investigation of the circumstances surrounding any Chargeback, and shall provide Dealer a reasonable opportunity to resolve any relevant Obligor disputes before asserting a Chargeback.   Notwithstanding the foregoing, except to the extent CNH Capital is required to tender delivery of the Goods to Dealer under Section 5(c)(ii) hereof as a prerequisite to a Chargeback under Section 7(a)(viii) hereof, CNH Capital shall have no obligation to pursue recovery from an Obligor or to attempt to obtain possession or control of the Goods subject to a Contract prior to exercising its rights under Section 7(a) hereof.

(c)   **CNH Capital's Right to Compromise.**   CNH Capital may compromise and settle any claim made by an Obligor under any Contract, even though such claim may give CNH Capital a Chargeback claim or other claim against Dealer, without approval or consent from Dealer.   In the event of any such compromise or settlement, CNH Capital may adjust the balance of a Contract for the amount of the compromise or settlement and the immediate Chargeback shall be limited to the actual amount of such adjustment.

(d)   **Exercise of Chargeback.**   In the event that CNH Capital asserts a Chargeback to the Dealer, Dealer shall pay CNH Capital the Chargeback Amount immediately upon its receipt of oral or written notice that CNH Capital is asserting its Chargeback rights.   In addition, CNH Capital shall have the right to set off the Chargeback Amount against any amounts due Dealer from CNH Capital under this Agreement or otherwise.   If the Chargeback Amount exceeds any sums due Dealer, CNH Capital may demand immediate payment from Dealer for the full amount of such excess.   If CNH Capital exercises its right of Chargeback, upon payment in full by Dealer to CNH Capital of the Chargeback Amount, CNH Capital shall assign, or shall cause the then current holder of the Contract to assign, to Dealer, without recourse, or representations

or warranties of any kind, the Contract, the related Goods and all rights to payment under the Contract.

**8.   General Representations.**   Dealer represents and warrants to CNH Capital as of the date of first participating in the Program and on a continuous basis during the term of Dealer's participation in the Program as follows.

**(a)   Organization.**   If a registered legal entity, Dealer is duly organized and validly existing under the laws of the state set forth opposite its name in the first paragraph of this Agreement.

**(b)   Authority.**   Dealer has all requisite power and authority, and all required licenses, permits, and authorizations to conduct its business and to perform its obligations under this Agreement.

**(c)   Valid and Binding.**   This Agreement has been duly authorized by Dealer, and constitutes the legal, valid, and binding agreement of Dealer, enforceable against Dealer in accordance with the terms hereof, except as the same may be subject to or limited by bankruptcy, insolvency or similar laws affecting the rights of creditors generally, or principles of equity.

**(d)   No Conflict.**   The performance of Dealer's obligations under this Agreement, and the consummation of the transactions contemplated hereby, will not (i) violate or conflict with any provision of Dealer's organization or governing documents, if any, or (ii) violate or conflict with, constitute a breach or default under any Applicable Law or under any agreement to which Dealer is a party or by which it or any of its assets may be bound.

**9.   Presentment Representations, Warranties and Covenants.**   Dealer hereby represents and warrants to, and covenants with, CNH Capital, with respect to each Contract and each related Retail Transaction, as follows:

**(a)   Accuracy.**   The information provided by the Customer in requesting credit is, to the best of Dealer's knowledge, true and correct.   The information included in the Documentation regarding the Retail Transaction, including, without limitation, the sale price, the descriptions of the Goods and any property received as a trade-in, and the terms of sale, is all true and correct.   All signatures on the Documentation are genuine, and any Person signing the Documentation has full legal capacity to execute the Documentation in the capacity indicated.   Dealer and its Representatives have no actual knowledge of any fraud with respect to the Application, Contract or Retail Transaction.

**(b)   Retail Transaction.**   The Retail Transaction involves the bona fide sale or lease of Goods or services by Dealer in the ordinary course of its business, in an arms-length transaction, and does not involve any cash advance to the Obligor or the purchase of any goods or services that cannot be purchased on credit under Applicable Laws.   The Contract does not represent a partial payment for Goods or a payment for gift certificates.   Dealer has furnished the Goods in a workmanlike manner to Obligor's satisfaction, has delivered the Goods to Obligor, and Obligor has accepted the Goods.   Dealer has furnished the Goods to the Obligor free and clear of any liens or encumbrances, other than the security interest securing the Contract.   Dealer has not provided any part of the advance payment, security deposit, down payment or trade-in allowance referenced in connection with any Retail Transaction, either directly or indirectly, and Obligor has not charged such amounts to any credit cards issued by or on behalf of CNH Capital.   Obligor has acquired the Goods for commercial purposes and not for personal, family or household use.   Obligor is not a Related Interest of Dealer.     The Contract represents the entire understanding and agreement between the Dealer and Obligor with respect to the Contract, the Retail Transaction and the Goods, and there are no additional written or verbal understandings or agreements between Dealer and Obligor relating to the Contract, the Retail Transaction or the Goods.

**(c)   Ownership of Contract, Related Goods; Security Interest.**   At the time of the Assignment, Dealer has good and valid title to the Contract and related Goods, has not sold or assigned the Contract or related Goods to any other Person, and upon delivery of the Assignment, CNH Capital will acquire good and valid title to the Contract and related Goods free and clear of any security interest, lien or claim of any other Person (excluding the interests of CNH Capital or the Obligor).   If the Contract includes a grant of a security interest, Dealer holds, and upon assignment CNH Capital will receive, a valid, enforceable first priority security interest in the Goods that are the subject of the Contract.

**(d)   Legal Compliance.**   In connection with the Retail Transaction, the Contract and marketing of the Program, Dealer has complied with Applicable Laws.   Dealer has completed and will comply with its obligations under any warranty or service agreement provided or sold to Obligor in connection with the Retail Transaction.

**(e)   Absence of Claims.**   There is no fact, nor any claim or defense available to the Obligor, that would in any respect impair the validity, enforceability, collectability, value, or marketability of the Contract, including, without limitation, any discount, allowance, setoff, counterclaim, bankruptcy, right of rescission, fraud, forgery, or lack of consideration.   There have been no false, misleading, or deceptive acts or practices by Dealer in connection with any Retail Transaction.

**(f)   Delivery of Documentation to Obligor.**     Dealer delivered to Obligor a fully completed and accurate copy of the Documentation, together with any disclosure or other materials as required by the Program Procedures or by CNH Capital with respect to the particular Retail Transaction or Contract, prior to consummation of the Contract.   No modifications or alterations have been made to the original Documentation delivered to CNH Capital.

**(g)   Sales Tax.**   Except as otherwise provided in the Program Procedures, Dealer has correctly computed, charged and remitted (or will remit) all sales, use or other taxes and governmental fees applicable to the Retail Transaction, all in accordance with Applicable Law.

**(h)   Agreement and Program Compliance.**   Dealer has complied with all Program Procedures, all provisions of this Agreement, the terms and conditions of any applicable promotion, and any specific instructions or requirements communicated by CNH Capital to Dealer with respect to the Contract and related Retail Transaction.   Without limiting the generality of the foregoing: (i) Dealer has verified and documented the existence of the insurance coverage required under the Contract terms with respect to the Goods; (ii) the Documentation has been accurately prepared, fully completed and executed, and delivered to CNH Capital; and (iii) the Documentation accurately reflects the terms of credit approved by CNH Capital, all in accordance with the terms of this Agreement and the Program Procedures.

**10.   Dealer Finance Income; Dealer Subsidies.**

**(a)   Finance and Lease Charges.**   Subject to the terms and conditions set forth in the Program Procedures and CNH Capital's prior approval, CNH Capital may allow Dealer to enter into Contracts with Obligors pursuant to which the Obligor is obligated to pay a finance or lease charge rate (the "Contract Rate") that is different from the rate required by CNH Capital as a condition of its approval and purchase of the Contract (the "Buy Rate").   Dealer agrees that the Contract Rate shall not exceed the maximum rate allowed by Applicable Law or established from time to time by CNH Capital, whichever is lower.   Subject to the terms and conditions set forth in the Program Procedures and CNH Capital's prior approval, CNH Capital may also allow Dealer to enter into Contracts with Obligors pursuant to which the payment amounts or payment schedule are different from those required by CNH Capital as a condition of its approval and purchase of the Contract (a "Payment Variance").

**(b)   Dealer Finance Income.**   As provided in the Program Procedures from time to time, when the Contract Rate exceeds the Buy Rate, Dealer may be entitled to receive all or some portion of that difference as that amount is paid or payable by the Obligor over the term of the Contract (such difference being referred to as "Dealer Finance Income").

**(c)   Dealer Subsidies.**   As provided in the Program Procedures from time to time, Dealer may be required to pay CNH Capital a subsidy amount (a "Dealer Subsidy") when the Contract Rate is less than the Buy Rate or the Contract contains a Payment Variance.

**(d)   Calculation, Payment and Refund of Dealer Finance Income and Dealer Subsidy.**   The calculation of the amount of Dealer Finance Income or Dealer Subsidy, the timing and terms of payment of Dealer Finance Income or Dealer Subsidy, if any, and the circumstances under which Dealer may be required to refund to CNH Capital all or any portion of Dealer Finance Income previously paid to Dealer shall all be governed and controlled by the applicable Program Procedures as amended by CNH Capital from time to

time. CNH Capital shall have the right to deduct from or setoff against any Dealer Finance Income payable to Dealer hereunder any amounts which may be due from Dealer to CNH Capital or its Affiliates under this Agreement or otherwise. As security for any and all present or future obligations owing from Dealer to CNH Capital under this Agreement or otherwise, Dealer hereby grants CNH Capital a security interest in any amounts due from CNH Capital to Dealer in the form of Dealer Finance Income.

## 11. Indemnity; Limits on Liability.

(a) **Indemnification.** Dealer shall indemnify, protect, defend and hold harmless CNH Capital, its successors, assigns, and its Related Interests (excepting CNH America LLC), from any and all claims, liabilities, demands, penalties, actions, suits, proceedings (whether civil or criminal), orders, judgments, disbursements, losses, costs (including, without limitation, court costs and reasonable attorneys fees), expenses, or damages caused by or arising from: (i) product liability and/or personal injury arising out of the use of the Goods by Obligors or any other Person; (ii) breach by Dealer of any warranty with respect to any Goods (including, but not limited to, a claim of latent or patent defect); (iii) breach by Dealer of, any representations, warranties, covenants or other obligations or agreements contained in this Agreement or the Program Procedures; (iv) Dealer's performance of any reconditioning or remarketing services provided by Dealer; (v) failure of Dealer to perform its obligations with respect to any warranty, maintenance, service or other similar agreements with an Obligor or any other Person; (vi) any governmental fees, charges, taxes or penalties levied or imposed with respect to any Goods; (vii) any claim of patent or copyright infringement relating to the Goods; and (viii) failure of Dealer to comply with any Applicable Law.

CNH Capital shall give Dealer, and Dealer shall give CNH Capital, notice of any event or condition that may require indemnification by Dealer hereunder, or any allegation that such an event or condition exists, promptly upon obtaining knowledge thereof. Dealer shall pay all amounts due hereunder promptly on notice thereof from CNH Capital. Upon payment by Dealer and provided Dealer is otherwise in compliance with the terms of this Agreement, Dealer shall be subrogated to CNH Capital's rights with respect to such event or condition. All of the indemnities and agreements contained in this Section 11(a) shall survive and continue in full force and effect notwithstanding the termination of this Agreement.

(b) **Exclusion of Certain Damages.** Neither Party shall be liable to the other Party for any punitive, consequential, incidental, special or similar damages in connection with the Program, except to the extent that a Party is required to indemnify the other Party under this Agreement for amounts owing to third parties.

## 12. Reports; Audit; Financial Statements.

(a) **Reports; Audit.** Dealer shall provide CNH Capital with such data and reports as may be reasonably requested by CNH Capital to maintain effective controls and to monitor the results of the Program. CNH Capital and its auditors and any Regulatory Authority with jurisdiction over the Parties shall have reasonable access to the books and records maintained by the Dealer relating to this Agreement and the transactions contemplated herein. To the extent legally permissible, Dealer agrees to promptly notify CNH Capital in writing if Dealer becomes aware of any threatened or actual investigation, regulatory action, allegation, arbitration, or lawsuit pertaining to a Contract or the Program.

(b) **Financial Statements; Reports.** Dealer shall install and maintain current an accounting system satisfactory to CNH Capital. Dealer shall deliver to CNH Capital, in a manner and form prescribed by CNH Capital (including via electronic transmission if so requested by CNH Capital) each of the following:

(i) within ninety (90) days after the end of each fiscal year of the Dealer, complete and accurate balance sheets and statements of income, retained earnings and changes in cash flow of the Dealer and its subsidiaries for such year, setting forth in comparative form the corresponding figures for the preceding year, all prepared in accordance with Generally Accepted Accounting Principles (or other methodology approved in advance by CNH Capital) applied on a consistent basis. Financial statements so delivered shall be internally generated. If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements. Financial statements shall also be delivered to CNH

Capital in the manner identified below (check box if applicable):

☒ Financial statements so delivered shall be compiled by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be reviewed by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be audited by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. Audited financial statements shall be accompanied by a report and unqualified opinion of the auditor (which shall not be limited as to the scope of the audit or qualified as to the status of Dealer as a going concern). If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

(ii) within twenty (20) days after the end of each calendar month, unaudited complete and accurate consolidated balance sheets and operating statements of the Dealer and its subsidiaries that reflect operations through the preceding month; and

(iii) as and when requested by CNH Capital, copies of Dealer's filed tax returns, current reports of sales and inventory and such other reports and information as CNH Capital may request from time to time.

(c) **Examination.** CNH Capital or its authorized representatives will have the right during normal business hours to enter the Dealer's place of business, to examine Dealer's books and records, including, without limitation, all books, records and files relating to Retail Transactions and Contracts, all bank statements and deposit information, and all supporting data and documents, and to make copies of any such materials. In addition, CNH Capital may contact Dealer's customers to verify the location, amount or status of any Goods or Contracts.

## 13. Termination; Event of Default.

(a) **Termination.** CNH Capital may, in its sole discretion, upon notice to Dealer, stop offering the Program, or may terminate this Agreement or Dealer's participation in the Program, at any time. Dealer may, upon notice to CNH Capital, terminate this Agreement or its participation in the Program. Termination of Dealer's participation in the Program shall not affect obligations of Dealer hereunder with respect to Contracts originated prior to such termination or the rights and obligations of the Parties hereunder arising prior to such termination. Upon termination of this Agreement or Dealer's participation in the Program, all Contingent Credits and any other credit balances will be held by CNH Capital and will be applied to the Contracts as provided herein or offset against any and all indebtedness owed by Dealer to CNH Capital under this Agreement or otherwise. After CNH Capital has been paid in full for all Contracts and all other indebtedness owed by Dealer to CNH Capital, if any credit balance remains, that credit balance will be paid by CNH Capital to Dealer.

(b) **Event of Default.** Without in any manner limiting CNH Capital's right to terminate this Agreement or Dealer's participation in the Program as provided in Section 13(a) hereto, CNH Capital may also terminate this Agreement or Dealer's participation in the Program upon written notice to Dealer if there is an Event of Default. An "Event of Default" means, with respect to Dealer: (i) a material breach of any obligation or representation hereunder or under any other present or future agreement between Dealer and CNH Capital or any Affiliate of CNH Capital; (ii) a failure to make any payment when due hereunder or under any other present or future agreement between Dealer and CNH Capital or any Affiliate of CNH Capital; (iii) a failure to be financially solvent, failure to generally pay its debts as they become due, admission in writing of an inability to pay debts generally, or making of a general assignment for the benefit of creditors; (iv) filing, or suffering the filing of, a petition in bankruptcy; (v) the seeking or consenting to the appointment of, or the taking possession by, a custodian,

receiver, liquidator, assignee, trustee, or sequestrate (or similar official) of Dealer or of any substantial part of its properties; (vi) ceasing to do business; or (vii) default by Dealer under, or the termination of, any Sales and Service Agreement or any other agreement between Dealer and any Affiliate of CNH Capital pursuant to which Dealer purchases and sells products manufactured or distributed by such Affiliate; or (viii) a "Change of Control".

(c)  **Suspension.**  CNH Capital may suspend the Program immediately if it determines that there has been a pattern of fraudulent or suspicious activity, excessive Chargebacks, or excessive losses on Contracts. Upon such suspension, the Parties shall negotiate in good faith on further assurances to permit CNH Capital, in its sole discretion, to lift the suspension.

(d)  **Survival.**  Termination of the Program or this Agreement shall not affect the rights or obligations of the Parties that accrued before such expiration or termination. Without limitation, the provisions of this Section 13(d) and Sections 2(c), 3(f), 7, 11, 12, 14 and 15 hereof shall survive any such termination.

(e)  **Remedies.**  All rights and remedies of CNH Capital under this Agreement shall be in addition to any other rights and remedies CNH Capital might have under any other Documentation and at law. No term, covenant or provision of this Agreement shall be construed to be in substitution for any other rights and remedies held by CNH Capital.

**14.  Confidentiality.**

All material and information supplied by one Party to the other Party hereunder, including, but not limited to, information concerning a Party's marketing plans, objectives or financial results, is confidential and proprietary ("Confidential Information"). Confidential Information will be used by each Party solely in the performance of its obligations and exercise of its rights pursuant to this Agreement or any other agreement between the Parties. Each Party will receive Confidential Information from the other Party in confidence and will not disclose such Confidential Information to any third party, except (a) as contemplated hereunder, (b) as may be agreed upon in writing by the Party providing such Confidential Information, (c) in the case of CNH Capital to an Affiliate of CNH Capital, or (d) to the extent necessary, in exercising or enforcing its rights or as otherwise required by law. Each Party will use its best efforts to ensure that its officers, employees, and agents take such action as necessary or advisable to preserve and protect the confidentiality of Confidential Information. Notwithstanding the foregoing, "Confidential Information" will not include information in the public domain and information lawfully obtained from a third party.

**15.  Miscellaneous.**

(a)  **Force Majeure.**  A Party shall be excused from performance of its obligations under this Agreement, except for any obligation to make payments due hereunder, if its performance is prevented or delayed by acts or events beyond the Party's reasonable control, including, but not limited to, severe weather and storms, earthquakes or other natural occurrences, strikes or labor unrest, riots or other civil disturbances, civil or military emergencies, telephone, telecommunications or power failures, or computer equipment or software problems not caused by the Party's gross negligence.

(b)  **Notices.**  Any written notice required or permitted under this Agreement shall be deemed to have been received: (i) on the fifth (5th) calendar day after being posted if such notice is sent by first class U.S. mail, certified return receipt requested; (ii) one (1) business day after being sent, if sent by a nationally recognized overnight courier service, next day service; (iii) on the date transmitted, if sent by fax; or (iv) if sent by e-mail on a business day, at the end of the business day on the date delivered or, if the e-mail was not delivered on a business day, the end of the next following business day. Notices shall be sent to the Parties at the address or fax number set forth on the signature page of this Agreement, or such other address as may be designated in writing by the Party following the date of this Agreement in a notice complying with this Section 15(b).

(c)  **Collection Costs.**  Dealer shall pay to CNH Capital, and shall indemnify CNH Capital for, all fees and expenses, including, but not limited to, attorneys' fees and court costs, incurred by CNH Capital in attempting to collect any amount due CNH Capital from

Dealer under this Agreement or to otherwise enforce the terms and conditions of this Agreement.

(d)  **Dealer's Assistance.**  Upon request by CNH Capital, Dealer will render assistance in collecting any amount due on any Contract, and in repossessing the Goods or any collateral securing payment under any such Contract. Dealer agrees to store and care for any repossessed or returned Goods without charge to CNH Capital until such time as CNH Capital sells or otherwise disposes of such Goods. If CNH Capital elects to recondition repossessed or returned Goods to facilitate the sale of such Goods, Dealer, only upon written authorization from CNH Capital, shall recondition the Goods and CNH Capital agrees to pay Dealer's labor costs not to exceed Dealer's established customer rates for such labor and repair parts.

(e)  **Reimbursement of Filing Fees.**  Dealer agrees to reimburse CNH Capital for all fees not paid by the Obligor and incurred by CNH Capital in filing or recording financing statements or other documents relating to any Contract.

(f)  **No Agency.**  Except as provided for in Section 5(d), this Agreement does not appoint either Party as the agent or representative of the other Party for any purpose and neither Party is granted any express, implied, inherent, or apparent right to bind the other in any manner. This Agreement does not and shall not be construed to constitute a joint venture, partnership, association, or agency among the Parties.

(g)  **DISCLAIMER.**  CNH CAPITAL MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, OF ANY KIND WITH RESPECT TO ANY SOFTWARE OR SERVICES PROVIDED UNDER THIS AGREEMENT, AND CNH CAPITAL EXPRESSLY DISCLAIMS, AND DEALER EXPRESSLY WAIVES, ANY AND ALL SUCH WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THOSE OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

(h)  **Amendment; Waiver.**

(i)  **Program Procedures.**  CNH Capital may, in its discretion, amend, modify or supplement the Program Procedures or any other terms and conditions of the Program at any time, upon notice to Dealer. Submission of an Application to CNH Capital shall constitute Dealer's express agreement to any such amendment, modification or supplementation of which CNH Capital has provided Dealer notice. Notification of the amendment, modification or supplementation of the Program Procedures may be accomplished by, among other methods, issuance of Dealer Bulletins or publication on CNH Capital's website.

(ii)  **Agreement.**  Any other amendment of this Agreement other than pursuant to Section 15(h)(i) hereof, shall be effective only if set forth in a writing executed by both Parties.

(iii)  **Contracts.**  CNH Capital, in its sole discretion, without notice to or consent of Dealer, may grant Obligors extensions of time, renewals or refinancings of Contracts, may amend the terms and conditions of Contracts and may compromise, adjust claims and handle collections under Contracts and repossession of Goods subject to Contracts, all in accordance with CNH Capital's business judgment without affecting Dealer's obligations hereunder.

(iv)  **Waiver.**  The failure of a Party to require the performance of any part of this Agreement, or the waiver by a Party of any default or requirement under this Agreement, shall not prevent a subsequent enforcement of such term and shall not be deemed a waiver of any subsequent default or requirement. All waivers must be in writing and signed by the Party against whom the waiver is to be enforced.

(i)  **Third Party Beneficiaries.**  The Parties intend that no Person other than a Party shall have any rights under this Agreement, including the right to enforce an obligation of a Party hereunder.

(j)  **Assignment.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, successors and assigns, as applicable; provided, however, that Dealer may not assign any rights or delegate any obligations under this Agreement to another Person without the prior written consent of CNH Capital. CNH Capital may, without notice or consent, assign its rights and/or delegate its obligations

under this Agreement and may sell and assign the Contracts, Related Goods, and any related rights hereunder.

(k) **GOVERNING LAW.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF WISCONSIN, WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF.

(l) **Entire Agreement.** This Agreement, as supplemented by the Program Procedures, represents the entire agreement of the Parties with respect to the subject matter hereof and thereof, and terminates, supersedes, and replaces any prior agreements among the Parties relating to such subject matter.

(m) **Severability.** The provisions of this Agreement are severable, and in the event that any portion of this Agreement shall be adjudged to be invalid or unenforceable, such adjudication shall have no effect on any remaining portions hereof, and all such provisions shall remain in full force and effect.

(n) **Time of the Essence.** Time is of the essence of this Agreement.

(o) **Headings.** The headings of the sections and subsections in this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

(p) **Counterparts.** This Agreement may be executed in multiple counterparts each of which shall be deemed an original and all of which shall constitute one and the same agreement. This Agreement or a counterpart thereof may be delivered by telecopier, facsimile or any other electronic transmission, including a scanned version in pdf format, and the telecopier, facsimile or any electronic transmission of a signature to another party or parties (or to their respective solicitors) shall be of the same force and effect as the delivery of an original signature.

(q) **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE THEIR RIGHT TO REQUEST A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY COURT OF LAW, TRIBUNAL, OR OTHER LEGAL PROCEEDING ARISING OUT OF OR INVOLVING THIS AGREEMENT, OR ANY DOCUMENT DELIVERED IN CONNECTION HEREWITH, OR RELATING TO ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement as of the Effective Date.

**CNH Capital America LLC**

By: _____

     *Chester Wheeler* — Print Name

Title: _____ *Senior Underwriter*

**Abby Farm Supply, Inc.**

By: _____

     *Terry Abby* (Print Name)

Title: _____

**Addresses for Notice:**

If to:

CNH Capital America LLC
5729 Washington Avenue
Racine, Wisconsin 53406

Attention:    Retail Credit

Fax No.    262-636-6218

If to:

Abby Farm Supply, Inc.
1521 HWY 45
Saltillo, MS 38868

Attention:    Terry Abby

Fax No.    662-869-2432

## EXHIBIT A

## DEFINITIONS

"**Affiliate**" means, with respect to any Person, each Person that controls, is controlled by or is under common control with such Person. For the purposes of this definition, "control" of a Person shall mean the possession, directly or indirectly, of the power to direct or cause the direction of its management or policies, whether through the ownership of voting securities, by contract or otherwise.

"**Applicable Law**" means all federal, state and local laws, statutes, regulations and orders applicable to a Party or relating to or affecting any aspect of the Program, and all requirements of any Regulatory Authority having jurisdiction over a Party, as any such laws, statutes, regulations, requirements and orders may be amended and in effect from time to time during the term of the Program.

"**Application**" means the form of credit application supplied by CNH Capital to Dealer for use in connection with the Program, as amended or supplemented from time to time.

"**Change of Control**" means, as applicable, any sale of all or substantially all of the assets of Dealer (whether in one or a series of transactions), a change in the majority ownership or control of Dealer's equity, a transaction in which Dealer is merged into or consolidated with another entity, or any other change in the Person(s) possessing the ability to direct or control the management of Dealer and its business.

"**Chargeback Amount**" means, with respect to a Contract, any and all obligations due or to become due from the Obligor under the related Contract (which, in the case of a contract which is a finance, equipment or operating lease, shall include all amounts included in the definition of Termination Value contained therein, whether or not a default has yet occurred under the Contract), together with any costs, fees and expenses incurred by CNH Capital (including reasonable attorneys' fees) with respect to the Contract.

"**Contract**" means a Retail Installment Sale Contract and Security Agreement, Finance Lease, Operating Lease or other agreement between Dealer and an Obligor evidencing the sale or lease of Goods, or provision of services, by Dealer to an Obligor, or other transaction between the Dealer and an Obligor, that is assigned by Dealer to CNH Capital.

"**Documentation**" means the Contract, together with all related instruments, documents and agreements required by CNH Capital in connection with a Contract, all as amended and supplemented by CNH Capital from time to time.

"**Generally Accepted Accounting Principles**" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination.

"**Goods**" means any and all tangible personal property and related software that is the subject of a Contract.

"**Obligor**" means a Person who is obligated in respect of a Contract.

"**Party**" means CNH Capital or Dealer and "**Parties**" shall mean CNH Capital and Dealer.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, trust or any type of business organization.

"**Program Procedures**" means the policies, procedures and other requirements established from time to time by CNH Capital and its Affiliates which relate to and govern the Program, including, without limitation, all Dealer Operating Guides, Dealer Bulletins, Dealer Handbooks, Dealer Policy Manuals and other procedures and guidelines for the Program and related insurance and other products, all as amended and supplemented by CNH Capital from time to time, at its sole discretion, all of which are incorporated herein by reference.

"**Regulatory Authority**" means any federal, state or local regulatory agency or other governmental agency or authority.

"**Related Interests**" means, with respect to a Party, the Party's Affiliates, successors, and assigns, and Representatives of that Party or its Affiliates.

"**Representatives**" means, with respect to a Person, as applicable, the Person's shareholders, equity owners, employees, officers, directors, agents, immediate family members or other representatives.

"**Retail Transaction**" means the sale, lease or other transaction between the Dealer and an Obligor which is the subject of a Contract.



## WHOLESALE FINANCING AND SECURITY AGREEMENT
## UNITED STATES

This Wholesale Financing and Security Agreement (the "Agreement") is entered into on _March 27_, 2012 (the "Effective Date"), by and between CNH Capital America LLC, a Delaware limited liability company, ("CNH Capital") and Abby Farm Supply, Inc., a Mississippi corporation, ("Dealer").

### RECITALS

**WHEREAS**, Dealer is engaged in the business of, among other things, the sale, rental and lease of agricultural and/or construction machinery and equipment, and related goods and services;

**WHEREAS**, CNH Capital is engaged in the business of, among other things, providing wholesale, retail and other financing accommodations to equipment dealers and others; and

**WHEREAS**, Dealer has requested that CNH Capital provide certain financing accommodations to Dealer, and, subject to all of the terms and conditions contained herein, CNH Capital has agreed to provide such financing;

**NOW THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Dealer and CNH Capital agree as follows:

**1.   Definitions.**  In addition to the Definitions otherwise contained in this Agreement, the definitions contained in Exhibit "A" hereto will apply to this Agreement.

**2.   Financing.**

(a)   **Advances.**   Dealer has requested that CNH Capital from time to time make loans or otherwise extend credit (herein referred to as "Advances") to or for the benefit of Dealer, the proceeds of which will be used by Dealer, in whole or in part, to acquire one or more items of Inventory and/or for other legitimate purposes of Dealer in the business for which Dealer is acquiring or maintaining the Inventory. Any Advance shall be made in an amount to be determined by CNH Capital in its sole discretion; provided, however, that CNH Capital, with or without cause, may refuse to make any Advance. Dealer hereby authorizes and directs CNH Capital to pay, on Dealer's behalf, up to the full amount of any invoices, or electronic remittance advices, presented to CNH Capital from time to time that evidence a sale of an item of Inventory to Dealer by a manufacturer, distributor or other party (a "Supplier") or any other amount due to a Supplier. Payment when so made by CNH Capital shall be deemed to be an Advance to Dealer and shall become due and payable pursuant to this Agreement and the Wholesale Finance Plans. CNH Capital shall have no responsibility for the accuracy, validity or genuineness of any such invoice or remittance advice. Advances by CNH Capital, the proceeds of which are remitted to a Supplier pursuant to this Agreement, shall be unconditionally due and payable by Dealer to CNH Capital in accordance with this Agreement and the Wholesale Finance Plans, notwithstanding any claim, off-set or defense to payment Dealer may have against such Supplier with respect to the related invoice or remittance advice or any other transactions or relationships between Dealer and the Supplier. In addition to any other indemnity Dealer may provide to CNH Capital, Dealer agrees to indemnify and hold CNH Capital harmless from and against any demand, claim action, cost, liability, damage or expense of any kind, including attorneys' fees, arising from or in connection with the transactions contemplated herein.

(b)   **Payments; Set-off.**   The following general terms and conditions shall apply with respect to all of Dealer's present and future obligations and indebtedness to CNH Capital arising under this Agreement or the Wholesale Finance Plans (collectively the "Wholesale Obligations"):

(i)   Dealer shall make such installment, curtailment and other principal payments in such amounts and at such intervals and times as required by the Wholesale Finance Plans or this Agreement unless such Wholesale Obligations otherwise become immediately due and payable hereunder.

(ii)   The principal of Dealer's Wholesale Obligations shall bear interest, payable monthly, before and after maturity, at the rate(s) of interest provided in the Wholesale Finance Plans.

(iii)   Dealer agrees to pay CNH Capital such fees, and other charges, in such amounts, and at such times, as provided in the Wholesale Finance Plans.

(iv)   CNH Capital may, at any time and from time to time, without prior notice to Dealer, withhold and deduct, from amounts otherwise due to Dealer from CNH Capital under this Agreement or

under any other present or future agreement between Dealer and CNH Capital, the amount of any Wholesale Obligations then due and payable and CNH Capital may apply any amounts, so withheld or deducted, against such Wholesale Obligations. . Conversely, CNH Capital may, at any time and from time to time, without prior notice to Dealer, withhold or deduct from any Advance hereunder the amount of any Obligations then due and payable by Dealer to CNH Capital pursuant to any other present or future agreement between Dealer and CNH Capital and CNH Capital may apply amounts so withheld or deducted against such obligations or indebtedness.

(c)   **Statement of Account.**   Dealer's Obligations shall, absent manifest error, be conclusively evidenced by CNH Capital's books and records, CNH Capital's Electronic Settlement System or any successor system thereto ("ESS"), any promissory note or other document specifically evidencing an Advance, and the terms and conditions of the Wholesale Finance Plans.   CNH Capital will deliver monthly statements to Dealer, which will include detail regarding Dealer's Wholesale Obligations and the Collateral. Unless Dealer objects in writing, in a notice given in accordance with Section 13(f) hereof, within thirty (30) days after CNH Capital's mailing or other transmission of such monthly statements to Dealer, such monthly statements shall be deemed an account stated, and Dealer shall be deemed to have accepted as accurate all information regarding the Wholesale Obligations and Collateral set forth in such monthly statements.

**3.   Security Interest.**

(a)   **Obligations.**   Dealer's Wholesale Obligations, together with any and all other obligations and indebtedness now or hereafter owing by Dealer to CNH Capital hereunder, or under any other instrument, document or agreement now or hereafter entered into by and between Dealer and CNH Capital, or howsoever otherwise arising, are hereinafter collectively referred to as "Obligations".

(b)   **Grant of Security Interest; Collateral.**   To secure payment and performance of the Obligations, Dealer hereby grants to CNH Capital a security interest in and to all of the following (collectively, with any accessions thereto, the "Collateral"). (Terms used herein that are not otherwise specifically defined herein shall have the meaning ascribed to them in the Uniform Commercial Code as enacted in the State of Wisconsin ("UCC")):

(i)   All of Dealer's now owned and hereafter acquired Inventory, equipment, software and other goods wherever located, of whatever kind, make, model, brand or nature, that have been or hereafter are obtained from CNH Capital (or any Affiliate of CNH Capital) or that are or were financed by CNH Capital, together with all trade-ins, accessions and rights relating to, and all proceeds of, any of the foregoing (collectively the "Inventory");

(ii)   All now owned or hereafter arising or acquired accounts, general intangibles, chattel paper, leases, instruments, documents and agreements arising from Dealer's sale or lease of goods or provision of services, or otherwise, that have been or hereafter are sold or assigned to CNH Capital, together with any goods that are the subject of any of the foregoing, all support obligations relating to any of the foregoing, and all proceeds of any of the foregoing;

EXHIBIT B

1

(iii)  Dealer's present and future accounts with CNH Capital, all credits, rebates, sales allowances and other amounts due Dealer from CNH Capital (or any Affiliate of CNH Capital), or any other manufacturer or distributor of goods financed by CNH Capital, and all proceeds of any of the foregoing; and

(iv)  Any other or additional assets of Dealer in which Dealer may have heretofore granted or may hereafter grant CNH Capital a security interest, and all proceeds of the foregoing.

Dealer hereby appoints CNH Capital as Dealer's agent and attorney in fact for the purposes of executing on behalf of Dealer, and in Dealer's name, if necessary, and filing in such places, any and all financing statements, certificates of title (or applications therefor) and other documents (and amendments thereto), all as CNH Capital deems necessary or advisable to evidence, perfect or maintain CNH Capital's security interest in the Collateral.

Dealer warrants and the Parties intend that the security interests in this Agreement shall attach upon the execution of this Agreement. Dealer and CNH Capital confirm, for all the security interest granted under this Agreement, that value has been given and that the Dealer has rights in the Collateral.  Dealer further acknowledges that Dealer has received an executed copy of this Agreement.

**4.  Sale or Lease of Inventory.**  So long as no Event of Default exists hereunder, and subject to the terms and conditions of this Agreement and the Wholesale Finance Plans, Dealer may (a) sell Inventory to End Users in the ordinary course of Dealer's business; (b) lease or rent Inventory to End Users in the ordinary course of business on terms approved by CNH Capital hereunder or under the Wholesale Finance Plans; or (c) sell Inventory to other authorized dealers in such goods with whom CNH Capital has a financing relationship, provided that such sales are effected in accordance with the Wholesale Finance Plans and through ESS.

For purposes hereof, the term "sale" shall include a cash sale, conditional sale, installment sale, finance lease or other similar transaction.  For purposes hereof, an "End User" shall mean any customer which is not a Related Interest of Dealer (unless such Related Interest is approved in advance by CNH Capital), who purchases Inventory in an arms length transaction for its own use and not for resale.  Sales to Affiliates engaged in the equipment rental business may be permitted subject to all of the terms and conditions provided in the Wholesale Finance Plans.  No sale or lease of Inventory shall be for an amount which, when combined with discounts payable by a manufacturer, would be less than the outstanding amount of any Advance made with respect to such Inventory.  Upon the sale or lease by Dealer of any item of Inventory with respect to which there is a specific Advance outstanding (other than demonstrations and short term rentals of items of Inventory permitted hereunder or under the Wholesale Finance Plans and Inventory consisting of replacement parts), such Advance shall be immediately due and payable.

**5.  Application of Payments.**  All payments received by CNH Capital that are attributable to the sale or lease of an item of Inventory with respect to which there is a specific Advance outstanding shall be applied first against that Advance and then, if any surplus exists, to such other Obligations, or returned to Dealer, as CNH Capital, in its sole discretion, may determine.  Following the occurrence of an Event of Default, CNH Capital shall have the right to apply and reapply any and all payments and proceeds of Collateral received by it to such portion or portions of the Obligations as CNH Capital, in its sole discretion, may determine.

**6.  Proceeds of Inventory / Collateral.**  All proceeds of Inventory with respect to which there is a specific Advance outstanding shall be remitted to CNH Capital by Dealer in accordance with the terms of the Wholesale Finance Plans.  In addition, Dealer shall, upon demand by CNH Capital following an Event of Default, and as CNH Capital may direct, hold all proceeds of Collateral in which CNH Capital holds a first priority security interest in express trust for CNH Capital and deliver to CNH Capital all such proceeds of Collateral as are in Dealer's possession and/or deposit all such proceeds of Collateral in a separate account and not commingle such proceeds of Collateral with any other funds of Dealer. If any proceeds of Inventory are evidenced by notes, leases, Rental Contracts or checks (collectively "Payment Documents"), Dealer hereby assigns and, upon demand, shall deliver and/or endorse such Payment Documents to CNH Capital.  It is understood and agreed that the foregoing assignment is for security purposes only and in accepting such assignment CNH Capital does not assume any of Dealer's obligations with respect to such Payment

Documents.  If any proceeds of Collateral are evidenced by customer accounts, Dealer shall, at any time upon request, provide the necessary information to CNH Capital to enable CNH Capital to collect such accounts directly from the customer.

**7.  Rental Contracts.**

(a)  **Rental of Inventory.**  Provided Dealer complies with all of the applicable terms and conditions of the Wholesale Finance Plans, and CNH Capital makes this option available to Dealer under the Wholesale Finance Plans, Dealer may rent to Dealer's customers the Inventory with respect to which CNH Capital has made an Advance, pursuant to the terms of Dealer's rental contracts ("Rental Contracts"). Advances with respect to such Inventory will thereafter be subject to the rates and terms of CNH Capital's financing program, in effect for goods that are rented, as reflected in the Wholesale Finance Plans.

(b)  **Rental Contracts.**  All of Dealer's Rental Contracts, related agreements, and rental transactions will be in a form satisfactory to CNH Capital, permit their assignment to CNH Capital, and conform with all applicable Federal, State and local laws.  Dealer will indemnify CNH Capital against any loss or damage that CNH Capital may suffer, whether direct or indirect, resulting in any way from the Rental Contracts, related agreements, or rental transactions, including any noncompliance with applicable laws and any claims by Dealer's customers regarding Dealer's obligations under the Rental Contracts.

(c)  **Assignment to CNH Capital.**  All Rental Contracts are hereby assigned to CNH Capital.  Dealer will immediately, upon CNH Capital's request, deliver to CNH Capital the executed originals of all Rental Contracts and all related Payment Documents or, at CNH Capital's direction, mark such original Rental Contracts as having been assigned to CNH Capital. This assignment is a transfer for security only, and, unless and until CNH Capital has foreclosed its security interest in the Rental Contracts, will not be deemed to delegate any of Dealer's duties under the Rental Contracts to CNH Capital or constitute an assumption by CNH Capital of such duties, nor is it intended to alter or impair performance by either party to the Rental Contracts.

(d)  CNH Capital may, from time to time, verify by contacting and visiting with customers the accuracy of the Rental Contracts and the location of any Inventory that is the subject of a Rental Contract. Dealer will immediately, upon CNH Capital's request, provide CNH Capital with copies of all Rental Contracts, together with the following information regarding Rental Contracts in effect on the date of such request:  (i) name, address and telephone number of each customer who has executed a Rental Contract; (ii) the location of the Inventory; (iii) the date and all terms of each Rental Contract; (iv) the payment history with respect to each Rental Contract; (v) the date when the Inventory is to be returned under each Rental Contract; and, (vi) any other information that CNH Capital may reasonably request.  Dealer shall obtain from its customers, the consent required, if any, by state or federal law for the delivery, disclosure, retention, exchange and use of the customer information.

(e)  **Sale or Pledge of Rental Contracts.**  Other than to CNH Capital, Dealer will not assign, sell, pledge, convey or by any other means transfer any Rental Contracts or chattel paper covering Inventory financed by CNH Capital, or any rights therein, without CNH Capital's prior written consent.

(f)  **Terms of Rental Contracts.**  Dealer will not enter into any Rental Contracts with respect to Inventory financed by CNH Capital pursuant to which: (i) the original term of the Rental Contract (including renewal options) is greater than one-hundred-eighty (180) days; (ii) the original term of the Rental Contract is equal to or greater than the remaining economic life of such Inventory; (iii) the customer is bound to renew the Rental Contract for the economic life of such Inventory or is bound to become the owner of such Inventory; or, (iv) the customer has an option to renew the Rental Contract for the remaining economic life of such Inventory, or to become the owner of such Inventory, for nominal consideration or for consideration less than the unpaid balance owed to CNH Capital with respect to such Inventory.

(g)  **Further Assurance.**  Dealer will take any action CNH Capital may reasonably require to perfect and/or protect CNH Capital's security interest in Rental Contracts and/or the Inventory subject thereto and Dealer hereby authorizes CNH Capital to take any such action in Dealer's name.

**8.  Dealer's Representations, Warranties and Covenants.**

(a)  **Representations, Warranties, and Affirmative Covenants.**  For so long as any Obligations remain unpaid and/or this Agreement remains in effect, Dealer represents, warrants and

covenants to and with CNH Capital that:

(i)  Dealer has good title to all Collateral;

(ii)  Except to the extent that CNH Capital in writing agrees to subordinate its security interest to another party, CNH Capital's security interest in the Collateral is now and shall at all times hereafter be senior to the security interest or claim of any other Person;

(iii)  Dealer shall execute all documents CNH Capital requests to perfect and maintain CNH Capital's senior security interest in the Collateral, and shall cause all third parties who may hereafter hold a security interest in or possession of Collateral to provide such subordinations to and acknowledgments of CNH Capital's senior security interest as CNH Capital may require;

(iv)  Dealer shall deliver to CNH Capital immediately upon each request, and CNH Capital may retain, each Certificate of Title or Statement of Origin issued for Collateral;

(v)  Dealer shall at all times be duly organized, existing, in good standing, and qualified and licensed to do business in each jurisdiction in which its organizational status or the nature of its business or property requires such status or action;

(vi)  Dealer has the right, and is duly authorized, to enter into this Agreement;

(vii)  Dealer's execution of this Agreement does not, and shall not, violate or constitute a breach of any law or regulation applicable to Dealer, or any agreement to which Dealer is now or hereafter becomes bound;

(viii)  there are and shall be no actions or proceedings pending or threatened against Dealer that can or might result in any material adverse change in Dealer's financial or business condition;

(ix)  Dealer shall protect the Collateral and maintain the Inventory in good working order and condition;

(x)  Dealer has duly filed and shall duly file all tax returns required by law, and shall pay when due all taxes, levies, assessments and governmental charges;

(xi)  Dealer shall keep and maintain all of its books and records pertaining to the Collateral at its chief executive office, set forth below;

(xii)  Dealer shall keep all Collateral at one of the locations listed on Exhibit "B" hereto.  Dealer shall obtain CNH Capital's written approval prior to storing or moving any Collateral at or to any other location;

(xiii)  Dealer shall give CNH Capital thirty (30) days prior written notice of any change in Dealer's identity, name, form of business organization, majority shareholder, owner or chief executive office;

(xiv)  Dealer shall notify CNH Capital of the commencement of any material legal proceedings against Dealer or any Guarantor;

(xv)  Dealer shall comply with all laws, rules and regulations applicable to Dealer or its business; and

(xvi)  Dealer has provided CNH Capital with a copy of Dealer's current Articles of Incorporation, Articles of Organization, Articles of Formation, Partnership Agreement, or Certificate of Limited Partnership, as applicable, and shall provide CNH Capital any subsequent amendments thereto bearing indicia of filing from the appropriate governmental authority, or such other documents as CNH Capital may request to verify, without limitation, Dealer's true and correct legal name.

(b)  **Negative Covenants.**  For so long as any Obligations remain unpaid and/or this Agreement remains in effect, Dealer shall not at any time without CNH Capital's prior written consent:

(i)  other than in the ordinary course of its business, and as permitted under the Wholesale or the Wholesale Finance Plans, sell, demonstrate, lease, rent or otherwise dispose of, transfer, grant a security interest in, allow any lien to attach to, or consign any of the Collateral; or

(ii)  move any Collateral to a location other than an Approved Collateral Location.

(c)  **Financial Covenants.**  See Exhibit C.

(d)  **Insurance.**  Dealer shall at all times, including, without limitation, any time that Collateral is in the possession of third parties, bear all risk of loss of, damage to, or destruction of, the Collateral. Dealer shall maintain public liability insurance and shall keep all

Collateral insured against risks covered by standard "all risk" forms of fire, theft, and extended coverage insurance and such other risks as may be required by CNH Capital, in amounts and with such deductibles, and under policies issued by such insurance companies, all as are satisfactory to CNH Capital.  Dealer agrees to deliver promptly to CNH Capital certificates, or if requested, policies of insurance, satisfactory to CNH Capital, each with an endorsement naming CNH Capital or its assigns as additional insured or loss payee as their interests may appear, along with proof of payment of the premium therefor.  Each policy shall provide that CNH Capital's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than CNH Capital, and will contain the insurer's agreement to give thirty (30) days prior written notice to CNH Capital before any cancellation, lapse, expiration or other termination of, or any material change in, the policy will be effective as to CNH Capital, whether such termination or change is at the direction of Dealer or insurer.  Dealer assigns to CNH Capital all policies of insurance relating to Collateral and all proceeds of such insurance, including, without limitation, returned and unearned premiums, as additional security for the Obligations.  Dealer hereby directs all insurers to pay such proceeds directly to CNH Capital, and Dealer shall hold in trust for CNH Capital and promptly remit to CNH Capital, in the form received with all necessary endorsements, any proceeds of such insurance that Borrower may receive.  CNH Capital shall apply any proceeds of insurance it may receive toward payment of the Obligations as CNH Capital in its discretion may determine.  Excess insurance proceeds, if any, shall be returned to Dealer.  In the event any item of Collateral is damaged and a claim submitted to the insurer is in dispute, Dealer will pay to CNH Capital the unpaid balance of all Advances attributable to the damaged Collateral, plus all accrued interest thereon, within five (5) days after CNH Capital's request.  If, in the opinion of CNH Capital, Dealer fails to maintain insurance on the Collateral in an amount or manner satisfactory to CNH Capital, CNH Capital may, but shall not be obligated to, purchase such insurance, and Dealer hereby agrees to immediately reimburse CNH Capital, upon demand, for any payment made or expense incurred by CNH Capital in purchasing such insurance, plus interest thereon at the post-maturity interest rate specified in the Wholesale Finance Plans.

9.  **Authority to Perform for Dealer.**  If Dealer fails to fulfill any obligation set forth in this Agreement (including, without limitation, any covenants set forth in Section 8 hereof), CNH Capital is authorized, but not obligated, in Dealer's name or otherwise, to take any such action and pay any amount, as CNH Capital in its discretion deems necessary or appropriate, including, without limitation, executing documents on behalf of Dealer or in Dealer's name.  All costs and expenses so incurred by CNH Capital shall be part of the Obligations secured by this Agreement and Dealer shall reimburse CNH Capital on demand for all such amounts.

10.  **Financial Statements; Reports; Examinations.**

(a)  **Financial Statements; Reports.**  Dealer shall install and maintain current an accounting system satisfactory to CNH Capital. Dealer shall deliver to CNH Capital, in a manner and form prescribed by CNH Capital (including via electronic transmission if so requested by CNH Capital) each of the following:

(i)  within ninety (90) days after the end of each fiscal year of the Dealer, complete and accurate balance sheets and statements of income, retained earnings and changes in cash flow of the Dealer and it subsidiaries for such year, setting forth in comparative form the corresponding figures for the preceding year, all prepared in accordance with Generally Accepted Accounting Principles (or other methodology approved in advance by CNH Capital) applied on a consistent basis.  Financial statements so delivered shall be internally generated.  If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.  Financial statements shall also be delivered to CNH Capital in the manner identified below (check box if applicable):

☒  Financial statements so delivered shall be compiled by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital.  If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be reviewed by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to CNH Capital.  If requested by CNH Capital, Dealer shall provide consolidating balance sheets and

52791A  12/09

3

statements of the entities included in consolidated financial statements.

☐ Financial statements so delivered shall be audited by a firm of independent certified public accountants selected by Dealer and reasonably acceptable to by CNH Capital. Audited financial statements shall be accompanied by a report and unqualified opinion of the auditor (which shall not be limited as to the scope of the audit or qualified as to the status of Dealer as a going concern). If requested by CNH Capital, Dealer shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

(ii) within twenty (20) days after the end of each calendar month, unaudited complete and accurate consolidated balance sheets and operating statements of the Dealer and its subsidiaries that reflect operations through the preceding month; and

(iii) as and when requested by CNH Capital, copies of Dealer's filed tax returns, current reports of sales and inventory and such other reports and information as CNH Capital may request from time to time.

(b) Compliance Certificate. Dealer understands and agrees that within ninety (90) days after the end of each ☐ calendar month, or ☐ fiscal quarter, or ☒ fiscal year, Dealer shall provide CNH Capital with a certificate of compliance in the form attached as Exhibit D.

(c) Examinations. CNH Capital or its authorized representatives will have the right during normal business hours to enter the Dealer's places of business, to examine the Collateral and Dealer's books and records, bank statements and deposit records, all supporting data and Payment Documents, and to make copies of any such items. In addition, CNH Capital may contact Dealer's customers to verify the location or amount of any item of Collateral or confirm the amount or value of any proceeds of Inventory.

(d) Information Sharing. Dealer understands and agrees that CNH Capital may from time to time share with its Affiliates and manufacturers or distributors of goods financed by CNH Capital (collectively "Related Parties") information regarding Dealer's financial condition and CNH Capital's financing relationships with Dealer. Dealer also understands and agrees that Related Parties may from time to time share with CNH Capital information regarding the Related Parties' business relationships with Dealer.

11. Events of Default; Remedies of CNH Capital Upon Event of Default.

(a) Events of Default. Dealer will be in default under this Agreement (each an "Event of Default") if:

(i) Dealer fails to perform or observe any term, covenant or agreement contained in this Agreement, or in any other agreement between CNH Capital and Dealer and, if such failure is capable of being remedied, such failure shall continue unremedied for a period of ten (10) days from the date of Dealer's receipt of notice from CNH Capital, it being understood that no such cure period will be available for a breach of Dealer's financial covenants, if any, a breach under Section 11(a)(ii) hereof or any other subsection of this Section 11 for which no express cure period is provided;

(ii) Dealer fails to pay any Obligation to CNH Capital when due and payable hereunder, under the Wholesale Finance Plans, under any other present or future agreement between CNH Capital and Dealer or otherwise arising;

(iii) Dealer sells, leases, otherwise disposes of or grants a security interest in any Collateral in a manner not permitted under this Agreement or the Wholesale Finance Plans or Dealer fails to deliver any proceeds of Collateral to CNH Capital as required by this Agreement or the Wholesale Finance Plans;

(iv) Dealer, if a sole proprietorship, or any individual Guarantor of Dealer's Obligations to CNH Capital dies or becomes incapacitated, or any Guarantor notifies CNH Capital of its intent to terminate, or terminates, its guaranty, or otherwise breaches any terms contained in any guaranty or other agreement between the Guarantor and CNH Capital;

(v) any representation, warranty, financial statement, report or certificate that Dealer or any Guarantor makes or delivers to CNH Capital is not accurate in all material respects, or is materially misleading, when made;

(vi) Dealer abandons any Collateral;

(vii) Dealer or any Guarantor is or becomes in default after expiration of any applicable cure period in the payment of any debt owed to any third party, or Dealer is or becomes in default after expiration of any applicable cure period under any loan agreement with any third party;

(viii) Dealer shall fail to remit collateral proceeds to CNH Capital or any other floorplan/inventory lender immediately upon receipt thereof, or to otherwise make payments to CNH Capital or any such other lender upon the sale of collateral, all as required under the applicable loan agreement;

(ix) an attachment, sale or seizure issues or is executed against any assets of Dealer or of any Guarantor;

(x) Dealer or any Guarantor ceases existence as a corporation, partnership, limited liability company or trust, as applicable;

(xi) Dealer or any Guarantor ceases or suspends business;

(xii) a Change in Control, as applicable, shall occur with respect to Dealer or any Guarantor;

(xiii) Dealer or any Guarantor or any Controlling Party makes a general assignment for the benefit of creditors;

(xiv) the commencement by or against Dealer, any Guarantor or any Controlling Party of any bankruptcy, insolvency arrangement, reorganization, receivership or similar proceedings with respect to it under any state or federal law;

(xv) Dealer or any Guarantor or any Controlling Party becomes insolvent;

(xvi) any receiver or trustee is appointed for any assets of Dealer or any Guarantor or any Controlling Party;

(xvii) Dealer is in default of any franchise, dealership or license agreement relating to the right to deal in any Collateral which CNH Capital finances and such default is not cured within any cure period provided under the applicable agreement or any such agreement is terminated;

(xviii) Dealer or any Guarantor or any Controlling Party misrepresents Dealer's or such Guarantor's or Controlling Party's financial condition or organizational structure; or

(xix) CNH Capital determines in good faith that it is insecure with respect to any of the Collateral or the payment in full of Dealer's Obligations to CNH Capital and Dealer fails to correct the situation within ten (10) days after Dealer's receipt of written notice from CNH Capital.

(b) Remedies of CNH Capital Upon an Event of Default. Upon the occurrence of an Event of Default:

(i) CNH Capital may at any time, without notice or demand to Dealer, do any one or more of the following:

(1) declare all or any part of the Obligations immediately due and payable;

(2) exercise any rights it may have under the UCC or other applicable law;

(3) cease extending additional credit to Dealer (which shall not be construed to limit the discretional nature of any credit facility).

(ii) Dealer shall segregate and keep the Collateral in trust for CNH Capital, and will not dispose of or use any Collateral, nor further encumber any Collateral.

(iii) Upon CNH Capital's demand, Dealer shall immediately deliver the Collateral to CNH Capital at a place specified by CNH Capital, together with all related Payment Documents;

(iv) CNH Capital or its agents may, without notice or demand to Dealer, take immediate and exclusive possession of the Collateral wherever located and enter any of the premises of Dealer, with or without process of law, wherever the Collateral may be and take possession of and remove the Collateral, all without liability on the part of CNH Capital.

(v) CNH Capital may sell, lease or otherwise dispose of any or all of the Collateral, at public or private sale (including, without limitation, through live or internet auction), for cash or credit, without notice to Dealer except as required by law (it being agreed that ten (10) days notice shall constitute reasonable notice); CNH Capital may bid on and become the purchaser of such Collateral; CNH Capital may sell any or all of the Collateral to any manufacturer of the Collateral which may be obligated to purchase the Collateral under any applicable "dealership statute", it being agreed that any such sale in accordance with the terms of such statute shall constitute a

commercially reasonable disposition of the Collateral.

(vi) CNH Capital may, without notice, apply a default finance charge to Dealer's outstanding principal indebtedness equal to the post-maturity rate specified in the Wholesale Finance Plans.

(vii) Dealer hereby grants CNH Capital an irrevocable power of attorney to: execute or endorse on Dealer's behalf any checks, drafts or other forms of exchange received as payment on any Collateral for deposit in CNH Capital's account; execute financing statements, instruments, Certificates of Title and Statements of Origin pertaining to the Collateral; sell, assign, transfer, negotiate, demand, collect, receive, settle, extend, or renew any amounts due on any of the Collateral; do anything Dealer is obligated to do hereunder; initiate and settle any insurance claim pertaining to the Collateral; and do anything CNH Capital deems necessary or advisable, as applicable, to preserve and protect the Collateral and CNH Capital's rights and interests therein.

(viii) Upon CNH Capital's oral or written demand, Dealer will immediately deliver the original Rental Contracts and other Payment Documents to CNH Capital, and CNH Capital may collect in CNH Capital's or Dealer's name all amounts owed to Dealer under the Rental Contracts or other Payment Documents.

All of CNH Capital's rights and remedies are cumulative and non-exclusive. CNH Capital's failure to exercise any of CNH Capital's rights or remedies hereunder will not waive any of CNH Capital's rights or remedies as to any past, current or future default.

(c) **Additional Remedies Upon Default Applicable Only to Collateral Located in Louisiana.** Dealer hereby confesses judgment in favor of CNH Capital for the full amount of the Obligations in principal, interest, attorney's fees and any other advances, charges and expenses herein provided and, on the occurrence of an event of default it shall be lawful for and Dealer specifically authorizes CNH Capital, without making a demand or putting Dealer in default, a putting in default and the three day's notice provided by the Louisiana Code of Civil Procedure being specifically waived, to cause all and singular the Collateral or any part thereof to be seized and sold under executory process or any other legal process, at the option of CNH Capital and on such terms as the CNH Capital may direct. The Dealer hereby especially waives the benefit of any and all laws or parts of laws relative to the appraisement of property seized and sold under executory or other legal process or as required by Article 2723 of the Louisiana Code of Civil Procedure, any exemptions from seizure which may otherwise apply to the Collateral and all pleas of division and discussion.

Dealer further agrees that in the event any proceedings are initiated under executory process or otherwise, in addition to such evidence deemed authentic as a matter of law, any and all declarations of the facts made by authentic act before a notary public and in the presence of two witnesses. by a person declaring that such facts lie within his knowledge, shall constitute authentic evidence of such facts.

Pursuant to the authority of Louisiana Revised Statutes 9:5136 et seq., Dealer hereby appoints CNH Capital or its designee to be keeper or receiver of the Collateral for the benefit of CNH Capital, all at the option of CNH Capital, to take effect immediately upon any seizure which may arise as an incident to any legal action which may be brought by CNH Capital.

(d) **Expenses in Exercising Remedies; Deficiency.** Dealer shall be liable to CNH Capital for all expenses of retaking, holding, preparing for sale and selling the Inventory and other Collateral, all collection costs, court costs, legal expenses and reasonable attorneys' fees and any other expenses incurred by CNH Capital in enforcing this Agreement (including, without limitation, any such expenses and fees incurred by CNH Capital in connection with any refinancing or restructuring of the Obligations), in collecting any Obligation owed by Dealer to CNH Capital or in proceeding against the Collateral. The foregoing costs, fees and expenses shall constitute a part of the Obligations and shall bear interest at the post-maturity rate of interest provided in the Wholesale Finance Plans. CNH Capital may apply proceeds of Collateral received upon any disposition of Collateral to the foregoing expenses and to the reduction of the Obligations in such order of application as CNH Capital in its discretion may determine. Dealer shall be liable for any deficiency remaining due on the Obligations after disposition of the Collateral. CNH Capital shall pay to Dealer, or other Person as required by law, any surplus funds remaining after the Obligations are fully satisfied.

12. **Duration and Termination of This Agreement.** This Agreement

shall continue in effect until the earlier of: (a) ninety (90) days after the date on which either party receives written notice from the other party that this Agreement is terminated; (b) if an Event of Default shall occur, immediately upon Dealer's receipt of notice from CNH Capital that this Agreement is terminated; or (c) as mutually agreed upon in writing by CNH Capital and Dealer. Upon the effective date of any such termination of this Agreement, all Obligations shall become immediately due and payable. The Obligations of Dealer, all security interests and liens granted by Dealer to CNH Capital, and all rights granted to CNH Capital hereunder shall not be impaired or affected by such termination and such security interests and liens and Dealer's Obligations under this Agreement shall remain in effect until such time as the Obligations are satisfied in full. In the event Dealer and CNH Capital engage in transactions following termination of this Agreement, such transactions shall not be construed as a renewal of this Agreement nor as a waiver of such termination; provided, however, that all such transactions shall be governed by terms identical to those of this Agreement.

13. **Miscellaneous.**

(a) **Entire Agreement.** This Agreement, together with the Wholesale Finance Plans, are and shall be deemed the complete and final expression of the Agreement between CNH Capital and Dealer as to matters herein contained and relative thereto, and supersedes all previous agreements between them pertaining to such matters. It is clearly understood that no promise or representation not contained herein was an inducement to either Dealer or CNH Capital or was relied on by either of them in entering into this Agreement.

(b) **Modifications, Amendments, Terminations of this Agreement and the Wholesale Finance Plans.**

(i) Except as to matters described in Section 13(b)(ii) hereof, no letter, or other form of communication, written or oral, passing between CNH Capital and Dealer, covering any matter during the effective period of this Agreement, shall be deemed a part of this Agreement, nor shall it have the effect of amending or modifying this Agreement, unless such communication is in writing, distinctly states that it is to constitute a part of this Agreement and is signed by the parties hereto.

(ii) All of the terms and conditions of the Wholesale Finance Plans shall be established at CNH Capital's sole discretion. CNH Capital may terminate the Wholesale Finance Plans without prior notice at any time at its sole discretion. CNH Capital may, in its sole discretion, amend, modify or supplement any of the terms and conditions of the Wholesale Finance Plans at any time upon notice to Dealer. Notification of the amendment, modification or supplementation of the Wholesale Finance Plans may be accomplished by, among other methods, issuance of Dealer Bulletins or publication on CNH Capital's website. Changes in the Wholesale Finance Plans instituted by CNH Capital that would have the effect of increasing the interest rates or fees payable by Dealer under the Wholesale Finance Plans, or amending the timing, or increasing the amount, of future periodic payments to CNH Capital under the Wholesale Finance Plans, shall only be applied prospectively from the effective date of such changes as established by CNH Capital.

(c) **Indemnification; Limits on Liability.**

(i) **Indemnification.** Dealer shall indemnify, protect, defend and hold harmless CNH Capital, its successors, assigns, and its Related Interests (excepting CNH America LLC) from any and all claims, liabilities, demands, penalties, actions, suits, proceedings (whether civil or criminal), orders, judgments, disbursements, losses, costs (including, without limitation, court costs and reasonable attorneys' fees), expenses, or damages caused by or arising from: (1) product liability and/or personal injury arising out of the use of the Inventory by any Person; (2) breach by Dealer of any warranty with respect to any Inventory (including, but not limited to, a claim of latent or patent defect); (3) breach by Dealer of any representations, warranties, covenants or other obligations or agreements contained in this Agreement; (4) Dealer's performance of any reconditioning or remarketing services; (5) failure of Dealer to perform its obligations with respect to any warranty, maintenance, service or other similar agreements with any Person; (6) any governmental fees, charges, taxes or penalties levied or imposed with respect to any Inventory; and (7) failure of Dealer to comply with any applicable federal, state or local law or regulation.

CNH shall give Dealer, and Dealer shall give CNH Capital, notice of any event or condition that requires indemnification

by Dealer hereunder, or any allegation that such an event or condition exists, promptly upon obtaining knowledge thereof. Dealer shall pay all amounts due hereunder promptly on notice thereof from CNH Capital. Upon payment by Dealer, and provided Dealer is otherwise in compliance with the terms of this Agreement, Dealer shall be subrogated to CNH Capital's rights with respect to such event or condition. All of the indemnities and agreements contained in this Section 13(c) shall survive and continue in full force and effect notwithstanding the termination of this Agreement.

(ii) **Exclusion of Certain Damages.** No Party shall be liable to the other Party for any punitive, consequential, incidental, special or similar damages in connection with this Agreement or the Wholesale Finance Plans, except to the extent that a Party is required to indemnify the other Party under this Agreement for amounts owing to third parties.

(d) **Dealer Not an Agent.** Nothing in this Agreement shall be construed as constituting Dealer an employee, agent or legal representative of CNH Capital for any purpose whatsoever. Dealer has no right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of CNH Capital, or to bind CNH Capital in any manner whatsoever. This Agreement does not constitute a joint venture, partnership, association or agency between CNH Capital and Dealer. Dealer and CNH Capital shall bear the relationship to one another of independent contractors.

(e) **Captions.** Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision thereof.

(f) **Notices.** Any written notice required or permitted under this Agreement shall be deemed to have been received (i) on the fifth (5th) calendar day after being posted if such notice is sent by first class U.S. mail, certified return receipt requested; (ii) one (1) business day after being sent, if sent by a nationally recognized overnight courier service, next day service; (iii) on the date transmitted, if sent by fax; or (iv) if sent by e-mail on a business day, at the end of the business day on the date delivered or, if the e-mail was not delivered on a business day, the end of the next following business day. Notices shall be sent to the Parties at the respective address or fax number set forth on the signature page of this Agreement beneath their names, or any other address designated in writing by a Party following the date of this Agreement in a notice complying with this Section 13(f).

(g) **Severability.** Any part of this Agreement which is held to be invalid or unenforceable under the laws of any place where this Agreement is to be performed or is sought to be enforced shall be enforceable to the maximum extent permitted by law, without invalidating its effect elsewhere or the remainder of this Agreement.

(h) **Assignment of Agreement; Successors and Assigns.** Dealer may not sell, assign, delegate, convey or otherwise transfer in any way whatsoever this Agreement or Dealer's rights or obligations under this Agreement to any Person without the prior written consent of CNH Capital. CNH Capital, without notice or consent, may assign its rights and delegate obligations under this Agreement, and may sell, assign, syndicate, securitize or grant participations in any of the Obligations and any related rights hereunder. The provisions of this Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the parties hereto.

(i) **Waiver.** The failure of a Party to require the performance of any part of this Agreement or the waiver by a Party of any default or requirement under this Agreement shall not prevent a subsequent enforcement of such term and shall not be deemed a waiver of any subsequent default or requirement. Every waiver of any provision hereof must be in writing and signed by the Party against whom the waiver is to be enforced.

(j) **APPLICABLE LAW.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO ITS CONFLICT OF LAW RULES.

(k) **Counterparts.** This Agreement may be executed in multiple counterparts each of which shall be deemed an original and all of which shall constitute one and the same agreement. This Agreement or a counterpart thereof may be delivered by telecopier, facsimile or any other electronic transmission, including a scanned version in pdf format, and the telecopier, facsimile or any electronic transmission of a signature to another party or parties (or to their respective attorneys) shall be of the same force and effect as the delivery of an original signature.

(l) **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE THEIR RIGHTS TO REQUEST A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY COURT OF LAW, TRIBUNAL, OR OTHER LEGAL PROCEEDING ARISING OUT OF OR INVOLVING THIS AGREEMENT, OR ANY DOCUMENT DELIVERED IN CONNECTION HEREWITH, OR RELATING TO ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

**IN WITNESS WHEREOF**, the Parties have caused their duly authorized representatives to execute this Agreement as of the Effective Date.

**CNH Capital America LLC**

By: _____

Title: _Senior Credit Manager_

Abby Farm Supply, Inc.

By: _____

_Terry Abby_ (Print Name)

Title: _VP_

**Addresses for Notices; Dealer's Chief Executive Office:**

| CNH Capital America LLC | Abby Farm Supply, Inc. |
|---|---|
| 5729 Washington Ave. | 1521 HWY 45 |
| Racine, WI 53406 | Saltillo, MS 38866 |
| Attention: Wholesale Credit | Attention: Terry Abby |
| Fax Number: 262-636-5771 | Fax Number: 662-869-2432 |

52791A  12/09

## EXHIBIT A
## WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES

"<u>Advance(s)</u>" shall have the meaning provided in Section 2(a)

"<u>Affiliate</u>" means, with respect to a Person, another Person who directly or indirectly controls, is controlled by, or is under common control with the Person.

"<u>Approved Collateral Location</u>" means (i) Dealer's chief executive office; (ii) the other location(s) listed on Exhibit "B" hereto and (iii) additional locations approved in advance by CNH Capital in accordance with Section 8(a)(xii).

"<u>Change of Control</u>" means, as applicable, any sale of all or substantially all of the assets of a Person (whether in one or a series of transactions), a change in the majority ownership or control of a Person's equity, a transaction in which a Person is merged into or consolidated with another entity, or any other change in the Person(s) possessing the ability to direct or control the management of a Person and its business.

"<u>Control</u>" (including with correlative meanings, the terms controlling, controlled by and under common control with) means the power to direct the management or policies of a Person, directly or indirectly, through the ownership of voting securities, by contract or otherwise.

"<u>Controlling Party</u>" means any Person that "controls" Dealer or a Guarantor.

"<u>End User</u>" shall have the meaning provided in Section 4.

"<u>ESS</u>" shall have the meaning provided in Section 2(c).

"<u>Generally Accepted Accounting Principles</u>" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination.

"<u>Guarantor</u>" means any individual or entity that executes in favor of CNH Capital a guarantee with respect to all or any portion of the Obligations.

"<u>Inventory</u>" shall have the meaning provided in Section 3(b)(i).

"<u>Obligations</u>" shall have the meaning provided in Section 3(a).

"<u>Party</u>" means CNH Capital or Dealer and "Parties" shall mean CNH Capital and Dealer.

"<u>Person</u>" means an individual, corporation, partnership, joint venture, limited liability company, trust or any type of business organization.

"<u>Related Interests</u>" means, with respect to a Party, the Party's Affiliates, successors, and assigns, and Representatives of that Party or its Affiliates.

"<u>Representatives</u>" means, with respect to a Person, as applicable, the Person's shareholders, equity owners, employees, officers, directors, agents, immediate family members or other representatives.

"<u>UCC</u>" shall have the meaning provided in Section 3(b).

"<u>Wholesale Finance Plans</u>" shall mean collectively one or more of the "Wholesale Finance Plans", "Schedules of Terms", "Schedules of Discounts and Terms", "Dealer Handbooks", "Dealer Policy Manuals" and "ESS Manual" which set forth the terms and conditions under which CNH Capital is willing to provide financing for the Dealer to obtain and maintain new and used Inventory, equipment or other goods held for sale, lease or rental to its customers, and other financing accommodations, which terms and conditions will describe the goods eligible for financing, and will also establish, among other things, maximum loan amounts for each item, repayment and curtailment terms, interest rates, default interest rates, late payment and other service charges and fees, maximum annual hour usage limits, excess hourly usage rates and other terms, conditions and limitations of the financing, together with any policy or operating manuals or guides and "dealer bulletins" and other publications from time to time delivered by CNH Capital to Dealer which relate to the foregoing, and any supplemental publications or agreements specifically applicable to Dealer, all as in effect, amended and supplemented by CNH Capital, at its sole discretion, from time to time. The Wholesale Finance Plans are incorporated herein by reference.

"<u>Wholesale Obligations</u>" shall have the meaning provided in Section 2(b).

**EXHIBIT B**
**WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES**

**COLLATERAL LOCATIONS**
**(INCLUDING CHIEF EXECUTIVE OFFICE)**

1521 HWY 45
Saltillo, MS 38868

2501 HWY 72
Walnut, MS 38683

16135 HWY 51
Millington, TN 38053

8263 Frontage RD
Mount Olive, MS  38654

**EXHIBIT C**
**WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES**

**FINANCIAL COVENANTS**

8(c)   <u>**Financial Covenants**</u>.

Dealer hereby covenants and agrees that as of the end of each ☐ calendar month or ☐ fiscal quarter or ☒ fiscal year ending December 31st , and as of the end of each ☐calendar month, or ☐fiscal quarter, or ☒fiscal year thereafter, Dealer must maintain:

(i)   A Fixed Charge Coverage Ratio of not less than 1.2 : 1.0 for each ☐ calendar month, or ☐ fiscal quarter, or ☒ fiscal year ending December 31st; and

(ii)   An Adjusted Debt to Tangible Net Worth Ratio of not more than 4.0 : 1.0 for each ☐ calendar month or ☐ fiscal quarter or ☒ fiscal year ending December 31st.

For purposes of this Section 8(c):

(i)   **Net Worth** shall mean the aggregate amount of the Dealer's items properly shown as assets on its balance sheet minus the aggregate amount of the Dealer's items properly shown as liabilities on its balance sheet, determined in accordance with Generally Accepted Accounting Principles ("GAAP");

(ii)   **Tangible Net Worth** shall mean Net Worth minus the aggregate amount of the Dealer's items properly shown as the following types of assets on its balance sheet determined in accordance with GAAP;

    (1) goodwill, patents, non-competes, copyrights, mailing lists, trade names, trademarks, servicing rights, organizational and franchise costs, and other like assets properly classified as intangibles; and

    (2) receivables, loans and other amount due from any shareholder, director or officer of the Dealer, and receivables, loans and other amounts due from any other related or affiliated party of the Dealer, plus an amount equal to 70% of the amount reflected on Dealer's balance sheet as a LIFO reserve;

(iii)   **Debt** shall mean the aggregate amount of the Dealer's items properly shown as liabilities on its balance sheet, determined in accordance with GAAP;

(iv)   **Subordinated Debt** shall mean Debt that is expressly subordinated to CNH Capital in writing acceptable to CNH Capital;

(v)   **Adjusted Debt to Tangible Net Worth Ratio** means the ratio of Debt minus Subordinated Debt to Tangible Net Worth plus Subordinated Debt :and

(vi)   **Fixed Charge Coverage Ratio** shall be defined as the ratio computed when the sum of (a) pretax income; plus (b) depreciation and amortization expense; plus (c) interest expense; plus (d) rent and lease expense is divided by the sum of (x) interest expense; plus (y) rent and lease expense; plus (z) previous fiscal year end current maturities of long-term Debt.

**EXHIBIT D**
**WHOLESALE FINANCING AND SECURITY AGREEMENT – UNITED STATES**

**COMPLIANCE CERTIFICATE**

This Compliance Certificate ("Certificate") is delivered to CNH Capital America LLC on behalf of name of dealer, a ("Dealer"), pursuant to the Wholesale Financing and Security Agreement, dated as of ___, 20___ (as amended, supplemented, restated or modified from time to time, "WFSA"), by and between CNH Capital America LLC ("CNH Capital") and Dealer. I have reviewed the terms of the WFSA and hereby certify as follows:

1.   I am the Chief Financial Officer or such other duly authorized Person with the requisite power and authority to execute and deliver this Certificate on behalf of the Dealer.

2.   I have reviewed and am familiar with the contents of this Certificate and the matters set forth herein are true.

3.   As of the date hereof, Dealer's representations and warranties set forth in the WFSA are true and correct.

4.   As of the date hereof, Dealer has performed and complied with all covenants, agreements, obligations and conditions contained in the WFSA that are required to be performed or complied with by it.

5.   I have made or caused to be made under my supervision, a review in detail of the transactions and financial condition of the Dealer. ANNEX 1 attached hereto and incorporated herein sets forth the financial data and computations evidencing Dealer's compliance with the financial covenants set forth in the WFSA, all of which data and computations are true, complete and correct in all material respects and in accordance with Generally Accepted Accounting Principles ("GAAP"). The information described therein is as of the last day of the ☐ calendar month ending ___, or ☐ fiscal quarter ending ___, or ☐ fiscal year ending ___.

    A.   Fixed Charge Coverage Ratio     ___ : ___
    B.   Adjusted Debt to Tangible Net Worth Ratio    ___ : ___

6.   As of the date hereof, no Event of Default has occurred or is continuing, under the terms of the WFSA.

7.   As of the date hereof, there has not been any material adverse change in the business, operations, results of operations, assets, liabilities, or condition (financial or otherwise) of the Dealer.

8.   As of the date hereof, Dealer has not changed any of its certificate of incorporation or bylaws or organization, as the case may be, without the prior written consent of CNH Capital and Dealer remains in good standing in the jurisdiction in which it is located.

IN WITNESS WHEREOF, I have executed this Certificate on behalf of Dealer this ___ day of ___, 20___.

**Dealer's name**

By: _____

Name: _____

Title: _____

**ANNEX 1**

The information describe herein is as of the last day of the ☐ calendar month ending _____ , or ☐ fiscal quarter ending _____ , or ☐ fiscal year ending

**A. Fixed Charge Coverage Ratio**

           Calculation

|   |   |   |
|---|---|---|
|   | Pretax Income | _____ |
| + | Depreciation/Amortization | _____ |
| + | Interest expense | _____ |
| + | Rent /Lease Expense | _____ |
|   |   |   |
|   | Current Maturities LTD | _____ |
| + | Interest expense | _____ |
| + | Rent /Lease Expense | _____ |
|   |   |   |
|   | **Ratio** | _____ |

**B. Adjusted Debt to Tangible Net Worth Ratio**

           Calculation

|   |   |   |
|---|---|---|
|   | Total Liabilities | _____ |
| - | Subordinated Debt | _____ |
|   | **Debt** | _____ |
|   |   |   |
|   | Net Worth | _____ |
| + | Subordinated Debt | _____ |
| - | Intangible Assets | _____ |
| - | Rec/Loans Related Parties | _____ |
| + | 70% LIFO Reserves | _____ |
|   | **Tangible Net Worth** | _____ |
|   |   |   |
|   | **Ratio** | _____ |



## GUARANTY

THIS GUARANTY (this "Guaranty") is made as of _Marte 27_, 2012 by the undersigned guarantor or joint and several guarantors (singly and collectively, "Guarantor") in favor of CNH CAPITAL AMERICA LLC ("CNH Capital").

### RECITALS

**WHEREAS**, Abby Farm Supply, Inc. ("Borrower") and CNH Capital are or may become parties to various and sundry agreements of various dates pursuant to which CNH Capital has and may hereafter extend credit and other financial accommodations and services to or for the benefit of Borrower, which agreements may include, without limitation, a Wholesale Financing and Security Agreement, a Retail Financing Agreement and/or a Merchant Agreement (all of which, as amended and supplemented from time to time, are hereinafter referred to collectively as the "Financing Agreements").

**WHEREAS**, Guarantor has benefited from CNH Capital's prior loans and other extensions of credit to Borrower, and will benefit directly and indirectly from any future loans and other extensions of credit to Borrower.

**WHEREAS**, as a condition to making such loans or other extensions of credit, CNH Capital has required that Guarantor execute and deliver this Guaranty.

**NOW, THEREFORE**, in order to induce CNH Capital to enter into the Financing Agreements and to make loans or other extensions of credit to Borrower, and in consideration thereof, Guarantor hereby agrees as follows:

1. **Guaranty.** Guarantor (or, if Guarantor is more than one person, Guarantor, jointly and severally) hereby absolutely and unconditionally guarantees the payment and performance when due, whether at stated maturity, by acceleration or otherwise, of all present and future obligations and indebtedness of Borrower to the CNH Capital arising under the Financing Agreements or otherwise (the "Obligations").

2. **Guaranty Absolute.**

   (a) Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms of the Financing Agreements, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of CNH Capital with respect thereto. The liability of Guarantor under this Guaranty shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of any of the Financing Agreements (or any other agreement or instrument relating thereto); (ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Financing Agreements, including, without limitation, changes in the terms of disbursement of loan proceeds or repayment thereof, modifications, extensions (including, without limitations, extensions beyond and after the original term) or renewals of payment dates, changes in interest rate or the advancement of additional funds by CNH Capital in its discretion; (iii) any exchange, release or nonperfection of any collateral, or any release, amendment, waiver of or consent to departure from any collateral, for all or any of the Obligations; or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower in respect of the Obligations or Guarantor in respect of this Guaranty.

   (b) Notwithstanding any termination of this Guaranty or the cancellation of the Financing Agreements or any other document, instrument or agreement evidencing the Obligations, if at any time any payment of any of the Obligations (from any source) is rescinded, repaid or must otherwise be returned by CNH Capital (i) due to or upon the insolvency, bankruptcy or reorganization of Borrower or Guarantor, or (ii) for any other circumstance, this Guaranty shall continue to be effective or be reinstated, as the case may be, all as though such payment had not been made.

3. **Waiver of Subrogation and Contribution.** As a material inducement to CNH Capital's making loans or other extensions of credit to Borrower, Guarantor hereby absolutely and irrevocably waives any claim or other rights which Guarantor may now have or hereafter acquire against Borrower or any other party liable for the Obligations that arise from the existence or performance of Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, contribution, exoneration, claim or remedy of CNH Capital against Borrower or any collateral which CNH Capital now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, by any payment made hereunder or otherwise, including without limitation, the right to take or receive from Borrower or any other party, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim or other rights. Any agreement between Guarantor and Borrower or any other party which is in any respect contrary to the foregoing shall be null and void and of no force or effect. If any amount shall be paid to Guarantor in violation of the preceding sentences, such amount shall be deemed to have been paid to Guarantor for the benefit of, and held in trust for the benefit of CNH Capital, and shall forthwith be paid to CNH Capital to be credited and applied to any Obligation, whether matured or unmatured, at CNH Capital's sole discretion.

4. **Guaranty Independent Waivers.**

   (a) Guarantor agrees that (i) the obligations hereunder are independent of and in addition to the undertakings of Borrower pursuant to the Financing Agreements, any evidence of indebtedness issued in connection therewith, any mortgage or security agreement given to secure the same, and any other guaranties given in connection with the obligations of Guarantor to CNH Capital, (ii) a separate action may be brought to enforce the provisions hereof whether Borrower is a party in any such action or not, (iii) CNH Capital may at any time, or from time to time, in its sole discretion, (1) exchange, release and/or surrender all or any of the collateral security, or any part thereof, by whomsoever deposited, which is now or may hereafter be held by CNH Capital in connection with all or any of the Obligations; (2) sell and/or purchase all or any such collateral at public or private sale in the manner permitted by law and after giving any notice which may be required, and after deducting all costs and expenses of every kind for collection, sale or delivery, the net proceeds of any such sale may be applied by CNH Capital to all or any of the Obligations; and (3) settle or compromise with Borrower, and/or any other person liable thereon, any and all of the Obligations and/or subordinate the payment of same, or any part thereof, to the payment of any other debts or claims, which may at any time be due or owing to CNH Capital and/or any other person or corporation, and (iv) CNH Capital shall be under no obligation to marshal any assets in favor of Guarantor or in payment of any or all of the Obligations.

   (b) Except as otherwise expressly provided herein or prohibited by applicable law: Guarantor hereby waives (i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance and any other notice with respect to any of the Obligations and this Guaranty, and promptness in commencing suit against any party thereto or liable thereon, and/or in giving any notice to or

**EXHIBIT C**

making any claim or demand hereunder upon Guarantor (ii) any right to require CNH Capital to (1) proceed against Borrower, any other guarantor or other party liable for the Obligations, (2) proceed against or exhaust any security held from Borrower, or (3) pursue any remedy in CNH Capital's power whatsoever; (iii) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than full payment of the Obligations; (iv) any defense arising out of an election of remedies by CNH Capital, even though that election of remedies, such as non-judicial foreclosure with respect to security for the Obligations, has impaired or destroyed Guarantor's rights of subrogation and reimbursement against Borrower; (v) to the fullest extent permitted by law, all rights and benefits under any statute or other provisions of law purporting to reduce a guarantor's obligations in proportion to the principal obligation; (vi) to the fullest extent permitted by law:  (1) any defense arising as a result of CNH Capital's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, and (2) any defense based on any borrowing or grant or a security interest under Section 364 of the Bankruptcy Code; (vii) without limiting the generality of the foregoing or any other provision hereof, and to the fullest extent permitted by law, all rights and benefits which might otherwise be available to the undersigned: (1) allowing a surety or guarantor defense(s) that are available to the principal, (2) exonerating a surety or guarantor if the original obligation is altered without the surety or guarantor's consent, or if the creditor's remedies against the principal are impaired or suspended, (3) exonerating a surety or guarantor upon the principal's performance or tender of performance, (4) exonerating a surety or guarantor to the extent the creditor declines the surety or guarantor's request to proceed against the principal, (5) entitling a surety or guarantor to the benefit of securities held by the creditor; (6) entitling a surety or guarantor to have the principal's property, or the proceeds thereof, applied first toward the obligation, (7) requiring a secured creditor to enforce liens in any particular order, (8) requiring a creditor to resort first to liens against property not secured by other creditors, and (9) arising under Wisconsin Statutes Chapter 403 (negotiable instruments), including but not limited to Wis. Stats. §§ 403.505 (evidence of dishonor), 403.601 (discharge and effect of discharge), 403.602 (payment), 403.603 (tender of payment), 403.604 (discharge by cancellation or renunciation), 403.605 (discharge of endorsers and accommodation parties); and (viii) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof.

5.  **Does Not Supersede Other Guaranties.**  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the Obligations and/or any obligations of Borrower or any other persons or entities heretofore or hereafter given to CNH Capital, and this Guaranty shall not affect or invalidate any such other guaranties. The liability of Guarantor to CNH Capital shall at all times be deemed to be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties heretofore or hereafter given by Guarantor to CNH Capital.

6.  **Amendments, Etc.**  No amendment or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by CNH Capital, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  No notice to or demand on Guarantor shall in any case entitle Guarantor to any other or further notice or demand in similar or other circumstances.

7.  **No Waiver; Remedies.**  No failure on the part of CNH Capital to exercise and no delay in exercising any right or remedy hereunder shall operate as a waiver thereof; nor shall CNH Capital be estopped to exercise any such right because of any such failure or delay; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

8.  **Right to Setoff.**  If Borrower is in default under the Financing Agreements, CNH Capital is hereby authorized at any time and from time to time to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by CNH Capital to or for the credit or the account of Guarantor against any and all of the obligations of Guarantor now or hereafter existing under this Guaranty.  CNH Capital agrees promptly to notify Guarantor after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of CNH Capital under this Section are in addition to other rights and remedies (including, without limitation, other rights of setoff) which CNH Capital may have.

9.  **Continuing Guaranty; Transfer of Financing Agreements.**  This Guaranty is a continuing guaranty and shall be (i) subject to the provisions of Section 2(b) hereof, remain in full force and effect until payment in full of the Obligations and all other amounts payable under this Guaranty, (ii) be binding upon Guarantor, and Guarantor's heirs, executors, successors and assigns, and (iii) inure to the benefit of and be enforceable by CNH Capital and its successors, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), CNH Capital may assign or otherwise transfer all or any part of the Obligations and/or the Financing Agreements to any other person, and such other person shall thereupon become vested with all the rights in respect thereof granted to CNH Capital herein or otherwise.

10. **No Duty.**  Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the Obligations, and agrees that CNH Capital shall have no duty to advise Guarantor of any information known to CNH Capital regarding any such financial condition or circumstances of Borrower.

11. **Waiver of Right to Trial by Jury.**  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING:  (a) BROUGHT BY GUARANTOR, BORROWER, CNH CAPITAL OR ANY OTHER PERSON RELATING TO (i) THE OBLIGATIONS AND/OR ANY UNDERSTANDINGS OR PRIOR DEALING BETWEEN THE PARTIES HERETO, (ii) THIS GUARANTY, OR (iii) THE FINANCING AGREEMENTS; OR (b) TO WHICH CNH CAPITAL IS A PARTY. GUARANTOR HEREBY AGREES THAT THIS GUARANTY CONSTITUTES A WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY PURSUANT TO THE PROVISIONS OF ANY APPLICABLE LAW, AND GUARANTOR DOES HEREBY CONSTITUTE AND APPOINT CNH CAPITAL HIS, HER OR ITS TRUE AND LAWFUL ATTORNEY-IN-FACT, WHICH APPOINTMENT IS COUPLED WITH AN INTEREST, AND GUARANTOR DOES HEREBY AUTHORIZE AND EMPOWER CNH CAPITAL, IN THE NAME, PLACE AND STEAD OF GUARANTOR, TO FILE THIS GUARANTY WITH THE CLERK OR JUDGE OF ANY COURT OF COMPETENT JURISDICTION AS A STATUTORY WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY.

12. **Bankruptcy of Borrower.**  Notwithstanding any modification, discharge or extension of the Obligations or any amendment, modification, stay or cure of CNH Capital's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Borrower whether permanent or temporary, and whether assented to by CNH Capital, Guarantor hereby agrees that Guarantor shall be obligated hereunder to pay and perform the Obligations and discharge other obligations in accordance with the terms of the Obligations and the terms of this Guaranty in effect on the date hereof.  Guarantor understands and acknowledges that by virtue of this Guaranty, Guarantor has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Borrower.  As an example and not in any way of limitation, a subsequent modification of the Obligations in any reorganization case concerning Borrower shall not affect the obligation of Guarantor to pay and perform the Obligations in accordance with their original terms.

13. **Entire Agreement.** EXCEPT AS PROVIDED IN SECTION 5, ABOVE, THIS GUARANTY, AND THE FINANCING AGREEMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF.

14. **Governing Law; Construction.** This Guaranty shall be governed by, and construed in accordance with, the laws of the State of Wisconsin, without regard to its conflict of law principles  For all purposes hereunder, the parties intend that all references in applicable statutes or law to "surety" or "guarantor" shall include the Guarantor, except in instances where CNH Capital's rights, protections, or remedies would be diminished or otherwise impaired.  In all events, this Guaranty shall be construed in the broadest sense in favor of CNH Capital.

15. **Joint and Several Liability.**  If this Guaranty is executed by more than one party, each such party shall individually constitute a Guarantor hereunder and the liability of each such Guarantor shall be joint and several.  CNH Capital may seek to collect from each Guarantor under this Guaranty individually without also seeking to collect from any other Guarantor.

16. **Miscellaneous.**

   (a)  Time is of the essence hereof.

   (b)  Any married person who signs this instrument hereby expressly agrees that recourse may be had against both his or her separate and community property for all of his or her obligations under this Guaranty.

   (c)  If any term, provision, covenant or condition hereof or any application thereof should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions hereof, and all applications thereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

   (d)  This Guaranty may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of such counterparts taken together shall constitute but one and the same instrument.

   (e)  Section headings in this Guaranty are included for convenience of reference only and do not constitute a part of this Guaranty for any other purpose.

   (f)  If:  (i) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (ii) an attorney is retained to represent CNH Capital in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (iii) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (iv) an attorney is retained to represent CNH Capital in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to CNH Capital upon demand all reasonable attorneys' fees, costs and expenses, including, without limitation, court costs, filing fees, recording costs, expenses of foreclosure, title insurance premiums, survey costs, minutes of foreclosure, and all other costs and expenses incurred in connection therewith (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Financing Agreements.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Guaranty as of the date first above written.

GUARANTOR:

Terry Abby

_____
Signature



**GUARANTY**

THIS GUARANTY (this "Guaranty") is made as of ~~March 27~~ 2012 by the undersigned guarantor or joint and several guarantors (singly and collectively, "Guarantor") in favor of CNH CAPITAL AMERICA LLC ("CNH Capital").

**RECITALS**

WHEREAS,  Abby Farm Supply, Inc. ("Borrower") and CNH Capital are or may become parties to various and sundry agreements of various dates pursuant to which CNH Capital has and may hereafter extend credit and other financial accommodations and services to or for the benefit of Borrower, which agreements may include, without limitation, a Wholesale Financing and Security Agreement, a Retail Financing Agreement and/or a Merchant Agreement (all of which, as amended and supplemented from time to time, are hereinafter referred to collectively as the "Financing Agreements").

WHEREAS, Guarantor has benefited from CNH Capital's prior loans and other extensions of credit to Borrower, and will benefit directly and indirectly from any future loans and other extensions of credit to Borrower.

WHEREAS, as a condition to making such loans or other extensions of credit, CNH Capital has required that Guarantor execute and deliver this Guaranty.

NOW, THEREFORE, in order to induce CNH Capital to enter into the Financing Agreements and to make loans or other extensions of credit to Borrower, and in consideration thereof, Guarantor hereby agrees as follows:

1.  **Guaranty.**  Guarantor (or, if Guarantor is more than one person, Guarantor, jointly and severally) hereby absolutely and unconditionally guarantees the payment and performance when due, whether at stated maturity, by acceleration or otherwise, of all present and future obligations and indebtedness of Borrower to the CNH Capital arising under the Financing Agreements or otherwise (the "Obligations").

2.  **Guaranty Absolute.**

    (a)  Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms of the Financing Agreements, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of CNH Capital with respect thereto.  The liability of Guarantor under this Guaranty shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of any of the Financing Agreements (or any other agreement or instrument relating thereto); (ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Financing Agreements, including, without limitation, changes in the terms of disbursement of loan proceeds or repayment thereof, modifications, extensions (including, without limitations, extensions beyond and after the original term) or renewals of payment dates, changes in interest rate or the advancement of additional funds by CNH Capital in its discretion; (iii) any exchange, release or nonperfection of any collateral, or any release, amendment, waiver of or consent to departure from any other guaranty, for all or any of the Obligations; or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower in respect of the Obligations or Guarantor in respect of this Guaranty.

    (b)  Notwithstanding any termination of this Guaranty or the cancellation of the Financing Agreements or any other document, instrument or agreement evidencing the Obligations, if at any time any payment of any of the Obligations (from any source) is rescinded, repaid or must otherwise be returned by CNH Capital (i) due to or upon the insolvency, bankruptcy or reorganization of Borrower or Guarantor, or (ii) for any other circumstance, this Guaranty shall continue to be effective or be reinstated, as the case may be, all as though such payment had not been made.

3.  **Waiver of Subrogation and Contribution.**  As a material inducement to CNH Capital's making loans or other extensions of credit to Borrower, Guarantor hereby absolutely and irrevocably waives any claim or other rights which Guarantor may now have or hereafter acquire against Borrower or any other party liable for the Obligations that arise from the existence or performance of Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, contribution, exoneration, claim or remedy of CNH Capital against Borrower or any collateral which CNH Capital now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, by any payment made hereunder or otherwise, including without limitation, the right to take or receive from Borrower or any other party, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim or other rights.  Any agreement between Guarantor and Borrower or any other party which is in any respect contrary to the foregoing shall be null and void and of no force or effect.  If any amount shall be paid to Guarantor in violation of the preceding sentences, such amount shall be deemed to have been paid to Guarantor for the benefit of, and held in trust for the benefit of CNH Capital, and shall forthwith be paid to CNH Capital to be credited and applied to any Obligation, whether matured or unmatured, at CNH Capital's sole discretion.

4.  **Guaranty Independent Waivers.**

    (a)  Guarantor agrees that (i) the obligations hereunder are independent of and in addition to the undertakings of Borrower pursuant to the Financing Agreements, any evidence of indebtedness issued in connection therewith, any mortgage or security agreement given to secure the same, and any other guaranties given in connection with the obligations of Guarantor to CNH Capital, (ii) a separate action may be brought to enforce the provisions hereof whether Borrower is a party in any such action or not, (iii) CNH Capital may at any time, or from time to time, in its sole discretion, (1) exchange, release and/or surrender all or any of the collateral security, or any part thereof, by whomsoever deposited, which is now or may hereafter be held by CNH Capital in connection with all or any of the Obligations; (2) sell and/or purchase all or any such collateral at public or private sale in the manner permitted by law and after giving any notice which may be required, and after deducting all costs and expenses of every kind for collection, sale or delivery, the net proceeds of any such sale may be applied by CNH Capital to all or any of the Obligations; and (3) settle or compromise with Borrower, and/or any other person liable thereon, any and all of the Obligations and/or subordinate the payment of same, or any part thereof, to the payment of any other debts or claims, which may at any time be due or owing to CNH Capital and/or any other person or corporation, and (iv) CNH Capital shall be under no obligation to marshal any assets in favor of Guarantor or in payment of any or all of the Obligations.

    (b)  Except as otherwise expressly provided herein or prohibited by applicable law: Guarantor hereby waives (i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance and any other notice with respect to any of the Obligations and this Guaranty, and promptness in commencing suit against any party thereto or liable thereon, and/or in giving any notice to or

1



making any claim or demand hereunder upon Guarantor (ii) any right to require CNH Capital to (1) proceed against Borrower, any other guarantor or other party liable for the Obligations, (2) proceed against or exhaust any security held from Borrower, or (3) pursue any remedy in CNH Capital's power whatsoever; (iii) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than full payment of the Obligations; (iv) any defense arising out of an election of remedies by CNH Capital, even though that election of remedies, such as non-judicial foreclosure with respect to security for the Obligations, has impaired or destroyed Guarantor's rights of subrogation and reimbursement against Borrower; (v) to the fullest extent permitted by law, all rights and benefits under any statute or other provisions of law purporting to reduce a guarantor's obligations in proportion to the principal obligation; (vi) to the fullest extent permitted by law:  (1) any defense arising as a result of CNH Capital's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, and (2) any defense based on any borrowing or grant or a security interest under Section 364 of the Bankruptcy Code; (vii) without limiting the generality of the foregoing or any other provision hereof, and to the fullest extent permitted by law, all rights and benefits which might otherwise be available to the undersigned:  (1) allowing a surety or guarantor defense(s) that are available to the principal, (2) exonerating a surety or guarantor if the original obligation is altered without the surety or guarantor's consent, or if the creditor's remedies against the principal are impaired or suspended, (3) exonerating a surety or guarantor upon the principal's performance or tender of performance, (4) exonerating a surety or guarantor to the extent the creditor declines the surety or guarantor's request to proceed against the principal, (5) entitling a surety or guarantor to the benefit of securities held by the creditor; (6) entitling a surety or guarantor to have the principal's property, or the proceeds thereof, applied first toward the obligation, (7) requiring a secured creditor to enforce liens in any particular order, (8) requiring a creditor to resort first to liens against property not secured by others creditors, and (9) arising under Wisconsin Statutes Chapter 403 (negotiable instruments), including but not limited to Wis. Stats. §§ 403.605 (evidence of dishonor), 403.601 (discharge and effect of discharge), 403.602 (payment), 403.603 (tender of payment), 403.604 (discharge by cancellation or renunciation), 403.605 (discharge of endorsers and accommodation parties); and (viii) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof.

5. **Does Not Supersede Other Guaranties.**  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the Obligations and/or any obligations of Borrower or any other persons or entities heretofore or hereafter given to CNH Capital, and this Guaranty shall not affect or invalidate any such other guaranties.  The liability of Guarantor to CNH Capital shall at all times be deemed to be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties heretofore or hereafter given by Guarantor to CNH Capital.

6. **Amendments, Etc.**  No amendment or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by CNH Capital, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  No notice to or demand on Guarantor shall in any case entitle Guarantor to any other or further notice or demand in similar or other circumstances.

7. **No Waiver; Remedies.**  No failure on the part of CNH Capital to exercise and no delay in exercising any right or remedy hereunder shall operate as a waiver thereof; nor shall CNH Capital be estopped to exercise any right because of any such failure or delay; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

8. **Right to Setoff.**  If Borrower is in default under the Financing Agreements, CNH Capital is hereby authorized at any time and from time to time to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by CNH Capital to or for the credit or the account of Guarantor against any and all of the obligations of Guarantor now or hereafter existing under this Guaranty.  CNH Capital agrees promptly to notify Guarantor after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of CNH Capital under this Section are in addition to other rights and remedies (including, without limitation, other rights of setoff) which CNH Capital may have.

9. **Continuing Guaranty; Transfer of Financing Agreements.**  This Guaranty is a continuing guaranty and shall be (i) subject to the provisions of Section 2(b) hereof, remain in full force and effect until payment in full of the Obligations and all other amounts payable under this Guaranty, (ii) be binding upon Guarantor, and Guarantor's heirs, executors, successors and assigns, and (iii) inure to the benefit of and be enforceable by CNH Capital and its successors, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), CNH Capital may assign or otherwise transfer all or any part of the Obligations and/or the Financing Agreements to any other person, and such other person shall thereupon become vested with all the rights in respect thereof granted to CNH Capital herein or otherwise.

10. **No Duty.**  Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the Obligations, and agrees that CNH Capital shall have no duty to advise Guarantor of any information known to CNH Capital regarding any such financial condition or circumstances of Borrower.

11. **Waiver of Right to Trial by Jury.**  GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING:  (a) BROUGHT BY GUARANTOR, BORROWER, CNH CAPITAL OR ANY OTHER PERSON RELATING TO (i) THE OBLIGATIONS AND/OR ANY UNDERSTANDINGS OR PRIOR DEALING BETWEEN THE PARTIES HERETO, (ii) THIS GUARANTY, OR (iii) THE FINANCING AGREEMENTS; OR (b) TO WHICH CNH CAPITAL IS A PARTY.  GUARANTOR HEREBY AGREES THAT THIS GUARANTY CONSTITUTES A WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY PURSUANT TO THE PROVISIONS OF ANY APPLICABLE LAW, AND GUARANTOR DOES HEREBY CONSTITUTE AND APPOINT CNH CAPITAL HIS, HER OR ITS TRUE AND LAWFUL ATTORNEY-IN-FACT, WHICH APPOINTMENT IS COUPLED WITH AN INTEREST, AND GUARANTOR DOES HEREBY AUTHORIZE AND EMPOWER CNH CAPITAL, IN THE NAME, PLACE AND STEAD OF GUARANTOR, TO FILE THIS GUARANTY WITH THE CLERK OR JUDGE OF ANY COURT OF COMPETENT JURISDICTION AS A STATUTORY WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY.

12. **Bankruptcy of Borrower.**  Notwithstanding any modification, discharge or extension of the Obligations or any amendment, modification, stay or cure of CNH Capital's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Borrower whether permanent or temporary, and whether assented to by CNH Capital, Guarantor hereby agrees that Guarantor shall be obligated hereunder to pay and perform the Obligations and discharge other obligations in accordance with the terms of the Obligations and the terms of this Guaranty in effect on the date hereof.  Guarantor understands and acknowledges that by virtue of this Guaranty, Guarantor has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Borrower.  As an example and not in any way of limitation, a subsequent modification of the Obligations in any reorganization case concerning Borrower shall not affect the obligation of Guarantor to pay and perform the Obligations in accordance with their original terms.

13. **Entire Agreement**.   EXCEPT AS PROVIDED IN SECTION 5, ABOVE, THIS GUARANTY, AND THE FINANCING AGREEMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO.  THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF.

14. **Governing Law; Construction**.  This Guaranty shall be governed by, and construed in accordance with, the laws of the State of Wisconsin, without regard to its conflict of law principles.  For all purposes hereunder, the parties intend that all references in applicable statutes or law to "surety" or "guarantor" shall include the Guarantor, except in instances where CNH Capital's rights, protections, or remedies would be diminished or otherwise impaired.  In all events, this Guaranty shall be construed in the broadest sense in favor of CNH Capital.

15. **Joint and Several Liability**.  If this Guaranty is executed by more than one party, each such party shall individually constitute a Guarantor hereunder and the liability of each such Guarantor shall be joint and several.  CNH Capital may seek to collect from each Guarantor under this Guaranty individually without also seeking to collect from any other Guarantor.

16. **Miscellaneous**.

   (a)  Time is of the essence hereof.

   (b)  Any married person who signs this instrument hereby expressly agrees that recourse may be had against both his or her separate and community property for all of his or her obligations under this Guaranty.

   (c)  If any term, provision, covenant or condition hereof or any application thereof should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions hereof, and all applications thereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

   (d)  This Guaranty may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of such counterparts taken together shall constitute but one and the same instrument.

   (e)  Section headings in this Guaranty are included for convenience of reference only and do not constitute a part of this Guaranty for any other purpose.

   (f)  If:  (i) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (ii) an attorney is retained to represent CNH Capital in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (iii) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (iv) an attorney is retained to represent CNH Capital in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to CNH Capital upon demand all reasonable attorneys' fees, costs and expenses, including, without limitation, court costs, filing fees, recording costs, expenses of foreclosure, title insurance premiums, survey costs, minutes of foreclosure, and all other costs and expenses incurred in connection therewith (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Financing Agreements.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Guaranty as of the date first above written.

GUARANTOR:

Linda Abby      _Linda Abby_
_____
                          Signature

This ACKNOWLEDGEMENT reflects the information received from the Mississippi State Department of Licensing.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Corporation Service Company    800-858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703-4261

Filing Number :    20120666330A

Filing Date   :    4/4/2012

A Continuation Statement may be filed within six months of the Lapse Date of 4/4/2017 10:36:25 AM

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | ABBY FARM SUPPLY, INC. | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS 2501 HWY 72 | CITY WALNUT | STATE MS | POSTAL CODE 38683 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION MS | 1g. ORGANIZATIONAL ID #, if any 741384 | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CNH CAPITAL AMERICA LLC | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS 700 STATE ST | CITY RACINE | STATE WI | POSTAL CODE 53404 | COUNTRY USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

i. All of Debtor's now owned and hereafter acquired inventory, equipment, software and other goods wherever located, of whatever kind, make, model, brand or nature, that have been or hereafter are acquired from Secured Party (or any person or entity affiliated with Secured Party) or that are or were financed by Secured Party, together with all trade-ins, accessions and rights relating to, and all proceeds of, any of the foregoing;

ii. All now owned or hereafter arising or acquired accounts, general intangibles, chattel paper, leases, instruments, documents and agreements arising from Debtor's sale or lease of goods or provision of services, or otherwise, that have been or hereafter are sold or assigned to Secured Party, together with any goods that are the subject of any of the foregoing, all support obligations relating to any of the foregoing, and all proceeds of, any of the foregoing;

iii. Debtor's present and future accounts with Secured Party and all credits and other amounts due Debtor from Secured Party (or any person or entity affiliated with Secured Party), and all proceeds of any of the foregoing; and

All terms used herein shall have the meaning ascribed to them in the Uniform Commercial Code as in effect as of the date hereof in the State in Wisconsin.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA** [65822872]

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)
This document was auto-generated from data received from the Mississippi State Department of Licensing.

EXHIBIT E

160548595

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

File Number: 20162151253B
Date Filed: 12/8/2016 11:02:25 AM
C. Delbert Hosemann, Jr.
Secretary of State

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company                     (800)858-5294

**B. EMAIL CONTACT AT FILER (optional)**
FilingDept@CSCinfo.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL  62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER:**
20120666330A

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item13

**2.** ☐ TERMINATION Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ PARTY INFORMATION CHANGE

Check one of these two boxes          AND Check one of these three boxes to
This Change affects ☐ Debtor ☐ Secured Party of record
☐ CHANGE name and/or address. Complete item 6a or 6b and item 7a or 7b and item 7c
☐ ADD name Complete item 7a or 7b and item 7c
☐ DELETE name Give record name to be referred in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ABBY FARM SUPPLY, INC. | | | |

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete to Assignment or Party Information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ COLLATERAL CHANGE: Also check one of these four boxes ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CNH CAPITAL AMERICA LLC | | | |

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
[124505988]

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

ABBY FARMS SUPPLY, INC. DETAIL OF CNHI CAPITAL COLLATERAL

|    | YEAR | MAKE | MODEL      | DESCRIPTION   | SERIAL#        | NEW/RYD |
|----|------|------|------------|---------------|----------------|---------|
| 1  | 2013 | CASE | CX160      | EXCAVATOR     | NDS6F1298      | NEW     |
| 2  | 2015 | CASE | 580SN      | LOADER BACKHOE| NFC720198      | NEW     |
| 3  | 2015 | CASE | CX130      | EXCAVATOR     | NFS6D1431      | NEW     |
| 4  | 2015 | CASE | 750M       | DOZER         | NFDC70080      | NEW     |
| 5  | 2015 | CASE | 850M       | DOZER         | NFDC80154      | NEW     |
| 6  | 2015 | CASE | TR270      | SKID LOADER   | NFM413390      | NEW     |
| 7  | 2015 | CASE | 580T       | LOADER BACKHOE| NFC720199      | RYD     |
| 8  | 2015 | CASE | 580N       | LOADER BACKHOE| NFC717036      | RYD     |
| 9  | 2015 | CASE | ME55       | EXCAVATOR     | NFTN55400      | RYD     |
| 10 | 2015 | CASE | 750M       | DOZER         | NFDC70067      | RYD     |
| 11 | 2015 | CASE | 580T       | LOADER BACKHOE| NFC720590      | RYD     |
| 12 | 2017 | CASE | 1150M      | DOZER         | NHC105167      | NEW     |
| 13 | 2017 | CASE | SR270      | SKID LOADER   | NHM439639      | NEW     |
| 14 | 2017 | CASE | SV208      | COMPACTOR     | NHWTA2003      | NEW     |
| 15 | 2018 | CASE | ATTACHMENT | TOOL BOX      | Non Serialized | NEW     |
| 16 | 2018 | CASE | ATTACHMENT | BUCKET        | Non Serialized | NEW     |
| 17 | 2018 | CASE | ATTACHMENT | 2 BUCKETS     | Non Serialized | NEW     |
| 18 | 2018 | CASE | 650M       | DOZER         | NJC100512      | NEW     |
| 19 | 2018 | CASE | 650M       | DOZER         | NJC100587      | NEW     |
| 20 | 2018 | CASE | 621G       | WHEEL LOADER  | NJF244291      | NEW     |
| 21 | 2018 | CASE | 321F       | WHEEL LOADER  | NJHP00161      | NEW     |
| 22 | 2018 | CASE | TV380      | SKID LOADER   | NJM445055      | NEW     |
| 23 | 2018 | CASE | TV380      | SKID LOADER   | NJM445050      | NEW     |
| 24 | 2018 | CASE | SV340      | SKID LOADER   | NJM449551      | NEW     |

Additional Parts Inventory financed by CNHi Capital



ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO          MS     38866

CNH INDUSTRIAL CAPITAL AMERICA
DEALER STATEMENT - MANAGEMENT SUMMARY

DEALER- ▓▓▓▓▓▓
MAIN DEALER- ▓▓▓▓▓▓

PAGE:    1

ACTIVITY PROCESSED DURING
THE PERIOD 11/01/18 - 11/30/18
CURRENCY: U.S. $

| CREDIT LINE | PAST DUE | CURRENT DUE | FUTURE DUE 31 - 60 | FUTURE DUE 61 -90 | FUTURE DUE 91 - 120 | FUTURE DUE OVER 120 | UNPAID BALANCE | CREDIT LIMIT IN MILLIONS |
|---|---|---|---|---|---|---|---|---|
| 01 NEW MACHINERY | 0.00 | 0.00 | 0.00 | 327.00 | 337857.75 | 680850.53 | 1019035.28 | 1.45 |
| 02 TRADE IN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06 MATURED TRADE-IN | 0.00 | 0.00 | 15753.50 | 0.00 | 0.00 | 0.00 | 15753.50 | 0.00 |
| 07 MATURED NEW | 2520.00 | 2875.59 | 2520.00 | 2508.04 | 565132.30 | 2006.16 | 577562.09 | 1.05 |
| 11 PREMIER RENTAL | 4154.18 | 4154.18 | 4154.18 | 4154.18 | 106833.53 | 118059.17 | 241509.42 | 0.00 |
| 15 OPEN ACCT NON-MAC | 44710.76 | 30458.96 | 0.00 | 0.00 | 0.00 | 0.00 | 75169.72 | 0.00 |
| GRAND TOTAL | 51384.94 | 37488.73 | 22427.68 | 6989.22 | 1009823.58 | 800915.86 | 1929030.01 | |

((( INTEREST RECAP SECTION )))

| CREDIT LINE | PRIOR MONTH(S) INV | CURRENT MONTH INV |
|---|---|---|
| 01 NEW MACHINERY | 2.98 | 2362.67 |
| 02 TRADE IN | 225.21 | 0.00 |
| 06 MATURED TRADE-IN | 82.88 | 106.39 |
| 07 MATURED NEW | 4706.08 | 4045.68 |
| 11 PREMIER RENTAL | 2154.79 | 2049.85 |
| 15 OPEN ACCT NON-MAC | 744.12 | 501.62 |
| GRAND TOTAL | 7916.06 | 9066.21 |

TIER RATE  -- NOT APPLICABLE
CONTACT YOUR PORTFOLIO MANAGER TO FIND OUT HOW TO REDUCE YOUR INTEREST RATE!



EXHIBIT
G



**Dealer Notification Letter**

January 25, 2017

Terry Abby
Abby Farm Supply, Inc.
1521 Hwy 45
Saltillo, MS  38866

Subject: Stop Ship Notification

Dear Terry Abby,

We regret to inform you that it has been necessary to place your account on (Stop Ship) status which in turn limits your wholesale lines of credit because you have not complied with the terms of the Dealer Wholesale Financing and Security Agreement.

Past Due balance of $64,016.28 is due immediately.

Please arrange for the immediate handling of these items so we may give full consideration to re-establishing your lines of credit at the earliest possible date.

(Stop Ship)  CNH Capital will not be providing financing of any new Equipment or accept any trade-note requests during this stop ship.

Sincerely,

Charles Roche
Portfolio Manager
CNH Industrial Capital
262-636-7376

CNH Industrial Capital
5729 Washington Ave
Racine, WI 53406

52831A  Rev. 02/14  Previous editions may not be used.





**Dealer Notification Letter**

February 13, 2017

Terry Abby
Abby Farm Supply, Inc.
1521 Hwy 45
Saltillo, MS  38866

Subject: Stop Ship Notification

Dear Terry Abby,

We regret to inform you that it has been necessary to place your account on (Stop Ship) status which in turn limits your wholesale lines of credit because you have not complied with the terms of the Dealer Wholesale Financing and Security Agreement.

Past Due balance of $48,365.09 is due immediately.

Please arrange for the immediate handling of these items so we may give full consideration to re-establishing your lines of credit at the earliest possible date.

(Stop Ship)  CNH Capital will not be providing financing of any new Equipment or accept any trade-note requests during this stop ship.

Sincerely,

Charles Roche
Portfolio Manager
CNH Industrial Capital
262-636-7376

CNH Industrial Capital
5729 Washington Ave
Racine, WI 53406

52631A  Rev. 02/14  Previous editions may not be used.





March 27, 2017

<u>**VIA ELECTRONIC TRANSMISSION AND OVERNIGHT DELIVERY**</u>

Abby Farm Supply, Inc.
1521 Hwy 45
Saltillo, MS
Attn: Terry Abby

*Re: Notice of Default & Demand for Payment*

Dear Terry Abby:

CNH Industrial Capital America LLC ("CNH Industrial Capital") and Abby Farm Supply Inc., a company incorporated in the State of Mississippi ("Dealer") are parties to various and sundry agreements, including but not limited to that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA") and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA, collectively "Financing Agreements"). CNH Industrial Capital hereby provides Dealer this notice of default under the Financing Agreements (the "Notice").

The defaults, include without limitation, (a) the failure to make timely payments of amounts due and owing to CNH Industrial Capital under the Financing Agreements, and (b) the sale of 2 590SN (serial numbers NGC736261 & NGC736262 (the "Units") out of trust that were sold and delivered to Memphis, Light, Gas & Water on or about December 22, 2016 (the "Defaults"). As of March 28, 2017, the amounts past due total not less than $158,571.93 (the "Default Amount"), which consist of past due payments in the amounts of not less than $(x)$ $9,088.17 for wholegood curtailments, $(y)$ $26,377.89 for the parts open account, and $(z)$ $123,105.87 the total outstanding balance of the Units sold out of trust. As a result of the foregoing Defaults, Dealer has been placed on Stop Ship.

CNH Industrial Capital demands that Dealer immediately pay the Default Amount by making payment in full no later than 5 p.m. (CST), March 31, 2017. In the event payment in full of the Default Amount is not received by 5 p.m. (CST), March 31, 2017, CNH Industrial Capital may, and without further notice, declare all outstanding amounts and Obligations (as defined under the WFSA) immediately due and payable. As of March 27, 2017, the total amount of the Obligations plus all lawfully accrued interest thereon is not less than $2,249,222.14. CNH Industrial Capital continues to reserve the right, in its sole discretion, to not make any or all requested advances either before or after that date.

Acceptance of any late payment by CNH Industrial Capital will not be a waiver of any default, whether now existing or hereafter arising. Nothing contained herein shall be construed as an election of





## Dealer Notification Letter

TERRY ABBY

08/18/2017

ABBY FARM SUPPLY, INC.

P.O. BOX 1486

SALTILLO MS  38866

Subject:    Stop Ship Parts and Manual Approval

Dear  Terry Abby,

We regret to inform you that it has been necessary to place your account on **Stop Ship Parts and Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Past due June interest

Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

CNH Industrial Capital will not be providing financing of any parts requests during stop ship.

Sincerely,

*Josh Jordan*

Josh Jordan

Portfolio Manager

262-636-5821

CNH Industrial Capital



EXHIBIT

K



**CAPITAL**

**Notice of Credit Rating / Credit Limit for: ▉▉▉▉ - ABBY FARM SUPPLY, INC.**

09/15/2017

**Dealer # : ▉▉▉▉/ Dealer Name : ABBY FARM SUPPLY, INC.**

A review of the above listed dealer's credit file has been conducted and approved by the relevant approval authority within CNH Industrial Capital. The dealership's financial condition as of Fiscal Year 2015 as well as other relevant factors have been taken into consideration.

**Summary of credit ratings and aggregate limits:**

**Prior:**   Credit Rating: Good Standing   Credit Limit: $4,000,000

**Current:**   Credit Rating: Needs Improvement   Credit Limit: $4,000,000

**PD Financials:** Your credit rating has been temporarily downgraded to "Needs Improvement" due to late financial statement submission.

**Submitting on BMS:** BMS is a software tool that enables a participating dealership to submit their monthly financial information electronically and receive monthly benchmarking reports, comparing their performance with their peer groups' performance. Participating dealers, therefore, are in a better position to identify operational opportunities and analyze, plan or adjust to changing market conditions. For further information, please contact your Dealer Development Manager, CNH Industrial Capital Wholesale Portfolio Manager, or myself.

*Notwithstanding the foregoing, the wholesale credit line is expressly subject to the written terms of the wholesale financing agreements under which it was extended. It is a discretionary line of credit and may be modified, suspended or terminated at our election or sole discretion.*

Please let me know if you have any further questions.

Regards,
Matt Burmeister
CNH Industrial Capital
Phone #: 262-636-4906
Fax #: 866-596-5338


EXHIBIT

Page 1 of 1



## <u>Dealer Notification Letter</u>

10/02/2017

TERRY ABBY
ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO MS  38866

Subject:   Stop Ship Parts and Manual Approval

Dear  Terry Abby,

We regret to inform you that it has been necessary to place your account on **Stop Ship Parts and Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Past due parts account.

Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

CNH Industrial Capital will not be providing financing of any parts requests during stop ship.

Sincerely,

*Josh Jordan*

Josh Jordan
Portfolio Manager
262-636-5821
CNH Industrial Capital





## Dealer Notification Letter

TERRY ABBY                                                                                        10/04/2017
ABBY FARM SUPPLY, INC.
P.O. BOX 1486
SALTILLO MS  38866

Subject:    Manual Approval

Dear  Terry Abby,

We regret to inform you that it has been necessary to place your account on **Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Parts account has been paid and account is being upgraded to Manual Approval.  Account must be kept current.

Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

Sincerely,

*Josh Jordan*

Josh Jordan
Portfolio Manager
262-636-5821
CNH Industrial Capital

| | |
|---|---|
| **From:** | Jeri Hamilton |
| **To:** | ALBUS Dennis (CNH Industrial) |
| **Subject:** | Abby Equipment Past Due Parts Bill |
| **Date:** | Tuesday, July 31, 2018 4:53:02 PM |

We will be able to settle our account in full tomorrow.  Terry is transferring some money to the business account and was unable to get it done today.

Thanks,


*Jeri Hamilton*
Controller
Abby Equipment
Saltillo, MS
(662)869-3439



| | |
|---|---|
| **From:** | ALBUS Dennis (CNH Industrial) |
| **To:** | tabby@abby-usa.com |
| **Cc:** | ALBUS Dennis (CNH Industrial); LAWSON Matt (CNH Industrial); MOORE Scott (CNH Industrial); RICHARDSON Michael (CNH Industrial) |
| **Subject:** | Abby Equipment - Contact Person, Past Dues and Aged |
| **Date:** | Tuesday, September 4, 2018 11:31:10 AM |

Mr. Abby,

Thank you for your time earlier today in discussing your account.

I will be reaching out to Scott Moore to see what assistance we can provide with moving the aged inventory.
With that being said it is extremely important that we remain current on the monthly statement.
Understand you are moving funds around in order for the Past Dues to be paid later today and I have up lined that data to my bosses.

Wish you the best of luck with your possible sale and think that Mike Richardson would be the best contact with any questions on that.

I will be your contact for any questions regarding your account on the Capital side.

My contact information is as follows:
Dennis Albus
Field Credit Specialist
CNH Capital Industrial
(512)423-3897  Cell
(512)244-3882 Office
dennis.albus@cnhind.com


Thanks again,
Dennis



**From:** ALBUS, Dennis (CNH Industrial)
**To:** Hamilton, Jeri (Abby) (jeri_hamilton@yahoo.com)
**Cc:** jabby@abbyegg.com; MOORE, Scott (CNH Industrial); ALBUS, Dennis (CNH Industrial)
**Subject:** Abby Equipment ____ Past Due September 2018
**Date:** Friday, September 21, 2018 4:27:59 PM

Jeri,

Spoke with Mr. Abby about this month's statement earlier today.

Explained with month end ending on a Sunday (next week) we are trying to get all paid by Thursday the 27th.

Think he will be reaching out to you as well about this.

Scott was able to transfer out the compacter so it no longer shows on statement for freight due.

Also saw a few credits that can help with the settlement:

```
INVOICE# ---DESCRIPTION---- TYP LINE  UNPAID BAL
41447324A8 WARRANTY CREDIT   WAR 015   315.86-
41447875A8 WARRANTY CREDIT   WAR 015   450.42-
6850679870 ADJ PSO 6850632230 PTS 015   912.13-
```

Here is what still shows to be paid:

| Inv # | CrL | Rec'v Desc | S/N | Inv Dt | Mat Dt | Orig Amt | O/S Balance | PD | |
|---|---|---|---|---|---|---|---|---|---|
| 04502238X1 | 001 | CE ATCH 772962031 | | 7/23/18 | 8/1/19 | $5,877.20 | $5,877.20 | $461.00 | |
| 04502595X1 | 001 | CM SV208DSM T4 FINAL | NHWTA2003 | 7/23/18 | 8/1/19 | $92,428.78 | $92,428.78 | $1,191.00 | $1,652.00 |
| C0180801P7 | 001 | NEW MACHINERY | | 8/31/18 | 9/1/18 | $114.48 | $114.48 | $114.48 | $114.48 |
| C8050262X2 | 002 | 580SN 4WD T4 FINA | NFC720621 | 2/15/18 | 11/1/18 | $43,527.00 | $34,821.60 | $4,352.70 | $4,352.70 |
| C0180802P7 | 002 | TRADE IN | | 8/31/18 | 9/1/18 | $293.53 | $293.53 | $293.53 | $293.53 |
| C0180808P7 | 006 | MATURED TRADE-IN | | 8/31/18 | 9/1/18 | $110.38 | $110.38 | $110.38 | $110.38 |
| 03993816X1 | 007 | MX CX36B ROPS T4 FIN | NFTN66527 | 11/12/15 | 2/1/19 | $37,233.04 | $15,108.04 | $2,520.00 | $2,520.00 |
| C0180807P7 | 007 | MATURED NEW | | 8/31/18 | 9/1/18 | $4,386.44 | $4,386.44 | $4,386.44 | $4,386.44 |
| C5051350T3 | 011 | SL-V2TT-NDM461974 | NDM461974 | 7/18/16 | 7/18/19 | $15,705.14 | $9,275.30 | $267.91 | |
| 03880038T3 | 011 | UT-580T-NFC720199 | NFC720199 | 7/18/16 | 7/18/18 | $72,216.42 | $53,646.42 | $742.80 | |
| 03888782T3 | 011 | UT-580N-NFC717036 | NFC717036 | 7/18/16 | 7/18/18 | $59,139.26 | $43,932.01 | $608.29 | |
| 03904964T3 | 011 | MX-ME55-NFTN55400 | NFTN55400 | 7/18/16 | 7/18/18 | $47,834.13 | $28,250.37 | $815.99 | |
| 03909468T3 | 011 | CE-750M-NFDC70067 | NFDC70067 | 12/31/15 | 12/28/18 | $93,004.68 | $63,263.48 | $930.35 | |
| 03920599T3 | 011 | UT-580T-NFC720590 | NFC720590 | 12/31/15 | 12/28/18 | $76,693.08 | $51,450.20 | $788.84 | $4,154.18 |
| C0180811P7 | 011 | PREMIER RENTAL | | 8/31/18 | 9/1/18 | $2,175.00 | $2,175.00 | $2,175.00 | $2,175.00 |
| 08540708M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $1,020.54 | $1,020.54 | $1,020.54 | |
| 08540709M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $808.45 | $808.45 | $808.45 | |
| 6850076263 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $394.99 | $394.99 | $394.99 | |
| 6850523303 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $972.37 | $972.37 | $972.37 | |
| 6850523304 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $162.44 | $162.44 | $162.44 | |
| 6850523578 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $1,057.91 | $1,057.91 | $1,057.91 | |
| 6850523579 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $323.95 | $323.95 | $323.95 | |
| 6850523580 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $60.44 | $60.44 | $60.44 | |
| 6850527878 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $129.31 | $129.31 | $129.31 | |
| 6850528131 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $812.61 | $812.61 | $812.61 | |
| 6850528132 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $762.35 | $762.35 | $762.35 | |
| 6850528133 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $39.93 | $39.93 | $39.93 | |
| 6850528134 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $455.77 | $455.77 | $455.77 | |
| 6850528135 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $85.90 | $85.90 | $85.90 | |
| 6850531656 | 015 | PARTS AND CHARGES | | 8/3/18 | 9/1/18 | $820.55 | $820.55 | $820.55 | |
| 6850531857 | 015 | PARTS AND CHARGES | | 8/3/18 | 9/1/18 | $1,011.26 | $1,011.26 | $1,011.26 | |
| 6850536064 | 015 | PARTS AND CHARGES | | 8/5/18 | 9/1/18 | $1,291.43 | $1,291.43 | $1,291.43 | |
| 6850536065 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $158.72 | $158.72 | $158.72 | |
| 6850536286 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $1,194.68 | $1,194.68 | $1,194.68 | |
| 6850536287 | 015 | PARTS AND CHARGES | | 8/6/18 | 9/1/18 | $67.91 | $67.91 | $67.91 | |
| 6850540201 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $364.56 | $364.56 | $364.56 | |
| 6850540453 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $1,558.97 | $1,558.97 | $1,558.97 | |
| 6850540454 | 015 | PARTS AND CHARGES | | 8/7/18 | 9/1/18 | $128.57 | $128.57 | $128.57 | |
| 6850544545 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $2,116.92 | $2,116.92 | $2,116.92 | |
| 6850544780 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $1,999.36 | $1,999.36 | $1,999.36 | |
| 6850544781 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $62.86 | $62.86 | $62.86 | |
| 6850544782 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $57.50 | $57.50 | $57.50 | |
| 6850544783 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $26.09 | $26.09 | $26.09 | |
| 6850544784 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $113.83 | $113.83 | $113.83 | |
| 6850548854 | 015 | PARTS AND CHARGES | | 8/8/18 | 9/1/18 | $71.60 | $71.60 | $71.60 | |
| 6850549104 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $545.64 | $545.64 | $545.64 | |
| 6850549105 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $198.10 | $198.10 | $198.10 | |
| 6850552839 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $38.45 | $38.45 | $38.45 | |
| 6850553080 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $559.63 | $559.63 | $559.63 | |
| 6850553061 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $31.90 | $31.90 | $31.90 | |
| 6850553062 | 015 | PARTS AND CHARGES | | 8/10/18 | 9/1/18 | $81.08 | $81.08 | $81.08 | |
| 6850554529 | 015 | PARTS AND CHARGES | | 8/12/18 | 9/1/18 | $5.86 | $5.86 | $5.86 | |
| 6850557894 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $81.60 | $81.60 | $81.60 | |
| 6850557895 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $51.65 | $51.65 | $51.65 | |


EXHIBIT
P

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6850557896 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $88.50 | $88.50 | $88.50 |
| 6850558119 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $811.38 | $811.38 | $811.38 |
| 6850558120 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $58.80 | $58.80 | $58.80 |
| 6850558121 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $59.45 | $59.45 | $59.45 |
| 6850558122 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $154.91 | $154.91 | $154.91 |
| 6850558123 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $368.72 | $368.72 | $368.72 |
| 6850558124 | 015 | PARTS AND CHARGES | | 8/13/18 | 9/1/18 | $883.44 | $883.44 | $883.44 |
| 6850562363 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $968.83 | $968.83 | $968.83 |
| 6850562641 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $3,487.66 | $3,487.66 | $3,487.66 |
| 6850562642 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $16.57 | $16.57 | $16.57 |
| 6850562643 | 015 | PARTS AND CHARGES | | 8/14/18 | 9/1/18 | $85.56 | $85.56 | $85.56 |
| 6850566956 | 015 | PARTS AND CHARGES | | 8/15/18 | 9/1/18 | $347.68 | $347.68 | $347.68 |
| 6850567224 | 015 | PARTS AND CHARGES | | 8/15/18 | 9/1/18 | $20.67 | $20.67 | $20.67 |
| 6850571310 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $59.44 | $59.44 | $59.44 |
| 6850571589 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $988.49 | $988.49 | $988.49 |
| 6850571590 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $70.98 | $70.98 | $70.98 |
| 6850571591 | 015 | PARTS AND CHARGES | | 8/16/18 | 9/1/18 | $75.70 | $75.70 | $75.70 |
| 6850575937 | 015 | PARTS AND CHARGES | | 8/17/18 | 9/1/18 | $890.69 | $890.69 | $890.69 |
| 6850580951 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $890.89 | $890.89 | $890.89 |
| 6850580952 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $157.25 | $157.25 | $157.25 |
| 6850580953 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $202.22 | $202.22 | $202.22 |
| 6850580954 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $61.97 | $61.97 | $61.97 |
| 6850580955 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $308.22 | $308.22 | $308.22 |
| 6850580956 | 015 | PARTS AND CHARGES | | 8/20/18 | 9/1/18 | $994.57 | $994.57 | $994.57 |
| 6850585424 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $586.85 | $586.85 | $586.85 |
| 6850585726 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $8.80 | $8.80 | $8.80 |
| 6850585727 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $78.87 | $78.87 | $78.87 |
| 6850585728 | 015 | PARTS AND CHARGES | | 8/21/18 | 9/1/18 | $66.55 | $66.55 | $66.55 |
| 6850590417 | 015 | PARTS AND CHARGES | | 8/22/18 | 9/1/18 | $972.89 | $972.89 | $972.89 |
| 6850594495 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $763.75 | $763.75 | $763.75 |
| 6850594749 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $180.32 | $180.32 | $180.32 |
| 6850594750 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $302.51 | $302.51 | $302.51 |
| 6850594751 | 015 | PARTS AND CHARGES | | 8/23/18 | 9/1/18 | $198.43 | $198.43 | $198.43 |
| 6850598757 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $985.59 | $985.59 | $985.59 |
| 6850599022 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $101.72 | $101.72 | $101.72 |
| 6850599023 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $349.34 | $349.34 | $349.34 |
| 6850599024 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $537.39 | $537.39 | $537.39 |
| 6850599025 | 015 | PARTS AND CHARGES | | 8/24/18 | 9/1/18 | $270.91 | $270.91 | $270.91 |
| 6850600779 | 015 | PARTS AND CHARGES | | 8/26/18 | 9/1/18 | $22.22 | $22.22 | $22.22 |
| 6850604500 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $331.38 | $331.38 | $331.38 |
| 6850604739 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $866.29 | $866.29 | $866.29 |
| 6850604740 | 015 | PARTS AND CHARGES | | 8/27/18 | 9/1/18 | $47.56 | $47.56 | $47.56 |
| 6850608832 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $120.79 | $120.79 | $120.79 |
| 6850609102 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $820.24 | $820.24 | $820.24 |
| 6850609103 | 015 | PARTS AND CHARGES | | 8/28/18 | 9/1/18 | $340.53 | $340.53 | $340.53 |
| 6850613573 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $37.87 | $37.87 | $37.87 |
| 6850613574 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $101.23 | $101.23 | $101.23 |
| 6850613575 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $249.91 | $249.91 | $249.91 |
| 6850613576 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $456.25 | $456.25 | $456.25 |
| 6850613577 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $76.03 | $76.03 | $76.03 |
| 6850613578 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $235.78 | $235.78 | $235.78 |
| 6850617586 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $1,275.21 | $1,275.21 | $1,275.21 |
| 6850617855 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $619.88 | $619.88 | $619.88 |
| 6850617856 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $171.67 | $171.67 | $171.67 |
| 6850617857 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $433.58 | $433.58 | $433.58 |
| 6850617858 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $481.12 | $481.12 | $481.12 |
| 6850617859 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $149.87 | $149.87 | $149.87 |
| 6850617860 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $97.60 | $97.60 | $97.60 |
| 6850621793 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $7.78 | $7.78 | $7.78 |
| 6850622065 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $654.54 | $654.54 | $654.54 |
| 6850622066 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $1,019.15 | $1,019.15 | $1,019.15 |
| 6850622067 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $28.30 | $28.30 | $28.30 |
| 6850622068 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $24.92 | $24.92 | $24.92 |
| C8152809M5 | 015 | BMS MONTHLY FEE | | 8/25/18 | 9/1/18 | $108.25 | $108.25 | $108.25 | $48,940.14 |
| C0180815P7 | 015 | OPEN ACCT NON-MACH/P | | 8/31/18 | 9/1/18 | $565.29 | $565.29 | $565.29 | $565.29 |

$66,264.14

From: ALBUS Dennis (CNH Industrial)
To: tabby@abby-usa.com
Cc: MOORE Scott (CNH Industrial); Hamilton, Jeri (Abby) (jeri_hamilton@yahoo.com); ALBUS Dennis (CNH Industrial)
Subject: RE: Abby Equipment ▉▉▉ Past Dues September 2018
Date: Tuesday, October 2, 2018 2:08:53 PM

Mr. Abby,

Must clear the Past Due balances today to avoid possible parts ordering disruption.

Thanx,
Dennis

**From:** ALBUS Dennis (CNH Industrial)
**Sent:** Tuesday, September 25, 2018 4:37 PM
**To:** Hamilton, Jeri (Abby) (jeri_hamilton@yahoo.com) <jeri_hamilton@yahoo.com>
**Cc:** tabby@abby-usa.com; MOORE Scott (CNH Industrial) <scott.moore@casece.com>; ALBUS Dennis (CNH Industrial) <dennis.albus@cnhind.com>
**Subject:** RE: Abby Equipment ▉▉▉ Past Dues September 2018

Jeri,

Good visiting with you.
I forgot to let you know another credit has processed:

**41462995A8 WARRANTY CREDIT   WAR 015   3,492.28-**

Thanx,
Dennis

**From:** ALBUS Dennis (CNH Industrial)
**Sent:** Friday, September 21, 2018 4:28 PM
**To:** Hamilton, Jeri (Abby) (jeri_hamilton@yahoo.com) <jeri_hamilton@yahoo.com>
**Cc:** tabby@abby-usa.com; MOORE Scott (CNH Industrial) <scott.moore@casece.com>; ALBUS Dennis (CNH Industrial) <dennis.albus@cnhind.com>
**Subject:** Abby Equipment ▉▉▉ Past Dues September 2018

Jeri,

Spoke with Mr. Abby about this month's statement earlier today.
Explained with month end ending on a Sunday (next week) we are trying to get all paid by Thursday the 27th.
Think he will be reaching out to you as well about this.
Scott was able to transfer out the compacter so it no longer shows on statement for freight due.
Also saw a few credits that can help with the settlement:

INVOICE# ---DESCRIPTION--- TYP LINE  UNPAID BAL
41447324A8 WARRANTY CREDIT   WAR 015   315.86-
41447875A8 WARRANTY CREDIT   WAR 015   450.42-
6850679870 ADJ PSO 6850632230 PTS 015   912.13-

Here is what still shows to be paid:

| Inv # | CrL | Rec'v Desc | S/N | Inv Dt | Mat Dt | Orig Amt | O/S Balance | PD | |
|---|---|---|---|---|---|---|---|---|---|
| 04502238X1 | 001 | CE ATCH 772962031 | | 7/23/18 | 8/1/19 | $5,877.20 | $5,877.20 | $461.00 | |
| 04502595X1 | 001 | CM SV208DSM T4 FINAL | NHWTA2003 | 7/23/18 | 8/1/19 | $92,428.78 | $92,428.78 | $1,191.00 | $1,652.00 |
| C0180801P7 | 001 | NEW MACHINERY | | 8/31/18 | 9/1/18 | $114.48 | $114.48 | $114.48 | $114.48 |
| C8050262X2 | 002 | 580SN 4WD T4 FINA | NFC720621 | 2/15/18 | 11/1/18 | $43,527.00 | $34,821.60 | $4,352.70 | $4,352.70 |
| C0180802P7 | 002 | TRADE IN | | 8/31/18 | 9/1/18 | $293.53 | $293.53 | $293.53 | $293.53 |
| C0180806P7 | 006 | MATURED TRADE-IN | | 8/31/18 | 9/1/18 | $110.38 | $110.38 | $110.38 | $110.38 |
| 03993816X1 | 007 | MX CX36B ROPS T4 FIN | NFTN66527 | 11/12/15 | 2/1/19 | $37,233.04 | $15,108.04 | $2,520.00 | $2,520.00 |
| C0180807P7 | 007 | MATURED NEW | | 8/31/18 | 9/1/18 | $4,386.44 | $4,386.44 | $4,386.44 | $4,386.44 |
| C5051350T3 | 011 | SL-V27T-NDM461974 | NDM461974 | 7/18/16 | 7/18/16 | $15,705.14 | $9,275.30 | $267.91 | |
| 03880038T3 | 011 | UT-580T-NFC720199 | NFC720199 | 7/18/16 | 7/18/16 | $72,216.42 | $53,646.42 | $742.80 | |
| 03888762T3 | 011 | UT-580N-NFC717036 | NFC717036 | 7/18/16 | 7/18/16 | $59,139.26 | $43,932.01 | $608.29 | |
| 03904964T3 | 011 | MX-ME55-NFTN55400 | NFTN55400 | 7/18/16 | 7/18/16 | $47,834.13 | $28,250.37 | $815.99 | |
| 03909468T3 | 011 | CE-750M-NFDC70067 | NFDC70067 | 12/31/15 | 12/28/18 | $93,034.68 | $63,263.48 | $930.35 | |
| 03920569T3 | 011 | UT-580T-NFC720590 | NFC720590 | 12/31/15 | 12/28/18 | $76,693.08 | $51,450.20 | $788.84 | $4,154.18 |
| C0180811P7 | 011 | PREMIER RENTAL | | 8/31/18 | 9/1/18 | $2,175.00 | $2,175.00 | $2,175.00 | $2,175.00 |
| 08540708M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $1,020.54 | $1,020.54 | $1,020.54 | |
| 08540709M6 | 015 | DOC MGMT CTR - CASE | | 8/18/18 | 9/1/18 | $808.45 | $808.45 | $808.45 | |
| 5850076283 | 015 | PARTS AND CHARGES | | 8/9/18 | 9/1/18 | $394.99 | $394.99 | $394.99 | |
| 6850523303 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $972.37 | $972.37 | $972.37 | |
| 6850523304 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $162.44 | $162.44 | $162.44 | |
| 6850523578 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $1,057.91 | $1,057.91 | $1,057.91 | |
| 6850523579 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $323.95 | $323.95 | $323.95 | |
| 6850523580 | 015 | PARTS AND CHARGES | | 8/1/18 | 9/1/18 | $60.44 | $60.44 | $60.44 | |
| 6850527878 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $129.31 | $129.31 | $129.31 | |
| 6850528131 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $812.61 | $812.61 | $812.61 | |
| 6850528132 | 015 | PARTS AND CHARGES | | 8/2/18 | 9/1/18 | $762.35 | $762.35 | $762.35 | |


EXHIBIT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6850528133 | 015 | PARTS AND CHARGES | | | 8/2/18 | 9/1/18 | $39.93 | $39.93 | $39.93 |
| 6850528134 | 015 | PARTS AND CHARGES | | | 8/2/18 | 9/1/18 | $455.77 | $455.77 | $455.77 |
| 6850528135 | 015 | PARTS AND CHARGES | | | 8/2/18 | 9/1/18 | $85.90 | $85.90 | $85.90 |
| 6850531656 | 015 | PARTS AND CHARGES | | | 8/3/18 | 9/1/18 | $820.55 | $820.55 | $820.55 |
| 6850531657 | 015 | PARTS AND CHARGES | | | 8/3/18 | 9/1/18 | $1,011.26 | $1,011.26 | $1,011.26 |
| 6850536064 | 015 | PARTS AND CHARGES | | | 8/6/18 | 9/1/18 | $1,291.43 | $1,291.43 | $1,291.43 |
| 6850536065 | 015 | PARTS AND CHARGES | | | 8/6/18 | 9/1/18 | $158.72 | $158.72 | $158.72 |
| 6850536286 | 015 | PARTS AND CHARGES | | | 8/6/18 | 9/1/18 | $1,194.68 | $1,194.68 | $1,194.68 |
| 6850536287 | 015 | PARTS AND CHARGES | | | 8/6/18 | 9/1/18 | $67.91 | $67.91 | $67.91 |
| 6850540201 | 015 | PARTS AND CHARGES | | | 8/7/18 | 9/1/18 | $364.56 | $364.56 | $364.56 |
| 6850540453 | 015 | PARTS AND CHARGES | | | 8/7/18 | 9/1/18 | $1,558.97 | $1,558.97 | $1,558.97 |
| 6850540454 | 015 | PARTS AND CHARGES | | | 8/7/18 | 9/1/18 | $128.57 | $128.57 | $128.57 |
| 6850544545 | 015 | PARTS AND CHARGES | | | 8/8/18 | 9/1/18 | $2,116.92 | $2,116.92 | $2,116.92 |
| 6850544780 | 015 | PARTS AND CHARGES | | | 8/8/18 | 9/1/18 | $1,999.36 | $1,999.36 | $1,999.36 |
| 6850544781 | 015 | PARTS AND CHARGES | | | 8/8/18 | 9/1/18 | $62.86 | $62.86 | $62.86 |
| 6850544782 | 015 | PARTS AND CHARGES | | | 8/8/18 | 9/1/18 | $57.50 | $57.50 | $57.50 |
| 6850544783 | 015 | PARTS AND CHARGES | | | 8/8/18 | 9/1/18 | $26.09 | $26.09 | $26.09 |
| 6850544784 | 015 | PARTS AND CHARGES | | | 8/8/18 | 9/1/18 | $113.83 | $113.83 | $113.83 |
| 6850548854 | 015 | PARTS AND CHARGES | | | 8/9/18 | 9/1/18 | $71.60 | $71.60 | $71.60 |
| 6850549104 | 015 | PARTS AND CHARGES | | | 8/9/18 | 9/1/18 | $545.64 | $545.64 | $545.64 |
| 6850549105 | 015 | PARTS AND CHARGES | | | 8/9/18 | 9/1/18 | $198.10 | $198.10 | $198.10 |
| 6850552839 | 015 | PARTS AND CHARGES | | | 8/10/18 | 9/1/18 | $38.45 | $38.45 | $38.45 |
| 6850553060 | 015 | PARTS AND CHARGES | | | 8/10/18 | 9/1/18 | $559.63 | $559.63 | $559.63 |
| 6850553061 | 015 | PARTS AND CHARGES | | | 8/10/18 | 9/1/18 | $31.90 | $31.90 | $31.90 |
| 6850553062 | 015 | PARTS AND CHARGES | | | 8/10/18 | 9/1/18 | $81.08 | $81.08 | $81.08 |
| 6850554529 | 015 | PARTS AND CHARGES | | | 8/12/18 | 9/1/18 | $5.86 | $5.86 | $5.86 |
| 6850557894 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $81.60 | $81.60 | $81.60 |
| 6850557895 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $51.65 | $51.65 | $51.65 |
| 6850557896 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $88.50 | $88.50 | $88.50 |
| 6850558119 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $811.38 | $811.38 | $811.38 |
| 6850558120 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $58.80 | $58.80 | $58.80 |
| 6850558121 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $59.45 | $59.45 | $59.45 |
| 6850558122 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $154.91 | $154.91 | $154.91 |
| 6850558123 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $368.72 | $368.72 | $368.72 |
| 6850558124 | 015 | PARTS AND CHARGES | | | 8/13/18 | 9/1/18 | $883.44 | $883.44 | $883.44 |
| 6850562363 | 015 | PARTS AND CHARGES | | | 8/14/18 | 9/1/18 | $968.83 | $968.83 | $968.83 |
| 6850562641 | 015 | PARTS AND CHARGES | | | 8/14/18 | 9/1/18 | $3,487.66 | $3,487.66 | $3,487.66 |
| 6850562642 | 015 | PARTS AND CHARGES | | | 8/14/18 | 9/1/18 | $16.57 | $16.57 | $16.57 |
| 6850562643 | 015 | PARTS AND CHARGES | | | 8/14/18 | 9/1/18 | $85.56 | $85.56 | $85.56 |
| 6850566956 | 015 | PARTS AND CHARGES | | | 8/15/18 | 9/1/18 | $347.68 | $347.68 | $347.68 |
| 6850567224 | 015 | PARTS AND CHARGES | | | 8/15/18 | 9/1/18 | $20.67 | $20.67 | $20.67 |
| 6850571310 | 015 | PARTS AND CHARGES | | | 8/16/18 | 9/1/18 | $59.44 | $59.44 | $59.44 |
| 6850571589 | 015 | PARTS AND CHARGES | | | 8/16/18 | 9/1/18 | $988.49 | $988.49 | $988.49 |
| 6850571590 | 015 | PARTS AND CHARGES | | | 8/16/18 | 9/1/18 | $70.98 | $70.98 | $70.98 |
| 6850571591 | 015 | PARTS AND CHARGES | | | 8/16/18 | 9/1/18 | $75.70 | $75.70 | $75.70 |
| 6850575937 | 015 | PARTS AND CHARGES | | | 8/17/18 | 9/1/18 | $890.69 | $890.69 | $890.69 |
| 6850580951 | 015 | PARTS AND CHARGES | | | 8/20/18 | 9/1/18 | $890.69 | $890.69 | $890.69 |
| 6850580952 | 015 | PARTS AND CHARGES | | | 8/20/18 | 9/1/18 | $157.25 | $157.25 | $157.25 |
| 6850580953 | 015 | PARTS AND CHARGES | | | 8/20/18 | 9/1/18 | $202.22 | $202.22 | $202.22 |
| 6850580954 | 015 | PARTS AND CHARGES | | | 8/20/18 | 9/1/18 | $61.97 | $61.97 | $61.97 |
| 6850580955 | 015 | PARTS AND CHARGES | | | 8/20/18 | 9/1/18 | $308.22 | $308.22 | $308.22 |
| 6850580956 | 015 | PARTS AND CHARGES | | | 8/20/18 | 9/1/18 | $994.57 | $994.57 | $994.57 |
| 6850585424 | 015 | PARTS AND CHARGES | | | 8/21/18 | 9/1/18 | $586.85 | $586.85 | $586.85 |
| 6850585726 | 015 | PARTS AND CHARGES | | | 8/21/18 | 9/1/18 | $8.80 | $8.80 | $8.80 |
| 6850585727 | 015 | PARTS AND CHARGES | | | 8/21/18 | 9/1/18 | $78.87 | $78.87 | $78.87 |
| 6850585728 | 015 | PARTS AND CHARGES | | | 8/21/18 | 9/1/18 | $66.55 | $66.55 | $66.55 |
| 6850590417 | 015 | PARTS AND CHARGES | | | 8/22/18 | 9/1/18 | $972.89 | $972.89 | $972.89 |
| 6850594495 | 015 | PARTS AND CHARGES | | | 8/23/18 | 9/1/18 | $763.75 | $763.75 | $763.75 |
| 6850594749 | 015 | PARTS AND CHARGES | | | 8/23/18 | 9/1/18 | $180.32 | $180.32 | $180.32 |
| 6850594750 | 015 | PARTS AND CHARGES | | | 8/23/18 | 9/1/18 | $302.51 | $302.51 | $302.51 |
| 6850594751 | 015 | PARTS AND CHARGES | | | 8/23/18 | 9/1/18 | $198.43 | $198.43 | $198.43 |
| 6850596757 | 015 | PARTS AND CHARGES | | | 8/24/18 | 9/1/18 | $965.59 | $965.59 | $965.59 |
| 6850599022 | 015 | PARTS AND CHARGES | | | 8/24/18 | 9/1/18 | $101.72 | $101.72 | $101.72 |
| 6850599023 | 015 | PARTS AND CHARGES | | | 8/24/18 | 9/1/18 | $349.34 | $349.34 | $349.34 |
| 6850599024 | 015 | PARTS AND CHARGES | | | 8/24/18 | 9/1/18 | $537.39 | $537.39 | $537.39 |
| 6850599025 | 015 | PARTS AND CHARGES | | | 8/24/18 | 9/1/18 | $270.91 | $270.91 | $270.91 |
| 6850600779 | 015 | PARTS AND CHARGES | | | 8/26/18 | 9/1/18 | $22.22 | $22.22 | $22.22 |
| 6850604500 | 015 | PARTS AND CHARGES | | | 8/27/18 | 9/1/18 | $331.38 | $331.38 | $331.38 |
| 6850604739 | 015 | PARTS AND CHARGES | | | 8/27/18 | 9/1/18 | $866.29 | $866.29 | $866.29 |
| 6850604740 | 015 | PARTS AND CHARGES | | | 8/27/18 | 9/1/18 | $47.56 | $47.56 | $47.56 |
| 6850608832 | 015 | PARTS AND CHARGES | | | 8/28/18 | 9/1/18 | $120.79 | $120.79 | $120.79 |
| 6850609102 | 015 | PARTS AND CHARGES | | | 8/28/18 | 9/1/18 | $820.24 | $820.24 | $820.24 |
| 6850609103 | 015 | PARTS AND CHARGES | | | 8/28/18 | 9/1/18 | $340.53 | $340.53 | $340.53 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6850613573 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $37.87 | $37.87 | $37.87 |
| 6850613574 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $101.23 | $101.23 | $101.23 |
| 6850613575 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $101.23 | $101.23 | $101.23 |
| 6850613576 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $249.91 | $249.91 | $249.91 |
| 6850613577 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $456.25 | $456.25 | $456.25 |
| 6850613578 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $76.03 | $76.03 | $76.03 |
| 6850617586 | 015 | PARTS AND CHARGES | | 8/29/18 | 9/1/18 | $235.78 | $235.78 | $235.78 |
| 6850617855 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $1,275.21 | $1,275.21 | $1,275.21 |
| 6850617856 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $619.88 | $619.88 | $619.88 |
| 6850617857 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $171.67 | $171.67 | $171.67 |
| 6850617858 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $433.58 | $433.58 | $433.58 |
| 6850617859 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $481.12 | $481.12 | $481.12 |
| 6850617860 | 015 | PARTS AND CHARGES | | 8/30/18 | 9/1/18 | $149.87 | $149.87 | $149.87 |
| 6850621793 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $97.60 | $97.60 | $97.60 |
| 6850622065 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $7.78 | $7.78 | $7.78 |
| 6850622066 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $654.54 | $654.54 | $654.54 |
| 6850622067 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $1,019.15 | $1,019.15 | $1,019.15 |
| 6850622068 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $28.30 | $28.30 | $28.30 |
| 6850622068 | 015 | PARTS AND CHARGES | | 8/31/18 | 9/1/18 | $24.92 | $24.92 | $24.92 |
| C8152809M6 | 015 | BMS MONTHLY FEE | | 8/25/18 | 9/1/18 | $108.25 | $108.25 | $108.25 | $45,940.14 |
| C0180815P7 | 015 | OPEN ACCT NON-MACH/P | | 8/31/18 | 9/1/18 | $585.29 | $585.29 | $585.29 | $585.29 |
| | | | | | | | | $66,264.14 |



## <u>Dealer Notification Letter</u>

TERRY ABBY                                                             12/11/2018

ABBY FARM SUPPLY, INC.

P.O. BOX 1486

SALTILLO MS  38866

Subject:   Stop Ship Parts and Manual Approval

Dear  TERRY ABBY,

We regret to inform you that it has been necessary to place your account on **Stop Ship Parts and Manual Approval** status, which in turn limits your wholesale lines of credit because you have not complied with the terms of the Wholesale Financing and Security Agreement.

Dealer is Past Due on November statement

Please arrange for the immediate handling of these items so we may give full consideration to providing any further extension of credit at the earliest possible date.

CNH Industrial Capital will not be providing financing of any parts requests during stop ship.

Sincerely,

*Dennis Albus*

Dennis Albus

Field Credit Specialist

512-423-3897

CNH Industrial Capital





December 12, 2018

**VIA ELECTRONIC AND OVERNIGHT DELIVERY**

Abby Farm Supply. Inc.
DBA Abby Equipment
POB 1486
Saltillo, MS 38866

Attn: Terry Abby

*Re: Notice of Default and Demand for Payment*

Dear Mr. Abby:

CNH Industrial Capital America LLC ("CNH Industrial Capital") and Abby Equipment ("Dealer") are parties to, among other agreements, that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA"), and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA collectively, the "Financing Agreements"). CNH Industrial Capital hereby provides Dealer this notice of default under the Financing Agreements (the "Notice of Default").

The defaults include, among others, the failure to make payments in accordance with the terms and conditions of the Financing Agreements for a second month (the "Defaults"). Specifically, Dealer has failed to pay US$56,781.00 for the month of November 2018 and US$44,034.94 for the month of December (the "Default Payment Amount").

As a result of the foregoing Defaults, CNH Industrial Capital demands Dealer make immediate payment of US$100,815.94 to CNH Industrial in indefeasible funds by than 12:00 p.m. (Central), on December 22, 2018. CNH Industrial Capital is entitled to exercise all of its rights and remedies under the Financing Agreements without further notice of any kind to any party, including acceleration of all the Obligations (as defined in the WFSA) which are not less than US$1,923,901.85.

In the event that CNH Industrial Capital does not receive the Default Payment Amount by 12:00 p.m. (Central), on December 22, 2018, the Financing Agreements shall terminate automatically and without further notice in accordance with the terms therein and the Obligations accelerated. In such an event, Dealer shall be required to (1) make immediate payment of US$1,923,901.85 representing the total outstanding Obligations for the remaining Collateral.

Acceptance of any late payment by CNH Industrial Capital will not be a waiver of any Default, whether now existing or hereafter arising. CNH Industrial Capital requires that Dealer continue to timely perform its future obligations under the parties' agreements and adhere to the terms and conditions therein.





Nothing contained herein shall be construed as an election of remedies or a waiver of any right or remedy with respect to the Defaults or otherwise. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

Finally, this Notice of Default is also being provided to the Dealer guarantors, if any. As guarantors, they are advised that they are also obligated for all costs of collection including attorney fees.

If you have any questions, you may contact me at (512) 423-3897.

Sincerely,

Dennis Albus
CNH Industrial Capital America LLC

cc: Terry Abby
    Linda Abby
    Abby Manufacturing Co., Inc.
    Jeff Schmidt
    Matt Lawson



December 31, 2018

**VIA ELECTRONIC AND OVERNIGHT DELIVERY**

Abby Farm Supply. Inc. dba Abby Equipment
POB 1486
Saltillo, MS 38866
Attn: Terry Abby

> *Re: Notice of Termination*

Dear Mr. Abby:

CNH Industrial Capital America LLC ("CNH Industrial Capital") and Abby Farm Supply. Inc. dba Abby Equipment ("Dealer") are parties to, among other agreements, that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA"), and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA collectively, the "Financing Agreements"). CNH Industrial Capital hereby provides Dealer this notice of termination pursuant to the Financing Agreements (the "Notice of Termination").

On or about December 12, 2017, CNH Industrial Capital provided Dealer a notice of default and demand for payment pursuant to the Financing Agreements. To date, payment has not been received and Dealer's account remains in default (the "Defaults"). Notwithstanding any arrangement you may have reached with CNH Industrial America LLC ("CASE") with respect to certain matured units, as of the date of this Notice of Termination, Dealer has failed to and refuses to pay US$56,781.00 for the month of November 2018 and US$44,034.94 for the month of December (the "Default Amount").

As a result of the foregoing, based upon Dealer's failure and refusal to pay the Default Amount, CNH Industrial Capital hereby terminates the Financing Agreement effective immediately and all Obligations (as defined in the WFSA) owing under the Financing Agreements are declared immediately due and payable. Specifically, CNH Industrial Capital demands that the Dealer immediately pay all Obligations in the amount of US$1,928,154.70. If payment in indefeasible funds is not received immediately, Dealer must arrange for the voluntary turnover of all Collateral (as defined in the WFSA), including all cash and noncash proceeds of the Collateral, to CNH Industrial Capital. At this time, Dealer must cease the sale, transfer or other disposition of all Collateral securing Obligations to CNH Industrial Capital.

Acceptance of any late payment by CNH Industrial Capital will not be a waiver of any default, whether now existing or hereafter arising. Nothing contained herein, including the voluntary turnover of Collateral, shall be construed as an election of remedies or a waiver of any right or remedy with respect to the Defaults or otherwise. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

Finally, this Notice of Termination is also being provided to the Dealer guarantors, if any. As guarantors, they are advised that they are also obligated for all costs of collection including attorney fees.





If you have any questions, you may contact me at (512) 423-3897.

Sincerely,

Dennis Albus
CNH Industrial Capital America LLC

cc: Terry Abby
    Linda Abby
    Abby Manufacturing Co., Inc.
    Jeff Schmidt
    Matt Lawson



January 16, 2019

**VIA ELECTRONIC AND OVERNIGHT DELIVERY**

Abby Farm Supply. Inc. dba Abby Equipment
POB 1486
Saltillo, MS 38866
Attn: Terry Abby

>       *Re: Turnover and Repossession of Collateral*

Dear Mr. Abby:

On or about December 31, 2018, CNH Industrial Capital America LLC ("CNH Industrial Capital") provided Abby Farm Supply. Inc. dba Abby Equipment ("Dealer") a Notice of Default and Termination pursuant to that certain Wholesale Financing and Security Agreement dated March 27, 2012 (the "WFSA"), and that certain Retail Financing Agreement dated March 27, 2012 (the "RFA") (the WFSA and RFA collectively, the "Financing Agreements"). Notwithstanding the foregoing, Dealer refuses to turn over the Collateral (as defined in the WFSA) or allow a joint audit by CNH Industrial Capital and CNH Industrial America LLC ("CASE").

Dealer has until 12:00 p.m. Central, January 22, 2019, to agree to (i) voluntarily turnover the Collateral and permit CNH Industrial Capital and CASE to conduct a joint audit, or (ii) pay CNH Industrial Capital $1,943,735.62 in full satisfaction of the Obligations (as defined in the WFSA). If Dealer fails to respond in accordance with this letter, then CNH Industrial Capital will have no choice but to seek repossession of its Collateral along with payment for all costs of collection, including attorney fees. CNH Industrial Capital reserves the right to exercise any and all of its rights and remedies under the parties' agreements and applicable law.

Finally, this Notice of Termination is also being provided to the Dealer guarantors, if any. As guarantors, they are advised that they are also obligated for all costs of collection including attorney fees.

If you have any questions, you may contact me at (512) 423-3897.

Sincerely,

Dennis Albus
CNH Industrial Capital America LLC

**ACKNOLWEDGED AND AGREED:**
The undersigned acknowledges receipt of this letter and agreement to its terms.

By: _____
Title: _____





cc: Terry Abby
Linda Abby
Abby Manufacturing Co., Inc.
Jeff Schmidt
Matt Lawson